UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ESTHER SOLOMON,

Plaintiff,

– against –

FORDHAM UNIVERSITY,

Defendant.

**OPINION & ORDER**

18 Civ. 4615 (ER)

Ramos, D.J.:

Esther Solomon, proceeding *pro se*, is an associate professor at Fordham University's Gabelli School of Business. Before the Court is her motion for leave to file a proposed Third Amended Complaint ("TAC"), alleging the violation of several state and federal civil rights laws.[1] For the reasons discussed below, Solomon's motion is GRANTED for the limited purpose of asserting Title VII and ADEA retaliation claims based on her unpaid leaves of absence, as well as the analogous state law claims based on these facts. However, the Court

[1] Solomon brings claims under the following federal statutes:

- Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*
- Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*
- The Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 to 634
- The Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601 to 2654
- The Equal Pay Act of 1963 ("EPA"), 29 U.S.C. § 206(d)

She also brings claims under the following New York statutes:

- The New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 297
- The New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 to 8-131
- The Achieve Pay Equality Act of 2015, N.Y. Lab. Law § 194

Finally, she also alleges defamation, breach of contract, breach of fiduciary duty, and tortious interference with current and prospective business relations under New York common law.

finds that it would be futile for Solomon to re-allege the remaining claims asserted in the proposed TAC.

## I. BACKGROUND

Familiarity with the factual background of this case is assumed, and the facts are set forth in more detail in the Court's opinions granting Fordham's previous two motions to dismiss. *See Solomon v. Fordham Univ.*, No. 18 Civ. 4615 (ER), 2020 WL 1272617 (S.D.N.Y. Mar. 17, 2020) ("*Solomon I*"); and *Solomon v. Fordham Univ.*, No. 18 Civ. 4615 (ER), 2020 WL 7711697 (S.D.N.Y. Dec. 29, 2020) ("*Solomon II*"). Following the dismissal of Solomon's Second Amended Complaint on December 29, 2020, the Court noted that if Solomon wished to file a Third Amended Complaint, she must move for leave to amend and "provide a copy of her proposed Third Amended Complaint and a concise explanation of how she has addressed the defects identified in this Opinion and Order." *Solomon II*, 2020 WL 7711697, at *17.

Solomon did so on February 8, 2021. She has re-submitted her previous pleadings in their entirety, as well as 208 new paragraphs of allegations and 15 new exhibits. *See* Doc. 88, 88-2. While some of Solomon's proposed TAC overlaps with her previous complaints, she has alleged new facts in support of several new allegations, including that:

- Fordham unlawfully ceased its payment of her healthcare premiums in retaliation for her EEOC complaint and activities in this case;
- The above-mentioned actions regarding her healthcare premiums violated her right to continued appointment as a tenured faculty member;
- Her fall 2020 teaching schedule and actions surrounding its assignment were retaliatory; and
- She was underpaid compared to similarly situated professors.

## II. LEGAL STANDARD

"Once the time for amending pleadings as a matter of course expires, 'a party may amend its pleading only with the opposing party's written consent or the court's leave.'" *Tolliver v. Lilley*, No. 12 Civ. 971 (DAB) (KNF), 2016 WL 5793998, at *2 (S.D.N.Y. Sept. 19, 2016) (quoting Fed. R. Civ. P. 15(a)(2)). The Court "should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), and leave to amend may be denied only when "there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility." *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Leave to amend may be denied as futile when a plaintiff "identifies no new facts that would cure the [previous complaint's] deficiencies." *Jackson v. Wells Fargo Home Mortg.*, 811 F.App'x 27, 30 (2d Cir. 2020).

## III. DISCUSSION

Fordham opposes Solomon's motion on the basis that it would be futile, arguing that she has not identified new facts that would cure the pleading deficiencies in her previously filed complaints. Doc. 92 at 1 (citing *Wells Fargo Home Mortg.*, 811 F.App'x at 30). Leave to amend based on futility will be denied "only if the plaintiff can plead no set of facts that would entitle [them] to relief." *Milanese*, 244 F.3d at 110.

