UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ESTHER SOLOMON,

                    Plaintiff,

        – against –

FORDHAM UNIVERSITY,

                    Defendant.

**OPINION & ORDER**

18 Civ. 4615 (ER)

RAMOS, D.J.:

## I.        Background

Esther Solomon, proceeding *pro se*, is an associate professor at Fordham University's

Gabelli School of Business.  Before the Court is Solomon's motion for reconsideration of its

June 4, 2021 Opinion and Order, Doc. 94, which granted Solomon, in part, leave to amend, as

well as Fordham's motion to dismiss Solomon's Third Amended Complaint ("TAC").  Docs. 96

and 99.  Solomon moves the Court to reconsider its June 4, 2021 decision to the extent it denied

her leave to re-allege certain claims that the Court had previously dismissed.  Doc. 96.  For the

reasons discussed below, Solomon's motion for reconsideration is DENIED, and Fordham's

motion to dismiss is GRANTED.

### a.   Procedural Background

The Court has issued two opinions granting Fordham's previous two motions to dismiss.

*See Solomon v. Fordham Univ.*, No. 18 Civ. 4615 (ER), 2020 WL 1272617 (S.D.N.Y. Mar. 17,

2020) ("*Solomon I*"); *Solomon v. Fordham Univ.*, No. 18 Civ. 4615 (ER), 2020 WL 7711697

(S.D.N.Y. Dec. 29, 2020) ("*Solomon II*").  Following the Court's dismissal of Solomon's Second

Amended Complaint on December 29, 2020, the Court noted that if Solomon wished to file a

Third Amended Complaint, she was required to move for leave to amend and "provide a copy of

her proposed Third Amended Complaint and a concise explanation of how she has addressed the defects identified in th[e] Opinion and Order." *Solomon II*, 2020 WL 7711697, at *17.  On February 8, 2021, Solomon re-submitted her previous pleadings in their entirety, as well as 208 new paragraphs and 15 new exhibits. *See* Doc. 88; Doc. 88-2.  This Court determined that while some of Solomon's proposed TAC overlapped with her previous complaints, she had alleged new facts in support of several new allegations that merit further consideration regarding whether her unpaid leave without benefits was retaliatory under Title VII and the ADEA.  Doc. 94.  Accordingly, in its Opinion and Order dated June 4, 2021, the Court granted Solomon's motion for leave to amend for the expressly limited purpose of alleging that "Fordham's position that it would not pay her healthcare premiums for her unpaid leaves violated her tenure rights and applicable COBRA regulations," and thus was retaliatory. *Id*. at 12.

However, the Court found that amendment of the remaining claims would be futile considering the Court's previous two decisions granting Fordham's motions to dismiss and the Court's determination that Solomon's proposed TAC did not cure the deficiencies in her previous complaints. *Id*. at 7–11.  On June 18, 2021, Solomon moved the Court to reconsider its decision to the extent it denied her leave to re-allege her disparate treatment and unequal pay claims brought under Title VII, ADEA, the Equal Pay Act, the New York State Human Rights Law, and the New York City Human Rights Law. *See* Doc. 96.  On July 22, 2021, Fordham separately filed both its motion to dismiss the TAC, and its reply in opposition to Solomon's motion for reconsideration. *See* Doc. 99; Doc. 103.  On September 13, 2021, Solomon filed her memorandum of law in further support of her motion for reconsideration. *See* Doc. 111.  On October 11, 2021, Fordham filed its reply in support of its motion to dismiss the TAC. *See* Doc.

116.  On November 5, 2021, Solomon filed her surreply in opposition to Defendant's motion to dismiss the TAC.  *See* Doc. 120.

### b.  Factual Background

The Court assumes familiarity with the facts of the case as set forth in *Solomon I* and *Solomon II*.  For purposes of the motion for reconsideration and the motion to dismiss currently before the court, the relevant facts are set forth below.[1]  This Court explicitly granted Solomon leave to assert Title VII and ADEA retaliation claims based on her unpaid leaves of absence, and analogous state law retaliation claims over which the Court has supplemental jurisdiction.  Doc. 94 at 7.  Despite this directive, Solomon's TAC re-alleges all previous claims.[2]  Doc. 95 ¶ 328. The Court has already determined that amendment of certain of the claims would be futile.  Doc. 94 at 7–11.

In the TAC, Solomon alleges that Fordham University retaliated against her with adverse actions that were "temporally related" to her 2018 EEOC and federal complaints.  ¶ 332.  On April 12, 2019 and February 1, 2020, Solomon received COBRA letters indicating that Fordham

---

[1] Unless otherwise indicated, citations to ¶ _ refer to the third amended complaint ("TAC"), Doc. 95.  For purposes of deciding the instant motions, the facts in the TAC are presumed true and all reasonable inferences are drawn in favor of Plaintiff.

