Esther Solomon
140 West 62nd Street
New York, New York 10023
212 636-6187

June 6, 2024
Hon. Edgardo Ramos, U.S.D.J.
Thurgood Marshall United States Courthouse
40 Foley Square, Courtroom 619
New York, NY 10007

Re: *Solomon v. Fordham University* (Case 18-cv-04615)

Dear Judge Ramos:

This is to respectfully request the Court's leave to file a Surreply to address Defendant's May 7, 2024 Reply Memo and Declaration (Dkts. 152, 151). They are replete with untrue representations of their supposed compliance, while the opposite is true. Defendant does not consent to this application.

Most of my document requests remain without responsive production. Fordham has not satisfied a single interrogatory. As I indicated to the Court in my April 26 letter (Dkt.150), I am hampered by the lack of discovery, including ongoing violations of the Stipulated Protective Order, redactions of comparator names precluding depositions, and stonewalling. This also impedes uncovering evidence on the pattern against other professors of protected classes, discriminated with similar methods by the same group.

**Fordham's 2024 Production**

About four months into the six-month discovery ordered in January by the Court, Fordham's 2024 production has not changed anything. While asserting to have produced 1,900 pages on April 24, Defendants gave only *two pages* on my status changes #F-17200-17201, among 20 pages produced on my records. (Exhibit 1) I also tried obtaining my status change documents from Fordham's in-house counsel and trial attorneys but was left with a non-responsive round-robin of emails and no documents. In contrast, Declaration ¶8a (Dkt. 151) states that Fordham produced "All documents added to Plaintiff's Personnel File since Fordham's first production," referring to five years 2019-2024.

Defendant omits that 95% of their production is minimally responsive to discovery requests: of the 1,900 pages produced, 1,769 are redacted disorganized records for three professors, per Declaration ¶8c "Personnel Files for comparator professors 13-15," and 34 pages for three different redacted professors without numbers. A "key" was provided with 15 numbers, corresponding to 15 of 18 redacted Professors. (Exhibit 2). Similarly, having produced no data whatsoever for the pay claims requests (Exhibit 3), they write instead in ¶8d they supplied "Documents related to salary and benefits analysis undertaken by Fordham."

In another example, despite the specific request (Exhibit 4), they have not provided a single document supporting Fordham's defense against my secret retaliatory termination: that it is Fordham's "customary" practice to send tenured faculty on unpaid leave to COBRA by removing them from the IRS-mandated employer health plan. Fordham should be compelled to

provide the documents on faculty-transferred to COBRA or acknowledge they don't exist. Surprisingly, Fordham announces in Declaration ¶13 that they are nearing the end of their production, despite their failure to comply with their obligations.

## Compel Compliance with Subpoenas and Redaction Removal

Fordham should be compelled to provide complete personnel files honoring the 2019 Federal subpoenas, with consequences for non-compliance. They should be without any of the multiple levels of unauthorized redactions, none of which is supported by the law and which has been clarified by the mandate. (Exhibit 5, Examples of redactions). Fordham asserted to the Cravath firm in 2019 and admitted to the Court at the January 29, 2020 Hearing (Exhibit 6) that subpoenas enable the production of unredacted Personnel files. Defendant should finally produce those files, unredacted.

Fordham's extraordinary actions of secretly terminating a tenured professor without cause or due process, officially reporting it, and filing contradictory representations to different Federal authorities, including IRS follow-up, deserve discovery. They did not supplement for 2019-2024 and corrected none of the 2019 production deficiencies per my motion (Dkt 134), either about my file or the comparators' scattered redacted pages they produced.

## Second Circuit Mandate, the Law of the Case

The defendant disagrees with the mandate in this case and claims it is irrelevant to the discovery issues. They make no corrections to address the Second Circuit's explicit decision on issues including time scope, the impropriety of comparator name redactions, and the need for data for pay claims by both EPA and Title VII, instead, asked the Court to deviate from its directives. However, under the mandate rule, "[w]here a case has been decided by an appellate court and remanded, the court to which it is remanded must proceed in accordance with the mandate and such law of the case as was established by the appellate court." *Kerman v. City of New York*, 374 F.3d 93, 109 (2d Cir. 2004). The "mandate rule prevents re-litigation in the district court not only of matters expressly decided by the appellate court but also precludes re-litigation of issues impliedly resolved by the appellate court's mandate." *Brown v. City of Syracuse*, 673 F.3d 141, 147 (2d Cir. 2012).

