Esther Solomon
140 West 62nd Street
New York, New York 10023
212 636-6187

**MEMO ENDORSED**

June 6, 2024
Hon. Edgardo Ramos, U.S.D.J.
Thurgood Marshall United States Courthouse
40 Foley Square, Courtroom 619
New York, NY 10007

> Solomon's request to file a surreply is denied. SO ORDERED.
>
> Edgardo Ramos, U.S.D.J.
> Dated: 6/11/24
> New York, New York

Re: *Solomon v. Fordham University* (Case 18-cv-04615)

Dear Judge Ramos:

    This is to respectfully request the Court's leave to file a Surreply to address Defendant's May 7, 2024 Reply Memo and Declaration (Dkts. 152, 151). They are replete with untrue representations of their supposed compliance, while the opposite is true. Defendant does not consent to this application.

    Most of my document requests remain without responsive production. Fordham has not satisfied a single interrogatory. As I indicated to the Court in my April 26 letter (Dkt.150), I am hampered by the lack of discovery, including ongoing violations of the Stipulated Protective Order, redactions of comparator names precluding depositions, and stonewalling. This also impedes uncovering evidence on the pattern against other professors of protected classes, discriminated with similar methods by the same group.

**Fordham's 2024 Production**

    About four months into the six-month discovery ordered in January by the Court, Fordham's 2024 production has not changed anything. While asserting to have produced 1,900 pages on April 24, Defendants gave only *two pages* on my status changes #F-17200-17201, among 20 pages produced on my records. (Exhibit 1) I also tried obtaining my status change documents from Fordham's in-house counsel and trial attorneys but was left with a non-responsive round-robin of emails and no documents. In contrast, Declaration ¶8a (Dkt. 151) states that Fordham produced "All documents added to Plaintiff's Personnel File since Fordham's first production," referring to five years 2019-2024.

    Defendant omits that 95% of their production is minimally responsive to discovery requests: of the 1,900 pages produced, 1,769 are redacted disorganized records for three professors, per Declaration ¶8c "Personnel Files for comparator professors 13-15," and 34 pages for three different redacted professors without numbers. A "key" was provided with 15 numbers, corresponding to 15 of 18 redacted Professors. (Exhibit 2). Similarly, having produced no data whatsoever for the pay claims requests (Exhibit 3), they write instead in ¶8d they supplied "Documents related to salary and benefits analysis undertaken by Fordham."

    In another example, despite the specific request (Exhibit 4), they have not provided a single document supporting Fordham's defense against my secret retaliatory termination: that it is Fordham's "customary" practice to send tenured faculty on unpaid leave to COBRA by removing them from the IRS-mandated employer health plan. Fordham should be compelled to

1

provide the documents on faculty-transferred to COBRA or acknowledge they don't exist. Surprisingly, Fordham announces in Declaration ¶13 that they are nearing the end of their production, despite their failure to comply with their obligations.

### Compel Compliance with Subpoenas and Redaction Removal

Fordham should be compelled to provide complete personnel files honoring the 2019 Federal subpoenas, with consequences for non-compliance. They should be without any of the multiple levels of unauthorized redactions, none of which is supported by the law and which has been clarified by the mandate. (Exhibit 5, Examples of redactions). Fordham asserted to the Cravath firm in 2019 and admitted to the Court at the January 29, 2020 Hearing (Exhibit 6) that subpoenas enable the production of unredacted Personnel files. Defendant should finally produce those files, unredacted.

Fordham's extraordinary actions of secretly terminating a tenured professor without cause or due process, officially reporting it, and filing contradictory representations to different Federal authorities, including IRS follow-up, deserve discovery. They did not supplement for 2019-2024 and corrected none of the 2019 production deficiencies per my motion (Dkt 134), either about my file or the comparators' scattered redacted pages they produced.

### Second Circuit Mandate, the Law of the Case

The defendant disagrees with the mandate in this case and claims it is irrelevant to the discovery issues. They make no corrections to address the Second Circuit's explicit decision on issues including time scope, the impropriety of comparator name redactions, and the need for data for pay claims by both EPA and Title VII, instead, asked the Court to deviate from its directives. However, under the mandate rule, "[w]here a case has been decided by an appellate court and remanded, the court to which it is remanded must proceed in accordance with the mandate and such law of the case as was established by the appellate court." *Kerman v. City of New York*, 374 F.3d 93, 109 (2d Cir. 2004). The "mandate rule prevents re-litigation in the district court not only of matters expressly decided by the appellate court but also precludes re-litigation of issues impliedly resolved by the appellate court's mandate." *Brown v. City of Syracuse*, 673 F.3d 141, 147 (2d Cir. 2012).

