UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ESTHER SOLOMON,

                    Plaintiff,

        – against –

FORDHAM UNIVERSITY,

                    Defendant.

**OPINION & ORDER**

18-cv-4615 (ER)

RAMOS, D.J.:

        Esther Solomon, proceeding *pro se*, is an associate professor at Fordham University's Gabelli School of Business.  She alleges that Fordham has paid her less than her male colleagues for the same work, assigned her an overwhelming and retaliatory course load, discriminated against her because of her gender, age, and religion, defamed her, and breached a contract and other duties owed to her.  Doc. 95.  She also alleges that Fordham recently retaliated against her by refusing to pay for her health insurance.  *Id.* She brings these claims under both federal and New York state law.[1]

        Before the Court is Solomon's motion to compel Fordham to comply with certain document requests, subpoenas, and court orders.  Doc. 132.  Fordham filed a cross-

---

[1] 1 Solomon brings claims under the following federal statutes:

- Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*
- Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*
- The Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 to 634
- The Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601 to 2654
- The Equal Pay Act of 1963 ("EPA"), 29 U.S.C. § 206(d)

She also brings claims under the following New York statutes:

- The New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 297
- The New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 to 8-131
- The Achieve Pay Equality Act of 2015, N.Y. Lab. Law § 194

Finally, she alleges defamation, breach of contract, breach of fiduciary duty, and tortious interference with current and prospective business relations under New York common law.  *See* Doc. 95 (Third Amended Complaint).

motion for a protective order and to compel Solomon to produce additional document discovery. Doc. 141. For the reasons set forth below, Solomon's motion to compel is DENIED without prejudice and subject to additional representations by Fordham. Fordham's motion to compel is DENIED, and its motion for a protective order is GRANTED.

## I.     BACKGROUND[2]

### A.  Factual Background

Familiarity with the factual background of this case is assumed, and the facts are set forth in more detail in the Court's previous opinions. *See* Doc. 69 (March 17, 2020 Opinion and Order); Doc. 85 (December 29, 2020 Opinion and Order); Doc. 94 (June 4, 2021 Opinion and Order); Doc. 121 (March 29, 2022 Opinion and Order).

Solomon is currently a tenured associate professor at Fordham's Gabelli School of Business.  ¶ 42. She was sixty-eight years old at the time her initial complaint was filed. ¶ 43. Solomon is the only woman on the tenured faculty in her area as well as the only Jewish full-time faculty member in the area.[3] *Id*.

Solomon claims that Fordham paid her less than similarly situated, younger, male, and non-Jewish members of the faculty.  ¶¶ 2, 4, 49. She also claims that Fordham favored her younger, male, and non-Jewish colleagues for promotions.  ¶¶ 11, 50, 107–109, 141, 238, 410. The University, Solomon alleges, created a hostile work environment by deliberately excluding her from events and subjecting her to verbal harassment. ¶¶ 95–98, 487–503. Finally, Solomon alleges that Fordham retaliated against her after she received an EEOC Right to Sue letter[4] and filed her federal complaint.  ¶ 332. Specifically, she claims that Fordham forced her to take less desirable teaching

---

[2] Unless otherwise noted, citations to "¶ _" refer to the Third Amended Complaint, Doc. 95.

[3] The Gabelli School is organized into a number of departments, called "areas." Solomon is currently a member of the Organizational Behavior/Leading People and Organizations Area.  ¶ 3.

[4] The EEOC issued Solomon a Right to Sue letter on February 28, 2018.  ¶ 27.

assignments and improperly terminated her healthcare and other benefits.  ¶¶ 335, 335, 377, 504–510.

### B.  Procedural Background

Solomon filed her *pro se* complaint on May 24, 2018.  Doc. 1.  She initially issued her first set of document requests to Fordham on January 7, 2019.  Doc. 132 at 1.  Fordham issued its first set of document requests that same day.  Doc. 143 at 8.  On November 8, 2019, Solomon also served Fordham with subpoenas requesting her personnel file as well as the personnel files of 14 alleged comparator professors.  *Id.*

On February 14, 2019, the Court entered a protective order pursuant to Federal Rule of Civil Procedure 26(c).  Doc. 24.  Pursuant to this order, the parties agreed that either could:  "designate any [d]iscovery [m]aterial, in whole or in part, as 'confidential' if the producing party determines, in good faith that such designation is necessary to protect its interests in information that is sensitive and non-public."  *Id.* at 1.  The protective order noted that examples may include:  "personnel files, evaluation and employment history of the Parties or their current or former employees."  *Id.*  It further noted that any confidential material "will be held and used . . . solely in connection with" the instant litigation, and "shall not be disclosed to any other person," subject to limited exceptions.[5]  *Id.* at 2.

