24 NOV 20 PM : 14

# No. 24-

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

In re Solomon,
*Petitioner Pro Se*

On Petition from the United States District Court
for the Southern District of New York
Civil Case No. 1:18-cv-4615
(Hon. Edgardo Ramos)

---

## PETITION FOR A WRIT OF MANDAMUS
## TO THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

---



Esther Solomon
Petitioner Pro Se
140 West 62nd Street
New York, NY 10023
(212) 263-6187

Oral Argument Requested

## TABLE OF CONTENTS

PRELIMINARY STATEMENT................................................................................................ 4

ARGUMENT........................................................................................................................ 8

THE MANDATE SHOULD HAVE BEEN IMPLEMENTED: THE "LAW OF THE CASE" ..... 8

Professor names essential to establishing comparator status.................................................. 11

STANDARD FOR MODIFYING A PROTECTIVE ORDER NOT MET ................................. 13

No improvidence in granting the 2019 Stipulated Protective Order ........................................ 14

Cravath to Defendant: "Produce materials without redactions, as required by the Federal Rules"................................................................................................................................... 15

Redacted examples demonstrate the lack of discovery, a "guessing game"............................. 16

Peer review obstruction contradicts Supreme Court precedent................................................ 18

The pattern against the protected professors requires unredacted records .............................. 21

THE DISTRICT COURT MODIFIES THE STIPULATED PROTECTIVE ORDER, GOING AGAINST THE MANDATE AND SETTING UP PETITIONER FOR FAILURE .................... 22

Petitioner admonished for the lack of comparator names and information.............................. 23

Petitioner repeatedly notified the District Court of Defendant's SPO violations..................... 24

The District Court denied Petitioner's Motion to Compel and granted Defendant a modified Protective Order allowing wholesale redactions. ..................................................................... 25

ASYMMETRIC ACCESS, PROPORTIONALITY, AND CASE LAW ...................................... 26

LACK OF ENFORCEMENT OF DISCOVERY, ORDERS, AND RULES................................ 28

Comparator subpoenas not enforced........................................................................................ 28

Discovery on contradictory representations to Federal authorities not enforced ..................... 29

Blanket confidentiality designations, contrary to the SPO, deemed acceptable....................... 30

PETITIONER MEETS THE CRITERIA FOR MANDAMUS RELIEF ...................................... 32

CONCLUSION..................................................................................................................... 32

Certificate Of Compliance...................................................................................................... 34

Certificate Of Service ............................................................................................................. 34

ATTACHMENTS .................................................................................................................. 35

## TABLE OF AUTHORITIES

**Cases**

*Berney v. Apple Inc.*, 2021 U.S. Dist. LEXIS 250174 (D. Conn. 2021) ......................... 18, 20, 26

*Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132; (2d Cir. 2016) ........... 30

*Brown v. City of Syracuse*, 673 F.3d 141(2d Cir. 2012) .................................................. 10

*Cheney v. United States District Court*, 542 U.S. 367 (2004) ...................................... 31

*Dass v. City Univ. of New York,* 2022, U.S. Dist. LEXIS 202699(S.D.N.Y. 2022) ...................... 20

*Gambale v. Deutsche Bank AG,* 377 F.3d 133 (2d Cir. 2004) ........................................... 14

*In re Bofi Holding, Inc. Secs. Litig.*, 2021 U.S. Dist. LEXIS 187305 (S.D.Cal. 2021) ............... 27

*In re City of New York* 607 F.3d 923 (2d Cir. 2010) ...................................................... 32

*In re Coudert Bros. LLP,* 809 F.3d 94 (2d Cir. 2015) ..................................................... 11

*In re Hornbeam Corp.*, 2020 U.S. Dist. LEXIS 145996 (S.D.N.Y. 2020) ................................ 13

*In re Teligent, Inc.*, 640 F.3d 53 (2d Cir. 2011 ........................................................... 13

*In re United States*, 945 F.3d 616 (2d Cir. 2019) .......................................................... 5

*Kassman v. KPMG LLP,* 416 F. Supp. 3d 252 (S.D.N.Y. 2018) .................................. 22

*Kerman v. City of New York*, 374 F.3d 93 (2d Cir. 2004) ............................................... 10

*Lipian v. Univ. of Mich.*, 2020 U.S. Dist. LEXIS 85631 (E.D. Mich. 2020) ................................ 27

*Mahulawde v. Fashion Inst. of Tech.*, 2024 U.S. Dist. LEXIS 13937 (S.D.N.Y. 2024) ......... 19, 20

*Malzberg v. New York Univ.* 2020 U.S. Dist. LEXIS 116678 (S.D.N.Y. 2020) ............................ 22

*Mgmt. Registry v. A.W. Cos.* 2020 U.S. Dist. LEXIS 14682 (D. Minn. 2020) ............................ 18

*Mirza v. Orange Reg'l Med. Ctr.,* 2024 U.S. App. LEXIS 14748 (2d Cir. 2024) ......................... 13

*Moll v. Telesector Res. Grp., Inc.*, 760 F.3d 198 (2d Cir. 2014) .................................... 22

*Sacerdote v. New York University* 9 F.4th 95 (2d Cir. 2021) ....................................... 29

*Solomon v. Fordham Univ. Admin.*, 2023 U.S. App. LEXIS 23494 (2d Cir. 2023) ............ 4, 11, 34

*Trireme Energy. v. Innogy Renewables,* 2022 U.S. Dist. LEXIS 39589 (S.D.N.Y. 2022) ............ 20

*United States v. Ben Zvi*, 242 F.3d (2d Cir. 2001) ........................................................ 11

*University of Pennsylvania v EEOC,* 493 U.S. 182 (1990) ................................................ 5, 18, 23

*Vengalattore v. Cornell Univ.*, 2022 U.S. App. LEXIS 15174 (2d Cir. 2022) ............................. 22

*Weinstock v. Columbia Univ.*, 1995 U.S. Dist. LEXIS 14003 (S.D.N.Y. 1995) .......................... 27

## PRELIMINARY STATEMENT

Petitioner Esther Solomon, proceeding pro se, respectfully submits this petition for a Writ of Mandamus, seeking this Court's intervention to vacate the post-Mandate discovery orders and address issues that place insurmountable obstacles to Petitioner's ability to further her case. The District Court's discovery rulings enable Defendant to evade their fundamental discovery obligations and reward the University's past order violations and lack of accountability.