### A. Claims Based on Solomon's Unpaid Leaves of Absence

The Court cannot find that it would be futile for Solomon to file her Third Amended Complaint, as she has made new factual and legal allegations that merit further consideration regarding whether her unpaid leave without benefits was retaliatory under Title VII and the ADEA. The Court previously dismissed this claim in *Solomon II*, relying in large part on the fact that she voluntarily agreed to the proposed terms of the leave rather than take on a

purportedly undesirable teaching schedule. *See Solomon II*, 2020 WL 7711697, at *16. The Court also read Appendix 4, § A-18(c) to Fordham's University Statutes to be consistent with Fordham's position that it would not pay her healthcare premium because it did not deem the leave to be "for faculty development purposes." *Id.*[2] However, the TAC includes new allegations that this unpaid leave nevertheless violates 26 C.F.R. § 54.4980B-4, an implementing regulation of the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), her guarantee of continuous appointment as a tenured faculty member as set forth in Fordham's University Statute § 4-03-01, and other due process rights for tenured faculty. *See* Doc. 93 at 2; *see also* TAC at ¶¶ 338-39; 512–535. Based on these theories, she argues that the reduction of her benefits constituted an adverse employment action, and was made in retaliation for her complaints about her teaching schedule and other protected activities in this case.

Solomon also argues that—contrary to the representation of Dean Rappacioli in a May 24, 2019 email cited by the Court in *Solomon II*—it was not Fordham's "customary" practice to cease payment of healthcare premiums for unpaid leave for faculty members in Solomon's circumstances, and that she is not "aware of any other faculty so treated in her 35 years at [Fordham]." TAC at ¶ 521. In support, Solomon argues that unpaid leave cannot be a valid "qualifying event" as required for continuance under COBRA, through which she has continued to pay for her healthcare premiums out of pocket. A COBRA "qualifying event" is defined as any one of a list of enumerated occurrences for which, "but for the continuation coverage required under this part, [the qualifying event] would result in the loss of coverage of a qualified

---

[2] Fordham's University Statutes govern Solomon's employment and create enforceable contractual rights for tenured faculty. *See Yoon v. Fordham Univ. Faculty & Admin. Retirement Plan*, No. 99 Civ. 11042 (RCC), 2004 WL 3019500, at *4 (S.D.N.Y. Dec. 29, 2004).

beneficiary." 29 U.S.C. § 1163.[3] A "qualifying event" therefore permits a beneficiary to remain covered by the healthcare plan, at their own expense, for a limited period of time. At different points during this litigation in 2019 and 2020, Fordham has classified Solomon's unpaid leaves as either a "termination" or "reduction of hours" for COBRA purposes, both of which are listed as qualifying events under § 1163. However, Solomon argues that neither of these events can be applicable to her because, for Fordham to make such a change to the terms and conditions of her employment, it must follow the disciplinary procedures for tenured faculty set forth in its statutes, which it has not done. *See* TAC at ¶ 338. Viewed in the light most favorable to Solomon, this is essentially an argument that any unpaid leave requires Fordham to abide by the due process protections for tenured faculty contained in its statutes, even if (as here) she chose the leave because of her proposed teaching schedule.

In its letter response, Fordham has argued that the COBRA regulations cover unpaid leave. Doc. 92 at 3. It cites 26 C.F.R. § 54.4980B-4(e) which states that a "reduction of hours" encompasses any "absence from work due to disability, a temporary layoff, or any other reason (other than due to leave that is FMLA leave . . .)." Fordham is correct that the plain text of this regulation encompasses unpaid leave, which undermines Solomon's argument that a "reduction of hours" can only occur to employees who are paid hourly. However, under 29 U.S.C. § 1163, any "qualifying event" must also be one that would—but for the availability of continuance under COBRA—result in the beneficiary losing coverage under their healthcare plan altogether.

[3] 29 U.S.C. § 1163 sets forth the following qualifying events: "(1) The death of the covered employee;" "(2) The termination (other than by reason of such employee's gross misconduct), or reduction of hours, of the covered employee's employment;" "(3) The divorce or legal separation of the covered employee from the employee's spouse;" "(4) The covered employee becoming entitled to benefits under title XVIII of the Social Security Act;" "(5) A dependent child ceasing to be a dependent child under the generally applicable requirements of the plan;" and "(6) A proceeding in a case under Title 11, commencing on or after July 1, 1986, with respect to the employer from whose employment the covered employee retired at any time.