[2] Solomon brings claims under the following federal statutes:

- Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.
- Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq.
- The Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 to 634
- The Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601 to 2654
- The Equal Pay Act of 1963 ("EPA"), 29 U.S.C. § 206(d)

She also brings claims under the following New York statutes:

- The New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 297
- The New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 to 8-131
- The Achieve Pay Equality Act of 2015, N.Y. Lab. Law § 194

Finally, she also alleges defamation, breach of contract, breach of fiduciary duty, and tortious interference with current and prospective business relations under New York common law.

had terminated her.  ¶ 335.  On August 31, 2020, she received one letter indicating that she had

received a reduction in hours and status change.  *Id*.  She asserts that Fordham never notified her

of these changes, and that these actions were in violation of her rights as tenured faculty.  ¶¶ 335,

512.  She asserts that Fordham retaliated against her in February and August of 2020 by

removing her healthcare coverage and other benefits, ¶¶ 312, 335, and "secretly changed the

terms of employment conditions to deprive her of her tenure rights."  ¶ 333.  Specifically,

Solomon states that on February 1, 2020, her health and other Fordham benefits were terminated,

requiring her to pay for those benefits through COBRA.[3]  ¶ 377.  In other words, Solomon

alleges that the termination of her healthcare benefits was the result of Fordham secretly

terminating her, in violation of her protections as a tenured faculty member as set forth in

Fordham's University Statute § 4-03-01, and other due process rights for tenured faculty.  ¶¶

334–39; 512–35.  Solomon was informed by Fordham's Corporate Counsel that the letters

indicating termination were contrary to Fordham's understanding.  ¶ 382.

Solomon further alleges that she intended to teach during the Fall 2020, but was notified

of another "punitive, retaliatory schedule."  ¶¶ 505, 510.  Solomon states that in July 2020 she

was not listed as a professor on Fordham's website and that her courses had been removed from

the site without her notice.  ¶ 510.  When Solomon contacted the Fordham administration

regarding these issues, she was told by Dean Rapaccioli that the issues were due to a need to

modify the schedules of many professors in response to student preferences for hybrid/in-person

learning.  Doc. 95-2 at 79.  Due to her dissatisfaction, Solomon requested unpaid leave for the

Fall 2020 semester.  ¶ 510.  On August 14, 2020, Dean Rapaccioli advised Solomon in an email

---

[3] The Consolidated Omnibus Budget Reconciliation Act (COBRA) gives workers who lose health benefits due to a qualifying event under the statute the right to choose to continue their benefits under their health plan for 18 months following the qualifying event.  29 U.S.C.A. §§ 1161, 1162.

that her request for unpaid leave was granted but because the leave was not for purposes of faculty development, it would be without benefits. *Id.* Dean Rapaccioli also advised Solomon that medical coverage during the leave may be available to her through COBRA, at her own expense. *Id.*

Solomon alleges that the unpaid leave without benefits violates 26 C.F.R. § 54.4980B-4, an implementing regulation of COBRA. ¶ 381; ¶ 526-528. She alleges that Fordham changed her employment status without cause or the mandated due process required by the Fordham Statutes, causing her "loss of salary, loss of health benefits, loss of life and disability insurance, loss of retirement benefits, and loss of access to teaching as a graduate professor with seniority."

¶ 333. Solomon cites to Appendix 4 of the Fordham Statutes, which states

> Faculty members other than paragraph (b) above while on a University approved leave of absence without pay and within the restrictions of the applicable insurance contracts with their parties *may maintain coverage* on the University life insurance, long-term disability, and medical plans. Faculty members should consult the Office of Human Resources regarding continuance.

¶ 513 (emphasis added). Solomon contends that this provision means that it is the choice of the faculty member, not the university, "to maintain or discontinue their coverage to which they are entitled under the University Health Plan and other benefits." ¶ 514. She further asserts that, per the Fordham Statutes, benefits continue for all leaves of absence, and that COBRA is for terminated faculty, not for faculty on leave. ¶¶ 515–16. Solomon asserts that COBRA is not customary for faculty on leaves of absence and is not mentioned in the Fordham Statutes, and that she was not given a copy of any such policy in discovery. ¶ 521. She also alleges that she never had to use COBRA on any of her other leaves, nor is she aware of any other faculty having used COBRA during a leave during her 35 years at the school. *Id.* Solomon further asserts that transition to COBRA coverage requires the occurrence of a "qualifying event," and that unpaid

leave is not a qualifying event per 26 CFR 54.4980B-4.  ¶¶ 526–28.  The only qualifying events

that could potentially apply to Solomon, she asserts, are termination, or reduction of hours,

which, Solomon argues, would require due process pursuant to the Fordham Statutes.  Doc. 95-1

at 101–29.  Solomon alleges that the change of status and consequent loss of benefits was

retaliatory.  Doc. 95 ¶ 333.