## Improper Redactions Lack Support

Comparator Name redactions: There is no case providing legal support for redactions of comparator professor's names. These redactions of comparator names invalidate most of Defendant's production. To overcome the lack of legal support, Defendant misrepresents *Black v NYU* which did not involve comparator name redactions, contrary to their assertion (see specifics in Dkt. 147, pp. 16-17).

An essential requirement in Title VII cases is identifying comparators, which is impossible with concealed names. In this case, which involves a pattern, anonymity precludes connecting qualitative with quantitative data and other indicia of discriminatory intent.[1]

Peer Reviewer Name Redactions: Peer reviewer name redactions are also not supported by law in this Title VII case. To misportray them as legitimate, Defendant improperly relies on two cases that stand for disclosure of university peer review records: The Supreme Court case

---

[1] "A disparate treatment claim often includes a combination of strong statistical evidence of disparate impact coupled with anecdotal evidence of the employer's intent to treat the protected class unequally." Kassman v. KPMG LLP, 416 F. Supp. 3d 252, 284 (S.D.N.Y. 2018)

*University of Pennsylvania v. EEOC*, 493 U.S. 182 (1990) and *Weinstock v. Columbia Univ.*, 1995 U.S. Dist. LEXIS 14003 (S.D.N.Y. 1995). However, neither case addressed redactions. While the word "redactions" does not appear in *Weinstock*, Defendant cites it as supporting redaction of peer reviewer names (Dkt 152 p 8). In *Pennsylvania*, the Supreme Court specifically clarified that it did not consider redactions on peer review records in enforcing the subpoena. (footnote 9, p.589).

## Fordham's Unmet Burden Seeking Redactions

Defendant fails to meet the burden for the redactions they seek to legitimize, so they reverse the standard. As the party seeking discovery, I meet my burden of relevance for comparator names (see also Second Circuit Mandate). Fordham has the burden of proof for withholding discovery by redactions, but they do not meet it: "The party seeking discovery bears the initial burden of proving the discovery is relevant, and then the party withholding discovery … bears the burden of proving the discovery is, in fact, privileged or work product, unduly burdensome and/or expensive. *Citizens Union of City of New York v. Attorney Gen. of New York*, 269 F. Supp. 3d 124, 139 (S.D.N.Y. 2017). While referencing the case above, Defendant misrepresents its content by saying the unmet burden is mine rather than theirs.

## The Standard for Modification of a Protective Order Not Met

Five years ago, Fordham first negotiated, agreed to the terms and committed to complying with the terms of the Stipulated Protective Order. However, as the Cravath firm pointed out, they immediately violated its terms, including regarding the unauthorized redactions.[2] In the April 16, 2024 cross-motion, they omitted the existence of the valid Stipulated Protective Order.

Defendant now asks the Court to endorse their violations in a new modified Protective Order, despite the lack of legal support for comparator name redactions they seek. However, "In this Circuit, there is a strict standard for modification of a protective order entered by a district court. See *In re Teligent, Inc.*, 640 F.3d 53, 59 (2d Cir. 2011). Under this strict standard, "it is 'presumptively unfair for courts to modify protective orders which assure confidentiality and upon which the parties have reasonably relied.'"… "Once a court enters a protective order and the parties rely on that order, it cannot be modified 'absent a showing of improvidence in the grant' of the order or 'some extraordinary circumstance or compelling need.'" *In re Hornbeam Corp.*, 2020 U.S. Dist. LEXIS 145996 (S.D.N.Y. 2020) (citations omitted). Defendant fails to meet the burden of "extraordinary circumstance or compelling need" to modify the Stipulated Protective Order and their request should be denied.

For the preceding reasons, I respectfully request that leave to file a Surreply be granted.

Sincerely,


/s/ Esther Solomon
Esther Solomon
Plaintiff Pro Se

---

[2] The April 10, 2019 email from Cravath to Fordham: "Please confirm immediately whether Fordham will agree to produce these materials without reductions, as required by the Federal Rules."