### Improper Redactions Lack Support

Comparator Name redactions: There is no case providing legal support for redactions of comparator professor's names. These redactions of comparator names invalidate most of Defendant's production. To overcome the lack of legal support, Defendant misrepresents *Black v NYU* which did not involve comparator name redactions, contrary to their assertion (see specifics in Dkt. 147, pp. 16-17).

An essential requirement in Title VII cases is identifying comparators, which is impossible with concealed names. In this case, which involves a pattern, anonymity precludes connecting qualitative with quantitative data and other indicia of discriminatory intent.[1]

Peer Reviewer Name Redactions: Peer reviewer name redactions are also not supported by law in this Title VII case. To misportray them as legitimate, Defendant improperly relies on two cases that stand for disclosure of university peer review records: The Supreme Court case

---

[1] "A disparate treatment claim often includes a combination of strong statistical evidence of disparate impact coupled with anecdotal evidence of the employer's intent to treat the protected class unequally." Kassman v. KPMG LLP, 416 F. Supp. 3d 252, 284 (S.D.N.Y. 2018)

*University of Pennsylvania v. EEOC*, 493 U.S. 182 (1990) and *Weinstock v. Columbia Univ.*, 1995 U.S. Dist. LEXIS 14003 (S.D.N.Y. 1995). However, neither case addressed redactions. While the word "redactions" does not appear in *Weinstock*, Defendant cites it as supporting redaction of peer reviewer names (Dkt 152 p 8). In *Pennsylvania*, the Supreme Court specifically clarified that it did not consider redactions on peer review records in enforcing the subpoena. (footnote 9, p.589).

### **Fordham's Unmet Burden Seeking Redactions**

Defendant fails to meet the burden for the redactions they seek to legitimize, so they reverse the standard. As the party seeking discovery, I meet my burden of relevance for comparator names (see also Second Circuit Mandate). Fordham has the burden of proof for withholding discovery by redactions, but they do not meet it: "The party seeking discovery bears the initial burden of proving the discovery is relevant, and then the party withholding discovery … bears the burden of proving the discovery is, in fact, privileged or work product, unduly burdensome and/or expensive. *Citizens Union of City of New York v. Attorney Gen. of New York*, 269 F. Supp. 3d 124, 139 (S.D.N.Y. 2017). While referencing the case above, Defendant misrepresents its content by saying the unmet burden is mine rather than theirs.

### **The Standard for Modification of a Protective Order Not Met**

Five years ago, Fordham first negotiated, agreed to the terms and committed to complying with the terms of the Stipulated Protective Order. However, as the Cravath firm pointed out, they immediately violated its terms, including regarding the unauthorized redactions.[2] In the April 16, 2024 cross-motion, they omitted the existence of the valid Stipulated Protective Order.

Defendant now asks the Court to endorse their violations in a new modified Protective Order, despite the lack of legal support for comparator name redactions they seek. However, "In this Circuit, there is a strict standard for modification of a protective order entered by a district court. See *In re Teligent, Inc.*, 640 F.3d 53, 59 (2d Cir. 2011). Under this strict standard, "it is 'presumptively unfair for courts to modify protective orders which assure confidentiality and upon which the parties have reasonably relied.'"… "Once a court enters a protective order and the parties rely on that order, it cannot be modified 'absent a showing of improvidence in the grant' of the order or 'some extraordinary circumstance or compelling need.'" *In re Hornbeam Corp.*, 2020 U.S. Dist. LEXIS 145996 (S.D.N.Y. 2020) (citations omitted). Defendant fails to meet the burden of "extraordinary circumstance or compelling need" to modify the Stipulated Protective Order and their request should be denied.

For the preceding reasons, I respectfully request that leave to file a Surreply be granted.

Sincerely,


/s/ Esther Solomon
Esther Solomon
Plaintiff Pro Se

---

[2] The April 10, 2019 email from Cravath to Fordham: "Please confirm immediately whether Fordham will agree to produce these materials without reductions, as required by the Federal Rules."