During a January 29, 2020 conference, the Court granted Solomon leave to file a motion to compel production of certain discovery, including documents she believed had not been turned over, inappropriately designated as confidential, or improperly redacted.  Jan. 29, 2020 Tr. at 32:8–12.  During that conference, Solomon also represented that she needed unredacted information about alleged comparators and the names of peer reviewers involved in her tenure and promotion decisions.  Doc. 67 at 20; Jan. 29, 2020

---

[5] These exceptions largely include individuals involved in the litigation, such as counsel, paralegals, witnesses who sign appropriate non-disclosure agreements, stenographers, *etc.*  Doc. 24 at 2–3.

Tr. at 20:23–24.  Solomon filed the First Amended Complaint on March 13, 2019.  Doc.

37.  Fordham moved to dismiss the First Amended Complaint on May 6, 2019.  Doc. 47.

Solomon filed the motion to compel on March 17, 2020.  The Court issued an

opinion granting Fordham's motion to dismiss the same day, which also granted Solomon

leave to refile a Second Amended Complaint and stayed discovery.  Doc. 69.  Solomon

filed the Second Amended Complaint on April 16, 2020, which Fordham moved to

dismiss on May 29, 2020.  Doc. 74.  The Court granted Fordham's motion on December

29, 2020.  Doc. 85.  The Court noted that if Solomon chose to file a Third Amended

Complaint, discovery would be stayed until Fordham answered this complaint or the

Court denied a motion to dismiss it.  *Id*. at 35.

On February 8, 2021, Solomon moved to file a proposed Third Amended

Complaint.  Doc. 88.  On June 4, 2021, the Court granted her motion for the limited

purpose of amending the retaliation claims based on Fordham's termination of Solomon's

employee health benefits, but otherwise did not allow her to replead the balance of her

claims.  Doc. 94.  Solomon filed the Third Amended Complaint, Doc. 95, on June 11,

2021, and then moved for reconsideration of the June 4, 2021 Opinion.  Doc. 96.

Fordham moved to dismiss the Third Amended Complaint on July 22, 2021.  Doc. 99.  In

its March 29, 2022 Opinion, the Court denied reconsideration of the June 4, 2021

Opinion, dismissed the Third Amended Complaint, and closed the case.  Doc. 121.

On April 22, 2022, Solomon filed a notice of appeal.  On September 5, 2023, the

Second Circuit issued a summary order affirming the March 29, 2022 in part, vacating it

in part, and remanding the case for further proceedings.  Doc. 124.  Specifically, the

Second Circuit found that a subset of Solomon's claims—her disparate impact,

retaliation, and unequal pay claims—should have survived the motion to dismiss.  *Id*. at

8.

Subsequently, the case was re-opened and the Court entered a case management

order on January 16, 2024, with all discovery to be completed by July 12, 2024.  Doc.

130.  Solomon then re-filed her motion to compel on January 18, 2024.  Doc. 132.

Specifically, the motion requests that Fordham comply with:  (1) her document requests

issued on January 7, 2019 (as well as removing confidential designations from certain

documents already produced); (2) the 15 subpoenas she served on November 8, 2019; (3)

the Court's February 14, 2019 Protective Order; and (4) their representations to the Court

that Solomon's status at Fordham remains unchanged, when in fact her health benefits

have been terminated.  Doc. 132 at 1.

On March 1, 2024, Fordham filed a cross-motion to compel Solomon to "conduct

a reasonable search of all potentially relevant documents and communications in her

possession" and for a protective order "permitting the redaction of the biographical

information of comparator and peer review professors in its discovery responses."  Doc.

141.  Fordham represents that it has produced over 17,000 pages of documents through

rolling productions to Solomon, including her personnel file and those of the 14 alleged

comparator professors.  Doc. 152 at 5.  Fordham also represents that, as of March 1,

2024, Solomon had made a single and allegedly deficient document production.[6]  Doc.

143 at 8.  On May 30, 2024, the Court granted Fordham's request to extend the time to

complete discovery in this case until October 10, 2024.  Doc. 153.