The Second Circuit's 2023 Mandate reinstated Petitioner's claims of disparate treatment, retaliation, and unequal pay, as well as state law claims, including defamation and breach of fiduciary duty. The Mandate also highlighted that Fordham redactions of comparator Professor names interfered with Petitioner's ability to establish comparator status for her Title VII and Equal Pay Act (EPA) claims in this university professor case with a pattern. See September 27, 2023 Mandate,[1] Case 22-887, Doc. 115, (Attachment 1).

On remand, the District Court based its discovery rulings on an erroneous view of the Mandate and an incorrect and prejudicial assessment of the evidence. Due to the 2024 Orders, discovery is now so restricted that it compromises the

---

[1] Referenced in: *Solomon v. Fordham Univ. Admin.*, 2023 U.S. App. LEXIS 23494 (2d Cir. 2023)

4

Petitioner's substantial rights. The Petitioner is not allowed to establish the facts
necessary to support her claims.

This petition is not made lightly since a Writ of Mandamus is an
extraordinary remedy, granted only in exceptional circumstances where three
conditions are met: (1) the petitioner has no other adequate means to obtain relief;
(2) the petitioner has a clear and indisputable right to the writ; and (3) the issuing
court is satisfied that the writ is appropriate under the circumstances. See *In re
United States*, 945 F.3d 616, 623 (2d Cir. 2019). This petition will demonstrate that
these conditions are met, that this remedy is appropriate, and that no other means
are available to the Petitioner to permit her to prove her case.

Context

The District Court did not implement the Mandate but went contrary to its
rulings, ordering redactions of comparator names at several levels, precluding
meaningful access to every comparator and professor's peer review records, the
focus of discrimination inquiry. It did not enforce discovery requests,
interrogatories, or the fourteen outstanding federal subpoenas for unredacted
comparator personnel files. It granted Defendant's cross-motion to replace the
valid 2019 Stipulated Protective Order, with which they failed to comply, with a
modified protective order, going against the Mandate, the Second Circuit's strict
rules on modifying protective orders, the proportionality requirement for discovery,

5

and Supreme Court precedent in University Title VII professor cases per the
*University of Pennsylvania v EEOC,* 493 U.S. 182 (1990).

This Title VII, ADEA, and pay discrimination case involves extraordinary
due process violations against this tenured Professor, who was secretly reported to
federal authorities as terminated without cause and without due process. Fordham
made contradictory representations about her status to different Federal authorities,
asserting to the District Court and Second Circuit Court of Appeals that she
remains a tenured professor while reporting to the US Department of Labor and the
IRS that she has been terminated and not a faculty employee, as late as in 2023.
Fordham has not provided these records despite requests.

This case also involves a pattern of discrimination against professors of
protected classes, who were removed and replaced by their colleagues.  While
disclosure, transparency of peer review records, and accountability are necessary in
these cases, the District Court endorsed the opposite: elimination of information
through double redactions for comparator professor records, precluding data to
establish the pattern, and imposing a wall of secrecy, lack of disclosure, one-sided
discovery obstructions and stonewalling with impunity.

The post-Mandate District Court Orders to be addressed include:[2]

---

[2] The Appendix accompanying this Petition includes the 2024 Court Orders, both
parties' motions, and the January 11, 2024 Hearing by Docket number in
chronological order.

(1) July 2, 2024 Order, Dkt. 156, which denied Petitioner's motion to compel

discovery:

> "Motion to Compel Compliance with Subpoenas, Compliance with
> Document Requests, and Compliance with Representations to the Court."

Petitioner initially filed this Motion on March 17, 2020, Dkt. 70. On remand, she

refiled the motion on January 18, 2024 (Dkt. 132). (see also letter, Dkt. 134).

(2) October 2, 2024 Order, Dkt. 164, which denied Petitioner's Motion for

Reconsideration:

> "Motion for Reconsideration of the Portion of the July 2, 2024 Order that
> Granted Defendant a New Modified Protective Order Replacing the Valid
> 2019 Stipulated Protective Order, Dkt. 24, Allowing Name Redactions that
> Endorse Defendant Violations"

The February 14, 2019 Stipulated Protective Order ("SPO") governing discovery

in this case is in Attachment 2. (Dkt. 24).

The District Court did not meet its obligations by:

(a) not following "the law of the case," established by the 2023 Second Circuit's
Mandate.

(b) allowing the Defendant to repeatedly and admittedly violate the 2019
Stipulated Protective Order ("SPO") for years prejudicing the Petitioner.

(c) issuing a modified protective order authorizing the improper redactions and
violating the Second Circuit standard against replacing protective orders.
The new protective order effectively sanctions the Defendant's prior
violations and authorizes further violations.

(d) not enforcing its Orders and Federal rules, denying all three prongs of her
Motion to Compel Discovery, resulting in prejudice to Petitioner. She is no
longer afforded an opportunity to establish the facts necessary for her
reinstated claims.

Petitioner has repeatedly sought discovery relief from the District Court –

through hearings, discovery motions, reconsideration motions, and letter requests,

both before and after the Mandate, all to no avail. Defendant's ongoing violations

of Court Orders and discovery obligations with impunity have effectively deprived

Petitioner of crucial evidence necessary to build her case, including essential paper

discovery for depositions, summary judgment, and trial. A Writ of Mandamus is

needed to restore the integrity of the judicial process and prevent further injustice.

This Court has jurisdiction under the All Writs Act, 28 U.S.C. § 1651(a),

which authorizes the issuance of writs of mandamus.

ARGUMENT

THE MANDATE SHOULD HAVE BEEN IMPLEMENTED: THE "LAW OF
THE CASE"

On appeal, the Second Circuit issued its 2023 Mandate with specific

implications for discovery, which should have been binding on the District Court.

Among them, this Court's decision underscored that redactions would hinder the

discovery process and Petitioner's ability to establish her discrimination claims

under Title VII and the EPA and prove which tenured professors qualify as

comparators. The District Court did not implement the Mandate directives to

enable discovery but placed additional post Mandate discovery obstacles so that

Petitioner lacks the necessary evidence to address her reinstated claims.