And Solomon has argued that, because Fordham never instituted disciplinary procedures against her, any such removal from her healthcare plan would violate her due process rights as a tenured professor, as set forth in the University Statutes. TAC ¶¶ 338–39. Thus, if she is correct about the placement on leave violating her tenure rights, this would also call into question whether the leave was properly considered a "qualifying event" under COBRA, insofar as Fordham may have lacked the authority to remove her from its plan.

Solomon's analysis could be relevant to whether Fordham retaliated against her by taking the position that paid benefits were unavailable for Solomon's unpaid leaves. It is true that the Court held in *Solomon II* that her spring 2020 leave of absence was *not* plausibly retaliatory based on: (1) Solomon's consent to the leave, (2) Dean Rappacioli's May 24, 2019 email about Fordham's "customary" practices and (3) a reading of Appendix 4, § A-18 to Fordham's University Statutes. *See Solomon II*, 2020 WL 7711697, at *16–17. However, Solomon has alleged several new facts and legal arguments that could potentially impact this analysis, and on which the Court does not yet have sufficient briefing. For example, if Fordham's position was actually (as Solomon alleges) a deviation from custom—and its reading of Appendix 4, § A-18 contrary to other Fordham statutes regulating faculty tenure rights—this could raise a plausible inference of retaliation. *Cf. Zahorik v. Cornell Univ.*, 729 F.2d 85, 93 (2d Cir. 1984) (departures from procedural regularity may in some cases raise an inference of discrimination). Thus, on the current limited record, and with due consideration of Solomon's *pro se* status, the Court cannot say that it would be futile for her to file the TAC.

However, the Court is also mindful that Fordham has not had a full opportunity to respond to Solomon's new arguments, and may have additional defenses not raised in its March 3, 2021 letter. Thus, while the Court will grant Solomon leave to file the TAC for the limited

purpose of asserting this claim, it will also grant Fordham's request to file a motion to dismiss, so that the Court may rule on this issue with all relevant arguments before it. *See* Doc. 92 at 3 (requesting leave to file a motion to dismiss in the event leave to amend were granted). Solomon's leave to replead is expressly limited to the purpose of permitting her to assert Title VII and ADEA retaliation claims based on her unpaid leaves of absence, and the analogous state law retaliation claims over which the Court has supplemental jurisdiction. Any motion to dismiss shall be correspondingly limited to these claims. Moreover, because Solomon has had multiple opportunities to amend, no subsequent requests to re-plead will be granted.

### B. Remaining Claims

Aside from the retaliation claim discussed *supra*, the Court finds that Solomon's TAC would not withstand a motion to dismiss on the remaining re-alleged claims.

Many of Solomon's new allegations pertain to her use of "comparator" professors, whom she alleges were given less burdensome course schedules than her in spring 2018, and are unlawfully paid more than her.[4] The Court previously dismissed these claims because Solomon had not shown that any such professors were similarly situated to her in all material respects. *See Solomon II*, 2020 WL 7711697, at *9 (citing *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 408 (S.D.N.Y. 2014)). Solomon has not cured these deficiencies such that they would survive a motion to dismiss. Regarding her spring 2018 teaching schedule, Solomon notes that the only "comparator professors" to her were Drs. Pirson and Hollwitz. TAC at ¶ 425. The Court dismissed her claims against these individuals in both *Solomon I* and *Solomon II* because she had not made sufficient allegations that Pirson and Hollwitz were similarly situated

[4] Solomon's disparate treatment and unequal pay claims are brought through Title VII, the ADEA, the Equal Pay Act ("EPA") and related New York statutes.

to her in terms of job responsibilities or content. *Solomon I*, 2020 WL 1272617, at *12–13, *Solomon II*, 2020 WL 7711697, at *9–10. The Court has also taken note of facts in the record suggesting that Pirson and Hollwitz's job duties, responsibilities and work experiences have meaningfully differed from hers. *Solomon I*, 2020 WL 1272617, at *13 (noting Pirson's responsibilities as Area Chair and Hollwitz's prior experience as Vice President of Academic Affairs); *Solomon II*, 2020 WL 7711697, at *10 (noting their different graduate teaching responsibilities).