## II.   Motion for Reconsideration

Solomon moves for reconsideration of the June 4, 2021 decision to dismiss her EPA,

Title VII, and ADEA claims pursuant to Federal Rule of Civil Procedure ("FRCP") 59(e) and

Local Rule 6.3 on the following grounds:  (1) that the Ninth Circuit decision in *Freyd v. Univ. of*

*Oregon*, 990 F.3d 1211 (9th Cir. 2021) constitutes a change in what Plaintiff believes to be

controlling law relevant to the comparator standard for university professor positions such that

her pay claims should be reinstated; and (2) that her Title VII and ADEA claims in the Third

Amended Complaint meet the plausibility standard and should not have been dismissed pursuant

to FRCP 12(b)(6).  Doc. 97 at 1.  In the alternative, Solomon requests the Court to direct entry of

final judgment as to her dismissed claims pursuant to Federal Rule of Civil Procedure 54(b).  *Id.*

at 2.

### a.  Legal Standard

A motion pursuant to FRCP 59(e) may be granted "only if the movant satisfies the heavy

burden of demonstrating 'an intervening change of controlling law, the availability of new

evidence, or the need to correct a clear error or prevent manifest injustice.'"  *Hollander v.*

*Members of Bd. of Regents of Univ. of New York*, 524 F. App'x 727, 729 (2d Cir. 2013)

(summary order) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255

(2d Cir. 1992)) (internal quotation marks omitted).  Rule 59(e) is "an extraordinary remedy to be

employed sparingly in the interests of finality and conservation of scarce judicial resources." *Yelle v. Mount St. Mary College*, No. 18 Civ. 10927 (PMH), 2021 WL 311213, at *2 (S.D.N.Y. January 29, 2021) (quoting *In re Health Mgmt. Sys., Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)).  FRCP 59 is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'"  *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012), *as amended* (July 13, 2012) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)).

In the Second Circuit, the standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked —matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (citations omitted).  Motions pursuant to Local Rule 6.3 and FRCP 59(e) are "evaluated under the same standard." *In re Evergreen Mutual Funds Fee Litigation*, 240 F.R.D. 115, 117 (S.D.N.Y. Feb. 5, 2007) (citing *Word v. Croce*, No. 01 Civ. 9614 (LTS), 2004 WL 4340038, at *2 (S.D.N.Y. Mar. 9, 2004); *Williams v. New York City Dep't of Corr.*, 219 F.R.D. 78, 83 (S.D.N.Y. 2003); *Griffin Indus., Inc. v. Petrojam, Ltd.*, 72 F. Supp. 2d 365, 368 (S.D.N.Y. 1999)).  Both rules must be "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the [C]ourt." *SOHC, Inc. v. Zentis Food Sols. N. Am., LLC*, No. 14 Civ. 2270 (JMF), 2014 WL 6603951, at *1 (S.D.N.Y. Nov. 20, 2014) (quoting *U.S. v. Treacy*, No. 8 Crim. 366 (RLC), 2009 WL 47496, at *1 (S.D.N.Y. Jan. 8, 2009)).

Federal Rule of Civil Procedure 54(b) "authorizes a district court to enter partial final judgment when three requirements have been satisfied:  (1) there are multiple claims or parties,

(2) at least one claim or the rights and liabilities of at least one party has been finally determined, and (3) the court makes an express determination that there is no just reason for delay of entry of final judgment as to fewer than all of the claims or parties involved in the action." *Linde v. Arab Bank, PLC*, 882 F.3d 314, 322–23 (2d Cir. 2018) (internal quotation marks and citations omitted).  Motions pursuant to Rule 54(b) should only be granted "when there exists some danger of hardship or injustice through delay which would be alleviated by immediate appeal . . . or where an expensive and duplicative trial could be avoided if . . . a dismissed claim were reversed in time to be tried with the other claims." *Timperio v. Bronx-Lebanon Hospital Center*, No. 18 Civ. 1804 (PGG), 2020 WL 9211177, at *2 (S.D.N.Y. Mar. 9, 2020) (quoting *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 16 (2d Cir. 1997)).

### b.  Analysis

Solomon has not shown an intervening change in controlling law, the availability of new evidence that cures the deficiencies previously noted by the Court, nor the need to correct a clear error in order to prevent manifest injustice.