## **Exhibits**

1. Two documents produced on Plaintiff's status: Actions Form #F-17200-17201 as of April 17, 2019 and February 1, 2020

2. Redacted comparator professor's number key: List of numbers for 15 of the18 redacted comparator professors.

3. Pay claim requests (#3, #4) from Plaintiff's Second Document Requests with Defendant responses, Dkt. 146, pp. 37-39

4. "Cobra as Customary" requests (#7) from Plaintiff's Second Document Requests with Defendant responses, Dkt. 146, p. 41.

5. Redaction Examples

6. Excerpts from the January 1, 2020 Pre-Motion Conference



**EXHIBIT 1**

## FORDHAM UNIVERSITY - UNIVERSITY ACTION FORM

**PURPOSE**

| | | | | | |
|---|---|---|---|---|---|
| ☐ New Employee | ☐ Transfer | ☐ Promotion | ☐ Reappointment | ☐ Salary Adjustment | ☐ Title Change |
| ☐ Leave of Absence | ☐ Exit | ☐ Manual Check | ☐ Other: | | |

**PERSONAL INFORMATION**

| Fordham ID No. | Last Name | First Name | MI | Personal Email |
|---|---|---|---|---|
| | Solomon | Esther | | |

**JOB INFORMATION – NEW HIRES**

| Employee Classification | Employee Status | Job Type | Start Date | Service Date | Probation End Date |
|---|---|---|---|---|---|
| ☐ Faculty | ☐ Full Time | ☐ 12 Month | | | |
| ☐ Administrator | ☐ Part Time | ☐ 10 Month | | | |
| ☐ Clerical | **Benefit Status** | | Position Title/Level | Position No. | |
| ☐ Maintenance | ☐ Benefits Eligible  ☐ Pension Only | | | | |
| ☐ Casual/Hourly | ☐ Non-Benefitted | | | | |

| HRS | Dept/Location | | Annual Salary | Biweekly/Hourly Rate | FOAPL/Budget |
|---|---|---|---|---|---|
| | | | $ . | $ | |

| Replaced | Anticipated End Date | Supervisor | Timesheet Approver (if different) |
|---|---|---|---|
| | | | |

| ☐ **TRANSFER** | ☐ **PROMOTION** | ☐ **REAPPOINTMENT** |
|---|---|---|
| **FOAPL Budget** | | **Reappt/Grant End Date** |

| Current Title/Level | Position No. | Annual Salary | HRS | Biweekly/Hourly Rate | Department | End Date |
|---|---|---|---|---|---|---|
| | | $ | | $ | | |

| New Title/Level | Position No. | Annual Salary | HRS | Biweekly/Hourly Rate | Department | Start Date |
|---|---|---|---|---|---|---|
| | | $ | | $ | | |

**LEAVES**

☑ **Start**   Date: 01/01/19   ☐ **End**   Date:

| ☐ Short Term Disability | ☐ FMLA | ☐ LTD | ☐ Worker's Comp | ☑ Personal Leave |
|---|---|---|---|---|

Salary: ☐ Continue  ☑ End   ☐ STD Statutory
Benefits: ☐ All  ☐ Medical Only   ☐ Pension Only   ☐ None   as of 4/17/19

Faculty Leave Type: ☐ Research   ☐ Fellowship   Length: ☐ Academic Year   ☐ Calendar Year   ☑ Semester

Year: 2019   Semester: Spring
Salary: ☐ Continue   PCT/AMT: _____   ☑ End
Benefits: ☐ All   ☐ Medical Only   ☐ Pension Only   ☐ None

**EXIT**

| Effective Date | Exit Reason | Vacation Days | ☐ Eligible for Rehire |
|---|---|---|---|
| | | | ☐ Not Eligible for Rehire |