### C.  Discovery Dispute

The discovery dispute between the parties largely concerns Fordham's response to

the November 8, 2019 subpoenas.  These subpoenas sought the production of Solomon's

own personnel file as well as the personnel files of other alleged comparator professors.

Doc. 143 at 8.  Personnel files at Fordham include three different files:  (1) a Human

Resources File,  (2) a Provost File, and (3) a file maintained by the individual faculty

member's school, which in this case is called a Gabelli File.  Doc. 142 at ¶ 13.  Fordham

---

[6] Fordham claims that Solomon has not produced electronic files, notes, or any documents from her personal Gmail account or other personal email accounts she may have used.  Doc. 143 at 20–21.

produced Solomon's entire personnel file. *Id*. at ¶¶ 13–15. Fordham also produced the personnel files for 14 alleged comparator professors, as well as their faculty activity reports and W-2 records. *Id*. at ¶¶ 19–20; Doc. 152 at 5.

Within Solomon's personnel file, the names of the peer reviewers were redacted. *Id*. at ¶ 25. Fordham also redacted the biographical information and names of the 14 comparator professors, which Fordham claims is in accordance with certain university statutes relating to confidentiality.[7] *Id*. at ¶ 23. However, Fordham provided Solomon a key that allows her to determine the gender, year of birth, and title of each comparator professor, so that she could review all of the pertinent information relevant to her alleged causes of action. *Id*. at ¶ 24.

## II.   LEGAL STANDARDS

### A.  Pro Se Plaintiff

The Court holds submissions by *pro se* litigants to "less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (per curiam) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)); *see also Young v. N.Y.C. Dep't of Educ.*, No. 09-cv-6621 (SAS), 2010 WL 2776835, at *5 (S.D.N.Y. July 13, 2010) (noting that the same principles apply to briefs and opposition papers filed by pro se litigants). Although "*pro se* status 'does not exempt a party from compliance with relevant rules of

---

[7] Specifically, § 4-07.41 provides:

> "Except when otherwise directed by final order of or governmental tribunal of competent jurisdiction, faculty members and administrators engaged in procedures involving faculty personnel decisions shall treat as confidential all information disclosed during such procedures, as well as the fact of occurrence of the procedure and the result thereof except as otherwise provided in these statutes . . . ."

§ 4-07.42 provides:

> "Personnel files are confidential [see §4-07.41]. No document in such file will be released by the University to any person without the written consent of the Vice President for Academic Affairs except in response to a final order of a court of competent jurisdiction, or a lawful subpoena duces tecum . . . ."

Fordham U. Statutes, *Chapter Seven: Academic Due Process*, https://www.fordham.edu/about/leadership-and-administration/board-of-trustees/university-statutes/article-four-policies-and-procedures-for-faculty/chapter-seven-academic-due-process/.

procedural and substantive law,'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)), courts read the pleadings and opposition papers submitted by *pro se* litigants "liberally and interpret them 'to raise the strongest arguments that they suggest,'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).  The obligation to read a *pro se* litigant's pleadings leniently "applies with particular force when the plaintiff's civil rights are at issue." *Jackson v. NYS Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)).

### B.  Rule 26(b)(1)

Rule 26(b)(1) permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  When assessing proportionality, the court considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*  "Rule 26 limits discovery where requests are unreasonably cumulative or duplicative [or]. . . . the discovery can be obtained from a more convenient, less burdensome, or less expensive source." *Shiber v. Centerview Partners LLC*, No. 21-cv-3649 (ER), 2023 WL 3071554, at *2 (S.D.N.Y. Apr. 25, 2023) (citing Fed. R. Civ. P. 26(b)(2)(C)).  The scope of relevance under Rule 26 is broader than under the Federal Rules of Evidence.  "Relevance is. . . to be 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claim or defense." *Mortg. Resolution Servicing, LLC v. JPMorgan Chase Bank, N.A.*, No. 15-cv-293 (LTS) (JCF), 2016 WL 3906712, at *3 (S.D.N.Y. July 14, 2016) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)); *see also Sec. & Exch.*

*Comm'n v. Rayat*, No. 21-cv-4777 (LJL), 2022 WL 1423300, at *2 (S.D.N.Y. May 5, 2022).