In denying Petitioner's Reconsideration Motion, the District Court stated "that the Second Circuit did not "review or issue an order related to discovery issues" (Dkt. 164, p. 4, n. 5). The incorrect conclusion that the Mandate has no discovery implications has significant adverse consequences on Petitioner's discovery post-remand.

The District Court did not enforce discovery corrections in 2024—requested by Petitioner—to address the Mandate's directives but rewarded Defendant's violations. Despite the Mandate's emphasis on comparators, it did not enforce the fourteen subpoenas for the comparator professors' unredacted personnel files, which Defendant never produced. The District Court did not implement the Second Circuit's clear judgments on several issues, including the broadened time scope beyond the statute of limitations, the impropriety of comparator name redactions, and the need for data to prove the reinstated pay claims by both EPA and Title VII, but the District Court declined to address.[3]

---

[3]     In its July 2, 2024 Order (Dkt. 156, fn. 11), the District Court declined to address or enforce Defendant's lack of any responsive production to Petitioner's February 2024 Second set of document requests, nor to total lack of response to her 2019 or 2024 Interrogatories, saying she raised the issues in her April 15, 2024 Reply for her motion to compel, (Dkt 146). However, for a *Pro se* Plaintiff, the Reply information should have been considered.

The implication was that Defendant's lack of reply rights would prejudice them. However, given the Defendant's Cross-motion, they had a chance to reply later, and did with their second attorney Declaration (Dkt.151) and Reply Memorandum (Dkt 152) on May 7, 2024.

The Second Circuit has emphasized that the "law of the case" doctrine
prevents the re-litigation of issues explicitly or implicitly resolved by an appellate
court. *Brown v. City of Syracuse*, 673 F.3d 141, 147 (2d Cir. 2012). Here, the
Mandate created an expectation that discovery would proceed with transparency,
enabling the disclosure of redacted comparator names. Yet, the District Court
disregarded this directive and ordered the redaction of comparator names,
obstructing their peer review records and Petitioner's ability to connect essential
data. The District Court's deviation from this principle constitutes clear error
warranting mandamus.

"Where a case has been decided by an appellate court and remanded, the
court to which it is remanded must proceed in accordance with the mandate and
such law of the case as was established by the appellate court." *Kerman v. City of
New York*, 374 F.3d 93, 109 (2d Cir. 2004). The "mandate rule prevents re-

---

The District Court considered Defendant's Reply submissions and presented
them as undisputed facts, despite Petitioner's strong dispute (Dkt. 154, 155) not
mentioned in the Order. In erroneously ruling that Defendant had produced all
fourteen Comparator Personnel files (Order Dkt. 156, pp. 5-6) and Petitioner's
complete Personnel file, the Court denied Petitioner's motions to compel and
declined to enforce the subpoenas.

Yet, on June 6, 2024, Petitioner had requested leave for a Surreply (Dkt 154,
denied Dkt. 155) and presented facts disputing Defendant's incorrect assertions of
compliance, but her documentation was rejected without consideration, any due
process or any evidentiary hearing as would be fair for such fact-intensive
discovery issues.

10

litigation in the district court not only of matters expressly decided by the appellate

court but also precludes re-litigation of issues impliedly resolved by the appellate

court's mandate." *Brown*, 673 F.3d at 147. "Whether we have already considered

and rejected the basis for a given motion is dependent on the contours of the

mandate, which "impliedly decides at least enough issues to allow it to be

effective, even if not all issues are made explicit." *In re Coudert Bros. LLP,* 809

F.3d 94, 101-02 (2d Cir. 2015), "To determine whether an issue remains open for

reconsideration on remand, the trial court should look to both the specific dictates

of the remand order as well as the broader spirit of the mandate." *United States v.*

*Ben Zvi*, 242 F.3d at 95 (2d Cir. 2001).

Professor names essential to establishing comparator status

The Second Circuit Mandate explicitly acknowledged the necessity of comparators'

information and the need for unredacted names to address the needs of this

discrimination, retaliation, and pay case. The 2023 Mandate states:

> "The district court erred in concluding that Solomon failed to identify
> similarly situated comparators, and thus did not sufficiently plead an EPA
> claim or a Title VII claim.  As discussed above, she alleged that she and the
> tenured male professors were paid different wages, though they had the same
> job responsibilities, were subject to the same evaluation standards, and were
> in the same practice area (Management Systems).[1] [Footnote 1]
> Footnote 1: "Solomon alleges that Fordham redacted the comparators' names
> when it sent to her counsel a list of male professors' salaries, which may
> explain why she does not allege the specific job duties of each professor."
> *Solomon v. Fordham Univ. Admin.*, 2023 U.S. App. LEXIS 23494 (2d Cir.
> 2023). (emphasis added)

The paragraph above, together with its Footnote 1, points to Fordham's comparator

name redactions as an obstacle to connecting information across various sources

and comparing jobs anonymously to establish comparator status.

Nor did the District Court acknowledge the statements by the three Judges during

Oral Argument, which stressed the importance of comparator discovery to

establish the discrimination claims. June 9, 2023 Transcript, Second Circuit Oral

Argument, Dkt. 126, pp. 4-19, Attachment 3:

> Judge Carney: "Yeah, I'd like to hear about the pay claim, please, because
> the table that she induces shows a pretty dramatic differential between the
> male purported comparators and her own pay scale over a period of time."

The reference is to a Table depicting annual salaries for Petitioner and eight male

comparator professors, with names redacted.  This demonstrates that her

compensation was about 50% of that of her male colleagues. Pay Table

(Attachment 4).

> Ms. McLaughlin, Fordham attorney: "Correct. And then and she developed
> the chart that you were referring to earlier today, again without giving any
> inkling in her pleading as to who among those male professors were
> similarly situated to her."

> Judge Lee: "Wasn't there an issue with regard to the information that was
> provided, it didn't fully disclose the salaries for specific professors for
> specific positions. I mean, isn't that a little bit of a hindrance to fully fleshing
> out the comparators?"

> Judge Calabresi: "Counsel, counsel. This is 12(b)(6). We have said that in
> summary judgment, there has to be a fair sign that the things are the same,
> and often that's a jury question. But isn't it premature for such a thing to be
> decided in 12(b)(6)?  When, she could come in evidence which shows that
> though titles and things [00:29:30] are somewhat different, but basically

these people are valid comparators. Haven't we done that in any number of cases?" p. 11

The District Court did not implement the Mandate, which is inconsistent with the "law of the case," warranting mandamus relief.