The TAC has not changed these deficiencies. For example, Solomon alleges that all management professors "require[] the same skill and job content" and are interchangeable insofar as they could all be required to teach undergraduate courses in Fordham's Bronx campus (as Solomon was). *Id.* at ¶¶ 422, 424. However, Solomon has not made particularized allegations about the job content of Pirson and Hollwitz's positions, and has not pleaded facts that materially impact the Court's prior reasoning.[5] Solomon's argument instead focuses on the fact that, while the Court weighed the differences between her and her comparators' administrative and other non-teaching duties in its prior decisions, neither Pirson or Hollwitz is classified as an "administrator" under the Fordham's University Statutes, which distinguish between "faculty" and "administrators." *See* TAC ¶ 447–48. While she is correct in this regard, the Court's past decisions have not been predicated on this technical distinction. Rather, the

[5] Indeed, she acknowledges that Pirson and Hollwitz are both full Professors, while she is an Associate Professor. ¶ 423. The Court recognizes that Solomon has alleged that this difference in rank and accordant job responsibilities stems from past discrimination against her and favoritism for men and non-Jewish faculty—particularly surrounding Solomon's denial of promotions in 2001 and 2003. *See* TAC at ¶ 423–24, ¶¶ 455–59. However, any such direct claim of discrimination surrounding her rank is time-barred. *See Solomon I*, 2020 WL 1272617, at *10. While the Court can consider facts surrounding Solomon's time-barred allegations for context, these events cannot transform Pirson and Hollwitz into similarly situated individuals for the comparator analysis, which focuses on their actual job experience, responsibilities and content. For the reasons discussed, the available allegations do not suggest that Pirson and Hollwitz are similarly situated in those respects.

Court was observing that Pirson and Hollwitz's different ranks, positions, and associated responsibilities outside of teaching militated against a finding that they were similarly situated to Solomon. *See Solomon II*, 2020 WL 7711697, at *10. These observations still apply with full force.

Finally, Solomon cites to a 2015 email sent by Thomas Wright, an older male professor, stating that Fordham has engaged in "the practice of unequal pay for the *same* work." TAC Ex. 32 (emphasis in original). In the email, Wright appears to allege that he had been given fewer credit hours than other professors for his teaching in the Bronx, and to observe sarcastically that this was "a nice 'reward' for [Wright] being the only senior faculty member consistently willing to step up and teach [in the Bronx]." *Id.* This differs from Solomon's allegation that she was *assigned* a more burdensome course schedule on the basis of her protected characteristics. In any event, Wright's issue with the credit hours associated with the undergraduate course, occurring roughly two years earlier, bears too attenuated a connection to Solomon's 2018 schedule allegations to plausibly support a discrimination claim.

In support of her EPA claims, Solomon also cites to a chart of male professors in the Management Systems Area who are paid more than her. TAC at ¶ 402. However, because this chart does not include an explanation of these individuals' job titles, duties, functions or ranks, the Court has no basis to infer that these individuals are similarly situated to her. Her allegations regarding Hollwitz and Pirson remain insufficient for EPA purposes as well. As mentioned in *Solomon I*, Pirson was acting Area Chair during the relevant time period, which comes with different pay and job responsibilities. *See Solomon I*, 2020 1272617, at *13.[6] Solomon also

[6] Solomon has alleged that the Area Chair position comes with a stipend of $18,000–20,000. ¶ 408.

argues that Hollwitz had completed his Area Chair appointment and time as an Vice President of Academic Affairs prior to the imposition of her spring 2018 schedule, and thus was not an "Administrator" under the University Statutes at the time. TAC at ¶ 418. While this is true, she must still plead what his job responsibilities were in his capacity as a faculty member; her assertion that all faculty members' responsibilities involve "teaching management students with an emphasis on their own specialties" is insufficient for EPA purposes. *Id.* at ¶ 424. *See E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 256 (2d Cir. 2014) (noting that broad generalizations drawn from job titles, classifications or divisions cannot suffice to state an EPA claim). Thus, Solomon has not cured the deficiency in her complaint for this claim.