### i.  Plaintiff has not shown a change in controlling law

Solomon mistakenly asserts that the Ninth Circuit's decision in *Freyd v. Univ. of Oregon*, 990 F. 3d 1211 (9th Cir. 2021) constitutes a change in controlling law relevant to the comparator standard for university professor positions such that Plaintiff's pay claims should be reinstated. Courts are bound by the decisions of higher courts in the same jurisdiction.  Further, "for purposes of Rule 59(e), Fed.R.Civ.P. and Local Rule 6.3, controlling authority is comprised of decisions from the Second Circuit Court of Appeals." *In re Evergreen*, 240 F.R.D. at 118 (citing *Info. Superhighway, Inc. v. Talk Am., Inc.*, No. 03 Civ. 1995 (RWS), 2003 WL 22705132, at *1 (S.D.N.Y Nov. 17, 2003)).  Accordingly, this Court is bound by decisions of the Second Circuit,

as well as those of the United States Supreme Court.  While potentially persuasive, a decision of the Ninth Circuit does not control this Court.  Regardless, *Freyd* is not persuasive at it is distinguishable from this case.  In particular, the plaintiff and the comparator professors in *Freyd* were all of equal rank and seniority.  *Freyd*, 990 F.3d at 1214.  In *Freyd* the Ninth Circuit specifically noted that the University itself regularly compares the plaintiff and the comparator professors in question for purposes of determining faculty salaries.  *Id.* at 1221.  Here, by contrast, Solomon has not shown that the asserted comparator professors are similar to her in all material respects.  *Solomon II*, 2020 WL 7711697, at *9.  Solomon asserts "comparators" that differ from her in rank and responsibilities, so she has not made sufficient allegations that the asserted comparators were similarly situated to her, nor has she shown that Fordham compares her to those professors for purposes of salary determinations.  *See* Doc. 95 ¶¶ 420–24; *see also* Doc. 94 at 7–8 (citing *Solomon I*, 2020 WL 1272617, at *13 (noting Pirson's responsibilities as Area Chair and Hollwitz's prior experience as Vice President of Academic Affairs); *Solomon II*, 2020 WL 7711697, at *10 (noting their different graduate teaching responsibilities)).

Plaintiff also points to the Second Circuit's decision in *Bockus v. Maple Pro, Inc.*, 850 F. App'x. 48 (2d Cir. 2021) (summary order) in arguing for reconsideration of her previously dismissed gender and age discrimination claims.  In that non-precedential case, the Second Circuit affirmed the district court's decision to grant a motion to dismiss in favor of the defendant employer.  The Second Circuit explained that in a Title VII case, while plaintiff "need only give plausible support to a minimal inference of discriminatory motivation," even under that "minimal burden" plaintiff "must allege sufficient allegations to nudge his claims across the line from conceivable to plausible."  *Id*. at 50 (internal quotation marks and citations omitted).  The Second Circuit held that the plaintiff failed to meet that burden, failing to allege that anyone at

defendant employer had ever said or done anything that suggested, prior to his termination, that his employer treated men less favorably as a group.  *Id.* at 51.  Solomon argues that she has multiple factual allegations about age and gender discrimination, which she contends "should suffice at this stage."  Doc. 97 at 11.  *Bockus* does not support Solomon's motion.  *See* Doc. 94 at 7–11.  Solomon provides a chart of male professors' pay, but does not include any explanation of these individuals' job titles, duties, functions or rank, so the Court has no basis to infer that they are similarly situated to her.  Doc. 94 at 9; Doc. 95 ¶ 402.  The difference in rank, position, and responsibilities between Solomon and asserted comparators Drs. Pirson and Hollwitz proscribes a finding that they are similarly situated to her.  Doc. 94 at 9.  The Court therefore concludes that Solomon has not met the burden articulated in *Bockus*, and has not introduced a relevant intervening change in controlling law.

### ii. New evidence does not cure the deficiencies previously noted by the Court

With respect to Solomon's assertion that her Title VII and ADEA claims in the TAC meet the plausibility standard required to survive a motion to dismiss, this Court has already determined that Solomon's TAC does not cure the deficiencies in her previous complaints.  *See* Doc. 94 at 7–9.  This Court previously observed that Professors "Pirson and Hollwitz's different ranks, positions, and associated responsibilities outside of teaching militated against a finding that they were similarly situated to Solomon," and this remains true.  Doc. 94 at 9 (citing *Solomon II*, 2020 WL 7711697 at *10).  Solomon contends that this Court's most recent Order "excluded other male comparators," referencing Exhibit 33 of the TAC in particular.  Doc. 97 at 5.  However, the Court did consider this information.  As the Court has previously noted, the chart of male professors in the Management Systems Area that Solomon cites in support of her EPA claims (Doc. 95 ¶ 402) does not include explanations of these professors' "job titles, duties,

functions or ranks." Doc. 94 at 9.  Nor do the documents provided in Exhibit 33.  TAC, Exhibit