**ADDITIONAL INFORMATION/COMMENTS**

see emails

**HRIS USE ONLY**

| Processed for Payroll | Retroactive Days Paid | Retroactive Payment | Vacation Payout | Longevity Added | Salary Deferral |
|---|---|---|---|---|---|
| | $ | $ | $ | | $ |

| Automatic Benefits/Deduction Setup | ☐ LTD | ☐ Basic Life/AD&D | ☐ Health & Welfare | ☐ Union Fees | ☐ Union Dues |
|---|---|---|---|---|---|
| **Effective Date(s)** | | | | | |
| Amount(s) | $ . | $ | $ | $ | $ |

**APPROVAL SIGNATURES**

| Area VP/Department Manager: | K. Velazquez | Date: 7/31/19 |
|---|---|---|
| Human Resources: | | Date: |
| HRIS: | | Date: |

FORDHAM0017200

**FORDHAM UNIVERSITY - UNIVERSITY ACTION FORM**   *W/out benefits as of 9/1/2021*

## PURPOSE

| ☐ New Employee | ☐ Transfer | ☐ Promotion | ☐ Reappointment | ☐ Salary Adjustment | ☐ Title Change |
| ☑ Leave of Absence | ☐ Exit | ☐ Manual Check | ☐ Other: | | |

## PERSONAL INFORMATION

| Fordham ID No. | Last Name | First Name | MI | Personal Email |
|---|---|---|---|---|
| | Solomon | Esther | | |

## JOB INFORMATION – NEW HIRES

| Employee Classification | Employee Status | Job Type | Start Date | Service Date | Probation End Date |
|---|---|---|---|---|---|
| ☐ Faculty | ☐ Full Time | ☐ 12 Month | | | |
| ☐ Administrator | ☐ Part Time | ☐ 10 Month | | | |
| ☐ Clerical | **Benefit Status** | | **Position Title/Level** | **Position No.** | |
| ☐ Maintenance | ☐ Benefits Eligible   ☐ Pension Only | | | | |
| ☐ Casual/Hourly | ☐ Non-Benefitted | | | | |

| HRS | Dept/Location | Annual Salary | Biweekly/Hourly Rate | FOAPL/Budget |
|---|---|---|---|---|
| | | $ | $ | |

| Replaced | Anticipated End Date | Supervisor | Timesheet Approver (if different) |
|---|---|---|---|
| | | | |

| ☐ **TRANSFER** | | ☐ **PROMOTION** | | ☐ **REAPPOINTMENT** | |
|---|---|---|---|---|---|
| **FOAPL Budget** | | | | **Reappt/Grant End Date** | |

| Current Title/Level | Position No. | Annual Salary | HRS | Biweekly/Hourly Rate | Department | End Date |
|---|---|---|---|---|---|---|
| | | $ | | $ | | |

| New Title/Level | Position No. | Annual Salary | HRS | Biweekly/Hourly Rate | Department | Start Date |
|---|---|---|---|---|---|---|
| | | $ | | $ | | |

## LEAVES

☑ **Start**   Date: 02/01/2020          ☐ **End**   Date:

| ☐ Short Term Disability | ☐ FMLA | ☐ LTD | ☐ Worker's Comp | ☑ Personal Leave |
|---|---|---|---|---|

|  | Salary: ☐ Continue   ☑ End | ☐ STD Statutory | |
|---|---|---|---|
| | Benefits: ☐ All   ☐ Medical Only | ☐ Pension Only | ☑ None |

| Faculty Leave Type: ☐ Research | ☐ Fellowship   Length: | ☐ Academic Year | ☐ Calendar Year   ☐ Semester |
|---|---|---|---|

Year: _____          Semester: _____
Salary: ☐ Continue   PCT/AMT: _____   ☐ End
Benefits: ☐ All   ☐ Medical Only   ☐ Pension Only   ☐ None

## EXIT

| Effective Date | Exit Reason | Vacation Days | ☐ Eligible for Rehire |
|---|---|---|---|
| | | | ☐ Not Eligible for Rehire |

## ADDITIONAL INFORMATION/COMMENTS

## HRIS USE ONLY

| Processed for Payroll | Retroactive Days Paid | Retroactive Payment | Vacation Payout | Longevity Added | Salary Deferral |
|---|---|---|---|---|---|
| | | $ | $ | $ | $ |

| Automatic Benefits/Deduction Setup | ☐ LTD | ☐ Basic Life/AD&D | ☐ Health & Welfare | ☐ Union Fees | ☐ Union Dues |
|---|---|---|---|---|---|
| Effective Date(s) | | | | | |
| Amount(s) | $ | $ | $ | $ | $ |