Federal district courts have broad discretion in deciding motions to compel. *See Grand Central Partnership, Inc. v. Cuomo*, 166 F.3d 473, 488 (2d Cir. 1999). The burden of demonstrating relevance is on the party seeking discovery. *Go New York Tours, Inc. v. Aurora Tourism Services, LLC,* No. 22-cv-10633 (DEH) (JW), 2023 WL 9111158, at *1 (S.D.N.Y. Dec. 20, 2023) (citing *Trilegiant Corp. v. Sitel Corp.*, 272 F.R.D. 360, 363 (S.D.N.Y. 2010); *see also Republic of Turkey v. Christie's, Inc.*, 326 F.R.D. 394, 400 (S.D.N.Y. 2018) (citing *State Farm Mut. Auto. Ins. Co. v. Fayda*, No. 14-cv-9792 (WHP) (JCF), 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015), *aff'd*, 2016 WL 4530890 (S.D.N.Y. Mar. 24, 2016) (confirming that the burden of demonstrating relevance remains on the party seeking discovery even after 2015 amendments to Rule 26). If a party objects to discovery requests, that party bears the burden of showing why discovery should be denied. *Financial Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 314 F.R.D. 85, 87 (S.D.N.Y. 2016). "General and conclusory objections as to relevance, overbreadth, or burden are insufficient to exclude discovery of requested information." *Go New York Tours, Inc,* 2023 WL 9111158 at *1 (S.D.N.Y. Dec. 20, 2023) (quotations omitted). Rather, the resisting party has the burden of showing "how, despite the broad and liberal construction afforded the federal discovery rules, each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive." *Financial Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 314 F.R.D. at 88 (quoting *Sokol v. Wyeth, Inc.,* No. 7-cv-8442 (SHS) (KNF), 2008 WL 3166662, at *3 (S.D.N.Y. Aug. 4, 2008).

### C. Rule 26(c)

Rule 26(c)(1) provides that the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "This rule 'confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is

required.'" *U.S. Commodity Futures Trading Comm'n v. Parnon Energy, Inc.*, 593 Fed. App'x. 32, 36 (2d Cir. 2014) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)). "Rule 26(c) allows for the crafting of appropriate relief, including that the disclosure or discovery may be had only on specified terms and conditions." *Ambac Assur. Corp. v. Adelanto Public Utility Authority*, No. 09-cv-5087 (JFK), 2012 WL 1589597, at *3 (S.D.N.Y. May 7, 2012) (internal quotations and citation omitted).

"The party seeking a protective order bears the burden of establishing that good cause for the order exists." *Id.* at *5 (citing *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 142 (2d Cir. 2004)). It must demonstrate a "particular need for protection," showing "specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant or how each question is overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *Id.* (citations omitted).

## III.   DISCUSSION

### A.   Solomon's Motion to Compel

#### 1.   *Documents Allegedly Missing From Solomon's Personnel File*

Solomon first contends that Fordham's production of her personnel file should have included records related to her promotion reviews. Doc. 132 at 16–17. Fordham responds that it does not include every document or communication related to a faculty member in the personnel file, and that the items that can be included are limited pursuant to various provisions of the University statutes. Doc. 143 at 10. To the extent Fordham has relevant documents outside of the personnel file, it claims to have "produced the documents it possesses related to the issues [Solomon] outlined in her complaint and in her document requests." *Id.*

"A party seeking discovery may move for an order compelling an answer, designation, production, or inspection" if "a party fails to produce documents . . . as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B). Generally, "a party's good faith

averment that the items sought simply do not exist, or are not in his possession, custody, or control, should resolve the issue of failure of production since one 'cannot be required to produce the impossible.'" *Menard v. Chrysler Grp. LLC*, No. 14-cv-325 (VB), 2015 WL 5472724, at *1 (S.D.N.Y. July 2, 2015) (quoting *Zervos v. S. S. Sam Houston*, 79 F.R.D. 593, 595 (S.D.N.Y. 1978)).  Further, "[i]n the face of a denial by a party that it has possession, custody or control of documents, the discovering party must make an adequate showing to overcome this assertion." *Mason Tenders Dist. Council of Greater New York v. Phase Constr. Services, Inc.*, 318 F.R.D. 28, 42 (S.D.N.Y. 2016) (internal citations and quotations omitted).  In other words, a plaintiff must cite to specific evidence to challenge a defendant's assertions that no additional responsive documents exist. *Id.*; *see, e.g.*, *Margel v. E.G.L. Gem Lab Ltd.*, No. 4-cv-1514 (PAC), 2008 WL 2224288, at *3 (S.D.N.Y. May 29, 2008) (noting that moving party did "not cite any specific evidence impugning [the non-movant's] assertions that their production [was] complete" and thus court could not find basis for misconduct).