STANDARD FOR MODIFYING A PROTECTIVE ORDER NOT MET

On remand, the District Court, rather than sanctioning Defendant's violations, granted their stealth motion for a modified protective order, authorizing their redactions on July 2, 2024. Granting this modified protective order is inconsistent with the Second Circuit standard, which precludes modification of a Protective Order when a party relied on it (Petitioner here) absent improvidence in its granting or absent extraordinary circumstances or compelling need (not met here). See *S.E.C. v. TheStreet.com*, 273 F.3d 222, 229 (2d Cir. 2001).

"In this Circuit, there is a strict standard for modification of a protective order entered by a district court. See *In re Teligent, Inc.*, 640 F.3d 53, 59 (2d Cir. 2011). Under this, "it is 'presumptively unfair for courts to modify protective orders which assure confidentiality and upon which the parties have reasonably relied.'"... "Once a court enters a protective order and the parties rely on that order, it cannot be modified 'absent a showing of improvidence in the grant' of the order or 'some extraordinary circumstance or compelling need.'" *In re Hornbeam Corp.*, 2020 U.S. Dist. LEXIS 145996 (S.D.N.Y. 2020) (citations omitted). Recently, this Court endorsed the refusal to vacate or modify a protective order by the *Mirza*

13

District Court because the opposing party had relied on the stipulation during

discovery. *Mirza v. Orange Reg'l Med. Ctr.,* 2024 U.S. App. LEXIS 14748 (2d Cir.

2024).

No improvidence in granting the 2019 Stipulated Protective Order

Defendant does not meet the burden of demonstrating "improvidence in the

grant' of the SPO or 'some extraordinary circumstance or compelling need for the

District Court to vacate it.[4] There is no improvidence or exceptional circumstances

but to the contrary.

That Protective Order was stipulated between Cullen and Dykman, the

Fordham attorneys, and Cravath, Swaine & Moore, Petitioner's pro bono discovery

attorneys at the time.  Defendant negotiated and willingly entered the Stipulation

with its sophisticated law firm.

On February 14, 2019, the District Court reviewed and approved the stipulation

and signed the Stipulated Protective Order (Dkt. 24, Attachment 2)

During the January 29, 2020 Pre-motion conference, the District Court

praised its 2019 SPO, noting its protection of highly sensitive information:

> The Court: "That's the reason for the stipulation. There's a protective order
> in place, and there's a protective order in place for a very good reason in this

---

[4] Appellate Courts review a decision "to vacate or modify a protective order for
abuse of discretion." *Gambale v. Deutsche Bank AG,* 377 F.3d 133, 139 (2d Cir.
2004)

14

case because you're dealing with -- you're alleging particular decisions that were made with respect to your tenure; and in order to prove your case, you have to necessarily rely on information concerning comparators, and that is very highly sensitive information that neither you nor anyone else want disseminated publicly." (Attachment [5] Dkt. 67, p. 9)

The circumstances have remained the same since.

### Cravath to Defendant: "Produce materials without redactions, as required by the Federal Rules"

However, after negotiating and agreeing to its terms, Defendant immediately

violated the terms of the Stipulated Protective Order. This is particularly so

regarding unauthorized redactions in multiple locations and by wholesale

designation of every document as "confidential," contrary to the SPO, which

precludes certain groups of documents from such designations.

On April 10, 2019, the Cravath firm wrote Fordham on Defendant's ongoing

violations regarding the redactions and their failure to abide by the Federal Rules:

"With regard to the redacted documents, you represented to us during the parties' March 15 meet and confer that you needed to confirm whether Fordham would agree to produce unredacted HR, Provost and Gabelli files. You reiterated this promise during our March 21 meet and confer, and again during the parties' April 1 meet and confer. We have now been awaiting a response from you for more than three weeks. *Please confirm immediately whether Fordham will agree to produce these materials without redactions, as required by the Federal Rules.*" [5] (emphasis added) (Attachment 5, Dkt. 67, p. 23).

---

[5] Fordham in its April 11, 2019 response to Cravath asserted, for the first time, that subpoenas would be required to produce unredacted Personnel files, pointing to the Fordham Statutes §4-07.41 and §4-07.42. on Subpoenas for personnel Files and their service. Petitioner in November 2019 issued Fourteen S.D.N.Y. subpoenas for the comparator professors' personnel files and a subpoena for her own file. Fordham objected to the subpoenas, never notified the professors in violation of its

Defendant has also not produced a privilege log on documents withheld nor on

their multiple unauthorized redactions, either in their 2019 or 2024 productions.[6]

Redacted examples demonstrate the lack of discovery, a "guessing game"

Examples of comparator redacted pages are in Attachment 6. In peer review

records, double redactions of comparator names obliterate any peer review data for

them. Redacted are a) names of the comparator subject to review, b) names of peer

reviewers who are comparators, as they are the tenured professor decision makers.

Even the supposed identifying numbers are sometimes omitted, even as peer

reviewers (e.g., professor #1, #2, #114, etc.). Many documents are essentially void

of information.[7] Petitioner submitted many of these exhibits in previous filings

including her July 6, 2024 Surreply request, Dkt.154,

   Defendant had produced redacted, anonymous comparator sheets in

2019listing schedules, duties, and compensation details from 2008-2018, which

---

own statutes and has not yet fully produced Petitioner's or comparator personnel
files, which remains incomplete and redacted. Attachment 5, Dkt. 67, pp 16, 24,
25, 27.

[6] But the July 2, 2024 Order stated: "(1) Fordham to produce a privilege log by
August 2, 2024 listing: (a) any documents that are being withheld and the basis
therefore; and (b) listing any redactions, apart from the names of peer reviewers
and alleged comparators, as well as the basis therefore."[6] Dkt. 156, p. 19.

[7] The range of redactions included entire pages, budget numbers in financial
documents, names of professors receiving additional compensation, portions of
meeting minutes, etc. No privilege logs for these have been provided to date.