Solomon also pleads that her proposed fall 2020 teaching schedule was retaliatory. However, similar to the Court's holding in *Solomon II* regarding her spring 2020 schedule, this claim is undermined by the fact that the fall 2020 schedule was not more onerous than the one previously assigned to her. *See Solomon II*, 2020 WL 7711697, at *16 n. 21. In her reply letter, Solomon also suggests that her repeated assignments to teach undergraduate courses constituted a constructive discharge. Doc. 93 at 2. A constructive discharge occurs when an employee leaves their workplace because their "working conditions [became] so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *Aspilaire v. Wyeth Pharms., Inc.*, 612 F. Supp. 2d 289, 311 (S.D.N.Y. 2009) (quoting *Pa. State Police v. Suders*, 542 U.S. 129, 141 (2004)). However, "claims of constructive discharge necessarily rely on actionable claims of a hostile work environment." *Id.* (citing *Nakis v. Potter*, 422 F. Supp. 2d 398, 412 (S.D.N.Y. 2006)). The Court has previously held that Solomon failed to state an actionable hostile work environment claim. *See Solomon II*, 2020 WL 7711697, at *15. In the TAC, Solomon has not alleged additional facts that plausibly supplement her hostile work

environment claims. While she cites a 2015 email from Professor Wright that accuses Dean Rapaccioli of creating a "hostile and toxic work environment," this email pre-dates the relevant limitations period for Solomon's hostile work environment claim, and does not describe any hostile actions taken toward Solomon. *Cf. Solomon I*, 2020 WL 1272617, at *14 n.14 (finding alleged hostile work environment incidents occurring before March 2017 to be time-barred when they were not sufficiently related to any timely-alleged incidents).[7] Therefore, she also does not state a claim for a constructive discharge.

Finally, Solomon reasserts several discriminatory treatment allegations that she has raised in previous complaints. *See* TAC ¶¶ 470–503. These include: Emails from December 2017 that allegedly show Dean Rapaccioli falsely accusing Solomon of University Code of Conduct violations; purported irregularities in Solomon's 2003 promotion process; allegedly discriminatory statements made to Solomon in 2013 by then-provost Stephen Freedman; and an incident in 2019 in which another professor, Dr. James Stoner, allegedly raised his voice at Solomon in a "highly intimidating and threatening way." *Id.* at ¶¶ 470, 476–78; 488; 502. However, Solomon's re-assertions of these facts do not change the Court's prior determinations that these incidents, either individually or as a whole, do not state a claim for disparate treatment or hostile work environment. *See Solomon I*, 2020 WL 1272617, at *10–14; *Solomon II*, 2020 WL 7711697, at *10–15.

---

[7] Solomon also notes that Fordham failed to investigate an incident in which a student or students drew "anti-Semitic cartoons, as well as [made] humiliating comments" about Solomon. TAC ¶¶ 460–62. While such an incident could contribute toward a hostile work environment claim if part of a pattern of hostile activity from the administration, she has not pleaded facts plausibly suggesting that this incident was part of a sufficiently "continuous and concerted [pattern] in order to be deemed pervasive." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2003) (citation omitted).

## IV. CONCLUSION

Solomon's motion to file her proposed Third Amended Complaint is GRANTED for the limited purpose of alleging that Fordham's position that it would not pay her healthcare premiums for her unpaid leaves violated her tenure rights and applicable COBRA regulations, and thus was retaliatory. This complaint must be filed by June 25, 2021. Fordham's motion to dismiss, if any, will be due by July 23, 2021; Solomon's opposition will be due by August 20, 2021, and any reply will be due by September 3, 2021. The Clerk of Court is respectfully directed to terminate the motion, docket number 88.

It is SO ORDERED.

Dated: June 4, 2021
New York, New York

Edgardo Ramos, U.S.D.J.