33.  Consequently, the Court has no basis to infer that they are similarly situated to her.  Doc. 94

at 9.  Further, this Court has already determined that the TAC does not adequately cure the

deficiencies in Solomon's allegations regarding Hollwitz and Pirson for EPA purposes.  Pirson's

responsibilities as Area Chair, and Hollwitz's prior position as Vice President of Academic

Affairs, as well as their graduate teaching responsibilities which differ from Solomon's all

prevent the Court from concluding that Pirson and Hollwitz are similarly situated to her for EPA

purposes.  *Id*. at 9–10 (citing *Solomon I*, 2020 WL 1272617, at *12–13; *Solomon II*, 2020 WL

7711697, at *9–10).

### iii.   There is no showing of clear error

Solomon argues that the Court incorrectly resolved some factual disputes in favor of

Fordham.  Specifically, Solomon asserts that allegations contained in her letters to Fordham's

President were not taken as true, where instead, the Court accepted as true the allegations set

forth by Dr. Crystal and Dean Rapaccioli in separate letters.[4]  However, the Court acknowledged

the difference in position between Solomon and Fordham with respect to whether the denial of

benefits for Solomon's unpaid leave was or was not a deviation from Fordham's customary

policies.  Doc. 94 at 6.  The Court acknowledged that it did not yet have sufficient briefing on the

issue of whether the denial of benefits was retaliatory, so the Court granted Solomon leave to file

the TAC for the limited purpose of asserting that claim.  *Id.* at 7.  Thus, the Court did not

erroneously resolve factual disputes in favor of Fordham.  There is no need to correct clear error

---

[4] The Court construes the letters referenced by Solomon to be the emails from May and December of 2019 discussed in the TAC at ¶¶ 517–20, 529–31.

or prevent manifest injustice, and the motion for reconsideration pursuant to FRCP 59(e) is denied.

### c. **Rule 54(b)**

As a preliminary matter, Solomon's motion to enter partial final judgment is moot, as this Opinion now resolves all claims against her and she may now take an immediate appeal. In any event, the motion fails on the merits. The first two requirements under Rule 54(b) are satisfied: there are multiple claims and parties, and at least one claim has been finally determined. The third factor, whether there is no just reason for delay of entry of final judgment as to fewer than all of the claims or parties involved in the action, "'is left to the sound judicial discretion of the district court'" and "'is to be exercised in the interest of sound judicial administration.'" *Timperio*, 2020 WL 9211177, at *2 (quoting *SourceOne Dental, Inc. v. Patterson Companies, Inc.*, No. 15 Civ. 5440 (BMC), 2018 WL 3863440, at *4 (E.D.N.Y. Aug. 14, 2018)). Solomon argues that entry of partial final judgment pursuant to Rule 54(b), which would allow her to immediately appeal the claims dismissed in such a judgment, should be granted because to do so would account for the "judicial, administrative interests as well as the equities involved." Doc. 97 at 12. In support of this contention, Solomon states that this "case has been proceeding for more than three years, and Plaintiff is almost 72 years old, with all that portends." *Id*.

Solomon does not elaborate as to what judicial and administrative interests would benefit from partial entry of final judgment, nor does she explain what danger of hardship or injustice through delay would be alleviated by immediate appeal. The Second Circuit has repeatedly urged that when making the express determination that there is no just reason for delay, "district courts should not merely repeat the formulaic language of the rule, but rather should offer a brief, reasoned explanation." *Cullen v. Margiotta*, 618 F.2d 226, 228 (2d Cir. 1980) (citations

omitted).  This stems from the Second Circuit's "general policy disfavoring piecemeal appeals,"
and belief that except in rare cases, judicial economy is best served by delaying appeal until all
issues can be considered by the court of appeals together.  *Id*.  The Second Circuit has
recognized that declining to grant partial entry of final judgment pursuant to FRCP 54(b) is
particularly desirable where, as in this case, "the adjudicated and pending claims are closely
related and stem from essentially the same factual allegations."  *Id*.  Finding that the
requirements of FRCP 54(b) are not satisfied, the motion for partial entry of final judgment is
denied.

### III.    Motion to Dismiss

Fordham moves to dismiss the TAC pursuant to Federal Rule of Civil Procedure 12(b)(6)
on the grounds that Solomon fails to state a claim for retaliation under Title VII or the ADEA as
it relates to discontinuation of healthcare benefits, and that all other claims asserted in the TAC
exceed the scope of the Court's order granting leave to amend and have already been dismissed.
Doc. 101 at 2.