## APPROVAL SIGNATURES

| Area VP/Department Manager: | *R. Velazquy* | Date: | 01/31/2020 |
|---|---|---|---|
| Human Resources: | | Date: | |
| HRIS: | | Date: | 9 3 20 |

**EXHIBIT 2**

CONFIDENTIAL
Solomon v. Fordham University
18-cv-04615-ER

Professor 1
- Male
- Date of Birth: XX/XX/1970
- Title: Associate Professor

Professor 2
- Male
- Date of Birth: XX/XX/1950
- Title: Professor

Professor 3
- Male
- Date of Birth: XX/XX/1952
- Title: Professor

Professor 4
- Male
- Date of Birth: XX/XX/1973
- Title: Associate Professor

Professor 5
- Male
- Date of Birth: XX/XX/1956
- Title: Professor

Professor 6
- Male
- Date of Birth: XX/XX/1943
- Title: Professor

Professor 7
- Male
- Date of Birth: XX/XX/1949
- Title: Professor

Professor 8
- Male
- Date of Birth: XX/XX/1935
- Title: Professor-Phased Retirement

Professor 9
- Male

1

CONFIDENTIAL
Solomon v. Fordham University
18-cv-04615-ER

- Date of Birth: XX/XX/1980
- Title: Assistant Professor

Professor 10
- Female
- Date of Birth: XX/XX/1973
- Title: Professor

Professor 11
- Female
- Date of Birth: XX/XX/1981
- Title: Associate Professor

Professor 12
- Female
- Date of Birth: XX/XX/1961
- Title: Professor

Professor 13

- Male
- Date of Birth: XX/XX/1942
- Title: Professor- Retired

Professor 14

- Male
- Date of Birth: XX/XX/1948
- Title: Professor

Professor 15

- Male
- Date of Birth: XX/XX/1949
- Title: Professor

**EXHIBIT 3**

objects to this request as it seeks information outside the scope permitted by Rule 34 of the Federal

Rules of Civil Procedure.

3. **Salary and Equity**
   **All documents and data: a) provided to the Salary and Benefits Task Force on
   Indicators of Gender Salary Equity Among Faculty in connection with the 2008
   Report of the Salary and Benefits Task Force on Indicators of Gender Salary Equity
   Among Faculty**
   **b) provide equivalent data for faculty from 2008 to present, along with disaggregation
   by age, gender, religion**
   **c) from any investigations, policies, recommendations, or change in practices
   resulting from those Task Force findings, including the "Compression" scheme to
   raise certain salaries.**

**RESPONSE TO REQUEST NO. 3(a)**

Defendant objects to this request insofar as Plaintiff's request assumes that the requested

documents are official documents created by Defendant University. Defendant further refers

Plaintiff to the report from the Faculty Task Force previously produced in this action (Bates

number FORDHAM0000177-FORDHAM0000185). Subject to and without waiver of the

Objections and the specific objection herein, Defendant will produce reasonably available,

relevant, non-privileged, responsive documents to the extent that any exist, that are in the

possession, custody or control of Defendant which can be obtained by a reasonable search to the

extent not already provided. Defendant reserves the right to supplement or otherwise modify

Defendant's response as necessary up to and through the time of trial.

**RESPONSE TO REQUEST NO. 3(b)**

Defendant objects to this request to the extent it is overbroad, unduly burdensome and

oppressive as Plaintiff requests data for "all" Fordham "faculty from 2008 to present." Defendant

further objects to this request to the extent Plaintiff asks Defendant to create or generate documents

that are not already in Defendant's custody or control.

4

**RESPONSE TO REQUEST NO. 3(c)**

Defendant objects to this request as the term "Task Force findings" is not properly defined.

Subject to and without waiver of the Objections and the specific objection herein, Defendant will

produce reasonably available, relevant, non-privileged, responsive documents to the extent that

any exist, that are in the possession, custody or control of Defendant which can be obtained by a

reasonable search to the extent not already provided. Defendant reserves the right to supplement

or otherwise modify Defendant's response as necessary up to and through the time of trial.