Here, Fordham has not clearly stated that the documents Solomon seeks are outside their possession or control, or that they do not exist. *Menard*, 2015 WL 5472724 at *1.  Instead, Fordham claims that some records cannot be produced because the University statutes limit the disclosure of certain documents.  However, Solomon is entitled to discovery of all nonprivileged, relevant, and proportional matters.  *See* Fed. R. Civ. P. 26(b)(1).  To be clear, Fordham is not entitled to withhold documents on the basis of the University statutes themselves.  Fordham does not cite, nor is the Court aware of, any authority establishing that proposition.  Indeed, in *University of Pennsylvania v. EEOC*, 493 U.S. 182 (1990), the Supreme Court held that neither a common law privilege nor First Amendment right of academic freedom prevented the disclosure of confidential peer review materials in a Title VII enforcement action.  *Id*. at 189, 201.  Fordham has not adequately explained why University statues create a privilege or otherwise prevent the disclosure of relevant documents.  Accordingly, the Court lacks

sufficient information to grant Solomon's motion to compel.  To the extent Fordham is withholding otherwise relevant documents due to an alleged legal privilege, it is directed to produce a privilege log listing any documents that are being withheld and the basis of the privilege.  If no legal privilege exists, Fordham is directed to provide the additional responsive documents within its custody and control.

     *2.  Allegedly Improper Redactions in Personnel Files*

Solomon argues that within her personnel file, the names of her peer reviewers for various promotions are improperly redacted.  Doc. 132 at 13; Doc. 146 at 6.  Additionally, she notes that the names of the alleged comparator professors are also redacted, as well as other "substantive information."  Doc. 132 at 12.  Fordham responds that the redaction of the names of peer reviewers and alleged comparator professors' personnel files are consistent with the University statutes, which direct that personnel files and the peer review process are confidential.  Doc. 143 at 12.  Moreover, they argue that Solomon has failed to establish that identifying information about her comparators and peer reviewers are relevant to her claims.  *Id.* at 12–13.  Fordham challenges the allegation that it redacted substantive information.  Each of the foregoing issues is examined in turn.

     *a.  Names of Peer Reviewers*

Fordham argues that the redaction of the names Solomon's peer reviewers is warranted because she has not established this information is relevant to her employment discrimination claims.  Doc. 143 at 12–13.  Solomon responds that redacting the names of peer reviewers is improper, and that knowing this information would help her prove her case by the "totality of the evidence."  Doc. 132 at 15.

Courts in this Circuit and in others have permitted university and other institutional defendants to redact the names and identifying information of peer reviewers when producing peer review materials in litigation.  *See, e.g.*, *Kaplan v. Blue Hill Memorial Hosp.*, No.14-cv-00276 (DBH), 2015 U.S. Dist. LEXIS 123256, at *5 (D. Me.

Sep. 15, 2015); *Sabharwal v. Mount Sinai Medical Ctr.,* No. 09-cv-1950 (JBW), 2011 WL 477693, at *4 (E.D.N.Y. Feb. 4, 2011); *Black v. New York Univ. Med. Ctr.*, No. 94-cv-9074 (NRB) (SS), 1996 WL 294310, at *4 (S.D.N.Y. June 3, 1996); *Quinn v. Nat'l Basketball Ass'n*, No. 91-cv-8257 (MBM), 1992 WL 179781, at *3 (S.D.N.Y. July 23, 1992); *Schneider v. Northwestern Univ.*, 151 F.R.D. 319, 323 (N.D. Ill. 1993).  The relevant inquiry was announced in *University of Pennsylvania v. EEOC*, 493 U.S. 182 (1990).  In *University of Pennsylvania*, the Supreme Court recognized that universities and other academic institutions have an interest in the confidentiality of their peer review process, but held that educational institutions were not given special protections from disclosing peer review materials in a Title VII discrimination inquiry.  *Id.* at 194.  Instead, a plaintiff must show the "mere relevance" of materials to require their disclosure.[8]  *Id.* at 188.