.

left Petitioner unable to identify individual comparators. For example, Petitioner

could not Match anonymous records with Professors Hollwitz and Pirson, whose

names were cited by Defendant and the District Court Orders disputing their

comparator status. At the January 29, 2020 Pre-Motion Hearing, Petitioner

explained the challenges posed by redactions:

> "So, I have Professor 1, Professor 2, Professor 3, so they have turned
> discovery into a guessing game, and this is inconsistent with the [Protective
> Order] stipulation." and:
> "…I thought if there is a confidentiality stipulation that the parties have to
> abide by it…" Attachment 5, Dkt. 67, pp. 20 and 11).

However, "[t]he very essence of Title VII is comparative evidence: Was the

Plaintiff treated differently from persons not in her protected group?" …The

defendant would render this evidence irrelevant by allowing the accused

discriminator to state that he never compared plaintiff to anyone else. The plaintiff

is entitled to test this assertion and not rely on the self-serving declaration of the

decisionmaker." *Weinstock v. Columbia Univ.*, 1995 U.S. Dist. LEXIS 14003

(S.D.N.Y. 1995)

While trying to explain the redactions violating the SPO, a Fordham attorney

asserted to the Court they made no substantive redactions while indicating they

redacted "irrelevant information:"

> Ms. Dryer, Fordham Attorney: …"Fordham is not hiding anything."
> The Court: "Was there anything substantive in the files of the comparators
> that was redacted?"

Ms. Dryer: "No, your Honor. Assuming Dr. Solomon has a case -- a discrimination case, a pay equity case, any other type of claim – nothing was redacted but the biographical information or *irrelevant information*…" (emphasis added) (Attachment 5, Dkt. 67, p 17).

However, redactions based on "lack of relevance" have been rejected by

courts as inconsistent with Federal Rules. Furthermore, "the weight of authority in

the Second Circuit goes against allowing a party to redact information from

admittedly responsive and relevant documents 'based on that party's unilateral

determinations of relevancy.'" "Redactions on the grounds of "irrelevance are

generally impermissible, especially where . . . a confidentiality stipulation and

order . . . is in place." *Berney v. Apple Inc*., 2021 U.S. Dist. LEXIS 250174 (D.

Conn. 2021). Another Court noted that "the practice of redacting documents based

on claims that portions of it are not relevant is 'fraught with the potential for

abuse." *Mgmt. Registry v. A.W. Cos*. 2020 U.S. Dist. LEXIS 14682 (D. Minn.

2020).

Peer review obstruction contradicts Supreme Court precedent
The obstruction of peer review records **by** the July 2024 Order through redactions

in records of all comparator Professors and Petitioner, contradicts the Supreme

Court precedent highlighting the requirement for their disclosure. In *University of*

*Pennsylvania,* the Supreme Court declined to apply any privilege to shield peer

review records requested by the University in a Professor Title VII case and

enforced the EEOC subpoenas for the personnel files. It emphasized the

importance of addressing discrimination in educational institutions and the

Congressional intent.

Since all comparators are tenured Professors, they are also the peer

reviewers. They are decision-makers in each other's reviews for promotion, tenure,

various committee deliberations, and disciplinary hearings. Fordham redacted both

sets of comparator names, as the individual evaluated and as peer reviewers,

precluding any usable peer review information in the comparator records.

In declining to apply any privilege, the *Pennsylvania* Court stated:

> "Clearly, an alleged perpetrator of discrimination cannot be allowed to pick
> and choose the evidence which may be necessary for an agency
> investigation. There may be evidence of discriminatory intent and of pretext
> in the confidential notes and memoranda which the [college] seeks to
> protect…*The peer review material itself must be investigated to determine
> whether the evaluations are based in discrimination and whether they are
> reflected in the tenure decision." University of Pennsylvania*, 493 U.S. at
> 193. (emphasis added)

Since then, it has been the standard for university discrimination cases

"[E]ven assuming the validity of defendants' claim of a chilling effect, the

documents here appear to be probative—potentially, centrally probative—of the

allegations at issue. Plaintiff will find them instructive in fashioning discovery and

potentially organizing a trial. Plaintiff's need for the documents requested far

outweighs "any potential harm caused to defendants by disclosure." *Mahulawde v.

Fashion Inst. of Tech.*, 2024 U.S. Dist. LEXIS 13937 (S.D.N.Y. 2024). A different

case also shows redaction inappropriateness, since a "liberal discovery approach is

meant to allow a plaintiff to independently determine who constitutes her

competitors for a discrimination claim." *Dass v. City Univ. of New York,* 2022, U.S.

Dist. LEXIS 202699 (S.D.N.Y. 2022).[8]

Furthermore, the SPO provides confidentiality. "The standing Protective

Order and the confidentiality designations available pursuant to that order are

typically deemed sufficient protection for the privacy interest of non-parties" See

*Berney v. Apple Inc.*, 2021 U.S. Dist. LEXIS 250174 (D. Conn. 2021).

"[U]nilateral redactions based on concerns about personal privacy or business

sensitivity are routinely disallowed, particularly where a protective order is in

place allowing the parties to designate that information "confidential" and restrict

its use" *Trireme Energy Holdings, Inc. v. Innogy Renewables US LLC,* 2022 U.S.

Dist. LEXIS 39589 (S.D.N.Y. 2022)

---

[8] There is no case supporting comparator name redactions, and the District
Court justified the redactions on the distinguishable *Black v. New York Univ.
Medical Ctr.,* 1996 U.S. Dist. LEXIS 7632 (S.D.N.Y. 1996) case which does not
involve comparators. *Black* did not grant a "protective order redacting the names of
committee members and evaluators." Erroneous is the attribution of lack of
relevance per *Black* to comparators and peer reviewers here, who are decision-
makers at Fordham. The statement that *Black* "made no showing that disclosure of
these persons are necessary or important (or even relevant)" refers to outside letter
authors, explicitly non-decision makers, per *Black* footnote 9. (See Orders Dkt 156
p. 17, Dkt 164 p. 7)

The Defendant used comparator names in their defense in their memoranda and affidavits (Crooker and others), which documents the relevance of names for "claims and defenses." The District Court also used comparator names in dismissing Plaintiff's Complaints.

<u>The pattern against the protected professors requires unredacted records</u>

Establishing the pattern against the protected professors in this case requires data from different sources, especially records from peer review and other investigations, which is obstructed the by redacted evidence. They can potentially shed light on how procedural irregularities were used as means to discriminate.