#### a.    Legal Standard

To survive a motion to dismiss pursuant to FRCP 12(b)(6), "a complaint must contain
sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,
570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows
the court to draw the reasonable inference that the defendant is liable for the misconduct
alleged."  *Id*. (citing *Twombly*, 550 U.S. at 556).  The plaintiff must allege sufficient facts to
show "more than a sheer possibility that a defendant has acted unlawfully."  *Id*.  (citing
*Twombly*, 550 U.S. at 556).  However, this "flexible 'plausibility standard'" is not a heightened

pleading standard, *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 n.3 (2d Cir. 2007) (quotation

marks and citation omitted), and "a complaint . . . does not need detailed factual allegations" to

survive a motion to dismiss, *Twombly*, 550 U.S. at 555.

The question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but

whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v.*

*Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*,

56 F.3d 375, 378 (2d Cir. 1995)).  The purpose of FRCP 12(b)(6) is "to test, in a streamlined

fashion, the formal sufficiency of a plaintiff's statement of a claim for relief without resolving a

contest regarding its substantive merits" or "weigh[ing] the evidence that might be offered to

support it." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (internal quotation marks and

citations omitted).  Accordingly, when ruling on a motion to dismiss pursuant to Rule 12(b)(6),

the Court accepts all factual allegations in the complaint as true and draws all reasonable

inferences in the plaintiff's favor.  *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014); *see also*

*Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy

judge that actual proof of those facts is improbable . . .").  "For purposes of this rule, the

complaint is deemed to include any written instrument attached to it as an exhibit or any

statements of documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282

F.3d 147, 152 (2d Cir. 2002) (internal quotation marks and citations omitted).  Notably, "the

tenet that a court must accept as true all of the allegations contained in a complaint is

inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  It is also worth

noting that *pro se* pleadings are generally held "to less stringent standards than formal pleadings

drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

### b. Analysis

#### i. Claims of Retaliation Through Discontinuation of Benefits During Unpaid Leaves of Absence

Title VII's antiretaliation provision prohibits "employer actions that 'discriminate against' an employee (or job applicant) because he has 'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006) (quoting 42 U.S.C.A. § 2000e-3). To state a claim for a prima facie case of retaliation under Title VII and the ADEA, "a plaintiff must allege that (1) he participated in a protected activity; (2) the employer knew of his protected activity; (3) he was subjected to an adverse employment action; and (4) there was a causal connection between the participation in the protected activity and the adverse employment action." *Ninying v. New York City Fire Dep't*, 807 F. App'x 112, 115 (2d Cir. 2020) (summary order) (citing *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010)).

In retaliation claims, a causal connection can be shown either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Littlejohn v. City of New York*, 795 F.3d 297, 319 (2d Cir. 2015) (internal quotation marks and citation omitted). The Supreme Court has held that Title VII retaliation claims "must be proved according to traditional principles of but-for causation," which "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

ADEA retaliation claims also require proof of but-for causation, and this requirement applies at the pleading stage. *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 304 (2d Cir. 2021) (citing *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020)). "Retaliation claims under the [NYSHRL] are generally governed by the same standards as federal claims under Title VII." *Deveaux v. Skechers USA, Inc.*, No. 19 Civ. 9734 (DLC), 2020 WL 1812741, at *6 (S.D.N.Y. Apr. 9, 2020) (quoting *Rivera v. Rochester Genesee Regional. Trans. Authority*, 743 F.3d 11, 25 n.8 (2d Cir. 2014)). However, under the NYCHRL, "the retaliation inquiry is 'broader than its federal [and state] counterpart[s].'" *Id.* at *7 (quoting *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 723 (2d Cir. 2010)). To prevail on a NYCHRL retaliation claim, a plaintiff "must show that she took an action opposing her employer's discrimination, . . . and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Id.* (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 112 (2d Cir. 2013)).

A material reduction in benefits could potentially qualify as an adverse employment action. *See Miksic v. TD Ameritrade Holding Corp.*, No. 12 Civ. 4446 (AJN), 2013 WL 1803956, at *3 (S.D.N.Y. Mar. 7, 2013). The Court previously held that Solomon's loss of benefits during her Spring 2020 leave of absence was not plausibly retaliatory based on: (1) Solomon's consent to the leave, (2) Dean Rapaccioli's May 24, 2019 email about Fordham's "customary" practices and (3) a reading of Appendix 4, § A-18 to Fordham's University Statutes. *See Solomon II*, 2020 WL 7711697, at *16–17. However, the Court now reconsiders Solomon's argument that the loss of benefits during her leaves of absence in Spring and Fall of 2020 were retaliatory in light of the new factual assertions in the TAC.