4.  **Financial**
    **All Documents Related to Faculty Salaries: Provide all documents, including
    electronic records, that reflect salary information for faculty members from 2000,
    broken down by gender, religion, age, department, tenure status, and rank. This
    includes base salaries, bonuses, overtime pay, and other forms of compensation,
    including those for special programs, administrative assignments, etc.**
    **Statistical Analyses of Wage Disparities: Provide any statistical analyses conducted
    by or for Fordham that relate to wage disparities among faculty members, including
    but not limited to analyses by gender, religion, and age.**
    **Methodologies for Setting Salaries and Increases: Provide all documents describing
    the methodologies, criteria, or policies used for determining initial faculty salaries,
    salary increases, merit pay, bonuses, and other forms of compensation.**
    **Communications Regarding Wage-Setting Policies: Provide any communications,
    including emails and memos, regarding the policies or criteria for setting salaries,
    bonuses, or raises for faculty members. This includes discussions on adjustments,
    salary reviews, or changes to salary structures.**
    **Job Classifications and Evaluations: Provide documents that outline job
    classifications, responsibilities, performance evaluation criteria, and the process for
    evaluating faculty members.**
    **Documentation of Efforts to Correct Wage Disparities: Provide all documents
    showing efforts by Fordham to correct or address wage disparities among faculty
    members. This includes studies, reports, action plans, and outcomes of such efforts.**

**RESPONSE TO REQUEST NO. 4**

Defendant objects to this request to the extent it is overbroad, unduly burdensome and

oppressive as it seeks "all documents . . . that reflect salary information for faculty members."

Defendant further objects to this request as it is not properly limited in time/or scope as it seeks

documents "from 2000." Defendant further objects to this request to the extent Plaintiff asks

5

Defendant to create or generate documents that are not already in Defendant's custody or control.

Defendant further refers Plaintiff to the policies previously produced in this action for information

regarding how faculty salaries are set. (Bates number FORDHAM0000001-FORDHAM0000133).

Defendant further refers Plaintiff to the W2 files previously produced in this action which include

salary information for Plaintiff and those professors who Plaintiff alleged were comparator

professors as defined in Plaintiff's First Set of Requests to Defendant for the Production of

Documents (Bates number FORDHAM0000202-FORDHAM0000324, FORDHAM0013624-

FORDHAM0013656). To the extent that Plaintiff expanded the scope of alleged "Comparator

Professors" in Plaintiff's Second Request for Documents, Defendant objects. Subject to those

objections, Defendant will produce reasonably available, relevant, non-privileged, responsive

documents to the extent that any exist, that are in the possession, custody or control of Defendant

which can be obtained by a reasonable search to the extent not already provided.   Defendant

reserves the right to supplement or otherwise modify Defendant's response as necessary up to and

through the time of trial.

5.    **Protected Class Professor Pattern and Practice**
      **Provide communications, documents, and personnel records for professors in
      protected classes who allegedly suffered discriminatory practices using methods
      similar to those used against Plaintiff. These include Profs. Wright, Zelany, Hessel,
      Gorgantzis, Marks, Yoon, Orsini, Dubrow, Welch, Weiss, and Gautschi.
      This should include their hiring documents, performance evaluations, disciplinary
      records, complaints of discrimination by the professors, communications related to
      employment status changes, and any retirement or termination paperwork.**

**RESPONSE TO REQUEST NO. 5**

      Defendant further objects to this request to the extent it seeks documents and information

neither relevant nor reasonably calculated to lead to the discovery of admissible evidence insofar

as it requests "hiring documents, performance evaluations, disciplinary records, complaints of

6

**EXHIBIT 4**

extent not already provided.  Defendant reserves the right to supplement or otherwise modify

Defendant's response as necessary up to and through the time of trial.