As the party requesting discovery, it is Solomon's burden to establish relevance. *See Go New York Tours, Inc.*, 2023 WL 9111158, at *1.  Solomon only states that the redactions of the names of the peer reviewers prevent her from presenting evidence that would allow her to prove her case, but does not describe in any way how the specific names of peer reviewers are relevant to establishing her case.  Moreover, the Court finds that Fordham's redactions conform to precedent from this Circuit and others that permit the names of peer reviewers to be redacted.  Accordingly, Solomon's motion to compel on this basis is denied.

   b.  *Names of Alleged Comparator Professors*

Solomon argues that the names of the alleged comparator professors are relevant to her claims.  Specifically, she points out the unredacted information could help her "connect information from different sources" in discovery, assist her in "fleshing out" the comparators in terms of their specific job duties, and provide other factual information to

---

[8] The Supreme Court specifically left open whether the university could produce the documents in redacted form.  *Univ. of Pennsylvania*, 493 U.S. 188 n.2.

establish their "comparator status."  Doc. 146 at 12.  Fordham responds that it has already

provided her with a key that will allow her to determine comparator professors' gender,

year of birth, and title, which is the information that is relevant to her claims.  Doc. 143 at

12.

In order to state a *prima facie* case for discrimination, "a plaintiff must proffer

some admissible evidence of circumstances that would be sufficient to permit an

inference of discriminatory motive."  *Bennett v. Watson Wyatt & Co.*, 136 F. Supp. 2d

236, 246 (S.D.N.Y. 2001), *aff'd*, 51 Fed. App'x 55 (2d Cir. 2002).  A plaintiff alleging

disparate treatment, as Solomon does here, can support her discrimination claims by

showing that similarly situated employees outside of her protected class were treated

more favorably.  *Norville v. Staten Island Univ. Hospital*, 196 F.3d 89, 95 (2d Cir. 1999).

Here, Solomon's complaint relies on the differences between her and younger, white,

male, and non-Jewish professors.  ¶¶ 2, 4, 11, 49–50, 107–109, 141, 238, 410.  The

documents provided by Fordham include information about the alleged comparators

(such as age and gender) that allow her to determine whether they are outside of her

protected class.

In light of the other biographical information provided by Fordham, Solomon

must explain why the specific names of the comparator professors are relevant to her

discrimination claims.  *See Go New York Tours, Inc.*, 2023 WL 9111158, at *1.  But she

does not; instead, she argues that the Second Circuit decision issued a "mandate"

regarding these redactions.[9]  Doc. 146 at 11–12.  Solomon's argument does not have

merit.  In the summary order, the Second Circuit only reviewed this Court's March 29,

2022 Opinion dismissing the Third Amended Complaint.  It did not review or issue an

---

[9] The first page of the Second Circuit decision includes the word "mandate" in red text.  Doc. 125 at 1.
Solomon also references a footnote in the decision stating "Solomon alleges that Fordham redacted the
comparators' names . . . which may explain why she does not allege the specific job duties of each
professor" in her unequal pay claim.  *Id.* at 7 n.1.  The Second Circuit's reference to Solomon's allegations
does not constitute a decision on whether the redactions were proper.

order related to discovery issues.  Accordingly, Solomon's motion to compel on this basis is denied.

### c. *Other Information About Alleged Comparator Professors*

Finally, in an exhibit to her motion, Solomon attaches several pages of documents produced in discovery that redact more than just the names of individual alleged comparators.  In some cases, entire pages are redacted.  *See* Doc. 132 at 80–86.  Fordham represents that it only "redacted the names of the peer reviewers and comparator professors from its production" and "did not redact any substantive information" related to Solomon's claims.  Doc. 143 at 11.

It is unclear to the Court what these redactions concern.  Accordingly, the Court lacks sufficient information to grant Solomon's motion to compel.  Fordham is therefore directed to produce a log listing any documents that are being redacted and the basis for the redaction.

### 3. *Dispute about Solomon's Document Requests*

Solomon claims that Fordham has not produced documents in response to several requests—and has not produced a privilege log detailing why any documents were withheld.[10]  Doc. 132 at 19.  Fordham responds that it is in the process of reviewing its files for additional responsive documents and will produce them in accordance with the current discovery schedule.  Doc. 143 at 18.

Since Defendants are still searching for documents responsive documents, a motion to compel document production is not yet ripe.  *See Menard*, 2015 WL 5472724 at *1.  The Court directs Fordham to respond to the requests in accordance with the current discovery schedule.  *See U.S. for Use and Benefit of M. Frank Higgins & Co., Inc. v. Dobco Inc.,* No. 22-cv-9599 (CS) (VR), 2023 WL 5302371, at *4 (S.D.N.Y. Aug.