The professors here include subtypes: perpetrator professor comparators-competitors, protected-class victims, comparators, and others. Anonymity and secrecy through name redactions prevent distinguishing among the types and account for their actions in peer reviews, promotions, and false charges. Each has multiple roles with different attributes—some are administrators with varying student classes, privileges, and salaries. Tying all that information for the jury without being able to assign the facts to names will make fleshing out the comparators near impossible. Identifying and addressing the pattern of discrimination will also serve the public interest, helping address discrimination in colleges and Universities.

21

"A disparate treatment claim often includes a combination of strong statistical evidence of disparate impact coupled with anecdotal evidence of the employer's intent to treat the protected class unequally." *Kassman v. KPMG LLP,* 416 F. Supp. 3d 252,284 (S.D.N.Y. 2018).

"Evidence relating to company-wide practices may reveal patterns of discrimination against a group of employees, increasing the likelihood that an employer's offered explanation for an employment decision regarding a particular individual masks a discriminatory motive." *Malzberg v. New York Univ.* 2020 U.S. Dist. LEXIS 116678 (S.D.N.Y. 2020) [citing]*Moll v. Telesector Res. Grp., Inc.*, 760 F.3d 198, 204 (2d Cir. 2014). This evidence, with the names, is essential for Petitioner's case. There is a need for comparator identities regarding their roles in failures to investigate Petitioner's complaints, in filing false charges against their colleagues, and as actors in Petitioner's secret detenuring and termination without due process. The significance of due process, tenure, and university professors was highlighted in *Vengalattore v. Cornell Univ.*, 2022 U.S. App. LEXIS 15174 (2d Cir. 2022).

## THE DISTRICT COURT MODIFIES THE STIPULATED PROTECTIVE ORDER, GOING AGAINST THE MANDATE AND SETTING UP PETITIONER FOR FAILURE

In granting the modified protective order, the District Court reverses the burden of proof from Defendant to Petitioner, blaming her for not proving

comparator relevance. The Order also uses the wrong standard, although first citing the correct standard FRCP 26 (c)(1) for granting a Protective Order, citing *Gambale v. Deutsche Bank*: "The party seeking a protective order bears the burden of establishing that good cause for the order exists." …which require "submitting affidavits or offering evidence revealing the nature of the burden," not done. ( Dkt. 156 pp. 8-9).

The Protective Order was granted because "Fordham states that it has compelling need to redact the identities of the peer reviewers (also comparators) to "ensure that the peer review process is not *disrupted by disclosure…"* Dkt. 156 p. 17, (emphasis added). But this contradicts disclosure as a necessity rather than an obstacle: "*Disclosure of peer review materials* will be necessary in order for the Commission to determine whether illegal discrimination has taken place. Indeed, if there is a "smoking gun" to be found that demonstrates discrimination in tenure decisions, it is likely to be tucked away in peer review files." *University of Pennsylvania* (emphasis added)

Petitioner admonished for the lack of comparator names and information

The double standard is also reflected in previous rulings, where the District Court blamed Petitioner for not alleging the redacted comparator names and specific job content. Then, it used that as a basis for dismissing her claims. As the District Court stated:

23

"She does not allege their names or additional details about their job content, title, or responsibilities." Order, Dkt. 85, p. 13; on leave to file her Third Amended Complaint.

Along a similar vein, the June 4, 2021 Order states:

"However, because this chart does not include an explanation of these individuals' job titles, duties, functions or ranks, the Court has no basis to infer that these individuals are similarly situated to her." Dkt. 94, p. 9, dismissing the Third Amended Complaint (The chart is the Pay Table, Attachment 4).

The Court previously emphasized the comparator evidence for Petitioner's case.

Dkt. 67, p. 9

<u>Petitioner repeatedly notified the District Court of Defendant's SPO violations</u>

The Order denying Petitioner's Reconsideration Motion states (Dkt. 164, pp 6-7): "Solomon next argues that Fordham repeatedly violated the February 19, 2019 Protective Order …Solomon did not present these arguments in her briefing, and the court will not consider them for the first time on a motion for reconsideration." This is an erroneous finding, as consideration should have been given to the length of Defendant's non-compliance and the prejudice to Petitioner.

The District Court has been on notice of Defendant's multiple breaches of SPO for years regarding multiple unauthorized redactions, the absence of privilege logs, and confidentiality designations of every document contrary to the SPO terms. These notices include:

- Petitioner's April 17, 2019 letter to the District Court, citing Cravath's statement, "produce …unredacted as required by the Federal Rules" (Dkt. 44)

24

- Petitioner's Dec 17, 2019 Letter motion requesting a pre-motion conference on discovery (Dkt. 62).
- Pre-Motion Conference on Discovery, January 29, 2020 (Transcript, Dkt. 67).
- Petitioner's March 2020 Motion to Compel Compliance with Subpoenas, Document Requests, and Representations to the Court, March 17, 2020 (Dkt. 70, pp12-17).
- January 11, 2024 Post-Mandate Hearing regarding subpoenas, the SPO (Transcript, Dkt. 138)
- January 18, 2024 refiling of Petitioner's Motion to Compel Compliance with Subpoenas, Document Requests, and Representations to the Court (Dkt. 132, pp 12-17).
- Petitioner's Reply for her Motion to Compel Discovery, April 15, 2024 (Dkt.146).
- Petitioner's Opposition to Defendant's Two Cross-Motions, April 15, 2024 (Dkt. 147).
- Petitioner's Letter Motion Requesting Leave for a Surreply, June 6, 2024 (Dkt. 154).
- Petitioner's Motion for Reconsideration, July 16, 2024 (Dkt.158).
- Petitioner's Reply for Reconsideration Motion, August 3, 2024, (Dkt. 161).
- Defendant's March 1, 2024 Declaration (Dkt. 142, ¶¶ 23, 25, 32, 33) and Motions also acknowledged their redactions and confidentiality designations contradicting the SPO.

The District Court denied Petitioner's Motion to Compel and granted Defendant a modified Protective Order allowing wholesale redactions.