There is no question that Solomon engaged in protected activity when she filed her 2018 EEOC complaint, as well as the initial and subsequent complaints in this case.  ¶ 332.  It is also undisputed that Fordham was aware of that protected activity.  *See* Doc. 101 at 16.  Solomon alleges that Fordham retaliated against her by taking the position that she was not eligible to maintain her health benefits during her unpaid leaves of absence.  She alleges that denial of her benefits violate her guarantee of continuous appointment as a tenured faculty member as set forth in Fordham's University Statute § 4-03-01, and other due process rights for tenured faculty.  *See* Doc. 93 at 2; *see also* Doc. 95 at ¶¶ 338–39; 512–35.  She also asserts that Fordham's position that she is not eligible for benefits while on unpaid leave is contrary to university custom.  Doc. 95 ¶¶ 513, 521.  Solomon further asserts that her unpaid leaves are not qualifying events as required by COBRA.[5]  *Id.* ¶¶ 526–28.  The only qualifying events that could potentially apply to Solomon, she asserts, are termination, or reduction of hours, which, Solomon argues, would involve a change to her tenured faculty status and thus would require due process pursuant to the Fordham Statutes.[6]  *Id.* ¶ 528.

With respect to Solomon's assertions that the language of Appendix 4, § A-18(c) of the Fordham Statutes means that it is the decision of the faculty member, not the university, whether to continue to receive benefits while on unpaid leave, this court has already explained that it

---

[5] Qualifying events under 26 CFR 54.4980B-4 are:  (1) The death of a covered employee; (2) The termination (other than by reason of the employee's gross misconduct), or reduction of hours, of a covered employee's employment; (3) The divorce or legal separation of a covered employee from the employee's spouse; (4) A covered employee's becoming entitled to Medicare benefits under Title XVIII of the Social Security Act (42 USC 1395-1395); (5) A dependent child's ceasing to be a dependent child of a covered employee under the generally applicable requirements of the plan; or (6) A proceeding in bankruptcy under Title 11 of the United States Code with respect to an employer from whose employment a covered employee retired at any time.

[6] Section 4-05.04 of the Fordham Statutes defines tenure as "a guarantee of continuous appointment until a faculty member retires." And states that "appointment of a tenured faculty member shall be terminated only pursuant to § 4-07.13(c) or § 4-05.06(b)." Reference to "§ 4-05.06(b)" seems to be a typographical error as § 4-05.08(b) governs termination.  Confusingly, Exhibit 18 ends without inclusion of § 4-07.13(c).  Doc. 95-1, Exhibit 18.

reads the provision to be consistent with Fordham's position that it would not pay Solomon's healthcare premium because it did not deem the leave to be "for faculty development purposes." Doc. 94 at 4 (citing *Solomon II*, 2020 WL 7711697, at \*16).

With respect to the assertion that any change to her status as tenured faculty would require due process pursuant to the Fordham Statutes, Solomon's status as tenured faculty has not changed. While her status was erroneously reported to COBRA as terminated, it was later corrected to indicate a reduction in hours, which constitutes a qualifying event under COBRA. Doc. 95 ¶ 335. Under COBRA, a reduction of hours "occurs whenever there is a decrease in the hours that a covered employee is required to work or actually works, but only if the decrease is not accompanied by an immediate termination of employment." 26 C.F.R. § 54.4980B-4(e). The statute clarifies that "an absence from work due to disability, a temporary layoff, *or any other reason* (other than due to leave that is FMLA leave; see § 54.4980B–10) is a reduction of hours of a covered employee's employment if there is not an immediate termination of employment." *Id.* (emphasis added). Per the statutory definition, Solomon's unpaid leaves of absence constitute qualifying events in the form of reduction of hours under COBRA.

Further, Solomon makes the conclusory and unsupported assertion that she could not be eligible for COBRA through a reduction in hours without going through the procedures required for termination of tenure under the Fordham Statutes, but does not provide the language of § 4-07.13(c), which she mistakenly asserts governs termination, nor the language of § 4-05.08(b), which governs termination. Doc. 95-1 at 125–27. Thus, Solomon has not adequately plead facts to support the claim that her COBRA eligibility was a violation of her tenure rights.