7.      **COBRA as Customary**
        **In her June 19, 2019 email to Dr. Solomon, with copies to Dean Boron, Provost**
        **Crystal, Dean Crooker, Ms. Elaine Crosson, Esq., James Ryan, Esq, and the Fordham**
        **President, Dean Rapaccioli, stated:**
                **"It is customary that faculty on unpaid leave continue on the University health**
                **insurance plan through participation in COBRA…" (Dkt. 95-2, Exhibit 31, pp.**
                **69-70)**
        **Produce records of all Business school tenured faculty on unpaid or other leave**
        **removed from Fordham Health Care and sent to COBRA for health care coverage**
        **since 2000. Produce corresponding correspondence with Discovery Benefits, the IRS,**
        **and other entities regarding the "customary" use of COBRA for tenured professors**
        **on leave. Produce Fordham policies and procedures on the use of COBRA for tenured**
        **Fordham Business School professors on leave.**

**RESPONSE TO REQUEST NO. 7**

        Defendant objects to this request as it is not properly limited in time/or scope and it seeks

privileged and confidential employment and health care records of "all" business school tenured

faculty members in the form of  correspondence reflecting "unpaid or other leave removed from

Fordham Health Care and sent to COBRA . . . since 2000." Subject to those objections, Defendant

will produce reasonably available, relevant, non-privileged, responsive documents to the extent

that any exist, that are in the possession, custody or control of Defendant which can be obtained

by a reasonable search to the extent not already provided.  Defendant reserves the right to

supplement or otherwise modify Defendant's response as necessary up to and through the time of

trial.

8.      **Investigations**
        **Provide documents and communications within Fordham concerning any**
        **investigation(s) of the Complaint of Prof. Solomon and the factual allegations or**
        **claims at issue in this lawsuit. All documents and communications between and**
        **amongst members of the Administration, including but not limited to President**
        **Father McShane, Provost Freedman, Dean Rapaccioli, VP Crystal, Dr. Hollwitz,**
        **Gabelli Business School faculty members, Fordham undergraduate administrators**
        **and faculty, and others so identified in:**

8

**EXHIBIT 5**

The tenured members of the Department/School meeting on _____ (date) to consider the promotion of _____ (candidate's name) consisted of the faculty members whose names are printed below. Each of the members has read or has had read to him/her the Chairperson's report of the meeting as indicated by the following signatures.

| Printed Last Name | Signature | Printed Last Name | Signature |
|---|---|---|---|
| | | | |

AVPAA August 2001

FORDHAM0015933



CONFIDENTIAL

FORDHAM0016344





**CONFIDENTIAL**

**FORDHAM0016373**

faculty members from ~e Unit/School have interviewed the applicant and have been asked to send their ~mmendations to the Dean:

## Q1 - Please sign here:

Q1_Id - Id



| Download | Name | Size | Type |
|---|---|---|---|
| | | 8.09KB | image/png |
| | | 5KB | image/png |
| | | 5.67KB | image/png |
| | | 7.11KB | image/png |
| | | 2.7KB | image/png |
| | | 8.4KB | image/png |

**End of Report**

**CONFIDENTIAL**



NAME: ▮

Professor 1

— INFO SYSTEMS

Application for Promotion - 2018

| PRINT NAME | SIGNATURE | DATE | TIME TAKEN | TIME RETURNED |
|---|---|---|---|---|
| | | | | |

CONFIDENTIAL



CONFIDENTIAL

### INTEROFFICE MEMORANDUM

**TO:** DAVID STUHR

**FROM:** MAUREEN TIERNEY

**SUBJECT:** TUTORIAL PAYMENTS

**DATE:** 9/28/04

---

As per your request we have saved the tutorial requests of the past several months until we could submit them in bulk. Please make the following tutorial payments charged to budget 246100-1110. Supporting documentation is attached.



| | | | | |
|---|---|---|---|---|
| | | | 1 tutorial | Fall 2003 |
| | | | 1 tutorial | Spring 2004 |
| | | | 3 tutorials | Summer 2004 |
| | | | 3 tutorial | Spring 2004 |
| | | | 1 tutorial | Summer 2004 |
| | | | 1 tutorial | Summer 2004 |
| | | | 2 tutorials | Spring 2004 |
| Professor 15 | 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 | $450 | 1 tutorial | Summer 2004 |

In addition please make the following payments:

██████ ████ ███ charged to ████████ work on two field studies (one in Spring 2004 and one in Summer 2004).

██████ █████ █████ ████████████ work on two field studies in Summer 2004.