---

[10] Specifically, Solomon refers to requests number 3, 5, 6,7, 9, 11, 12, 16, and 17.  Doc. 132 at 19.

17, 2023) (noting that Rules 26 and 34 "obligate a party to produce information that is relevant and responsive."). The motion to compel on this basis is therefore denied.[11]

### 4. Dispute over Designation of Documents as Confidential

Solomon next argues that Fordham has marked every document produced in discovery as confidential, which she claims violates the February 14, 2019 protective order. Doc. 132 at 21. Fordham represents that its designation of documents as confidential was proper and in accordance with the protective order. Doc. 143 at 17–18.

As noted above, the February 14, 2019 protective order allows either party to designate any discovery material as confidential if the producing party "determines, in good faith, that such a designation is necessary to protect its interests in information that is sensitive and non-public." Doc. 24 at 1.

Here, Fordham claims it has an interest in protecting "potentially sensitive information, including peer review information as well as the salary and biographical information of comparator professors." Doc. 143 at 17. The Court notes that this information is contained in personnel files, which the protective order expressly contemplated as potentially confidential information. Doc. 24 at 1. Moreover, Solomon has not presented any evidence that Fordham's designations were not made in good faith. While she alleges that she is prejudiced by the confidential designations due to the imposition of "additional burdens," Solomon does not explain what the prejudice or additional burdens are. *See* Doc. 147 at 16. Accordingly, the Court denies her motion to compel Fordham to remove the confidential designations in its production.

---

[11] In her reply, Solomon raises additional disputes about other discovery requests, including interrogatories served on March 25, 2019, and a second set of document requests served on February 16, 2024. Doc. 146 at 9–10. "'Arguments may not be made for the first time in a reply brief.'" *Simpson v. City of New York*, 793 F.3d 259, 264 (2d Cir. 2015) (quoting *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir.1993). Courts are not required to consider newly raised arguments as it denies the opposing party the opportunity to respond. *Marcoux v. Farm Serv. and Supplies, Inc.,* 290 F. Supp. 2d 457, 484 n.28 (S.D.N.Y. 2003) (citing *United States v. Yousef*, 327 F.3d 56, 115, 171 (2d Cir.2003), *cert. denied*, 540 U.S. 933, 124 S. Ct. 353, 157 L.Ed.2d 241, 2003 WL 22005941 (Oct. 6, 2003). The Court thus limits its consideration to arguments about Solomon's first document request, although it notes that since Fordham's production of discovery is still ongoing, the other document requests are similarly unripe for judicial review.

5.  *Fordham's Alleged Misrepresentations to the Court*

Finally, Solomon requests that Fordham comply with their representations to the Court.  Doc. 132 at 23.  Specifically, she contests Fordham's representation that her status at Fordham remains unchanged, which "omit[s] a new adverse action in retaliation [taken on February 1, 2020]," namely the denial of her health benefits.  *Id.*  Fordham responds that this issue is not properly set forth in a motion to compel.  Doc. 143 at 21.

The Court agrees with Fordham.  Solomon further describes these issues in her Third Amended Complaint, *see* ¶¶ 374–278.  Accordingly, this claim is not properly raised in a motion to compel discovery, but instead will be addressed during the adjudication of Solomon's claims on the merits.  The motion to compel on this basis is also denied.

**B.  Fordham's Motion for a Protective Order**

Fordham requests a protective order to allow it to redact the names of peer reviewers and alleged comparator professors in the documents it produces in this action.  Doc. 143 at 13.  As discussed above, it largely rests its argument on the alleged privacy interests of its employees and the sensitive nature of the University's peer review process for faculty promotions.  *Id.* at 13–17.  Solomon opposes this request, and argues that February 19, 2019 protective order sufficiently addresses Fordham's concerns about employee privacy and sensitive information.  Doc. 147 at 10.

As stated above, a court may issue a protective order on a finding of "good cause" based on the need to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c)(1).  However, "[t]o establish good cause under Rule 26(c)," Fordham is required to make a "particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."  *Republic of Turkey v. Christie's, Inc.*, 312 F. Supp. 3d 385, 388 (S.D.N.Y. 2018).