Defendant acknowledged its ongoing violation of the SPO in its May 7,

2024 request for another protective order, framing it as follows:[9]

"Fordham is entitled to an additional protective order related to the redaction of the names of peer reviewers and alleged comparator professors in the documents *it has, and will continue to produce,* to Plaintiff." (emphasis added) Dkt. 152 at 4. May 7, 2024 Reply Memorandum

The District Court granted Defendant's request on July 24, 2024:

---

[9] Fordham did not mention its wholesale redactions of entire pages, parts of pages, etc.

"Because the Court finds that Fordham has demonstrated good cause exists to issue a protective order allowing it to redact the names of peer reviewers and alleged comparator professors, its motion for a protective order is granted."[10]  Dkt. 156, p.17

Fordham received forgiveness for its past violations and a license for future ones.  It officially authorized the wholesale redaction of peer review records and comparator anonymity, depriving Petitioner of any comparator or peer review data.[11]

ASYMMETRIC ACCESS, PROPORTIONALITY, AND CASE LAW

In granting the modified protective Order, the district court deviated from the proportionality requirement under discovery Rule 26(b)(1). The putative new protective order creates a double standard and prejudices Petitioner with asymmetric discovery. Defendant has full access to the names and comparator Professor personnel files and all their peer review records while precluding access from Petitioner.

Defendant has already used this information and has placed the names of comparators at the center of its defenses.[12] Fordham presented the unredacted

---

[10] No new protective order is now in effect. Defendant never submitted a proposed protective order to either the Court or Petitioner by July 16, 2024, inconsistent with the July 2 Order (Dkt 156 p. 19).

[11] Regarding peer reviewers, the Declaration only discloses in ¶ 25 "Within Plaintiff's files, the names of peer reviewers were redacted…".  It omits the crucial fact that peer reviewer names were redacted from the *records of all comparators*.

[12] "The defendant implicitly acknowledges that the plaintiff has established the relevance of these documents given that the defendant produced them in response

comparator names and schedules of Professors Hurley, Hollwitz, Pirson, Stoner, and Wright in their first motion to dismiss. Fordham used the names and schedules of these comparator professors (data never produced to Petitioner) as Exhibits attached to VP's Dr. Crooker Affidavit (Dkt. 56) and submitted them in July 2019 in support of Fordham's Motion to Dismiss. The University used them as its Title VII defense.

By preventing Petitioner from accessing the same information, the District Court has imposed an asymmetrical discovery burden inconsistent with the proportionality principles of FRCP 26(b)(1). Courts have emphasized that discovery should not be one-sided, and the deliberate withholding of comparator information constitutes an abuse of discretion. See *In re Bofi Holding, Inc. Secs. Litig.*, 2021 U.S. Dist. LEXIS 187305 (S.D.Cal. 2021). "Such access to asymmetric discovery would put Plaintiff at a trial disadvantage, however, for Defendant would have access to a pool of potential witnesses, who were already questioned [by the OIE], that Plaintiff would not be able to reach." *Lipian v. Univ. of Mich.*, 2020 U.S. Dist. LEXIS 85631 (E.D. Mich. 2020).

---

to the Initial Discovery Protocols. See *Berney v. Apple Inc*., 2021 U.S. Dist. LEXIS 250174 (D. Conn. 2021)**.**

## LACK OF ENFORCEMENT OF DISCOVERY, ORDERS, AND RULES

Comparator subpoenas not enforced

The District Court dismissed all three prongs of Petitioner's motion to
compel discovery and did not enforce fourteen subpoenas for the comparator
Professor personnel files that have not been produced.[13] However, it relied only on
the Defendant's filing, which admitted the redactions. The redactions alone, by
definition, make personnel files not complete.

The Order presented as an undisputed fact that the subpoenaed personnel
files of Petitioner and fourteen comparators' personnel files were entirely
produced.[14] Petitioner strongly disputed this in her request for a Surreply, Dkt. 154.
The Order states:

> "Fordham produced Solomon's *entire* personnel file. Id. at ¶¶ 13-15.
> Fordham also produced the personnel files for 14 alleged comparator
> professors, as well as their faculty activity reports and W-2 records. Id. at ¶¶
> 19-20; Doc. 152 at 5." Order Dkt 156, pp 5-6.

At the March 3, 2020 District Court Hearing, Petitioner read into the record

Fordham's assertions to Cravath that subpoenas warrant unredacted files. The

---

[13] In discrimination cases, "granting plaintiff's discovery request for the
employment files of similarly-situated employees…allow[s] plaintiff to attempt to
establish discrimination," citing *Weinstock v. Columbia Univ.*, 1995 U.S. Dist.
LEXIS 14003, *7 (S.D.N.Y. 1995).

[14] Defendant admitted some of its SPO violations: that "the biographical
information of comparator professors was redacted to ensure their anonymity" and
"the names of peer reviewers were redacted." March 2024 Declaration Dkt 142, ¶
¶23, 25. The files were replete with redactions and not complete.

Court had asked about the unredacted files question, which the Fordham attorney

sidestepped:

> The Court: I'm sorry. If she served you with a subpoena, does that permit you to
> turn over the files in an unredacted fashion of the comparators?
>
> Ms. Dryer: With a lawful subpoena. It is Fordham's position this is not a lawful
> and correct subpoena.
>
> The Court: Why not?
>
> Ms. Dryer: Because we have turned over all the information that's sought in the
> subpoena. (Attachment 5, Dkt. 67, pp. 23-24).
>
> The citations in Order Dkt 15 above, pp. 5-6 are exclusively from Defendant's

Declarations and Reply papers, but none of Petitioner's motions, replies, or letter

motions requesting the Surreply, which addressed this very issue. The Order does

not mention Petitioner's dispute of Defendant's assertions, nor did it investigate or

conduct an evidentiary hearing to ascertain disputed facts in fairness to both parties

on such a fact-intensive issue.

Discovery on contradictory representations to Federal authorities not enforced

The District Court did not enforce discovery requested in Petitioner's Motion

third prong, to compel documents on Defendant's "representations to the court"

that contradict Fordham's secret termination reports to other federal authorities.