Solomon further alleges that the discontinuation of benefits during her unpaid leaves of absence were a deviation from university custom, an assertion she supports only by stating that

18

she "was never sent to COBRA on any of her other leaves, nor is she aware of any other faculty so treated in her 35 years at the School." Doc. 95 ¶ 521.  However, nowhere in her pleadings does Solomon point to any previous unpaid leave for which she maintained benefits.  The only exception is her Fall 2019 leave of absence, which Dean Rapaccioli explained had been contrary to university custom.  Doc. 95-2 at 69.  Dean Rapaccioli explained in her May 24, 2019 email to Solomon that it is customary for faculty on unpaid leave that is not for faculty development purposes to continue their healthcare benefits through COBRA, and that Solomon was allowed to maintain her benefits directly through the university for the Fall of 2019 as an exception to university custom.[7]  *Id*.  Solomon has also failed to identify any other similarly situated employees who requested unpaid leaves of absence that were not for purposes of faculty development who were nonetheless permitted to maintain their healthcare benefits through the university.

As noted above, but-for causation "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Texas Sw. Med. Ctr.*, 570 U.S. at 360.  Given that Solomon requested her unpaid leaves of absence for Spring and Fall 2020 with the understanding that she would need to maintain her benefits through COBRA, and that these leaves of absence constitute qualifying events under COBRA, Solomon has failed to establish that Fordham's termination of her benefits was made in response to Solomon's activity in this case or any other protected activity leading up to it.[8]  It is

---

[7] In ruling on a motion to dismiss, the court may consider documents attached to the complaint as exhibits. *Tannerite Sports, LLC v. NBCUniversal News Grp., a division of NBCUniversal Media, LLC*, 864 F.3d 236, 247 (2d Cir. 2017) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d. Cir. 2002)).  Dean Rapaccioli's May 24, 2019 email was attached as an exhibit to the TAC.  Doc. 95-2, at 69.

[8] To the extent that Solomon alleges that she requested unpaid leave for Fall 2020 due to a retaliatory proposed teaching schedule, this fails to state a claim for the same reason her FLSA retaliation claim was dismissed in the *Solomon I*, and her previous Title VII and ADEA retaliation claim was dismissed *Solomon II*:  This schedule was no

clear that Solomon was not eligible to receive benefits during her unpaid leaves of absence. Solomon has failed to adequately plead facts that give rise to a plausible inference of a causal connection between her participation in the protected activities and an adverse employment action by Fordham.  Therefore, Solomon has not plausibly stated a claim for retaliation under Title VII or the ADEA.

Additionally, the Second Circuit has made clear that when federal claims are dismissed before trial, state law claims should be dismissed as well.  *Brzak v. United Nations*, 597 F.3d 107, 113–14 (2d Cir. 2010) (citing *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008)).  Thus, the Court declines to exercise supplemental jurisdiction over Solomon's state law claims.

### ii.  Remaining Claims

The Court's order granting leave to amend was explicitly limited to asserting allegations that Fordham's position was retaliatory.  Doc. 94 at 12.  "District courts in this Circuit have routinely dismissed claims in amended complaints where the court granted leave to amend for a limited purpose and the plaintiff filed an amended complaint exceeding the scope of the permission granted."  *Masri v. Cruz*, No. 17 Civ. 8356 (AT) (KHP), 2019 WL 2388222, at *3 (S.D.N.Y. June 6, 2019) (quoting *Palm Beach Strategic Income, LP v. Salzman*, 457 F. App'x 40, 43 (2d Cir. 2012) (holding that the plaintiff is not entitled to replead claims that have already been dismissed and exceed the scope of the Court's leave to amend and dismissing those claims)).

---

more onerous than the past proposed course loads previously assigned to her.  *See Solomon*, 2020 WL 1272617, at *16; *see also Solomon II*, 2020 WL 7711697, at *16 n.21.

The Court has already dismissed all other claims repleaded in Solomon's TAC. Doc. 94 at 7–12. With respect to Solomon's assertion that "comparator professors" were given less burdensome course schedules than her, the Court dismissed these claims in *Solomon II* because Solomon "had not shown that any such professors were similarly situated to her in all material respects." Doc. 94 at 7. The Court also found that Solomon has not made sufficiently particularized allegations about the job content of Pirson and Hollwitz's positions nor pleaded facts that would materially impact the Court's prior reasoning. *Id*. The Court determined that the TAC has not cured these deficiencies. *Id*. at 8. The Court concluded that the TAC does not plausibly state a claim for pay discrimination, constructive discharge, hostile work environment, or discriminatory treatment. *Id*. at 9–11. Thus, these claims remain dismissed.

## IV.   Conclusion

For the reasons set forth above, Solomon's motion for reconsideration is DENIED and Fordham's motion to dismiss the third amended complaint is GRANTED in its entirety.

The Clerk of Court is respectfully directed to terminate the motions, Docs. 96 and 99, and close the case.


It is SO ORDERED.


Dated: March 29, 2022
        New York, New York

_____
        Edgardo Ramos, U.S.D.J.