CONFIDENTIAL

ACAF '06MAY19 PM3:21

To:         Dr. David Stuhr
            Associate Vice President for Academic Affairs

From:       Maureen Tierney
            Associate Dean – Schools of Business

Date:       May 18, 2006

Re:         PWC Foundation Grant

---

It is requested that payments be made to the following faculty for their participation in the PWC Foundation Curriculum Development:



Professor 15

$10,000  032-26-705
$ 9,000  047-18975
$14,000  01989 781
$ 8,000  02971749
$ 2,000  046 83199
$ 2,000  04682 055
$ 2,000  04720587
$ 8,000  046 78987

Total:      $55,000

Please charge to FRS number 526697-1040

CONFIDENTIAL

FORDHAM0016311

**EXHIBIT 6**

K1TESOLC – CORRECTED

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   SOLOMON,

4                   Plaintiff,

5            v.                          18 Cv. 04615 (ER)

6   FORDHAM UNIVERSITY,

7                   Defendant            Conference

8   ------------------------------x
                                         New York, N.Y.
9                                        January 29, 2020
                                         10:30 a.m.
10
    Before:
11
                      HON. EDGARDO RAMOS,
12
                                         District Judge
13

14                        APPEARANCES

15  ESTHER SOLOMON, pro se

16
    CULLEN AND DYKMAN LLP
17       Attorneys for Plaintiff
    BY:  HAYLEY B. DRYER, ESQ.
18        RYAN SOEBKE, ESQ.

19

20

21

22

23

24

25

K1TESOLC - CORRECTED

1   produced.  There are one or two outstanding items.

2           THE COURT:  What items?

3           MS. DRYER:  Student evaluations are outstanding, and I

4   believe that emails might be outstanding.

5           THE COURT:  What is outstanding?

6           MS. DRYER:  Student evaluations are outstanding.

7           THE COURT:  And?

8           MS. DRYER:  And a few emails might be outstanding.

9   That I would have check.

10          THE COURT:  OK, so turn those over.

11          MS. SOLOMON:  (Reading):  With regard to the

12  redaction of documents, you represented to us during the

13  parties' March 15th meet and confer that you needed to confirm

14  whether Fordham University would agree to produce unredacted

15  HR, provost, and Gabelli files.  You made this promise during

16  our March 21st meet and confer, and again during the parties'

17  April 1st meet and confer.  We have now been awaiting for a

18  response from you for more than three weeks.  Please confirm

19  immediately whether Fordham will agree to produce these

20  materials without redaction as required by the Federal Rules.

21          THE COURT:  What materials are these?

22          MS. SOLOMON:  The personnel files that I'm asking

23  about now, they told me that I have to put the subpoenas, and

24  now they say:  Oops, you have them already.

25          THE COURT:  Ms. Dryer?

K1TESOLC — CORRECTED

1          MS. DRYER:  Your Honor, all of the information that

2     has been requested in the subpoenas have been produced.  The

3     comparator sheets -- Dr. Solomon requested the comparator files

4     be subpoenaed.  That has been produced.  She now contests that

5     we had not agreed to a period starting 2008.  That was

6     requested by Dr. Solomon in her document demands.

7          The purpose of the subpoenas though, your Honor, is to

8     harass Fordham.

9          THE COURT:  I'm sorry.  If she served you with a

10    subpoena, does that permit you to turn over the files in an

11    unredacted fashion of the comparators?

12         MS. DRYER:  With a lawful subpoena.  It is Fordham's

13    position this is not a lawful and correct subpoena.

14         THE COURT:  Why not?

15         MS. DRYER:  Because we have turned over all the

16    information that's sought in the subpoena.  The purpose of this

17    subpoena is to harass Fordham.

18         Dr. Solomon has, on more than one occasion, asked if

19    the comparator professors have been informed of the subpoena.

20    She is trying to cause an uproar on the Fordham campus.  She

21    has -- the subpoenas asked for information before the 2008

22    period.  We previously agreed with counsel that the discovery

23    would start at 2008.  Any information that is sought before

24    then is way outside the statute of limitations.

25         MS. SOLOMON:  Two issues, your Honor.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300