Here, Fordham states that it has compelling need to redact the identities of the peer reviewers to "ensure that the peer review process is not disrupted by disclosure," Doc. 157 at 9, and has a similar need to redact comparator professors to "maintain the privacy of its employees," Doc. 143 at 15.  Furthermore, it argues that the February 14, 2019 protective order does not sufficiently mitigate these concerns because it does not include the possibility of redactions.

The Court agrees with Fordham.  As discussed above, courts have recognized that academic institutions have an interest in the confidentiality of the peer review process through allowing redactions.  *See, e.g.*, *Kaplan*, 2015 U.S. Dist. LEXIS 123256, at *5; *Sabharwal*, 2011 WL 477693, at *4; *Schneider*, 151 F.R.D. at 323.  Moreover, prior caselaw from this District supports Fordham's argument that a protective order is warranted.  In *Black v. New York University Medical Center*, a medical school professor brought gender discrimination claims pursuant to state and federal laws.  Black moved to compel disclosure of documents, including letters of outside evaluators submitted in the promotion review process and materials concerning deliberations on her candidacy for promotion.  No. 94-cv-9074 (NRB) (SS), 1996 WL 294310, at *3 (S.D.N.Y. June 3, 1996).  In granting the medical school's request for a protective order redacting the names of evaluators and committee members, the court noted that the "plaintiff has made no showing that disclosure of these persons are necessary or important (or even relevant)[.]"  *Id*. at *4.

As in *Black*, and as explained above, Solomon has also not adequately shown why the *names* of peer reviewers and of alleged comparator professors are relevant to her discrimination claims.  This is especially true in the light of the fact Fordham has already produced a key establishing the gender, age, and title of the alleged comparator professors.  Because the Court finds that Fordham has demonstrated good cause exists to issue a protective order allowing it to redact the names of peer reviewers and alleged comparator professors, its motion for a protective order is granted.

### C.  Fordham's Motion to Compel

Fordham moves to compel Solomon to undertake a "reasonable" search for responsive documents, "including but not limited to searches of her personal and Fordham issued email accounts, and to produce any additional responsive documents" in her custody or control.  Doc. 143 at 19.  In response, Solomon states that she is "producing from her Fordham and Gmail accounts and will continue to search and produce additional responsive emails and documents."  Doc.  147 at 5.  She also states that Fordham is already in possession of the documents it seeks to compel because it has access to her Fordham email account.  Doc. 147 at 7–8.

Parties have a duty to "conduct reasonable searches for documents responsive to discovery requests."  *Urban Outfitters, Inc. v. Hype Outfitters, Inc.*, No. 05-cv-6791 (HBP), 2006 WL 8461853, at *1 (S.D.N.Y. Oct. 30, 2006).  While Fordham confirms that it is in possession of documents contained in Solomon's Fordham email account, Doc. 152 at 7, this does not relieve Solomon of her duty to conduct a reasonable search of her personal Gmail account or her personal files.  Since Solomon represents that production from her Gmail account and personal files is ongoing, the Court finds that the motion to compel document production is not yet ripe.  *See Menard*, 2015 WL 5472724 at *1.[12]

Accordingly, the Court directs Solomon to complete her production of documents according to the discovery schedule set forth by the parties, and reminds her of her discovery obligations to conduct a reasonable search for responsive documents.  The motion to compel on this basis is therefore denied.

### IV.   CONCLUSION

For the foregoing reasons, Solomon's motion to compel is DENIED and Fordham's motion to compel is DENIED.  Fordham's motion for a protective order is

---

[12] Indeed, in its reply, Fordham represents that this is the first time in the litigation that Solomon has stated she will conduct a review and production of the documents contained in her Gmail account.  Doc. 152 at 7.

GRANTED.  The parties are directed to submit a proposed protective order by July 16, 2024.

The Court also directs:

(1) Fordham to produce a privilege log by August 2, 2024 listing: (a) any documents that are being withheld and the basis therefore; and (b) listing any redactions, apart from the names of peer reviewers and alleged comparators, as well as the basis therefore.

(2) Fordham to produce the documents in response to Solomon's First Document Request in accordance with the current discovery schedule; and

(3) Solomon to undertake a reasonable search for responsive documents in her possession and control, which should be produced in accordance with the current discovery schedule.

The Clerk of Court is respectfully directed to terminate the motions, Docs. 132 and 141.

It is SO ORDERED.

Dated:   July 2, 2024
         New York, New York

_____
EDGARDO RAMOS, U.S.D.J.

19