(see table in Attachment 7) Fordham produced none of the documentation 2019

2024 on these crucial secret actions against her, involving Fordham reports through

COBRA/ERISA and subsequently to the IRS.[15]

Blanket confidentiality designations, contrary to the SPO, deemed acceptable

Defendant designated "Confidential" every document produced, including

groups of documents prohibited by ¶ 3 of the SPO (3a, 3b, 3c). They include about

8.000 Petitioner's documents and exhibits to her Complaint, which are judicial

documents, per *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir.

2006) warranting public access. They "assist the public in understanding the issues

before the . . . court, and in evaluating the fairness and integrity of the court's

proceedings" where "the presumption of access, [which] is supported by

substantial public interests *Bernstein v. Bernstein Litowitz Berger & Grossmann*

LLP, 814 F.3d 132, (2d Cir. 2016).  (see Dkt 132 pp. 21-23).

The District Court declined to compel Fordham to remove the improper

blanket "Confidentiality" designations or to rule that they are inconsistent with

SPO's ¶ 3 a-c. (Dkt 156, p 15). Reversing the burden away from Defendant, the

Order blames Petitioner for not explaining how the SPO terms were not followed.

---

[15] Plaintiffs on ERISA matters do not have the needed information until discovery
begins (*Sacerdote v. New York University  9 F.4th 95 (2d Cir. 2021*) and here, it is
denied for years. Petitioner is seriously concerned about her status at the
University, lack of salary and pension, lack of healthcare, or any faculty benefits
post-secret detenuring as of February 1, 2020.  See January 11, 2024 Hearing, Dkt
138 pp 4-7)

The Order does not reference either her analysis of ¶ 3 of the SPO (3a, 3b, 3c) in

Dkt 132 p. 21, and specification of document groups not in compliance listed in

Exhibit 14, Dkt 132 p. 104, or Petitioner's detailed sections under "Confidential

designation of documents Prohibited by the Protective Order" in Dkt 132 pages 21,

22, 23 that explain.

<u>Procedural Violations in Seeking Additional Protective Order Warrant Motion
Dismissal</u>

The District Court should have dismissed on procedural grounds

Defendant's cross-motion to replace the SPO.  Fordham never requested or

received District Court authorization to file that motion, nor did they hold the

required meet and confer. They did not certify, as required by FRCP 26 (c)(1) for

Protective Orders, that "the movant has in good faith conferred or attempted to

confer with other affected parties in an effort to resolve the dispute" since

Petitioner first learned about it from Defendant's motion and Declaration on March

1, 2024 (Dkts 142, 143). Fordham violated the District Court's Individual Practices

Requirement: 2.A.(i): "Strict adherence to Fed. R. Civ. P. 37(a)(1), the "meet and

confer" rule, is required. They violated due process rules, relevant FRCP rules, and

local SDNY Rules. The Court only authorized their cross-motion to compel, not a

cross-motion for an additional protective order.  See also Plaintiff Memoranda on

this, Dkt. 147 at 10-11; Dkt. 161 at 5.

## PETITIONER MEETS THE CRITERIA FOR MANDAMUS RELIEF

Petitioner has satisfied the requirements under *Cheney v. United States District Court*, 542 U.S. 367 (2004) for issuing a Writ of Mandamus. In this case, mandamus is necessary because Petitioner lacks other adequate remedies. Despite significant efforts, such as filing motions over the years, court letters, reconsideration requests, and hearings, these have proven unavailing, and an appeal post-judgment would not address the harm caused by denied access to discovery materials essential for preparing a case. The Second Circuit has acknowledged in *Main St. Am. Assur. Co. v. Savalle,* 846 Fed. Appx. 47 (2d Cir. 2021), mandamus is needed to avoid developing detrimental discovery practices after decisions like the one here that did not follow the Mandate in the case. Overturning them would aid in the administration of justice in issues of importance. *In re City of New York* 607 F.3d 923 (2d Cir. 2010)

## CONCLUSION

For the preceding reasons, Petitioner respectfully requests that this court issue a Writ of Mandamus directing the district court to vacate the post-mandate Discovery Orders and take whatever steps are necessary to ensure that discovery proceeds following established standards to facilitate a fair adjudication of Petitioner's claims. This Court should also take the steps needed to protect the

32

Petitioner from bias and partiality.

Respectfully submitted,

/s/ *Esther Solomon*
Esther Solomon
Dated: November 20, 2024                Petitioner Pro Se

Certificate Of Compliance

This petition complies with the type-volume limitation of Federal Rule of Appellate Procedure 21(d) because it contains 6997 words, excluding the parts of the petition exempted by Rule 32(f), and this brief has been prepared in a proportionally spaced typeface using Microsoft Word Times New Roman in 14-point.

/s/ *Esther Solomon*
Esther Solomon
Dated: November 20, 2024          Plaintiff Pro Se


Certificate Of Service

I certify that on November 20, 2024, I filed this Petition for a Writ of Mandamus and the accompanying Appendix Volumes I and Volume 2 with the Clerk of the Second Circuit Court of Appeals.

I certify that on November 20, 2024, I served this Petition for a Writ of Mandamus and the accompanying Appendix Volumes I and Volume 2 by hand to the address below:
Hon. Edgardo Ramos, U.S.D.J.
Thurgood Marshall United States Courthouse
40 Foley Square, Courtroom 619
New York, NY 10007

I certify that on November 20, 2024, I served this Petition for a Writ of Mandamus and the accompanying Appendix Volumes I and Volume 2 by FedEx:
Ms. Jennifer A. McLauglin, Esq.
Cullen & Dykman, LLP
333 Earle Ovington Blvd., 2nd Floor
Uniondale, NY 11553

/s/ *Esther Solomon*
Esther Solomon
Dated: November 20, 2024          Plaintiff Pro Se

ATTACHMENTS

_____

1. Mandate, Second Circuit Court of Appeals , September 27, 2023, Case 22-887, Doc. 115.

2. Stipulated Protective Order, February 14, 2019, Dkt. 24.

3. Transcript, Second Circuit Oral Argument, June 9, 2023, Dkt. 126, pp. 4-19.

4. Annual Salary Table for eight male comparator professors, with names redacted, numbers 1-8 and Petitioner (2011-2018).

5. Transcript, January 29, 2020 Petitioner's Pre-motion Conference for Discovery, Dkt. 67, pp. 6-25.

6. Examples of comparator professor peer review redacted pages.

7. Representations to the Court contradicting Fordham's reports to other Federal Authorities