# ATTACHMENT 1

Case 1:18-cv-04615-ER Document 165-1 Filed 12/04/24 Page 2 of 160
Case 1:18-cv-04615-ER Document 165-1 Filed 12/04/24 Page 37 of 621
Case 22-887, Document 115, 09/27/2023, 3574182, Page1 of 8



22-887-cv
Solomon v. Fordham University

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

1        At a stated term of the United States Court of Appeals for the Second Circuit, held
2    at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York,
3    on the 5th day of September, two thousand twenty-three.
4
5    Present:
6
7            GUIDO CALABRESI,
8            SUSAN L. CARNEY,
9            EUNICE C. LEE,
10                  Circuit Judges.
11    _____
12
13    ESTHER SOLOMON,
14
15                  Plaintiff-Appellant,
16
17            v.                                                   No. 22-887-cv
18
19    FORDHAM UNIVERSITY ADMINISTRATION, ROSE
20    HILL CAMPUS,
21
22                  Defendant-Appellee.
23
24    _____
25    For Plaintiff-Appellant:                      ESTHER SOLOMON, *pro se*,
26                                                   New York, NY.
27
28    For Defendant-Appellee:                       JENNIFER A. MCLAUGHLIN,
29                                                   Cullen and Dykman LLP,
30                                                   Uniondale, NY.

## MANDATE ISSUED ON 09/27/2023

1    Appeal from a March 29, 2022 judgment of the United States District Court for the
2    Southern District of New York (Ramos, *J.*).

3    **UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND**
4    **DECREED** that the judgment of the district court is **AFFIRMED** in part and **VACATED** in part,
5    and the action is **REMANDED** for further proceedings consistent with this order.

6    Appellant Esther Solomon, a tenured associate professor at Fordham University's Gabelli
7    School of Business ("Fordham"), proceeding *pro se*, brought claims against Fordham under the
8    Equal Pay Act ("EPA"), Age Discrimination in Employment Act ("ADEA"), Title VII, and
9    analogous New York State laws.   Solomon claimed that Fordham paid her less than similarly
10   situated younger, male, and non-Jewish, members of the predominantly male faculty, whom the
11   university also allegedly favored for promotions.   She further alleged that Fordham created a
12   hostile work environment and, when she complained about the pay disparity, retaliated against her
13   by, among other things, changing her teaching assignments and terminating her employment.

14   Across four decisions, the district court dismissed Solomon's federal claims under Fed. R.
15   Civ. P. 12(b)(6), reasoning that she failed to allege sufficient facts to demonstrate that she had
16   suffered adverse employment actions or to support an inference of discrimination.   Having
17   dismissed the federal claims, the district court declined to exercise supplemental jurisdiction over
18   Solomon's state law claims.   The court twice granted leave to amend, once plenary and once
19   limited, so that Solomon could correct the identified deficiencies.   *See Solomon v. Fordham*
20   *Univ.*, No. 18-CV-4615 (ER), 2020 WL 1272617 (S.D.N.Y. Mar. 17, 2020) (dismissing the first
21   amended complaint with leave to amend); *Solomon v. Fordham Univ.*, No. 18-CV-4615 (ER),

2

1    2020 WL 7711697 (S.D.N.Y. Dec. 29, 2020) (dismissing the second amended complaint with

2    opportunity to move for leave to file the third amended complaint); *Solomon v. Fordham Univ.*,

3    No. 18-CV-4615 (ER), 2021 WL 2292916 (S.D.N.Y. June 4, 2021) (granting limited leave to file

4    the proposed third amended complaint to amend retaliation claims based on Fordham's

5    discontinuation of Solomon's employee health benefits); *Solomon v. Fordham Univ.*, No. 18-CV-

6    4615 (ER), 2022 WL 912056 (S.D.N.Y. Mar. 29, 2022) (denying reconsideration of the June 4,

7    2021 order, dismissing the third amended complaint, and closing the case).   Solomon appealed.

8    We assume the parties' familiarity with the remaining underlying facts, the procedural history, and

9    the issues on appeal.

10                         *               *               *

11          "We review *de novo* a district court's dismissal of a complaint pursuant to Rule 12(b)(6),

12   construing the complaint liberally, accepting all factual allegations in the complaint as true, and

13   drawing all reasonable inferences in the plaintiff's favor." *Collins v. Putt*, 979 F.3d 128, 132 (2d

14   Cir. 2020) (quoting *Dolan v. Connolly*, 794 F.3d 290, 293 (2d Cir. 2015)).   To survive a Rule

15   12(b)(6) motion to dismiss, the complaint must contain sufficient factual matter, accepted as true,

16   to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

17   (internal quotation marks omitted).   A claim will have "facial plausibility when the plaintiff

18   pleads factual content that allows the court to draw the reasonable inference that the defendant is

19   liable for the misconduct alleged." *Id.*   Complaints brought by *pro se* litigants are entitled to a

20   particularly liberal interpretation.   *See Darby v. Greenman*, 14 F.4th 124, 127 (2d Cir. 2021)

3

1   ("We construe a *pro se* complaint liberally to raise the strongest arguments it suggests." (internal

2   quotation marks omitted)).

3   **I.    Time-Barred Conduct**

4       In the district court's decision dismissing the first amended complaint, it found that any

5   claim related to conduct that occurred before March 7, 2017 was time-barred because Solomon

6   did not file her complaint with the Equal Employment Opportunity Commission ("EEOC") until

7   January 11, 2018.    *Solomon*, 2020 WL 1272617 at *9; *see also Pikulin v. City Univ. of New York*,

8   176 F.3d 598, 599 (2d Cir. 1999) ("An employment discrimination claim must be filed with the

9   EEOC within 300 days of the alleged discrimination in a state, like New York, with a fair

10  employment agency." (citing 42 U.S.C. § 2000e-5(e))).    Because some pre-March 7, 2017

11  conduct formed the basis of, in relevant part, Solomon's hostile work environment, discrimination,

12  retaliation, and disparate treatment claims, the time-bar impacted her ability to adequately plead

13  those claims before the district court.

14      On appeal, Solomon challenges the district court's time-bar determination.    She contends

15  that, despite the late EEOC filing, the time-bar is inapplicable to her hostile work environment

16  claim and that, under this Court's precedent, background evidence relating to alleged misconduct

17  may be considered in determining whether her other claims are adequately pled, even if that

18  background evidence precedes the actionable time period.    Appellant's Br. at 59.    In the hostile

19  work environment context, the Supreme Court has held that a "claim is composed of a series of

20  separate acts that collectively constitute one unlawful employment practice," and thus "[i]t does

21  not matter . . . that some of the component acts of the [claim] fall outside the statutory time period."

22  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002) (internal quotation marks

4

1    omitted)).  As a result, "a charge alleging a hostile work environment claim will not be time barred

2    so long as all acts which constitute the claim are part of the same unlawful employment practice

3    *and at least one act falls within the time period.*"  *Davis-Garett v. Urb. Outfitters, Inc.*, 921 F.3d

4    30, 42 (2d Cir. 2019) (alterations omitted and emphasis in the original).  Beyond hostile work

5    environment claims, "discrete discriminatory acts are not actionable if time barred," but an

6    employee may still use related prior acts as "background evidence in support of a timely claim."

7    *Nat'l R.R. Passenger Corp.*, 536 U.S. at 113.  *See Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135,

8    150 (2d Cir. 2012) (applying this principle to evidence of disparate treatment and disparate impact

9    claims); *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 176–77 (2d Cir. 2005) (applying this

10   principle to evidence of retaliation); *see also Petrosino v. Bell Atl.*, 385 F.3d 210, 220 (2d Cir.

11   2004) (applying this principle to evidence of promotion denials).  In light of this Court's caselaw,

12   Solomon's pre-March 2017 hostile work environment, discrimination, retaliation, and disparate

13   treatment allegations must therefore be a part of our consideration of her otherwise timely claims.

14        A.  Solomon's Hostile Work Environment Claim

15        Here, even taking into account pre-March 2017 conduct, we affirm the district court's

16   dismissal of Solomon's hostile work environment claim, chiefly because Solomon does not

17   adequately plead that "the workplace [wa]s permeated with discriminatory intimidation, ridicule,

18   and insult that [wa]s sufficiently severe or pervasive to alter the conditions of [her] employment

19   and create an abusive working environment."  *Littlejohn v. City of New York*, 795 F.3d 297, 320–

20   21 (2d Cir. 2015) (internal quotation marks omitted).  Her failure to do so is in large part due to

21   the fact that her allegations concern events occurring over the course of 19 years, involving

22   different individuals and varying kinds of incidents.  *See id.* at 321 ("The incidents complained

5

1    of must be more than episodic; they must be sufficiently continuous and concerted in order to be

2    deemed pervasive."); *cf. Nat'l R.R. Passenger Corp.*, 536 U.S. at 120 (considering incidents before

3    and after the limitations period to form the same actionable hostile work environment practice

4    because they "involve[d] the same type of employment actions, occurred relatively frequently, and

5    were perpetrated by the same managers").

6          B. Solomon's Discrimination, Retaliation, and Disparate Treatment Allegations

7          The district court found that Solomon alleged insufficient adverse actions in support of her

8    claims of discrimination, retaliation, and disparate treatment. In doing so, the court erroneously

9    failed to take into account the background material of Fordham's actions beyond the statute of

10    limitations. But that background material may be sufficient so that Fordham's actions could

11    properly be viewed by a fact-finder as adverse. Accordingly, as to Solomon's remaining

12    discrimination, retaliation, and disparate treatment allegations, we remand to the district court for

13    further consideration as to whether, and how, relevant background information impacts Solomon's

14    ability to meet the pleading standard for those claims.

15   **II.    Unequal Pay**

16          The district court also dismissed Solomon's claim of discrimination under the Equal Pay

17    Act on the ground that the Solomon had not produced adequate comparators. "To prove

18    discrimination under the Equal Pay Act, a plaintiff must show that: i) the employer pays different

19    wages to employees of the opposite sex; ii) the employees perform equal work on jobs requiring

20    equal skill, effort, and responsibility; and iii) the jobs are performed under similar working

21    conditions." *Lavin-McEleney v. Marist Coll.*, 239 F.3d 476, 480 (2d Cir. 2001) (internal

22    quotation marks omitted). For the second prong, "a plaintiff need not demonstrate that her job is

6

1    identical to a higher paid position, but only must show that the two positions are substantially equal

2    in skill, effort, and responsibility." *Id.* (internal quotation marks and alteration omitted). By

3    contrast, a plaintiff alleging sex-based compensation discrimination under Title VII need not prove

4    that she received less pay for the same work; she need only prove that "her employer discriminated

5    against her with respect to her compensation because of her sex," such as by paying her less than

6    they would have if she was male. *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 110–11 (2d Cir. 2019)

7    (internal quotation marks and alterations omitted).

8         The district court erred in concluding that Solomon failed to identify similarly situated

9    comparators, and thus did not sufficiently plead an EPA claim or a Title VII claim. As discussed

10   above, she alleged that she and the tenured male professors were paid different wages, though they

11   had the same job responsibilities, were subject to the same evaluation standards, and were in the

12   same practice area (Management Systems).[1] *See Lavin-McEleney*, 239 F.3d at 480 ("Whether

13   two positions are substantially equivalent for Equal Pay Act purposes is a question for the jury."

14   (internal quotation marks omitted)). We therefore remand Solomon's equal pay claims, under

15   both the EPA and Title VII, to the district court for further consideration.

16   **III.    Supplemental Jurisdiction and Leave to Amend**

17        The district court declined to exercise supplemental jurisdiction over Solomon's state

18   claims (both statutory and common-law) because it had dismissed her federal claims. *See* 28

19   U.S.C. § 1367(c)(3). Since at least some of the federal claims may be reinstated upon further

20   consideration by the district court, we vacate the portion of the court's judgment declining to

---

[1] Solomon alleges that Fordham redacted the comparators' names when it sent to her counsel a list of male professors' salaries, which may explain why she does not allege the specific job duties of each professor.

7

1     exercise supplemental jurisdiction and restore Solomon's state law claims for the time being. *See*

2     *Rogoz v. City of Hartford*, 796 F.3d 236, 251 (2d Cir. 2015).

3         Finally, we find that the district court did not abuse its discretion in denying Solomon leave

4     to further amend the properly dismissed federal claims. The district court permitted Solomon to

5     amend at least three times, and she does not persuasively argue why she should be permitted to

6     amend further. *See Elder v. McCarthy*, 967 F.3d 113, 132 (2d Cir. 2020).

7              *            *            *

8         For the reasons set forth above, we conclude that Solomon's disparate treatment,

9     retaliation, and unequal pay claims should have survived the motion to dismiss. We

10    therefore **AFFIRM** the judgment in part, **VACATE** in part, and **REMAND** for further

11    proceedings consistent with this order.

12

13                             FOR THE COURT:

14                             Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

# ATTACHMENT 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #_____
DATE FILED: 2/14/2019

---------------------------------------------------------

ESTHER SOLOMON,

Plaintiff,

-against-

FORDHAM UNIVERSITY,

Defendant.

Case No.: 18-cv-04615 (ER)

STIPULATION AND ~~PROPOSED~~
PROTECTIVE ORDER

---------------------------------------------------------

WHEREAS, Plaintiff Esther Solomon and Defendant Fordham University ("the Parties")
having agreed to the following terms of confidentiality, and the Court having found that good
cause exists for the issuance of an appropriately tailored confidentiality order pursuant to Rule
26(c) of the Federal Rules of Civil Procedure, it is hereby

ORDERED that the following restrictions and procedures shall apply to the information
and documents exchanged by the Parties in connection with the pre-trial phase of this action
("Discovery Material"):

1.    The producing party (either in the party's own capacity or through the party's
undersigned counsel) may designate any Discovery Material, in whole or in part, as
"confidential" if the producing party determines, in good faith, that such designation is
necessary to protect its interests in information that is sensitive and non-public. Such
confidential information may include, but is not limited to:

      a.    financial, benefit and/or payroll information concerning the Parties or their
            current or former employees;

      b.    personnel files, evaluations and employment history of the Parties or their
            current or former employees;

      c.    sensitive personal information including medical information and/or
            information concerning physical, psychological, psychiatric and/or
            emotional history of the Parties or any of their current or former
            employees; and

      d.    documents reflecting social security numbers, tax returns and/or tax
            documents of the Parties or any of their current or former employees; and

   e.  such other documents that the Parties may in good faith designate.

2. Discovery Material designated by a party as confidential will be stamped "CONFIDENTIAL" by the producing party ("Confidential Information").

3. The following information shall not be stamped "CONFIDENTIAL" or otherwise be deemed to constitute Confidential Information under this Order:

   a.  information in the public domain;

   b.  information already known by the receiving party through proper means; and

   c.  information that is or becomes available to a party from a source other than the party asserting confidentiality and rightfully in possession of such information on a non-confidential basis.

4. Confidential Information will be held and used by the person receiving such Confidential Information solely for use in connection with the above-referenced action.

5. Confidential Information shall not be disclosed to any person, except:

   a.  The Plaintiff and counsel retained for this action, including any paralegal, clerical and other assistant employed by such counsel and assigned to this matter;

   b.  As to any document, its author, its addressee, and any other person indicated on the face of the document as having received a copy of the document;

   c.  Any witness who counsel for a party in good faith believes may be called to testify at trial or deposition in this action, provided that such person has first executed a Non-Disclosure Agreement in the form annexed as Exhibit A hereto;

   d.  Any person retained by a party to serve as an expert witness or otherwise provide specialized advice to counsel in connection with this action, provided such person has first executed a Non-Disclosure Agreement in the form annexed as Exhibit A hereto;

   e.  Stenographers engaged to transcribe depositions conducted in this action;

   f.  Independent photocopying, graphic production services, or litigation support services employed by the parties or their counsel to assist in this action and computer service personnel performing duties in relation to a computerized litigation system;

      g.      The Court, its support personnel and the mediator (or other person having access to any Confidential Information by virtue of his or her position with the Court); and

      h.      Any person on such terms and conditions as the parties may mutually agree, or as the Court may hereafter direct by further order.

6.      Prior to disclosing or displaying Confidential Information to any person set forth in Paragraphs 5(c) or 5(d) above, the disclosing party must:

      a.      Inform the person of the confidential nature of the Discovery Material;

      b.      Inform the person that this Court has enjoined the use of the Discovery Material by him/her for any purpose other than this litigation and has enjoined the disclosure of the Discovery Material to any other person; and

      c.      Require each such person to sign an agreement to be bound by this Order in the form attached as Exhibit A hereto.

7.      In the event a party challenges another party's designation of confidentiality, the Parties shall make a good faith effort to resolve the dispute, and in the absence of a resolution, the challenging party may seek resolution by the Court. Nothing in this Order constitutes an admission by any party that Confidential Information disclosed in this case is relevant or admissible. Each party reserves the right to object to the use or admissibility of the Confidential Information.

8.      The disclosure of Discovery Material without designating it as "confidential" shall not constitute a waiver of the right to designate such Discovery Material as Confidential Information. If so designated, the Discovery Material shall thenceforth be treated as CONFIDENTIAL subject to all the terms of this Stipulation and Order.

9.      Each person who has access to Discovery Material that has been designated as "confidential" shall take all reasonable precautions to prevent the unauthorized or inadvertent disclosure of such material.

10.      Pursuant to Federal Rule of Evidence 502, the production of privileged or work- product protected documents or communications, electronically stored information ("ESI") or information, whether inadvertent or otherwise, shall not constitute a waiver of the privilege or protection from discovery in this case or in any other federal or state proceeding. This Order shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d). Nothing contained herein is intended to or shall serve to limit a party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.

11.      Notwithstanding the designation of Discovery Material as "confidential" in discovery, there is no presumption that such information shall be filed with the Court under seal.

12.  Nothing in this Order shall (a) restrict either party's rights with respect to a party's own documents or information; (b) restrict either party's rights with regard to Discovery Material that has not been designated as "confidential"; (c) prejudice either party's rights to object to the production or disclosure of documents or other information that it considers not subject to discovery; or (d) prejudice either party's rights to seek, either by agreement or by application to the Court, greater protection than that provided herein.

13.  At the conclusion of litigation, Confidential Information and any copies thereof shall be promptly (and in no event later than 30 days after entry of final judgment no longer subject to further appeal) returned to the producing party or certified as destroyed, except that the parties' counsel shall be permitted to retain their working files on the condition that those files will remain protected.

SO STIPULATED AND AGREED.

CRAVATH, SWAINE & MOORE LLP
Attorneys for Plaintiff

By: _____
        Jeffrey Then

Dated: 2 / 12 / 2019

CULLEN AND DYKMAN LLP
Attorneys for Defendant

By: _____
        James G. Ryan

Dated: 2 / 12 / 2019


So Ordered this ___14th___ day of ___February___, 2019:

_____

Hon. Edgardo Ramos, U.S District Judge

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------

ESTHER SOLOMON,

                                  Plaintiff, :        Case No.: 18-cv-04615 (ER)

        -against-

FORDHAM UNIVERSITY,                     NON-DISCLOSURE AGREEMENT

                              Defendant. :

      I, _____, have been informed by counsel that certain documents or information to be disclosed to me in connection with this action have been designated as confidential. I have been informed that any such documents or information labeled "CONFIDENTIAL" are confidential by Order of the Court.

      I hereby agree that I will not disclose any information contained in such documents to any other person. I further agree not to use any such information for any purpose other than this litigation.

DATED:

_____

# ATTACHMENT 3

Solomon v. Fordham University

1

2          United States Court of Appeals for the Second Circuit

3          Oral Argument for Solomon v. Fordham University

4                          Docket #: 22-887

5                        Date Argued: June 9, 2023

6                            Courtroom 1505

7      Thurgood Marshall US Courthouse, 40 Foley Square, New York, NY 1007

8                    Panel: Calabrese, Carney, Lee C.JJ.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Case 1:18-cv-04615-ER   Document 126   Filed 12/11/23   Page 5 of 19
Case 1:18-cv-04615-ER   Document 165-1   Filed 12/04/24   Page 19 of 160

Solomon v. Fordham University

1       [00:17:55] Judges of the United States Court of Appeals for the Second Circuit.

2       Hear ye, hear ye, hear ye. All persons having business before this, a stated term of the

3  United States Court of Appeals for the Second Circuit draw near, give your attention ye shall be

4  heard.

5       Thank you. Please be seated.

6       Judge Lee: Thank you, please be seated. All right, good morning everyone. So, we're

7  ready for our first case for argument [00:18:30] and, of course we have Judge Calabresi with us

8  via Zoom and ...

9       Judge Calabresi: Good morning.

10      Ms. Solomon: Good morning.

11      Judge Lee: Okay, and so our first case for argument is Esther Solomon vs. Fordham

12  University Administration et. al. and so Ms. Solomon you have reserved three minutes for rebuttal,

13  and so you have seven minutes now. So, whenever you are ready, you may begin.

14      Ms. Solomon: Thank you. Good morning, Your Honors, may it please the court.

15  [00:19:00] My name is Esther Solomon. Can you hear me? I'm okay.

16      Judge Lee: Yes.

17      Ms. Solomon: Yes.

18      Judge Calabresi: Yes.

19      Ms. Solomon: My name is Esther Solomon, the pro se appellant in this employment

20  discrimination and retaliation case. My professional livelihood and 35-year career as a tenured

21  professor and multiple term faculty senator representing the Business School, have been destroyed

22  because of discrimination, [00:19:30] the creation of intolerable academic working conditions,

23  gender based disparate pay and constructive discharge. Fordham's actions culminated in my secret

2

Solomon v. Fordham University

1    termination as a tenured professor on February 1st, 2020, without cause or due process. Multiple

2    retaliatory actions ensued after I filed this lawsuit. As of the spring [00:20:00] 2018 semester

3    adverse action, I was transferred and demoted from graduate Business School Professor to teach

4    elementary introductory courses. There's a, there's a static.

5        Female Speaker: Feedback. Yeah.

6        Ms. Solomon: Sorry, should I stop?

7        Female Speaker: That's okay, you ...

8        Ms. Solomon: Okay. These diminished responsibilities and excessive and disproportionate

9    workload, interfered with my research, and disparate treatment [00:20:30] became the sine qua

10   non of my assignments ever since. This demotion was not visited upon the males or younger

11   females. Over the years ...

12       Judge Lee: Ms, Ms. Solomon ...

13       Ms. Solomon: ...Fordham had used similar methods to force the resignation or retirement

14   of other ... protected class professors.

15       Judge Lee:  Ms. Ms. Solomon.

16       Judge Lee: Yes, yes, sorry.

17       Ms. Solomon: I'm sorry.

18       Judge Lee: No, no, that's okay. I just wanted to to ask you, I mean part of what you have

19   to establish with regard to [00:21:00] a hostile work environment claim is that the incidents that

20   you're talking about interfered with your ability to do your work. So could you address if you

21   addressed how these, how these impacted your ability to do your work specifically.

22       Ms. Solomon: By demoting me from the Graduate School to the undergraduate and a very

23   very busy schedule. There was not enough time for me [00:21:30] to do my research and the

3

Solomon v. Fordham University

1  requirements for professors are the three core characteristics of teaching, research, and service.

2  And those, all three, were impacted by this hostile work environment. Also, as I have alleged in

3  my complaint, there have been a long-standing pattern in which the same people... there's some

4  noise. There is a long-standing pattern in which the same group of male management [00:22:00]

5  area chairs had acted to undermine my career for years, including the time after the ...

6  Judge Calabresi: I have I have a question with respect to that. The lower court held that

7  many things that happened before 2017 were barred, but due to limitations. On the other hand, our

8  cases say that things like that ...

9  Ms. Solomon: I'm sorry I didn't hear you. I couldn't hear you very well. I couldn't hear.

10  Judge Calabresi: Okay, let me try again.

11  Ms. Solomon: Okay. [00:22:30]

12  Judge Calabresi: The lower court held that many things that happened before 2017 were

13  barred by the statute of limitations. That's a question. But assuming that it is right, our cases say

14  that what happens before may be relevant to understanding what happens after. So I am asking to

15  see whether some of the things that happened before [00:23:00] 2017 were such, so that we would

16  understand what happened afterwards as creating a hostile work environment.

17  Ms. Solomon: Thank you, Your Honor. As you correctly stated, per Davis-Garett events

18  that occur before the 300 days if they're part of the same pattern of unlawful activities, they can be

19  considered. At the minimum, they can be considered as context, but in this situation it is part

20  [00:23:30] the same actors and the same type of activities interfering with my career and in fact

21  replacing me. The same individuals that did this to me, they did it to others as well. So the same

22  male supervisors with administrators acting jointly, took egregious actions over years. To the point

23  that in 2016 me and another female Senator, who were doing our job representing [00:24:00] the

4

Case 1:18-cv-04615-ER Document 165-1 Filed 12/04/24 Page 22 of 160
Case 1:18-cv-04615-ER Document 126 Filed 12/11/23 Page 8 of 19

Solomon v. Fordham University

1   Business School and trying to oppose statutory violations, were punished, retaliated in public and

2   the faculty Senate had to intervene, and they issued their anti-retaliation resolution to protect the

3   two female Senators. Also, the Board of Trustees intervened to stop that at the time. That was one

4   of several actions that were taken to undermine mine [00:24:30] and other females' leadership

5   abilities and to remove them from leadership positions they were duly elected and duly occupied.

6   And it was always done in violation to procedures, Statutes, and denial of hearing. And the same

7   thing happened afterwards. The termination without cause or due process, after I had requested the

8   University President specifically, because they warned me they would cut my benefits, I went to

9   the University President and asked him, wrote him in letter [00:25:00] 22A, I believe is the exhibit.

10   And I requested a hearing and due process.

11       Judge Calabresi: So, so ...

12       Ms. Solomon: -So there's a pattern...

13       Judge Calabresi: Excuse me, excuse me. So you are saying that we should understand what

14   was after 2017, or whatever the date is, in the light of things which were done that were similar

15   before?

16       Ms. Solomon: Yes. The same pattern and again, a pattern of-pervasive avoidance of due

17   process, avoidance of review, [00:25:30] false charges. And this was not just me, it was many

18   professors who suffered similar fate. They were, they were trying to force them out and get them

19   to resign by these egregious actions. I'm not, I don't even know exactly where I stopped, but I will

20   continue about that. Over the years Fordham had used similar methods to force the resignation or

21   retirement of other protected class professors. They targeted them through transfer to elementary

22   undergraduate [00:26:00] teaching and humiliating demotion. A senior professor who was forced

23   out wrote: "Thank you for your concerns. Yes, I am not coming back. I have been exposed to

Solomon v. Fordham University

1    concerted efforts of the new regime to push me out. I have been requested to teach undergraduate

2    basic statistics and criticized for some snow days I missed due to illness. They stopped my salary

3    already. [00:26:30] Now I have to get some health insurance and then I will fight for my retirement

4    income." That is in JA95 paragraph 317.

5         Judge Lee: Okay, Ms. ...

6         Ms. Solomon: This was a blueprint for what I would soon face ...

7         Judge Lee: Ms. Solomon.

8         Ms. Solomon: Yes.

9         Judge Lee: Yes, I know it's a little multiple sources of question. So you you come to the

10   end of your time, you'll still have a few moments after three minutes afterwards. So if you can

11   wrap up and we'll go to hear from your your adversary.

12        Ms. Solomon: Okay. I also experienced severe gender-based [00:27:00] pay discrimination

13   as a professor since my salary had been approximately 50% compared to the salaries of other

14   professors, and my salary was about 115,000, the professors average was 211,000 and this was

15   comparison with other eight male faculty comparators at the Business School.

16        Judge Lee: Okay.

17        Ms. Solomon: Comparators to which the university agreed and on which they produced

18   this and therefore they cannot deny, dispute their eligibility [00:27:30] as comparators.

19        Judge Lee: I think, I think ...

20        Ms. Solomon: Okay, thank you so much.

21        Judge Lee: Yes, thank you. Okay, Mrs. McLaughlin.

22        Mrs. McLaughlin: Yes.

23        Judge Lee: All right, whenever you're ready.

6

Case 1:18-cv-04615-ER Document 165-1 Filed 12/04/24 Page 59 of 621
Case 1:18-cv-04615-ER Document 126 Filed 12/11/23 Page 24 of 160
Case 1:18-cv-04615-ER Document 126 Filed 12/11/23 Page 10 of 19

Solomon v. Fordham University

1    Mrs. McLaughlin: May it please the court. Jennifer McLaughlin of Cullen and Dykman,

2    LLP for Fordham University.

3    Judge Lee: Could you please speak close to the mic.

4    Mrs. McLaughlin: Sure.

5    Judge Lee: If you can, thank you.

6    Mrs. McLaughlin: This better.

7    Judge Lee: Yeah.

8    Mrs. McLaughlin: Appellant must nudge her claims across the line from conceivable to

9    plausible to proceed in this lawsuit sounding and discrimination.[00:28:00] Afforded three times

10   by the District Court to amend her pleading, her own statements, and her voluminous submissions

11   undercut plausibility, and as such the District Court's orders should be affirmed. I'd like to address

12   briefly certain aspects of appellant's disparate treatment claim, her equal play, pay claim, and

13   retaliation claims.

14   Judge Carney: Yeah, I'd like to hear about the pay claim, please, because the table that she

15   induces shows a pretty dramatic differential between the male purported comparators [00:28:30]

16   and her own pay scale over a period of time.

17   Mrs. McLaughlin: Sure, the Equal Pay Act, as we all know, prohibits employers from

18   discriminating among employees on the basis of sex by paying higher wages to employees of the

19   opposite sex for equal work. Appellant states that her compensation is far lower than other male

20   faculty. But what she failed to allege in any of her pleadings that the job content of the other male

21   faculty who she contends are paid more in that chart, are equivalent to hers. [00:29:00] As stated

22   in her pleading.

23   Judge Calabresi: Counsel.

7

Solomon v. Fordham University

1    Mrs. McLaughlin: Yes.

2    Judge Calabresi: Counsel, counsel. This is 12(b)(6). We have said that in summary
3  judgment, there has to be a fair sign that the things are the same, and often that that's a jury
4  question. But isn't it premature for such a thing to be decided in 12(b)(6)? When, she could come
5  in evidence which shows that though titles and things [00:29:30] are somewhat different, but
6  basically these people are valid comparators. Haven't we done that in any number of cases?

7    Mrs. McLaughlin: Your Honor, I plead with you the case of EEOC versus the Port of
8  Authority. In that case, there was a failure to allege any facts concerning the attorneys in the Port
9  Authority's Law Department's actual job duties deprived this court from which to draw a
10 reasonable inference that the attorneys performed equal work, the touchstone of an EPA claim.
11 [00:30:00] Similarly here in that case, this court said attorneys are attorneys is not sufficient.
12 Similarly, here professors are professors is not sufficient. As stated in her pleadings, there's a very
13 wide range of responsibilities professors have according to the Fordham Faculty Statutes, some of
14 which include include research obligations, other opportunities outside of their teaching roles in
15 administration. There is no comparator that she's pointed to similarly situated to her [00:30:30]
16 that is being paid more and outside of a protected class ...

17    Judge Carney: Am I am I right in understanding that initially, you know, the District Court
18 has seen this I think four four times. And after the, its first decision, it allowed discovery to proceed
19 for some period of time. Is that right?

20    Mrs. McLaughlin: Right.

21    Judge Carney: Pending amendment of the complaint and so on. And and Ms. Solomon,
22 Professor Solomon had the assistance of counsel at at that time. And so [00:31:00] Fordham

Case 1:18-cv-04615-ER Document 165-1 Filed 12/04/24 Page 26 of 160
Case 1:18-cv-04615-ER Document 126 Filed 12/11/23 Page 12 of 19

Solomon v. Fordham University

1  produced documents and responded to interrogatories, giving Ms. Solomon an opportunity to

2  develop facts that would be relevant to the status of the comparators. Is that right?

3  Mrs. McLaughlin: Correct. And then and she developed the chart that you were referring

4  to earlier today, again without giving any inkling in her pleading as to who among those male

5  professors were similarly situated to her.

6  Judge Lee: Wasn't there an issue with regard to the information that was provided, it didn't

7  fully [00:31:30] disclose the the salaries for specific professors for specific positions. I mean, isn't

8  that a little bit of a hindrance to fully fleshing out the comparators?

9  Mrs. McLaughlin: I believe the information there was some information redacted in terms

10  of names and other information that wouldn't necessarily show either way in terms of whether or

11  not they were comparators. I think the information given was sufficient to provide her an

12  opportunity. And again, [00:32:00] it's the male comparators in her department, which I think there

13  are 16 of them or so to determine whether or not there's somebody similarly situated to her that

14  she could point to that are paid more for those reasons that she states in her complaint.

15  Judge Calabresi: Counsel, I have another question. That is, the District Court said that all

16  sorts of things that happened before a date were irrelevant, were beyond the statute of limitations,

17  [00:32:30] and she argues that's continuous, the District Court has good arguments for why they're

18  not. But the District Court then specifically failed to take those into account in understanding her

19  claims. Now that is on its face-error under our cases and so I'd like you to address why, if there

20  was that error, that error isn't by itself isn't enough [00:33:00] to send it back. That is, if the District

21  Court looked at things post-2017 without considering the effect of the earlier ones, as our cases

22  say, couldn't we send it back? Or is there a reason not to?

Solomon v. Fordham University

1   Mrs. McLaughlin: Well, the the items that were mentioned in the pleadings outside the

2   statute of limitation in connection with her hostile work environment claim included the

3   nomination denial of a chair position.

4   Judge Calabresi: Counsel.

5   Mrs. McLaughlin: Yes.

6   Judge Calabresi: Talking not just the [00:33:30] hostile work environment.

7   Mrs. McLaughlin: Right.

8   Judge Calabresi: I'm talking about with cases, I'm talking also about whether actions were

9   sufficient, discriminatory, whether they the whole schmear.

10   Mrs. McLaughlin: Right, but I think the claims that she raises outside of the statute of

11   limitations such as denial of a chair position in 2013, if that was based on discrimination that

12   should have been raised in challenge then. And also her other allegations of items on actions that

13   happened to her outside of the statute of limitations [00:34:00] related to failure to schedule

14   meetings or including her in them. Again, inside the statute of limitations, she talks about being

15   personally attacked or abruptly being cut off in meetings. All of these items I think the District

16   Court recognized could give context to the discrimination claim, but didn't necessarily again, push

17   it over the line to plausible to support or withstand, I should say the 12(b)(6) motion.

18   Judge Calabresi: I have yet another question. Somewhere in your argument you make the

19   rather [00:34:30] remarkable statement that it is settled law that things which she claims are not

20   supposed to be adverse actions, and for that either you cite the District Court that cites a summary

21   order which is not really on point. Now that's a remarkable way of saying it's settled action of our

22   of our court [00:35:00] when many cases in our courts have suggested that things analogous to this

10

Case 1:18-cv-24-3056, 11/22/2024, DktEntry: 1.1, Page 63 of 621
Case 1:18-cv-04615-ER   Document 165-1   Filed 12/04/24   Page 28 of 160
Case 1:18-cv-04615-ER   Document 126   Filed 12/11/23   Page 14 of 19

Solomon v. Fordham University

1   were adverse actions, at least at a 12(b)(6). Now I'd like you to address that, because I was very

2   troubled by that in your group, I must say.

3        Mrs. McLaughlin:  So the if you're referring to the Klein case of the Southern District in

4   which the court analyzed teaching schedules and whether affording a teacher or professor an

5   undergraduate course versus a PhD course was adverse.

6        Judge Calabresi:  Please, you are telling us [00:35:30] that it is settled law of our Circuit

7   and then citing a District Court that cites a summary order, which isn't really important anyway.

8        Mrs. McLaughlin:  Understood. Understood, Your Honor. But again, I believe that the

9   adverse employment action argument that the court below did find it could be.

10       Judge Calabresi:  Do you have a better case from our court to support what you're saying?

11  [00:36:00]

12       Mrs. McLaughlin:  I'm sorry, I didn't hear the edge of that.

13       Judge Calabresi:  I'm saying do you have a case from our court to support that statement?

14  The cite that you, the citation ain't getting very good. But do you have cases?

15       Mrs. McLaughlin:  In terms of a professor and their teaching schedule and whether or not

16  it's onerous? There is the Vega case versus Hempstead that also talks about whether there's an

17  onerous assignment, and that was related to a discrimination matter [00:36:30] on a 12(b)(6)

18  motion. And in that case, in the Vega case, the professor or teacher there was in, I believe, in a

19  high school, was given a certain assignment based on his Hispanic national origin. He was given

20  all the Spanish students he was asked to transfer to a different school. And that, Your Honor, again

21  distinguished from this, was considered onerous by that court.

22       Judge Calabresi:  Your strongest arguments, frankly, I think are [00:37:00] that everything

23  that was done with respect to the appellant was done not for reasons of discrimination, but because

11

Solomon v. Fordham University

1   the school found her troublesome, that they didn't get along.  And that may well be a winning

2   argument. But is that an argument that should be done at this stage:?

3        Mrs. McLaughlin:  Again, as you say, I don't believe that this is a case of discrimination

4   and that [00:37:30] as you've mentioned, this may have been a disagreement as to course

5   assignment and position within the university, but.

6        Judge Calabresi:  Or even a personal discord, which you know may not be nice or may be

7   nice, but it's not a a matter of federal law.

8        Mrs. McLaughlin:  Exactly.  And for that reason, Your Honor, I believe that she hasn't

9   stated a case of discrimination. She may have stated a case of not getting along with her fellow

10  colleagues. I see my time is run and if there's further questions.

11       Judge Lee:  Okay.

12       Mrs. McLaughlin:  Or if not, I would rest on the brief.

13       Judge Lee:  All right, thank you.

14       Mrs. McLaughlin:  Thank you.

15       Ms. Solomon:  Your Honors. I would like to correct the record regarding what the Fordham

16  representative indicated. I will start with the end with the adverse action. The District Court did

17  find adverse action per the Vega case. That my case, contrary to the Klein case which the university

18  cites, demonstrates that the [00:38:30] assignments were more onerous, that there was interfered

19  with my research, and that it was adverse employment action. And that fulfilled the third of the

20  four requirements for the discrimination case. Also, I have very strong indicators of discriminatory

21  intent, extraordinary I believe, which demonstrate, have proven my case that I [00:39:00] had a

22  discrimination case that was plausibly alleged.

12

Solomon v. Fordham University

1    And per my brief, the adverse actions are the following. First of all, the plaintiff's demotion
2    and transfer as of spring 2018 per Vega, unlike the male and younger females. Number two, the
3    disparate pay, about half of the comparators and exclusion of older females from administrative
4    and teaching opportunities. Number three, the persistence of the demotion following semester
5    [00:39:30] after semester, reflecting an intention to force me out and constructive discharge. Then,
6    workplace sabotage when I return post termination in which I was cut off from the from the
7    Blackboard and I was precluded from teaching, demonstrating the intent to force me out even after
8    the termination. And of course the fifth adverse employment action is the termination, which is
9    the ultimate [00:40:00] adverse action which is documented in Fordham's submission to the IRS
10   and the Department of Labor through the COBRA regulations. So in addition to the termination,
11   there was there a report pursuant to federal law that is permanent part of my record and it has never
12   been removed as of February 1st, 2020.

13   I would also like to mention regarding the procedural issues that Your Honor, mentioned
14   previously. [00:40:30] That the discovery that took place here was way before the first order.
15   Initially, in 2019, when I was pro se through the pro se office, they brought me in contact with the
16   Cravath firm and there was discovery for about two months. That's all the discovery that took
17   place. After the firm left, there were in my view there were too many, too many obstacles, I used
18   this material subsequently, [00:41:00] but I was denied any discovery as of, I as of believe it was
19   April 2019, there was absolutely nothing. Then I submitted some subpoenas because I was missing
20   information they had redacted, contrary to Protective Order, all the names of the professors. So as
21   you see, the judge actually commented there are no names, because I didn't have them. So, I had
22   subpoenas for my my own personnel records which were deficient [00:41:30] and for those of the
23   comparators. And there was this hearing in January 2020 January 29 and that hearing was because

13

Solomon v. Fordham University

1   I requested the court to, to allow me for a motion to compel discovery and the court allowed me.
2   And I submitted this motion, but this motion was never reviewed, and it is a footnote in the Judge's
3   first Order that he stopped discovery. And I have nothing ever since, [00:42:00] and that was as
4   of very early 2020. So the only discovery was two months in 2019 before the first report of
5   termination. As you probably know, there were two reports of termination that Fordham filed.

6       Judge Lee: Okay thank you.

7       Female Speaker: Thank you.

8       Ms. Solomon: And one last thing is about the comparators. I wanted to point out that in
9   my motion for reconsideration, I had attached a very important, I think, decision by Freyd in the
10   9th Circuit [00:42:30] which specifically addressed the issue of comparator professors in
11   Universities. And what the Freyd case says, it's a summary judgement case, but I believe this is
12   applicable to the Second Circuit, although the court indicated that it might not be it. What the
13   Freyd decision said is that professor's jobs consist of teaching, research, and service and that is
14   sufficient. And I supported that with sections from the University [00:43:00] Statutes that define
15   the duties of faculty, the research, the service duties, the criteria. And also I addressed the the
16   standard in the Second Circuit that said that there should be equal standards. And I define the
17   standards for professors, everything according to the university status.

18       Judge Lee: Okay.

19       Ms. Solomon: There was also an AAUP ...

20       Judge Lee: Ms. Solomon…

21       Ms. Solomon: I'm sorry. [00:43:22 – end of instruction]

22       Judge Lee: No, that's all right. I I think we understand your position, so.

23       Ms. Solomon: Okay.

14

Solomon v. Fordham University

1    Judge Lee: We will conclude ...

2    Ms. Solomon: Thank you.

3    Judge Lee: Thank you.

4    Ms. Solomon: Okay, thank you.

5    Judge Lee: [00:43:30] And you can have a seat. So we'll have a brief recess now. We will

6    be right back.

7    Female Speaker: The court stands in recess.

8    Judge Calabrese: Okay, cut me off. [00:43:44]



**Vanan Online Services, Inc.**
Think Service Think Vanan

## Certificate of Transcription

Transcription of File(s) **"solomon_v._fordham_university_cl.mp3"**

We, Vanan Online Services, Inc., a professional Transcription Company, hereby certify that the above-mentioned transcript(s) has/have been performed by our qualified and experienced Transcriber(s) is/are accurate and true of the original File(s).

This is to certify the correctness of the Transcription only. We cannot guarantee the veracity of the original File. Our Transcriber is in no way related, by immediate family ties or marriage, to any parties related to the materials performed.

A copy of the Transcription is attached to this Certification.

*Danny Negley*

Danny Negley, Production Manager.

Dated: 02nd day of Nov 2023
Vanan Online Services, Inc.
ATA Member #266532
ISO 9001:2015

Vanan Online Services, Inc.
10711 Spotsylvania Ave., Suite A
Fredericksburg VA 22408
Office: (888) 535-5668
Email: support@vananservices.com
Website: www.vananservices.com

# ATTACHMENT 4

Case 1:18-cv-04615-ER   Document 165-1   Filed 12/04/24   Page 70 of 621
Case 22-887, Document 49-1, 09/08/2022, 3379305, Page35 of 79
Case 1:18-cv-04615-ER ... 35 of 160

**Table 3: Management Systems Male Comparators Annual Earnings**

|  | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | Average |
|---|---|---|---|---|---|---|---|---|---|
| W2 Male #1 | $156,133 | $159,335 | — | $148,274 | $199,718 | $203,608 | $215,802 | $235,103 | $188,282 |
| W2 Male #2 | $186,930 | $232,623 | $202,359 | $175,956 | $206,064 | $241,683 | $275,795 | $221,794 | $217,901 |
| W2 Male #3 | $365,233 | $307,573 | $393,072 | $421,491 | $335,002 | $355,067 | $312,806 | $333,592 | $352,980 |
| W2 Male #4 | $155,665 | $162,279 | $166,723 | $173,914 | $198,522 | $204,744 | $208,461 | $230,309 | $187,577 |
| W2 Male #5 | $159,004 | $197,685 | $272,810 | $258,288 | $294,150 | — | $213,267 | $178,662 | $224,838 |
| W2 Male #6 | $197,221 | $186,533 | $183,565 | $166,773 | $159,562 | $165,030 | $161,259 | $165,083 | $173,128 |
| W2 Male #7 | — | $155,251 | $244,504 | $246,703 | $245,951 | $255,366 | $202,171 | —— | $224,991 |
| W2 Male #8 | —– | $124,704 | $145,530 | $134,099 | $138,248 | $68,249 | $93,617 | $156,106 | $122,936 |
| Male Avg | $203,364 | $190,748 | $229,795 | $215,687 | $222,152 | $213,392 | $210,397 | $217,236 | ~$211,000 |
| W2 Solomon | $114,768 | $109,027 | $106,406 | $111,525 | $80,669 | $53,138 | $53,914 | $55,545 | $85,624 |
| Base | $105,851 | $108,901 | $111,409 | $113,880 | $116,160 | $120,571 | $122,947 | $125,564 | $115,660 |

The 2011-2018 Salary Comparison table demonstrates that the male

professors' average earnings were about $211,000 based on their W2 forms.

Plaintiff's average base salary was about $116,000. The compensation

differential is $96,000/year. JA43 ¶403-405.

31

# ATTACHMENT 5

Case 1:18-cv-24-3056, 11/22/2024 DktEntry: 1.1 Page 72 of 621
Case 1:18-cv-04615-ER Document 165-1 Filed 12/04/24 Page 37 of 160
Case 1:18-cv-04615-ER Document 67 Filed 03/03/20 Page 1 of 35      1

K1TESOLC - CORRECTED

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   SOLOMON,

4              Plaintiff,

5        v.                              18 Cv. 04615 (ER)

6   FORDHAM UNIVERSITY,

7              Defendant                 Conference

8   ------------------------------x
                                         New York, N.Y.
9                                        January 29, 2020
                                         10:30 a.m.
10
    Before:
11
                        HON. EDGARDO RAMOS,
12
                                         District Judge
13

14                        APPEARANCES

15  ESTHER SOLOMON, pro se

16
    CULLEN AND DYKMAN LLP
17       Attorneys for Plaintiff
    BY:  HAYLEY B. DRYER, ESQ.
18           RYAN SOEBKE, ESQ.

19

20

21

22

23

24

25

K1TESOLC - CORRECTED

1    -- I mean I'll ask -- but as to whether or not they have

2    complete access to your account, you're still required to go

3    through and to turn over all relevant documents that are in

4    your personal account, OK?  That's a responsibility that you

5    have.

6         MS. SOLOMON:  Yeah.  I have done it to the best of my

7    ability, and I have been trying and I have a whole bunch of

8    others that I plan to do because I would like to use them at

9    trial as well.  That's the key issue.  I have done the best I

10   can to produce whatever I found was relevant from thousands and

11   thousands of emails -- and I produced 2500 at least -- and now

12   I wanted to point out also one more thing that, among the

13   documents that the defendants say they have produced to me,

14   half are my own emails to myself, to different people.  So they

15   produced to me my own emails, which I possess, so half the

16   production is useless to me because I have those emails.

17        THE COURT:  I'm sorry.  What?

18        MS. SOLOMON:  In the server, there are my own emails,

19   so half of the defendant's production is not new documents that

20   we requested, but they produced my own emails from the server.

21   And although there is a confidentiality stipulation dated

22   February 14, 2019 that says that if either party has access to

23   documents independently, they can't be deemed confidential.

24        So what the defendants did, they put, basically, about

25   8,000 of my own emails and they deemed them confidential from

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

K1TESOLC - CORRECTED

1    me in violation of the stipulation.  So this was part of their

2    production and I think that's a very serious issue.

3              I want to go further.  Essentially, what the

4    defendants have done is they have very serious redactions in

5    most of the documents that make them useless, and this goes way

6    beyond what the --

7              THE COURT:  I want to take these issues one at a time.

8              Ms. Dryer, what about that?  What about the fact that

9    you're designating documents confidential that ought not be

10   designated confidential because she has them?

11             MS. DRYER:  Your Honor, with regard to the designation

12   of confidentiality, or the designation of confidential, these

13   documents that we've turned over to Dr. Solomon -- in addition

14   to her emails -- include sensitive, nonpublic information

15   including comparator professor files, 12 different comparator

16   professor files.

17             These documents consist of human resource files,

18   provost files, Gabelli files, business school files.  These are

19   very sensitive documents that are, in fact, confidential that

20   should be marked and are marked as confidential.

21             THE COURT:  What she's indicated is that she has

22   documents that are her own emails that you've marked

23   confidential.  Is that true?

24             MS. DRYER:  Yes.  Those emails contain attachments and

25   those emails are, in fact, sensitive and nonpublic, so in an

K1TESOLC — CORRECTED

1  abundance of caution they have been marked confidential.

2        THE COURT:  OK.

3        MS. SOLOMON:  We're talking about 8,000 documents:

4  8,539.  This is, in my view, totally inconsistent with the

5  stipulation.

6        THE COURT:  Do the documents contain sensitive

7  information?

8        MS. SOLOMON:  These are my emails to my colleagues, to

9  the deans, to the administrative.  These are my own emails from

10  -- I mean, I should have access to them and I don't deem them

11  confidential.

12        THE COURT:  Well, you do have access to them.

13        MS. SOLOMON:  Yeah, but why are they deemed

14  confidential?

15        THE COURT:  How is the designation of confidentiality

16  impeding your ability to fight your case?

17        MS. SOLOMON:  That's not the issue.  That's one of the

18  issues, but why should they be deemed confidential even though

19  the stipulation says otherwise?  I mean, they can take my --

20        THE COURT:  I guess what you can do is say:  Look,

21  here's an email that's just an email from me.  There is no

22  attachment.  It's to the dean and says "let's have a call," and

23  they have designated that confidential and you say:  Well, that

24  shouldn't be confidential.

25        But is that the kind of thing they designated as

K1TESOLC - CORRECTED

1   confidential?

2           MS. SOLOMON:  What I'm concerned with, in the

3   stipulation there are penalties for revealing confidential

4   information.  If I reveal my own emails to do whatever I want,

5   I can be penalized.  This was a very rigorous stipulation.

6           THE COURT:  That's the reason for the stipulation.

7   There's a protective order in place, and there's a protective

8   order in place for a very good reason in this case because

9   you're dealing with -- you're alleging particular decisions

10  that were made with respect to your tenure; and in order to

11  prove your case, you have to necessarily rely on information

12  concerning comparators, and that is very highly sensitive

13  information that neither you nor anyone else want disseminated

14  publically.

15          MS. SOLOMON:  Right.  That's a different group of

16  documents we're talking about.  What I was talking about before

17  were simply emails that were exchanges between me and members

18  of the faculty -- members of the faculty were the first group

19  that I was talking about -- and it was an agreement between the

20  parties that that should not be confidential, and yet they

21  deemed them.  We're talking about 8,000 documents.

22          Now, regarding the second group that you mentioned,

23  that's an extremely important point.

24          THE COURT:  No, no.  We're going to talk about them,

25  but just not now.

K1TESOLC - CORRECTED

1              Ms. Dryer?

2              MS. DRYER:  With regard to the confidentiality issue?

3              THE COURT:  Yes.  She says there's 8,000 documents and

4       that you're using this willy nilly and designating too many

5       documents confidential.

6              MS. DRYER:  Your Honor, I don't see how that affects

7       Dr. Solomon's ability to prosecute her case.  She just

8       indicated that she is going to reveal things to her fellow

9       faculty or her colleagues.  We have a legitimate interest here

10      to protect very sensitive information of Fordham's faculty and

11      employees of Fordham.

12             In an abundance of caution, yes, documents that have

13      be produced to Dr. Solomon, including her emails, have been

14      designated as confidential.  I'm having a hard time

15      understanding how that has affected at all her ability to

16      prosecute her case, and this is the first time we're hearing,

17      quite frankly, of this; and pursuant to the confidentiality

18      order and your Honor's rules, she has an obligation to bring

19      this to our attention at a meet and confer, and this is the

20      first time we're hearing of any type of designation issue.

21             THE COURT:  OK.  So, Ms. Solomon, this is what we're

22      going to do.

23             To the extent possible, we're going to try this case

24      and handle this case as we would any other case.  So with any

25      other case what I would tell the lawyer is, to the extent that

K1TESOLC - CORRECTED

1    you believe any particular designation has been applied

2    inappropriately, you are required in the first instance to

3    bring that designation to the attention of the other side.

4           So what you need to do is you need to speak with Mr.

5    Soebke or Ms. Dryer -- or whoever else from Cullen and Dykman

6    is on this case -- and say to them:  Look.  You've designated

7    this document confidential.  That is an inappropriate

8    designation.

9           Now, there may be several dozen, several hundred, a

10   couple of thousand, and what you need to consider is whether

11   that is an efficient use of your time, OK?  Because, again, the

12   fact that it's confidential doesn't prevent you from seeing it

13   or using it appropriately in this case, OK?

14          It may be of no moment to you or to the prosecution of

15   your case that it has been designated confidential, so you need

16   to consider how you want to do that.  But in the first

17   instance, you have to identify particular documents --

18   particular documents -- and then go to them and say:  We

19   believe that this is inappropriate designation.  OK?

20          MS. SOLOMON:  Sir, I thought if there is a

21   confidentiality stipulation that the parties have to abide by

22   it.  I have been at every meet and confer.  I initiated the

23   meet and confer before this conference and I said to them that

24   there are improper redactions, and they have designated every

25   single item they produced as confidential.  This is in strict

K1TESOLC - CORRECTED

1    opposition to the stipulation.

2           THE COURT:  You're saying that every single document

3    they've produced has been designated confidential?

4           MS. SOLOMON:  Yes.

5           THE COURT:  Ms. Dryer, is that true?

6           MS. DRYER:  Yes, your Honor.

7           MS. SOLOMON:  I told them this is a big problem, and I

8    told them every issue they I want to discuss when I meet with

9    you today, in the meeting with your Honor, I think that should

10   be addressed as well.

11          Can I ask you a question?

12          THE COURT:  Yes.

13          MS. SOLOMON:  First of all, I wanted to thank you for

14   allowing this hearing.  I would like to talk about three issues

15   in terms of the motion to compel.  Basically, I served the

16   subpoenas to Fordham University to which they only objected,

17   and also have provided no responses to interrogatories.  As to

18   that, I produced mine and, in my view, they have an opposition

19   which is invalid.

20          Number three, previous discovery requests as of

21   January, 2019 have been completely without a response, so it's

22   basically very poor discovery.

23          I wanted to mention one more thing before that.

24   Something happened since I wrote to you the letter, and I think

25   I need to mention this to the Court because it does relate to

K1TESOLC - CORRECTED

1   the discovery issue directly.  Basically, it seems to me that
2   the defendants say to you one thing and do the opposite.  They
3   have written to you in the letter in response to my -- this
4   request that they are trying to settle, and they're trying to
5   find an applicable agreement.  The same day that they sent that
6   letter to you, I received the letter saying, essentially, the
7   way I see it, that they will remove me from Fordham payroll,
8   essentially, basically cutting me out after 35 years.
9           And what I say is, essentially, that's taking my
10  tenure without due process of law, and then under the eyes of
11  the Court they are saying they're trying to be helpful.
12          They did not allow me to teach for three semesters and
13  I've been without a salary for a year and a half.
14          THE COURT:  You've been without what?
15          MS. SOLOMON:  I have been without a salary for a year
16  and a half.  I have not been paid for a year and a half.  They
17  took off my tenure, so I wrote the letter to the president of
18  the university and to the provost saying this is what happened.
19          Then the vice provost wrote me back:  Oh, no, no,
20  there's no problem.  You've done nothing wrong.
21          But the idea is they wanted to deny me the right to a
22  hearing.  Basically, I'm here in a very difficult situation and
23  I've essentially lost my tenure without them allowing me to
24  have a hearing, and I am in a very, very difficult situation.
25  That's one more reason why I need my personnel file, which is

K1TESOLC - CORRECTED

 1    very incomplete.  I need my personnel file to find out what my

 2    status is at the university.

 3              THE COURT:  Let me stop you there.  It has been

 4    represented to me by the counsel for the university that, so

 5    far as they are concerned, they have turned over everything

 6    that they have concerning your personnel file, or everything

 7    that they've found, and why shouldn't I take that

 8    representation?

 9              MS. SOLOMON:  I have many, many examples of why this

10    is not so.

11              THE COURT:  Have you turned over those examples?

12              MS. SOLOMON:  I have spoken with Mr. Ryan on the phone

13    on two occasions and I told him -- I went through my list and I

14    told him number one, number two, number three -- no response --

15    and that's because they don't want to give me this information.

16              THE COURT:  So let me stop you there.

17              Ms. Dryer --

18              MS. DRYER:  Yes, your Honor.

19              THE COURT:  -- who is this Mr. Ryan?  Was he provided

20    with a list of items that Ms. Solomon believed to be missing

21    from her file?

22              MS. DRYER:  Mr. Ryan is my colleague at Cullen and

23    Dykman.  Your Honor, Dr. Solomon is a tenured faculty member at

24    Fordham University and remains a tenured faculty member at

25    Fordham University.  We were not provided with a list of items

K1TESOLC - CORRECTED

1    that Dr. Solomon believed is missing from her file.

2              THE COURT:  I'm sorry.  She's remains a tenured

3    professor?

4              MS. DRYER:  Yes, she remains a tenured professor at

5    Fordham University today.

6              THE COURT:  OK.

7              MS. DRYER:  What we were provided with, Dr. Solomon

8    believes that emails and documents -- excuse me.  Let me back

9    up.

10             A personnel file at Fordham University consists of an

11   HR file, a provost file, and an individual school file, in this

12   case, a Gabelli file.  Dr. Solomon believes that every email or

13   document related to her tenure -- her time at Fordham -- should

14   be in her personnel file.

15             For example, the emails relating to this alleged chair

16   position or other extraneous documents, Fordham does not keep

17   those documents in a personnel file.  So what Dr. Solomon may

18   believe will be in a personnel file is not what Fordham

19   actually keeps in a personnel file.  Fordham has turned over

20   the entirety of Dr. Solomon's personnel file.

21             MS. SOLOMON:  OK.  So, your Honor, so far there have

22   been three versions by defendants as to whether I do or do not

23   have my personnel file.  The first version was, when they

24   communicated with the Cravath firm, they used to tell them that

25   whatever they gave me -- this fiction that there are three

1    groups of files and these are all the files that exist, so they

2    were telling them that everything is there.

3            Then Cravath asked them a very simple question:  Do

4    these three files that you gave us comprise everything or is

5    there anything else that should be there, and also, can you

6    please tell us why you do not provide the redactions.

7    Redactions are inconsistent with the Federal Rules of Civil

8    Procedure.  I could read it to you.  Basically, when they asked

9    them this question, Ms. Dryer in her letter to them basically

10   admitted that they had not provided everything, and that

11   they -- that essentially what was needed to provide the

12   personnel files was the subpoena and so that's what I did.

13           THE COURT:  Let me stop you there.

14           Ms. Dryer?

15           MS. DRYER:  Your Honor, Fordham has faculty statutes

16   that say personnel files are confidential and should not be

17   produced without a lawful subpoena.

18           In this case, Dr. Solomon is correct, that we had

19   conversations with Cravath about the faculty statutes.  In

20   light of those faculty statutes, we produced the entirety of

21   the comparator professor files, personnel files, but we have

22   redacted the names of the comparator professors.

23           However, we provided Dr. Solomon with the agreement of

24   her counsel with a key, and this key assigned each professor a

25   number:  Professor 1, Professor 2, Professor 3, Professor 4,

K1TESOLC - CORRECTED

1    and the key also had the birth date of each professor, their

2    salary, their title -- all of the information that Dr. Solomon

3    needs to make her case.

4            Fordham is not hiding anything.

5            THE COURT:  Was there anything substantive in the

6    files of the comparators that was redacted?

7            MS. DRYER:  No, your Honor.  Assuming Dr. Solomon has

8    a case -- a discrimination case, a pay equity case, any other

9    type of claim -- nothing was redacted but the biographical

10   information or irrelevant information.

11           If the file had HIPAA-protected information, medical

12   information, that's not relevant to this case, but is otherwise

13   sensitive to each professor and we redacted that because that's

14   not relevant to this case.

15           The only other thing that was redacted from the

16   files -- and this was according to the faculty statute -- was

17   the names related to the tenure and promotion process.

18           THE COURT:  Are these the names of the individuals who

19   made those determinations?

20           MS. DRYER:  Yes, so the determination is still there.

21           For example, if professor -- and I'll use this as an

22   example -- if Professor Jones wrote about Professor Smith:  'I

23   think Professor Smith is great.  I think Professor Smith should

24   get tenure' -- that evaluation is still there, but Professor

25   Jones's name is redacted in accordance with the faculty

K1TESOLC - CORRECTED

1    statutes.

2                THE COURT:  OK.

3                MS. DRYER:  And this is critical to the university.

4    This is the heart of the university's process here.

5                THE COURT:  Was that in accordance with an agreement

6    or an understanding that had you with Ms. Solomon's prior

7    counsel?

8                MS. DRYER:  We explained this to Dr. Solomon's prior

9    counsel.  This is in accordance with the university's faculty

10   statutes, which require anonymity to be effective, and this

11   really requires -- faculty statutes require the sharing of

12   constructive criticism without fear of reprisal.

13               If this were to change, if people could just get this

14   information by filing a lawsuit, it would essentially silence

15   professors at the university.  It would negatively affect the

16   day-to-day operations of the university.

17               THE COURT:  When you said these are faculty statutes,

18   what does that mean?

19               MS. DRYER:  They are, essentially, law of the

20   university.  The university runs and complies with these

21   statutes of the university.

22               MS. SOLOMON:  May I approach your bench, sir?  I have

23   this exhibit in my letter to you that says exactly what the

24   statutes say about this issue.

25               THE COURT:  Wait.  No.  No need.

K1TESOLC - CORRECTED

 1              MS. DRYER:  Your Honor, these faculty statutes, as

 2     acknowledged by Dr. Solomon, mean something.  They mean

 3     something to Fordham, and they mean something to Dr. Solomon.

 4              THE COURT:  So this is what I'm going to do.

 5              First of all, with respect to Dr. Solomon's personal

 6     personnel file, the representation has been made that the

 7     entirety of it has been turned over.  There's no reason for me

 8     to question that representation.

 9              If you want to make a motion to compel with specific

10     things that you believe should be in there that are not

11     there -- again, to the extent that you think the university

12     needs to put in every email from you to whomever, that may not

13     be the case.

14              So with respect to that, I'm not requiring the

15     university to do anything more.  With respect to the

16     redactions, with respect to the comparators, that the

17     representation has been made that those redactions have been

18     done in accordance with these faculty statutes which exist, or

19     reasons which I suspect that you would understand and you would

20     appreciate, to the extent that you want to make a motion to

21     compel that, you may make that motion.

22              But again, I think that you're probably going up a

23     steep hill with respect to that unless there is some very, very

24     good reason why we should tell -- at least within the context

25     of this case -- why particular professors had particular things

K1TESOLC – CORRECTED

1    to say about either you or the comparators.

2              Yes, ma'am.

3              MS. SOLOMON:  OK.  I think here Ms. Dryer is confusing

4    different issues.  There are two types of redactions.  One type

5    is that they redacted the names of the personnel files of the

6    people whose personnel files that presumably have been

7    produced -- which have not been produced.

8              So I have Professor 1, Professor 2, Professor 3, so

9    they have turned discovery into a guessing game and this is

10   inconsistent with the stipulation.

11             Number two, what Ms. Dryer is talking about is

12   whenever there's a peer review evaluation of different faculty,

13   they redacted those numbers.  There is case law that says that

14   that should be revealed as well, but that's a different issue.

15   So when they represent that they gave every professor's

16   personnel file, this is so inaccurate it's hard to imagine.

17             THE COURT:  So "inaccurate"?

18             MS. SOLOMON:  Inaccurate.

19             First of all, there is no way for me to say who is who

20   because there are numbers, there is no personnel file of, you

21   know, a professor that --

22             THE COURT:  Why do you need the names?

23             MS. SOLOMON:  I need to know who the people are and

24   how to connect the information and connect the emails.

25             THE COURT:  Do you want to make a motion to compel?

K1TESOLC - CORRECTED

1  Let's make a motion to compel that.  I have other cases that I

2  need to get to today.

3           MS. SOLOMON:  I think I want to compel this -- the

4  subpoenas -- because I don't know -- I do not have the complete

5  personnel file.  From my personnel file and from the

6  professors' files that I have --

7           THE COURT:  Let me stop you there.

8           Have you turned over the complete personnel files and

9  the comparators in a redacted fashion?

10          MS. DRYER:  Yes.

11          THE COURT:  If you want to make a motion to compel,

12  then you have to have some basis for me to say -- I mean, I

13  have a representation from a lawyer, a member of the bar of

14  this court, and if any member of the bar of this court makes a

15  misrepresentation to the Court knowingly, they have bigger

16  problems than just the problems involving that particular case.

17          The representations that they are making make some

18  sense to me in terms of the redactions that are being made and

19  why they are being made.  You may have some argument that maybe

20  they are redacting too much, but if you're going to make a

21  motion, you have to have particular items that you believe are

22  being kept from you, items that are being redacted, and why

23  they are important, OK?

24          MS. SOLOMON:  I just wanted to mention, your Honor,

25  this is the email from Cravath to them on April 10, 2018:

K1TESOLC - CORRECTED

1              (Reading):

2              With regard to the personnel file, as discussed during

3     the parties's March 21st meet and confer, please confirm that

4     the three files produced to date, the human resource, provost,

5     and Gabelli files, comprise the entirety of Dr. Solomon's

6     personnel file and that there are no other components to that

7     file.

8              THE COURT:  Let me stop you there.

9              Ms. Dryer, are there other components?

10             MS. DRYER:  No.  A personnel file at Fordham consists

11    of human resources files, provost files and the individual

12    school file, which in this case is the Gabelli file.

13             MS. SOLOMON:  On April 11, you indicated that missing

14    there are teaching schedules, teaching evaluations, and they

15    are going to be produced but on a rolling fashion, and nothing

16    has been produced.  That's an admission by you that they're not

17    complete.  Now you say that they are complete.

18             Regarding my file, for example, they have --

19             THE COURT:  Let me stop you there.

20             Ms. Dryer?

21             MS. DRYER:  In response to plaintiff's discovery

22    demands, we indicated to counsel that additional documentation

23    would be forthcoming.

24             THE COURT:  Has it been produced?

25             MS. DRYER:  Most of that documentation has been

K1TESOLC - CORRECTED

1    produced.  There are one or two outstanding items.

2              THE COURT:  What items?

3              MS. DRYER:  Student evaluations are outstanding, and I

4    believe that emails might be outstanding.

5              THE COURT:  What is outstanding?

6              MS. DRYER:  Student evaluations are outstanding.

7              THE COURT:  And?

8              MS. DRYER:  And a few emails might be outstanding.

9    That I would have check.

10             THE COURT:  OK, so turn those over.

11             MS. SOLOMON:  (Reading):  With regard to the

12   redaction of documents, you represented to us during the

13   parties' March 15th meet and confer that you needed to confirm

14   whether Fordham University would agree to produce unredacted

15   HR, provost, and Gabelli files.  You made this promise during

16   our March 21st meet and confer, and again during the parties'

17   April 1st meet and confer.  We have now been awaiting for a

18   response from you for more than three weeks.  Please confirm

19   immediately whether Fordham will agree to produce these

20   materials without redaction as required by the Federal Rules.

21             THE COURT:  What materials are these?

22             MS. SOLOMON:  The personnel files that I'm asking

23   about now, they told me that I have to put the subpoenas, and

24   now they say:  Oops, you have them already.

25             THE COURT:  Ms. Dryer?

K1TESOLC - CORRECTED

1          MS. DRYER:  Your Honor, all of the information that

2     has been requested in the subpoenas have been produced.  The

3     comparator sheets -- Dr. Solomon requested the comparator files

4     be subpoenaed.  That has been produced.  She now contests that

5     we had not agreed to a period starting 2008.  That was

6     requested by Dr. Solomon in her document demands.

7          The purpose of the subpoenas though, your Honor, is to

8     harass Fordham.

9          THE COURT:  I'm sorry.  If she served you with a

10    subpoena, does that permit you to turn over the files in an

11    unredacted fashion of the comparators?

12         MS. DRYER:  With a lawful subpoena.  It is Fordham's

13    position this is not a lawful and correct subpoena.

14         THE COURT:  Why not?

15         MS. DRYER:  Because we have turned over all the

16    information that's sought in the subpoena.  The purpose of this

17    subpoena is to harass Fordham.

18         Dr. Solomon has, on more than one occasion, asked if

19    the comparator professors have been informed of the subpoena.

20    She is trying to cause an uproar on the Fordham campus.  She

21    has -- the subpoenas asked for information before the 2008

22    period.  We previously agreed with counsel that the discovery

23    would start at 2008.  Any information that is sought before

24    then is way outside the statute of limitations.

25         MS. SOLOMON:  Two issues, your Honor.

K1TESOLC - CORRECTED

1          Number one, I find it very insulting that there are

2     untrue statements of facts that are raised against me.  I am

3     trying to harass them?   The statutes say that once the

4     university gets the subpoena, they have to notify within 24

5     hours the faculty member.  They have not notified them.  I'm

6     just following the statutes.  What the statutes say, I follow

7     letter by letter.

8          THE COURT:  OK.  Again, file a motion to compel.

9          MS. SOLOMON:  Second, Ms. Dryer, they came up with --

10    after the subpoenas, they came up with the fiction that

11    supposedly there was an agreement that everything started 2008.

12    There is no such agreement.

13          THE COURT:  Let me stop you there.

14          Ms. Dryer, what is that agreement from?

15          MS. DRYER:  Your Honor, in Dr. Solomon's document

16    demand it was Dr. Solomon's definition that the discovery will

17    start in 2008.

18          THE COURT:  OK.

19          MS. DRYER:  We have gone back and forth with Dr.

20    Solomon in various meet and confers regarding objections to the

21    subpoenas.

22          We asked Dr. Solomon on numerous occasions to engage

23    in a settlement process or in mediation with the Court again.

24          We would greatly appreciate the Court's assistance

25    with regard to either mediation or a settlement conference

# ATTACHMENT 6

CONFIDENTIAL

FORDHAM0015972

# NAME: _____ INFO SYSTEMS

## Application for Promotion - 2018

| PRINT NAME | SIGNATURE | DATE | TIME TAKEN | TIME RETURNED |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Q1 - Please sign here:

Q1 Id - Id



| | |
|---|---|
| 8.09KB | image/png |
| 5KB | image/png |
| 5.67KB | image/png |
| 7.11KB | image/png |
| 2.7KB | image/png |
| 8.4KB | image/png |

**End of Report**

**CONFIDENTIAL**

faculty members from  e Unit/School have interviewed the applicant and have been
asked to send their      mmendations to the Dean:

The tenured members of the Department School meeting on _____ (date) to consider the promotion of _____ (candidate's name) consisted of the faculty members whose names are printed below. Each of the members has read or has had read to him/her the Chairperson's report of the meeting as indicated by the following signatures.



AVPAA August 2001

RECOMMENDATION OF FACULTY MEMBER ON REAPPOINTMENT

The recommendation concerning the granting of reappointment to an individual should be sent directly to
the Dean of Faculty or Dean within one week of the Personnel Committee meeting. For norms and
procedures on reappointment decisions, see University Statutes 4-05.01 (a) to (g) and 4-05.03 (a) to (d).
Please note that the University Statutes 4-05.01 (g) (6) require that faculty members voting on a
reappointment decision forward to the Dean an explanation of their vote. The confidentiality of this report
will be scrupulously respected.

Name of candidate: ▇▇▇▇ Professor 9 ▇▇▇▇

Department/School: MANAGEMENT SYSTEMS, GABELLI SCHOOL

At the meeting my vote was ✓ to grant ____ not to grant reappointment. I abstained ____

My reasons for so voting were the following:

Regarding the qualifications of the applicant in teaching, research, and publication, and service [Statutes 4-
05.01 (b) (1) (A)].

▇▇▇ WILL START IN STELLAR "A" PROF. TRUE "A" PUBLICATION
(STRATEGIC MANAGEMENT JOURNAL AS A FT SO SMART LIST
AND PUBLISHED (BT) AND ANOTHER ON AT THIRD RANK R&R
▇▇ HIS JOURNAL
    TEACHING IS JUST AVERAGE BUT HE IS ACTIVELY WORKING
TO IMPROVE HIS COURSE AND HIS TEACHING
    HE HAS SERVED ON AREA'S HIRING COMMITTEES TWO TIMES
AND HAS ACTIVELY WORKED TO BRING OUTSIDE SPEAKERS TO
FORDHAM

Regarding the needs of the Department/School and the University [Statutes 4-05.01 (b) (1) (B)].
    THE SCHOOL NEEDS RESEARCH PUBLISHED IN JOURNALS ON FT SO
AND BUSINESS WEEK LISTS, WHICH HE IS ACTIVELY ▇▇▇▇▇▇▇
TARGETING,
    THE SCHOOL NEEDS TEACHING IN THE REQUIRED STRATEGY
CLASSES, WHICH HE IS TRYING TO CONTRIBUTE TO.
    THE SCHOOL NEEDS FACULTY ▇▇▇▇ WILLING TO SERVE
ON COMMITTEES THAT ARE REQUIRED BY THE BYLAWS
AND STATUTES

In summary, my recommendation is:

REAPPOINT

▇/22/17
Date

AVPAA August 2001



FORDHAM0011023

Case: 24-3056, 11/22/2024, DktEntry: 1.1, Page 99 of 621
Case 1:18-cv-04615-ER   Document 165-1   Filed 12/04/24   Page 64 of 160

Case 1:18-cv-04615-ER   Document 132   Filed 01/18/24   Page 81 of 112

Case 1:18-cv-04615-ER   Document 70-3   Filed 03/17/20   Page 3 of 26

Case 1:18-cv-04615-ER   Document 44   Filed 04/17/19   Page 12 of 14

Solomon, Esther



CONFIDENTIAL

Case: 24-3056, 11/22/2024, DktEntry: 1.1, Page 100 of 621
Case 1:18-cv-04615-ER    Document 165-1    Filed 12/04/24    Page 65 of 160

Case 1:18-cv-04615-ER    Document 132    Filed 01/18/24    Page 80 of 112
Case 1:18-cv-04615-ER    Document 70-3    Filed 03/17/20    Page 2 of 26



---

## INTEROFFICE MEMORANDUM

---

TO:        DAVID STUHR

FROM:      MAUREEN TIERNEY

SUBJECT:   TUTORIAL PAYMENTS

DATE:      9/28/04

---

As per your request we have saved the tutorial requests of the past several months until we could submit them in bulk. Please make the following tutorial payments charged to budget 246100-1110. Supporting documentation is attached.

| | | | | | |
|---|---|---|---|---|---|
| | | | 1 tutorial | Fall 2003 | |
| | | | 1 tutorial | Spring 2004 | |
| | | | 3 tutorials | Summer 2004 | |
| | | | 3 tutorial | Spring 2004 | |
| | | | 1 tutorial | Summer 2004 | |
| | | | 1 tutorial | Summer 2004 | |
| | | | 2 tutorials | Spring 2004 | |
| Professor 15 | 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 | $450 | 1 tutorial | Summer 2004 | |

*APPROVED that 3 paid by*

In addition please make the following payments:

███ charged ██ work on two field studies (one in Spring 2004 and one in Summer 2004).

███ work on two field studies in Summer 2004.

'NFIDENTIAL

FORDHAM0016315

ACAF '06MAY19 PH3:21

To:     Dr. David Stuhr
        Associate Vice President for Academic Affairs

From:   Maureen Tierney
        Associate Dean – Schools of Business

Date:   May 18, 2006

Re:     PWC Foundation Grant

It is requested that payments be made to the following faculty for their participation in the PWC Foundation Curriculum Development:



|  |  |
|---|---|
| $10,000 | 032-26-705 |
| $ 9,000 | 047-18975 |
| $14,000 | 01989781 |
| $ 8,000 | 02971749 |
| $ 2,000 | 04683199 |
| $ 2,000 | 04683055 |
| $ 2,000 | 04720587 |
| $ 8,000 | 04678987 |

Total:           $55,000

Please charge to FRS number 526697-1040

CONFIDENTIAL

REAPPOINTMENT, PAGE 2
Signature Page

The tenured members of the Department/School meeting on

(date) to consider the reappointment of  Professor 9 (candidate's name)

consisted of the faculty members whose names are printed below. Each of the members has read or has

had read to him/her the Chairperson's report of the meeting as indicated by the following signatures.

| Printed Last Name | Signature | Printed Last Name | Signature |
|---|---|---|---|
|  |  |  |  |

**CONFIDENTIAL**

**FORDHAM0011014**

# ATTACHMENT 7

Appointment as a faculty member is a contract for full-time engagement in

faculty responsibilities during the academic year. JA23, Exhibit 18, Fordham

Statutes. According to the Fordham University Statutes, these actions violated

Plaintiff's tenure rights and her contract with the University. JA25 ¶338; Exhibit

25; Tenure Statutes.

Contradictory Reports to Different Federal Entities
    Table 2 below presents Fordham's contradictory representations to the

District Court and Plaintiff versus those filed with the Department of Labor and

the IRS COBRA/ERISA program through Discovery Benefits. JA40 ¶398.

| Fordham Notice to Plaintiff of Upcoming Action Against Plaintiff | Fordham Notice to the Court of Upcoming Action Against Plaintiff | Fordham Secret Report to COBRA/ERISA through Discovery Benefits |
|---|---|---|
| 3/17/2019 Filed 1st Amended Complaint<br><br>No Notice of Action | 4/10/2019 Fordham to Court Dkt. 39<br><br>"Dr. Solomon will not be prejudiced by a stay of discovery pending Fordham's motion to dismiss. …More importantly, Dr. Solomon is a current tenured professor in Fordham's Gabelli School of Business and the status quo remains preserved." | 4/12/2019<br><br>Action: Termination |
| 1/9/2020 Dr. Crystal<br><br>…. "During Spring, 2020 you will retain your status as a tenured faculty member. [Def Reply Ex A, Dkt-82-1, 08/24/2020)<br><br>12/23/2019 Dr. Crystal:<br>"The Provost's office will honor your request for an unpaid leave but will not cover the costs of medical benefits during the leave". [SAC p 266-Ex 22] | 1/29/2020<br><br>Fordham Atty: … "Your Honor, Dr. Solomon is a tenured faculty member at Fordham University and remains a tenured faculty member at Fordham University…. Yes, she remains a tenured professor at Fordham University today". (Court Hearing Dkt. 67) | 2/1/2020<br><br>Action: Termination |
| 8/14/2020 Dean Rapaccioli:<br><br>"As you have requested, the University will grant your request for an unpaid leave for the fall semester… the leave will be without benefits". | 8/24/2020 Reply Dk.81<br>Not Mentioned | 8/31/2020<br><br>Action: Status Change- Reduction in Hours |

24 NOV 20  PM 4: 13

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

In Re Solomon,
*Petitioner Pro Se.*

On Petition from the United States District Court
for the Southern District of New York
Civil Case No. 1:18-cv-4615
(Hon. Edgardo Ramos)

## PETITION FOR A WRIT OF MANDAMUS
## TO THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

### Appendix Exhibits

### Volume I

Esther Solomon
Petitioner Pro Se
140 West 62nd Street
New York, NY 10023
(212) 263-6187

# Appendix Exhibits

### In support of In Re Solomon
### Petitioner's Writ of Mandamus to the Second Circuit Court of Appeals

VOLUME I

Appendix Exhibit **1**
Petitioner's Motion to Compel Compliance with Subpoenas,
Compliance with Document Requests, and Compliance with
Representations to the Court, January 18, 2024 …………………………………….      Dkt. 132

Appendix Exhibit **2**
Petitioner's Letter to the Court accompanying Motion to Compel Discovery,
Endorsed, January 22, 2024,……………………………………………………………      Dkt. 134

Appendix Exhibit **3**
Remote January 11, 2024 Hearing with Judge Ramos, Transcript
filed February 14, 2024……………………………………………………………..      Dkt. 138

Appendix Exhibit 4
Defendant Attorney First Declaration in Opposition to Petitioner's Motion to Compel
and in Support of Defendant's Cross-Motion to Compel, March 1, 2024 …………..      Dkt. 142

Appendix Exhibit **5**
Defendant's Memorandum in Opposition to Petitioner's Motion to Compel
Discovery and in Support of their Cross-Motion to Compel Discovery and stealth
Cross-Motion to Replace the Stipulated Protective Order, March 1, 2024 ………..      Dkt. 143

Appendix Exhibit **6**
Petitioner's Reply in Support of her Motion to Compel Compliance with Subpoenas,
Compliance with Document Requests and Compliance with Representations to the
Court, April 15, 2024,……………………………………………………………      Dkt.146

VOLUME II

Appendix Exhibit **7**
Petitioner's Opposition to Defendant's Cross-Motion to Compel Discovery
and to Defendant's Cross-Motion for a Replacement Protective Order, April 15, 2024…      Dkt. 147

Appendix Exhibit **8**
Defendant Attorney's Second Declaration in Opposing Petitioner's Motion to compel,
and in Support of their Cross-Motion to Compel Discovery and for a Replacement
Protective Order, May 7, 2024 ……………………………………………………      Dkt. 151

Appendix Exhibit **9**
Defendant's Reply Memorandum in Further Support of Cross-Motion to Compel
Discovery and for a Replacement Protective Order, May 7, 2024 ………………....      Dkt. 152

Appendix Exhibit **10**
Petitioner's Letter-Motion requesting Leave to file a Surreply to her motion to
compel discovery, June 6, 2024,………………..……………………………………    Dkt. 154


Appendix Exhibit **11**
Order Denying Petitioner's Letter-Motion requesting Leave to file a Surreply
to her Motion to Compel Discovery, June 11, 2024  …………………………………    Dkt. 155

Appendix Exhibit **12**
Order Denying Petitioner's Motions to Compel Compliance with Subpoenas,
Compliance with Document Requests and Compliance with Representations to
the Court, and granting Defendant's Cross-motion for replacing Protective Order
with a different one with redactions, July 2, 2024 …………………………………………    Dkt. 156

Appendix Exhibit **13**
Plaintiff's Notice of Motion for Reconsideration, July 16, 2024. …………………    Dkt. 157

Appendix Exhibit **14**
Petitioner's Memorandum of Law in Support of Motion for Reconsideration of the
Part of the July 2, 2024 Order Granting the Defendant's Motion to Modify 2019
Stipulated Protective Order They Violated to Allow Name Redactions, July 16, 2024.    Dkt. 158

Appendix Exhibit **15**
Defendant's Memorandum of Law in Opposition to the Petitioner's Motion for
Reconsideration, August 9, 2024……………………………………………………………    Dkt. 160

Appendix Exhibit **16**
Petitioner's Reply Memorandum of Law in Further Support of her Motion for
Reconsideration of the Part of the July 2, 2024 Order Granting Defendant's
Motion to Modify the 2019 Stipulated Protective Order They Violated to Allow
Name Redactions, August 23, 2014… ………………………………………………    Dkt. 161

Appendix Exhibit **17**
Order Denying Petitioner's Motion for Reconsideration, October 2, 2024……………… Dkt. 164

# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ESTHER SOLOMON,                                    18-CV-4615 (ER)
Plaintiff,
                         - against -
FORDHAM UNIVERSITY,
Defendant.
-------------------------------------------------------------X

## PLAINTIFF'S NOTICE OF MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS COMPLIANCE WITH DOCUMENT REQUESTS and COMPLIANCE WITH REPRESENTATIONS TO THE COURT

Pursuant to Federal Rule of Civil Procedure 37 and Local Rules of the SDNY, Plaintiff

Pro Se Esther Solomon moves to compel Defendant Fordham University 1) to comply with the

November 6, 2019 subpoenas; 2) to comply with Plaintiff's January 7, 2019 First Document

Request and remove "confidential" designations prohibited by the Protective Order; 3) to comply

with the Court's February 14, 2019 Protective Order; 4) and to comply with their representations

to the Court.

In support, Plaintiff pro se o Esther Solomon submits her Plaintiff's Memorandum of

Law and supporting Exhibits, which is being submitted contemporaneously with this Notice.

This motion is submitted according to Court's March 17, 2020 Order stating: "She [Plaintiff] is

granted leave to refile her motion should the stay on discovery be lifted." (Dkt # 69, p. 31).

The undersigned will move this Court, before the Honorable Edgardo Ramos of the

United State District Court, Southern District of New York, for an Order to compel as above, and

for such other and further relief as the Court deems just and proper.

Dated January 18, 2024                                      Respectfully submitted,

                                                            /s/ Esther Solomon

                                                            _____
                                                            Esther Solomon
                                                            Plaintiff Pro Se

Case: 24-3056, 11/22/2024, DktEntry: 1.1, Page 11 of 621
Case 1:18-cv-04615-ER Document 70-32 Filed 01/27/24 Page 76 of 160

Case 1:18-cv-04615-ER   Document 70   Filed 03/17/20   Page 2 of 26

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X

ESTHER SOLOMON,

                                                                18-CV-4615 (ER)

Plaintiff,

- against -

FORDHAM UNIVERSITY,

Defendant.

----------------------------------------------------------X

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL
COMPLIANCE WITH SUBPOENAS
COMPLIANCE WITH DOCUMENT REQUESTS and
COMPLIANCE WITH REPRESENTATIONS TO THE COURT

Esther Solomon
Plaintiff Pro Se

1

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................................1

    Procedural History: Attempts to Address Defendant's Discovery Deficiencies.........................2

COMPEL COMPLIANCE WITH SUBPOENAS ...........................................................................2

    Subpoenas Enable Production of Unredacted Personnel Files....................................................3

    Court's Protective Order Safeguards Confidentiality in Fordham Statutes §4-07.41 .................5

    Pretextual Objections to Obstruct Lawful Subpoenas.................................................................5

    Redactions Inconsistent with Protective Order Obstruct Discovery ...........................................9

COMPEL COMPLIANCE WITH DOCUMENT REQUESTS.....................................................14

    Limited Response to January 2019 Document Requests ...........................................................14

    Designation as "Confidential" of Every Single Document Impedes Discovery and Fairness..16

COMPEL DEFENDANT'S COMPLIANCE WITH REPRESENTATIONS TO COURT.........19

Case: 24-3056, 11/22/2024, DktEntry: 1.1, Page 113 of 621
Case 1:18-cv-04615-ER Document 70 Filed 03/17/20 Page 78 of 160

Case 1:18-cv-04615-ER Document 70 Filed 03/17/20 Page 4 of 26

## TABLE OF AUTHORITIES

Cases

*Bagley v. Yale University*, 318 F.R.D.234 (D. Conn. 2016) ........................................................11

*Barber v Regents of the University of Calif.*, 2008 U.S. Dist. LEXIS 130669 (D.N.M. 2008) ....13

*Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132 (2d Cir. 2016) ...........18

*Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53 (2006).............................................20

*Fischer v. Forrest*, 2017 U.S. Dist. LEXIS 28102 (S.D.N.Y. 2017.............................................14

*Graham v. Long Island R.R.*, 230 F.3d 34 (2d Cir. 2000)..........................................................7, 8

*Jauhari v. Sacred Heart Univ., Inc* 2017 U.S. Dist. LEXIS 29441 (D. Conn. 2017) .....................7

*Jessee v. Farmers Ins. Exch.*, 147 P.3d 56 (D. Col. 2006)...........................................................17

*Krolikowski v. University of Massachusetts.*, 150 F. Supp. 2d 246 (D. Mass. 2001) ..................11

*Lavin-Mceleney v. Marist College*, 239 F.3d 476 (2d Cir. 2001) ..................................................7

*Metcalf v. Yale University.*, 2017 U.S. Dist. LEXIS 21032 (D. Conn. 2017)...............................11

*Mgmt. Registry v. A.W. Cos.* 2020 U.S. Dist. LEXIS 14682 (D. Minn. 2020) .............................10

*Moll v. Telesector Res. Group, Inc.*, 760 F.3d 198  (2d Cir. 2014)...............................................11

*PPD Enters. v. Stryker Corp.* 2017 U.S. Dist. LEXIS 154534 (S.D. Tex. 2017) ..........................16

*Siam v. Potter*, 2005 U.S. Dist. LEXIS 11893 (N.D. Cal. 2005) ..................................................13

*Stern v. Trustees of Columbia Univ.*, 131 F.3d 305 (2d Cir. 1997)...............................................13

*Tomka v Seiler Corp.*, 66 F.3d 1295 (2d Cir. 1995).......................................................................7

*University of Pennsylvania v. EEOC*, 493 U.S. 182 (1990)..........................................................12

*Weinstock v. Columbia Univ.* aff'd, 1996 U.S. Dist. LEXIS 16779 (S.D.N.Y., 1996)..............7, 11

iii

## PRELIMINARY STATEMENT

Plaintiff pro se Esther Solomon respectfully submits this Memorandum of Law in support of her motions 1) to compel Defendant's compliance with the November 6, 2019 subpoenas 2) to compel Defendant's compliance with the First Document Request and remove "confidential" designations prohibited by the Protective Order and 3) to compel Defendant's compliance with their representations to the Court regarding Plaintiff's status quo at Fordham.

These motions are needed because Defendant has failed to produce and obstructed discovery by multifaceted violations of Federal Rules, the Court's Protective Order, and the Fordham University Statutes, combined with lack of candor to the Court. This has created an information vacuum precluding Plaintiff from essential data in Defendant's sole possession.

These omissions are compounded by having bypassed discovery rule 34(b)(2)(C) requiring the producing party to indicate for each objection whether any responsive materials are withheld on the basis of that objection. Defendant did not fulfill these obligations in their responses to any of three forms of discovery: the January 7, 2019 document requests, the March 26, 2019 interrogatories, and the November 6, 2019 subpoenas, obfuscating and impeding the discovery process.

Simultaneously, Defendant continued and escalated retaliation against Plaintiff under the eyes of the Court. Two days after the January 29, 2020 Court Hearing, Fordham cut her healthcare and benefits by pretextual excuses and untrue references to the University Statutes. While exercising intolerable pressure on Plaintiff, they assert to the Court that the "status quo" is preserved, and she is not harmed by the *de facto* discovery stay imposed by Defendant.

1

Proportionality of Discovery between Defendant University and the Professor Plaintiff

There appear to be greater obligations for appropriate disclosure by Defendant University as they have access to all the relevant information, records, email correspondence among all faculty, administrators, and external agencies and resources. Proportionality of Discovery in FRCP Rule 26 requires consideration of the parties' access to the relevant information.

**Procedural History: Attempts to Address Defendant's Discovery Deficiencies**

The procedural history relevant to the discovery matters is attached (Exhibit 1).

Plaintiff and former counsel Cravath Swaine and Moore engaged in multiple meet and confers with Defendant and exchanged correspondence seeking to resolve Defendants' serious discovery violations unsuccessfully. Cravath held several meet and confers with Defendant on March 15, 21, 2019, April 1, 2, 2019 and email exchanges of April 3, 6, 10, 11, 2019.

Later, Plaintiff raised the discovery concerns and absence of data to prove her case during the April 5, 2019 Court Hearing and in the April 17, 2019 letter (Dkt #44) informing the Court that, per Defendants' designation, subpoenas would be needed to obtain personnel files. Following the November 6, 2019 subpoenas, Plaintiff engaged in meet and confers on November 13, 2019 and December 5, 2019.

### COMPEL COMPLIANCE WITH SUBPOENAS

The comparative evidence in Plaintiff's Personnel file and the files of the Comparator Professors is necessary and relevant for Plaintiff to prove discrimination and retaliation among other claims. The work histories and pay histories of Plaintiff and Comparators critical for any analysis are contained in their Personnel files. Two years after the case was filed, Fordham has been successful in obstructing such data. No complete, unredacted files have been produced, but the information is scattered, piecemeal, and non-comparable, cloaked in secrecy and anonymity.

2

## Subpoenas Enable Production of Unredacted Personnel Files

Plaintiff issued subpoenas on November 6, 2019 for her Personnel file, and for the

Personnel files of fourteen Comparator professors.

This was in conformance with Fordham Statute §4-07.42 on subpoenas for Personnel

files and the Fordham Statute §4-07.41 on Confidentiality (Fordham Statutes: Exhibit [2]). The

service on November 8, 2019 followed the Fordham Service Policies (Exhibit 3).

This Court's February 14, 2019 Protective Order, Dkt #24 safeguards the Fordham

Statutes' Confidentiality requirements (Protective Order: Exhibit 4). The subpoena for Plaintiff's

Personnel File is attached as an example (Exhibit 5).

The subpoenas were necessitated after Defendant's April 11, 2019 email informing

Cravath for the first time that they required that formality per Fordham Statute §4-07.42 to

produce unredacted Plaintiff's Personnel file requested as of January 7, 2019.

Cravath had emailed Defendant the day before on April 10 asking the following:

"...please confirm that the three files produced to date — the HR, Provost and Gabelli files — comprise the entirety of Dr. Solomon's personnel file, and that there are no other components of that file... Please confirm immediately whether Fordham will agree to produce these materials without redactions, as required by the Federal Rules."

In the April 11, 2019 reply to Cravath, Defendant admitted not having produced either

complete or unredacted Personnel files, which they excused by the subpoena requirement, and

promised that missing portions are forthcoming:

"...there is a multi-step process that must be followed if the confidential records are to be produced without redaction which would significantly delay the production. See §4-07.41. Moreover, the Faculty Statutes effectively give the affected faculty member standing to object to the production of their unredacted records. See §4-07.42.

.... Additional information including but not limited to course schedules and student evaluations will continue to be produced, to the extent responsive, in a rolling fashion."

After the subpoenas were served and contrary to the Fordham Statutes requirement,[1] Defendant refused to either notify the Professors or to produce any Personnel files. They responded instead with new inapplicable objections. During the November 13, 2019 meet and confer, Plaintiff asked the Fordham's attorney whether the University fulfilled the obligation to notify the Professors regarding their own subpoenas, expressing serious concerns with his negative answer, emailing him Statute §407.42 referenced in their conversation.

Previously, in answering Plaintiff's First Document Request (Exhibit 6) Defendant had not indicated in their February 13, 2019 Response (Exhibit7) the subpoena requirement per the Fordham Statutes §4-07.42. The subpoena requirement was first raised on April 11, 2019 without disclosing they withheld documents. Had they notified her as required, Plaintiff could have served the subpoenas in February rather than in November 2019.

Not having also disclosed what documents had been withheld from the Personnel file, although required per FRCP rule 34(b)(2), Defendant was able to change their story multiple times, as to whether the improperly redacted portions of Personnel files were complete or not. This occurred at least three times: Before April 11, on April 11, and after the subpoenas were served: in Defendant's November 2019 objections, the December 23, 2019 letter to the Court, and in contradictory representation during the January 29, 2020 Court hearing.

---

[1] "The faculty member whose file is the subject of a subpoena duces tecum shall be notified promptly upon receipt of the subpoena, normally on the same day, both by telephone and by certified mail directed to the residence address o of the faculty member." Fordham Statute §4-07.42

## Court's Protective Order Safeguards Confidentiality in Fordham Statutes §4-07.41

On November 29, 2019 Defendant objected to the subpoenas in "Defendant's Response to Plaintiff's Subpoenas" (Exhibit 8) and refused to produce any documents. These objections include material omissions and untrue representations.

Omitted by Defendant in objecting to the subpoenas is the fact that there is a Court's Protective Order, stipulated by the parties, which addresses the confidentiality requirements in the Fordham Statutes §4-07.41. Also omitted from Defendant's subpoena objections is the fact that the documents they produced are extensively and improperly redacted as well as stamped "Confidential" - taking advantage of the Protective Order while violating its terms.

Defendant untruly attributes to the Fordham Statutes the reason for their substantive redactions, without citing a specific source - because that is not so. The Fordham statutes on Confidentiality §4-07.41 (Exhibit 2) do not require any "redactions", nor do they justify "anonymity" in document production with a Protective order in place.

The Protective Order addresses the very privacy concerns and peer review requirements argued by Defendant to justify improper redactions. The untrue reference to the Statutes as an excuse for redactions, and anonymity occurs consistently: in their December 23, 2019 letter to the Court (Dkt 63); their November 2019 objections to the subpoenas; during the January 29, 2020 Hearing. The quote below is from the January 29, 2020 Hearing Transcript (Exhibit 9):

THE COURT:…"With respect to the redactions, with respect to the comparators, that the representation has been made that those redactions have been done in accordance with these faculty statutes which exist,…"    (January 29, 2020 Transcript excerpts page 19)

## Pretextual Objections to Obstruct Lawful Subpoenas

Defendant's first objection to all subpoenas is that they "have already provided plaintiff with the documents and information requested therein." As explained below, this is not so.

5

Not only were Personnel files for Comparator Professors not produced, they had not even

been requested previously. Only Plaintiff's Personnel file[2] was requested as #13 in "Plaintiff's

First Set of Requests" for Document of January 7, 2019 (Exhibit 6 ). The November 6, 2019

subpoenas request Comparator Personnel files for the first time. And they have not been

produced.

> In contrast, Defendant wrote to the Court on December 23, 2019 (Dkt #63 ):
> "on January 7, 2019 Dr Solomon issued "Plaintiff's First set of requests to Defendant... This Request for
> Documents included a request for Dr. Solomon's personnel file, as well as the personnel files of twelve
> professors that Dr. Solomon identified as "comparator" professors. December 23, 2019 letter (Dkt 63)."

There are no requests for 12 Comparator Personnel files, and no complete files were produced.

Defendant wrote to the Court on December 23, 2019, and asserted on January 29, 2020:

> "Moreover, Fordham has already provided Dr. Solomon with her entire personnel file as well as the
> personnel files of the comparator professors." (Dkt 63).

This is contrary to the facts and to Defendant's April 11, 2019 admission to Cravath, with no

further discovery production since then.

During the January 2020 Hearing the Fordham attorney asserted that "It is Fordham's

position this is not a lawful and correct subpoena." In response to the Court's question "Why

not?" Defendant answered: "Because we have turned over all the information that's sought in the

subpoena." (See January 29, 2020 transcript; Exhibit 9 Page 24).

Post-Subpoena Assertion about Non-Existing "Agreement" to Preclude Pay/ Work History

Defendant created a Post-subpoena fiction regarding a non-existing "agreement between

the parties." It seeks to cut discovery time for the subpoenas to the post-2008 time period,

contrary to the record. Defendant seeks to preclude production of records establishing pay and

work history, key in the pay discrimination claims, and relevant to hostile work environment etc.

---

[2] First Document Request # 13: "Plaintiffs personnel file and all other documents regarding Plaintiffs employment
history with Defendant". Comparator information was asked in Requests #2 , #3 where documents were selectively
produced, redacted, anonymous and post 2008; and in Requests #5, #6 which received zero documents. in response.

The only source for Defendant's supposed "agreement" is one sentence in Plaintiff's First

Document Request (Exhibit 6). On Page 6, under "Definitions" # (2)(p): "relevant time period

January 1, 2008 through the present" for those requests. Defendant omits the paragraph, also on

page 6, under "Definitions" # (3) which precludes their use of that definition as a supposed

agreement as follows:

"3. The use of any definition for the purposes of these Requests shall not be deemed to constitute an
agreement or acknowledgment on the part of the Plaintiff that such definition is accurate, meaningful or
appropriate for any other purposes in this litigation."

### Defendant's Efforts to Exclude Comparators

In opposing the subpoenas, Defendant tries to exclude three of the Comparator

Professors[3] who are all from her Business School. They argue they were not included in the

January 2019 first request, before the March 2019 Amended Complaint. Professors Zeleney,

Chatterjee, and Saharia are all Plaintiff's contemporaries, hired about the same time, subject to

the same standards for tenure and promotion, and considered by the same faculty committee of

Business School Professors and University standards. *Jauhari v. Sacred Heart Univ., Inc* 2017

U.S. Dist. LEXIS 29441 (D. Conn. 2017); *Weinstock v. Columbia Univ.* aff'd, 1996 U.S. Dist.

LEXIS 16779 (S.D.N.Y., 1996) [4] and see in *Graham v. Long Island R.R.*, 230 F.3d 34 (2d Cir.

---

[3] It is a question for the jury not for Defendant to decide who are Comparators: "whether two positions are
"substantially equivalent" for Equal Pay Act purposes is a question for the jury. See *Tomka v Seiler Corp.*, 66 F.3d
1295 (2d Cir. 1995): "It is for the trier of fact to decide if [there] is a significant enough difference in responsibility
to make the jobs unequal") *Lavin-Mceleney v. Marist College*, 239 F.3d 476 (2d Cir. 2001): "Whether two
employees are similarly situated ordinarily presents a question of fact for the jury." *Graham v. Long Island R.R.*, 230
F.3d 34 (2d Cir. 2000). (employees are comparable where they are (1) "subject to the same performance evaluation
and discipline standards" and (2) "engaged in comparable conduct") .

[4] *Weinstock v. Columbia Univ.*: "Files of other faculty members from the same academic area who were promoted or
granted tenure may reveal that other candidates were held to a standard of scholarship lower than that required of the
plaintiff or were reappointed or tenured on the basis of publication records which were non-existent or less extensive
than that of the plaintiff."

7

2000). In addition to peer comparators, files of decision-makers are discoverable *Dzanis v. JP Morgan Chase & Co.*, 2011 U.S. Dist. LEXIS 137356 (S.D.N.Y. 2011)

Comparator Information with Substantive Redactions

No complete unredacted Comparators' files have been produced. Production of anonymous portions with heavy redactions of substantive information does not constitute Personnel Files. All Comparator names are replaced with numbers, along with redactions of most substantive information. (Exhibit 10) These anonymous piecemeal records are not recognizable, and it is impossible to connect them to the Professors' emails, correspondence, other relevant events or actions.

Multiple portions of what would be part of Comparator Personnel files and Plaintiff own are missing including: financial, payroll [5] and business records for the entire period, historical compensation and performance data, teaching evaluation records except for isolated exceptions for anonymous Comparators, etc.

Even after Defendant was ordered by the Court at the January 29, 2020 Hearing to produce the remaining Personnel file, Defendant did not indicate to Plaintiff that they will produce Comparator complete course schedules6 or their student evaluations which would have been part of Comparators Personnel files.

Regarding Comparator names, Defendant applies a double standard. Foreclosing access to Plaintiff, Defendant calls Comparator names "superfluous," arguing she does not need them.

[5] For example, for Plaintiff – who has been a Fordham Professor since 1984- Defendant produced W-2 forms for the years 2011-2018, making it impossible to establish her pay history. For Comparator Professors, anonymous W-2 forms for the years 2011-2018 were produced, some with breakdown of the data, others without.

[6] Defendant has not produced Comparator teaching schedules or W-2 forms or for the First Document request's "relevant period" of 2008 to present, they provide for 2011-2018, and not for all. In their February they indicate no intention of doing so, even after the January 29, 2020 Hearing.

8

When Defendant felt it would be advantageous in their Motion to Dismiss, they used the
unredacted names of professors they deemed Comparators. The Crooker Affidavit (Dkt 56) has
selected tables with comparator names not redacted. (Exhibit 11) The use of the comparator data
undercuts Defendant's objections regarding the relevance of redacted Comparator Professor
records. These Affidavit comparator tables are examples of work history documents from
personnel files, essential for Plaintiff but not yet produced, and exemplify the need for enforcing
the subpoenas.

## **Redactions Inconsistent with Protective Order Obstruct Discovery**

The Court's Protective Order (Dkt. 24) addresses the concern of protecting sensitive
information that is non-public, by designating in good faith specific documents as "Confidential"
(see below). There is no need to superimpose a second level of confidentiality through redactions
of substantive information, cloaking the documents in secrecy, and rendering them unusable.
There is no authority for the redactions.[7]

### Redactions Contrary to Protective Order- Substantive Redactions Impede My Case

Redactions inconsistent with both, the Protective Order and the Fordham Statutes were
made at multiple levels, eg: 1) names of comparators, 2) portions of documents, 3) complete
pages, 4) names of peer review evaluators and committee chairs in tenure and promotion
documents 5) names of external reviewers solicited by the personnel committee 6) all budget
numbers in financial documents 7) all names of professors receiving additional compensation, at
the heart of the pay discrimination claims 8) portions of official minutes, etc.

In addition to having designated every single document produced as "Confidential,"
Defendant:

---

[7] Defendant justifies redactions by simultaneously, 1. omitting the existence of the Protective Order that addresses
Confidentiality, and 2. Incorrectly referencing the Fordham Statures untruly claiming they require redactions.

9

a) replaced Comparator names with numbers, for "anonymity."

b) redacted substantive information from Comparator and other key documents, including

Plaintiff's personnel file, making them unusable.

c) did not indicate which documents were redacted, nor the reason for each redaction as required.

d) Multiple pages are fully black/white or partially redacted without explanation.[8]

> While asserting to the Court they made no substantive redactions, Fordham attorney

indicated they redacted "irrelevant information" as follows:

MS. DRYER: ...Fordham is not hiding anything.
THE COURT: Was there anything substantive in the files of the comparators that was redacted?
MS. DRYER: No, your Honor. Assuming Dr. Solomon has a case -- a discrimination case, a pay equity case, any other type of claim – nothing was redacted but the biographical information or irrelevant information..."

Redactions based on "lack of relevance" have been rejected by Courts, as inconsistent

with Federal Rules. The Court in *Management Registry*[9] noted that "the practice of redacting

documents based on claims that portions of it are not relevant is "fraught with the potential for abuse."

This was based on the following reasoning:

> "The practice of redacting for non responsiveness or irrelevance finds no explicit support in the Federal Rules of Civil Procedure, and the only bases for prohibiting a party from seeing a portion of a document in the Rules are claims of privilege or work-product protection. Fed. R. Civ. P. 26(b)(5);.... In addition, redacting allegedly nonresponsive or irrelevant portions of discoverable documents "breed[s] suspicions." .... Parties making such redactions unilaterally decide that information within a discoverable document need not be disclosed to their opponents, thereby depriving their opponents of the opportunity to see information in its full context and fueling mistrust about the redactions' propriety. And if the Court were to allow such a practice it would improperly incentivize parties to hide as much as they dare." [citations omitted]

> Regarding redactions of names in the peer review records and defendant's argument that

the entire peer review system will collapse if they do not redact Comparator material, despite the

Protective Order, the case law indicates otherwise. The names of Comparator professors and

---

[8] Plaintiff directly brought these issues to the Court's attention in both in the April 17, 2019 letter (Dkt #44) in opposition of Defendant's discovery stay request, and again in the December 17, 2019 letter to the Court (Dkt #62), in addition to during the meet and confer. However, at the January 29, 2020 Hearing Ms. Dryer said "this is the first time we're hearing of any type of designation issue" Transcript P 10, 6 lines 619-

[9] *Mgmt. Registry v. A.W. Cos.* 2020 U.S. Dist. LEXIS 14682 (D. Minn. 2020)

reviewers should be disclosed, as well as those who evaluate tenure and promotion. The

identities of those who participated on or made the tenure decision should be available

*(Weinstock v. Columbia Univ[10].* aff'd, 1996 U.S. Dist. LEXIS 16779 (S.D.N.Y., 1996; *Metcalf v.*

*Yale University*.,[11] 2017 U.S. Dist. LEXIS 21032 (D. Conn. 2017) In peer review regarding

medical professionals, similar principles apply, as in *Krolikowski v. University of*

*Massachusetts*.,[12] 150 F. Supp. 2d 246 (D. Mass. 2001)

Defendant only gives piecemeal information to preclude evidence that would allow her to

prove the case by considering the totality of the evidence, as required in such cases *Moll v.*

*Telesector Res. Group, Inc*., 760 F.3d 198   (2d Cir. 2014)[13] *Bagley v. Yale University*, 318

F.R.D.234 (D. Conn. 2016) "By requiring disclosure of all relevant information, .... allow

ultimate resolution of disputed issues to be based on full and accurate understanding of true

facts."

Defendant incorrectly argues that peer review materials should be redacted in addition to

their confidential designation. Precluding any possible review, the Comparators' names are

---

[10] *Weinstock v. Columbia University* "Defendant has already produced the identities of those who made the decision to deny tenure to Plaintiff...... the members of the ad hoc committee have relevant evidence on Plaintiff's qualifications, and the Plaintiff is entitled to know their identities. .... Plaintiff should know who served on the committee and what their judgments were ..."

[11] In employment discrimination cases, a plaintiff... circumstances giving rise to an inference of discrimination on the basis of his membership in the protected class," by "showing that the employer subjected him to disparate treatment, that is, treated him less favorably than a similarly situated employee outside his protected group," or a comparator. Graham,

[12] *Krolikowski v. University of Massachusetts*., 150 F. Supp. 2d 246 (D. Mass. 2001)

In cases involving discrimination claims, courts have often declined to adopt the state statutory peer review privileges after balancing the litigants' needs in a discrimination suit with the objectives underlying the medical peer review privilege.... The objective of peer review is rigorous and candid evaluation of professional performance by a provider's peers"). However, weighing heavily on the other side is Congress' recognition of the substantial costs of gender discrimination and the "high value of the vindication of civil rights." Moreover, "disclosure of documents and information bearing primarily on employment issues does not materially conflict with the fundamental objectives of promoting quality health care served by the peer review principle."

[13] *Moll v. Telesector Res. Group, Inc*., 760 F.3d 198  (2d Cir. 2014) In this Title VII action, the grant of summary judgment to the employer was vacated because the district court erred when it refused to consider all allegations in the Complaint in their totality, including those that

redacted and assigned numbers, the peer review evaluators' names are redacted, the names of the external reviewers form other Universities solicited by the committees are redacted, and for most of the anonymous Comparators, no tenure or promotion files whatsoever were produced.

As the Supreme Court stated in *University of Pennsylvania v. EEOC*, 493 U.S. 182

(1990):

"There may be evidence of discriminatory intent and pretext in the confidential notes and memoranda which the [college] seeks to protect. Likewise, confidential material pertaining to other candidates for tenure in a similar time frame may demonstrate that persons with lesser qualifications were granted tenure or that some pattern of discrimination appears."

No financial data has been provided in a way to enable any statistical analysis, the budget numbers have been redacted in the limited information provided, as have the names of the comparator professors and those of other faculty also recipients of financial awards and benefits at the center of discrimination claims. (Exhibit 10) That makes it impossible to begin analyzing whether the Defendant applied "bona fide" criteria for pay differentials, as required to be established by the Equal pay Act, the New York APEA, and Title VII pay discrimination and state pay claims.

Portions of Plaintiff's Personnel File with Improper Redactions

The portions from Plaintiff's Personnel File that were produced represent a selectively skewed, biased production, incomplete and lacking essential fundamental information such as financial data and otherwise.

Additionally, records are selective, excluding key comparative evidence. For example, regarding Plaintiff's 2003 promotion applications, only the end part of the record and redacted peer reviews and reports were produced. Excluded were the relevant 2003 correspondence documents reflecting the multiple procedural irregularities and discriminatory rule changes

12

accounting for the outcome. (*Siam v. Potter*, 2005) [14] Also excluded was the voluminous appeal record and subsequent denial of rights to a Hearing required by Fordham Statutes. Such records are relevant to the inquiry, as seen in Professor Stern's employment discrimination case.[15]

None of Plaintiff's favorable promotion review records were produced: neither for 2001, nor for 1987 when Plaintiff was promoted from Assistant to Associate Professor. These groups of documents should have included the full sets as in 2003- to include the external reviewer letters, peer evaluations by the members of the Personnel Committee, reports by the chair of the Personnel Committee, and reports by the respective Deans, as well as the final decisions. That was done for 2003. Plaintiff specifically pointed out examples of these groups not produced, during her November meet and confer with the Fordham attorney, with no outcome. This indicates the necessity for the subpoenas to obtain the complete, unredacted personnel files.

Given the fact that Defendant keeps changing what constitutes Fordham University Personnel files, attached is Stanford University's description of Personnel file content (Exhibit12).

Examples of University documents produced in similar cases regarding pay claims, discrimination, retaliation, improper promotion denial impacting pay, etc. can be found in *Barber v Regents of the University of Calif.*, 2008 U.S. Dist. LEXIS 130669 (D.N.M. 2008). [16]

---

[14] *Siam v. Potter*, 2005 U.S. Dist. LEXIS 11893 (N.D. Cal. 2005) Title VII disparate treatment claim; the employee provided evidence sufficient for a reasonable factfinder to infer that management "changed the rules" on the EAS-21 position in August 2000 in order to block her and other Filipino employees' eligibility.

[15] *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305 (2d Cir. 1997) "Departures from procedural regularity," for example, "can raise a question as to the good faith of the process where the departure may reasonably affect the decision." ... "The jury should "be entitled to view the evidence as a whole in assessing whether there was impermissible discrimination and whether the University's proffered explanation is a pretext for that discrimination."

[16] These include salary history for Comparators; personnel files for Plaintiff and Comparators; university electronic data bases with salary and position history and demographics including gender, race and age etc. Such required information was not produced here.

13

## COMPEL COMPLIANCE WITH DOCUMENT REQUESTS

This motion requests to compel Defendant to:

1) Produce documents in response to multiple requests in Plaintiff's First Document request

2) Remove "Confidential" designations where not warranted, especially so for document groups which the Protective Order specifically prohibits such designation.

Here certain groups of documents should be "de-designated", as confidential because defendant contradicted the Order and fails to "make a particular and specific demonstration of fact showing that disclosure would result in an injury sufficiently serious to warrant protection; broad allegations of harm unsubstantiated by specific examples or articulated reasoning fail to satisfy the test." *In re Parmalat Securities Litigation*, 258 F.R.D. 236 (S.D.N.Y. 2009)[17]

The requests for Plaintiff's Personnel file in the subpoena is identical to the request for the Personnel file in Plaintiff's First Document request. Defendant having not adhered to FRCP Rule 34, waived their right to raise new objections regarding the subpoenas.[18]

### Limited Response to January 2019 Document Requests

Plaintiff's First Set of Document Requests were served on January 7, 2019 (Exhibit 6). Defendant reply to Plaintiff's First Document Requests are highly inadequate (Exhibit 7)

Beyond the unauthorized redactions, Defendant has simply not produced documents responsive to multiple of Plaintiff's First Set of Document requests. From the 17 document

---

[17] *In re Parmalat Securities Litigation*, 258 F.R.D. 236 (S.D.N.Y. 2009) an example of a court ordering certain documents to be "de-designated" as confidential because the designating party failed to establish good cause to prevent disclosure.

[18] *Fischer v. Forrest*, 2017 U.S. Dist. LEXIS 28102 (S.D.N.Y. 2017 ("any discovery response that does not comply with Rule 34's requirement to state objections with specificity (and to clearly indicate whether responsive material is being withheld on the basis of objection) will be deemed a waiver of all objections (except as to privilege)."

14

requests, all were without the required disclosure as to what documents have been withheld and on what basis. These include Requests # 3, 5, 6, 7, 9, 11, 12, 16, 17. See details in Exhibit 13 As an example, neither Request #11 on plaintiff's complaints and their investigation, nor #12 nor other complaints by others against Defendant were produced. They go to the heart of the repeated failures to investigate, and the pattern with other alleged in the complaint.

Another example, Requests #5 on Comparators and plaintiff for student evaluations, and #6 for course enrollments, where both received zero document in response. The documents not produced, course schedules, student evaluations, special courses, and administrative assignments- for Plaintiff and Comparators throughout their employment history, preclude their comparisons, which are at the core of the pay and other discrimination claims. Defendant also changed their position as to whether comparator course schedules were produced or not even following the January 29, 2020 Hearing.[19]

Discrimination complaints as of 2003 by the two older female Management Professors in terms of administrative and teaching assignments can only be assessed by discovery of Plaintiff's work history relative to male Comparators' over the years. This is an ongoing pattern to this very day, in a business school where a favored male professor can double their salary based on additional administrative and teaching assignments. There has been a pervasive absence of transparency, where they are not even told what the programs with administrative and teaching opportunities for the males are. This secrecy has been maintained during discovery to this very day.

---

[19] On April 11, 2019 Defendant stated that course schedules were still outstanding. On February 21, 2020 after having been ordered by the Court to produce the remaining records, they said that an earlier April 4, 2019 production of "Faculty activity reports" 2008-2011 supposedly fulfilled their responsibility to produce 36 years of schedules during plaintiff's tenure at the University.

15

## **Designation as "Confidential" of Every Single Document Impedes Discovery and Fairness**

### Compel Defendant's Compliance with The Protective Order

The Court signed on February 14, 2019 the "Protective Order" (Exhibit 5, Dkt. #24)

previously negotiated and stipulated by the parties. Under the Protective Order, each party is

permitted to designate "discovery material, in whole or in part, as "confidential" if the producing

party determines, in good faith, that such designation is necessary to protect its interests in

information that is sensitive and non-public."( ¶ 1) and it will be stamped "CONFIDENTIAL" (¶

2) There also is a provision for challenging the confidentiality designation (¶ 7).

However, Defendant has marked as "confidential" every single document they produced,

~15,000 documents, although Confidentiality Designation is the exception, not the rule.

"CONFIDENTIAL" is appropriate for some documents, under specific circumstances.

Defendant's designating everything "CONFIDENTIAL" is inconsistent with the Protective

Order, including the "good faith" [20] requirement in the Federal Rules.

In a case where the Court needed to change an overbroad stipulation in *PPD Enters. v.*

*Stryker Corp.* 2017[21], the Court expressed the concerns with designating every document

confidential:

> "Defendants have designated every single one of the 64,106 documents produced by them as
> confidential under the Agreed Protective Order (Dkt. 35). Such a blanket confidentiality designation
> is, by itself, prima facie evidence of bad faith... The compulsion to designate as confidential every
> document produced in discovery is not only misguided, but also misapprehends the role of courts in an
> open society... it is equally rare for a party to designate as confidential every document it produces."

---

[20] 1. a. "A party asserting good cause bears the burden, for each particular document it seeks to protect, of showing
that specific prejudice or harm will result if no protective order is granted." Fed. R. Civ. P. 26(c).

[21] *PPD Enters. v. Stryker Corp.* 2017 U.S. Dist. LEXIS 154534 (S.D. Tex. 2017).

**"Confidential" Designation of Documents Prohibited by the Protective Order**

Defendant here also designated "Confidential" large groups of documents which are specifically prohibited by ¶3 of the February 14, 2019 Protective Order and "shall not be stamped "CONFIDENTIAL"... a. information in the public domain; b. information already known by the receiving party through proper means; and c. information that is or becomes available to a party from a source other than the party asserting confidentiality and rightfully in possession of such information on a non-confidential basis.

The following are categories Defendant produced and stamped "CONFIDENTIAL" contrary to the Court's Protective Order ¶3. They are included in (Exhibit 14) with corresponding Bates numbers:

a) Public Documents

b) Plaintiff's own email correspondence and the attachments to these emails

c) Exhibits to Plaintiff's Complaint, which are Judicial Documents.

Documents produced in discovery that were also acquired outside the discovery process are not confidential. See *Jessee v. Farmers Ins. Exch[22]*

Stamped "Confidential" by Defendant are Plaintiff's own Fordham emails and all their attachments, to which Defendant has access from her own Fordham email account. At least half of Defendant's production- about 8.000 documents are her own documents, not real discovery to help in the litigation but to obstruct. They foreclose Plaintiff's basic rights in using her own research papers, correspondence, notes etc. Rather than protecting legitimate confidentiality

---

[22] See *Jessee v. Farmers Ins. Exch.*, 147 P.3d 56 (D. Col. 2006) (invalidating protective order under state Rule 26(c) "to the extent that it purports to place limits on the use of documents not acquired solely as a result of discovery in this case."

17

Case: 24-3056, 11/22/2024, DktEntry: 1.1, Page 131 of 621
Case 1:18-cv-04615-ER Document 70-1 Filed 01/23/24 Page 96 of 160
Case 1:18-cv-04615-ER Document 70 Filed 03/17/20 Page 22 of 26

interests, this has subverted the intended purpose of the agreed Protective Order and obstructs discovery

## Complaint Exhibits

Most of the Exhibits in Plaintiff's complaint, which come from her Fordham emails, are also produced and stamped "Confidential." The complaint is a public document, and Defendant's designation of its exhibits as "Confidential" brings up the status of the complaint. As the 2nd Circuit affirmed in *Bernstein v. Bernstein Litowitz* [23] a complaint is a judicial document, subject to a presumption of access and cannot be under seal. Here, due to the presumptive right of access, the complaint exhibits cannot be made "confidential" by Defendant, as they are judicial documents.

There are also potential liability concerns for Plaintiff theses thousands of documents improperly designated "Confidential" by Defendant still remain so, and can potentially seriously harm her. These thousands of documents are not possible to keep track of. This wholesale designation can create potential liability for Plaintiff, by her using or referring to any one of them- even unknowingly. Fordham can accuse her of violating the Confidentiality Order (although Defendants violated the Order in designating them confidential).

According to the Fordham Statutes, breach of confidentiality by Faculty is a breach of contract, leading to termination (see Exhibit 2). Defendant here use the Court's Protective Order which they violate as a tool to improperly expose the Plaintiff to potential liability. Potential liability for disclosure of documents that are not confidential and should never have been designated as such. This, in addition to all the overwhelming economic and other pressures in Defendant's escalating retaliation.

---

[23] *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132 (2d Cir. 2016).

18

## COMPEL DEFENDANT'S COMPLIANCE WITH REPRESENTATIONS TO COURT

Over the course of this litigation, Defendant repeatedly represented to this Court that Plaintiff's status at Fordham remains unchanged. They omit the series of adverse actions against the Plaintiff, the latest two days after the January 29, 2020 Court Hearing. This is to respectfully request that Defendant be directed to comply with their representations to the Court.

### Fordham's Adverse Action of February 1, 2019 Following the January 29 Court Hearing

At the January 29, 2020 Hearing, when the Court indicated that Fordham had represented that the Plaintiff continued to be a tenured faculty and asked the Fordham attorney to respond, Ms. Dryer stated:

"Dr. Solomon … remains a tenured faculty member at Fordham University." (Transcript page 14)

The above statement omitted that a new adverse action in retaliation was to be taken on the very next days- February 1, 2020: Plaintiff's health benefits were removed, requiring her to pay through Cobra for terminated employees. This will cost $41,978.88 annually out of pocket to continue Fordham health insurance. She has also been deprived of her salary for Spring 2020 of ~$60,000 per semester.

Ms. Dryer did not inform the Court that Plaintiff apparently may remain a tenured faculty in name only, without any of the rights or responsibilities,[24] removed under false pretenses and without due process15.

Contrary to the Fordham attorneys' assertions to the Court, Plaintiff received a letter shortly after the Court Hearing indicating Fordham's latest adverse action. The letter from Cobra stated (Exhibit 16):

"You are receiving this letter because on 2/1/2020 you experienced an event of a/an Termination which constitutes a qualifying event under the Fordham University group health plan(s) ("the

---

[24] Plaintiff's Personnel file is needed, through the November 2019 subpoena, in order to find out what action Fordham has taken against her. This, because Fordham has not disclosed it to her in any direct way.

19

plan"). ...Federal law requires that most group health plans (including this plan) give employees and their families the opportunity to continue their health care coverage through COBRA when a "qualifying event" that would result in a loss of coverage under the employer's plan." [emphasis added]

The COBRA Election Form states:
Election Event Date:    2/1/2020"
Event Type:   Termination"

Twice Discontinued Health Benefits without Notice during Plaintiff's Unpaid Leave

And there were previous health care warnings and actions from Fordham previously. My

health care was first threatened in a May 24, 2019 email from Dean Donna Rapaccioli. Those

threats were previously carried out, twice, but never disclosed to this Court by Fordham.

Fordham cut off my health benefits in May 2019 and July 2019. I was without Fordham

health coverage for about 1 ½ months, twice without notice. After my May 3 and August 6, 2019

emails, copied both to Mr. James Ryan, Fordham's outside counsel, and Ms. Elaine Crossen,

Fordham's Corporate Counsel, my health coverage was reinstated. [25]

Defendant has previously assured the Court regarding Plaintiff. In the April 10, 2019

letter (Dkt #39) seeking a discovery stay while their motion to dismiss was pending, Defendant

wrote::

"Additionally, Dr. Solomon will not be prejudiced by a stay of discovery pending Fordham's motion to dismiss. ... More importantly, Dr. Solomon is a current tenured professor in Fordham's Gabelli School of Business and the status quo remains preserved. At worst, Dr. Solomon can only complain about a short delay in completing discovery." [emphasis added]

Defendant representations to the Court are inconsistent with their subsequent actions.

Defendant actions seem to be a pattern of retaliation following each of the three Court

Hearings, December 12, 2019, April 5, 2019 and January 29, 2020. The latest adverse action of

---

[25] The previous discontinuance of her health benefits and their reinstatement are analogous to the adverse action outlined in *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53 (2006). ( Plaintiff's surreply Dkt #).

Case: 24-3056, 11/22/2024, DktEntry: 1.1, Page 134 of 621
Case 1:18-cv-04615-ER Document 70-1 Filed 11/26/24 Page 99 of 160

Case 1:18-cv-04615-ER Document 70 Filed 03/17/20 Page 25 of 26

February 1, 2020 following the January 29 Hearing. The latest actions against Plaintiff to be part

of a pattern alleged in the Complaint regarding targeted senior professors. As another professor

wrote:

> "Yes, I am not coming back. I have been exposed to concerted efforts of the new regime to push me out. I have been requested to teach undergraduates basic statistics and criticized for some snow days I missed due to illness ... They stopped my salary already, now I have to get some health insurance, and then I will fight for my retirement income." (Complaint P 137)

**Conclusion**

Due to the foregoing, Plaintiff's request should be granted.

Respectfully submitted this 16th day of March 2020

Esther Solomon
Plaintiff Pro Se

Respectfully resubmitted this 18th day of January 2024.

/s/ Esther Solomon

Esther Solomon
Plaintiff Pro Se

21

Case 24-3056, 11/22/2024, DktEntry: 1.1, Page 135 of 621
Case 1:18-cv-04615-ER Document 65-32 Filed 01/21/24 Page 100 of 160
Case 1:18-cv-04615-ER Document 70 Filed 03/17/20 Page 26 of 26

### Exhibits

1 Procedural History Relevant to Discovery

2 Fordham Statutes: Subpoena §4-07.42; Confidentiality §4-07.41

3 Fordham Statutes Service of Process,

4 Court's Protective Order, February 14, 2019; Dkt. #24

5 Subpoena for Plaintiff's Personnel File, November 6, 2019

6 Plaintiff's First Document Request

7 Defendant's Response to Plaintiff's First Document Request

8 Defendant's Response to Plaintiff's Subpoena, November 29, 2019

9 Transcript Portions of the January 29, 2020 Court Hearing.

10 Examples of Redactions

11 Crooker Affidavit with Teaching Schedules, July 22, 2019, Dkt. #56

12 Stanford University: Content of Personnel files

13 Examples of Plaintiff's First Document requests with minimal or no responsive documents

14 Documents deemed confidential contrary to Protective Order with Bates numbers

15 Plaintiff's January 2, 2020 letter to Fordham President, Provost, Drs Rapaccioli and Crystal

16 Cobra Letter; February 11, 2019

22

Case: 24-3056  11/22/2024  DktEntry: 1.1  Page 136 of 621
Case 1:18-cv-04615-ER  Document 105-32  Filed 12/04/24  Page 101 of 160
Case 1:18-cv-04615-ER  Document 70-1  Filed 03/17/20  Page 1 of 26

# Exhibit 1

# TABLE 1

## PROCEDURAL HISTORY RELEVANT TO DISCOVERY

EEOC Filing January 11, 2018

EEOC Notice of Right to sue, February 28, 2018

Original Complaint, May 24, 2018 (Dkt #1)

Court Case Management Conference before Hon E. Ramos, December 13, 2018 (Dkt #20)

First Set of Document Requests exchanged between the parties, January 7, 2019

Stipulated Protective Order signed February 14, 2019 (Dkt #24)

Court Ordered Mediation, February 22, 2019

First Set of Interrogatories exchanged between the parties, March 26, 2019;

Amended Complaint, March 17, 2019 (Dkt# 37);

Defendant letter requesting leave for Motion to Dismiss

Plaintiff reply letter opposing Motion to Dismiss, March 29, 2019 (Dkt# 38);

Court Hearing Defend. Pre- Motion to Dismiss before Hon E. Ramos, April 5, 2019 (Dkt# 40)

Meet-and-Confers between Cravath, Swaine & Moore and Fordham attorneys, March-April, 2019

Defendant's letter to Court seeking Discovery stay, April 10, 2019  (Dkt# 39)

Plaintiff's Response to Defendant Discovery letter, April 17, 2019 (Dkt# 44)

Defendant Motion to Dismiss May 6, 2019 (Dkt# 49);

Plaintiff Opposition to Motion to Dismiss June 26, 2019 (Dkt#51,52 );

Defendant Reply for Motion to Dismiss July 22, 2019 (Dkt#55);

Plaintiff Surreply in Opposition September 25, 2019 (Dkt#61);

Exchange of Interrogatories Responses, August 2, 2019;

Subpoenas for Personnel Files to Fordham per §4-07.42 issued November 6, 2019 served November 8, 2019

Meet-and-Confers between Plaintiff and 2 Fordham attorneys on November 13/2019

Defendant Opposition/ to quash Subpoenas, November 20, 2019

Meet-and-Confer requested by Plaintiff with 3 Fordham attorneys December 5,2019;

Plaintiff's Request for Discovery Hearing with 10 Exhibits, December 17, 2019, (Dkt #62);

Fordham's reply re Discovery Hearing December 23, 2019 (Dkt #63).

Court Hearing on Plaint. Req.to compel subpoenas, discovery before Hon. Ramos, January 29, 2020 (Dkt# 68)

Case: 24-3056, 11/22/2024, DktEntry: 1.1, Page 138 of 621
Case 1:18-cv-04615-ER Document 105-2 Filed 01/28/24 Page 103 of 160
Case 1:18-cv-04615-ER Document 70-1 Filed 03/17/20 Page 3 of 26

# Exhibit 2

Case 4:18-cv-04615-ER Document 1653 Filed 02/08/24 Page 139 of 621 Case 24-3056, 11/22/2024, DktEntry: 1.1, Page 139 of 621 Page 104 of 160

Case 1:18-cv-04615-ER Document 70-1 Filed 03/17/20 Page 4 of 26

# PART V

Miscellaneous

### §4-07.41 - Confidentiality

a. Except when otherwise directed by final order of or governmental tribunal of competent jurisdiction, faculty members and administrators engaged in procedures involving faculty personnel decisions shall treat as confidential all information disclosed during such procedures, as well as the fact of occurrence of the procedure and the result thereof except as otherwise provided in these statutes. Specifically, and without limiting the generality of the foregoing, this rule of confidentiality shall apply to all University Personnel serving on, testifying before, supplying information to and receiving information from the Tenure and Reappointment Appeals Committee, University Tenure Review Committee, Faculty Hearing Committee, and the Faculty Senate in executive session.

b. The result of such procedures, together with the appropriate meaningful reasons therefore, shall be communicated to those involved, and to the Faculty Senate Office, as specified in these statutes.

c. This rule of confidentiality shall also apply in other cases where these statutes so specify, and to prospective matters upon the request of the President or a Vice President of the University, or President of the Faculty Senate.

d. Faculty members serving as members of any of the Committees mentioned in subdivision (a) and members of the Faculty Senate while the Senate is sitting in executive session, shall have the right to review all relevant documents and to interview witnesses. All University personnel having relevant knowledge, information or documents shall disclose such, free of any restriction imposed by this section, upon competent request therefore by such bodies.

e. Failure to maintain the required confidentiality constitutes a breach of contract.

### §4-07.42 - Subpoenas

Personnel files are confidential [see §4-07.41]. No document in such file will be released by the University to any person without the written consent of the Vice President for Academic Affairs except in response to a final order of a court of competent jurisdiction, or a lawful subpoena duces tecum. The faculty member whose file is the subject of a subpoena duces tecum shall be notified promptly upon receipt of the subpoena, normally on the same day, both by telephone and by certified mail directed to the residence address of the faculty member. The purpose of the prompt notification is to afford the faculty member and his counsel, if any, sufficient time to move to quash the subpoena. In no case will file material which is not specifically subpoenaed be released in response to a subpoena or otherwise. Nothing in this statement of policy shall bar the University, sua sponte, from moving to quash the subpoena.

# FORDHAM UNIVERSITY

Article Four: Policies
and Procedures for
Faculty

Chapter 7: Academic Due
Process

Case: 24-3056, 11/22/2024, DktEntry: 1.1, Page 141 of 621
Case 1:18-cv-04615-ER Document 70-1 Filed 03/17/20 Page 21 of 160
Case 1:18-cv-04615-ER Document 70-1 Filed 03/17/20 Page 6 of 26

# Exhibit 3

About   Mission   Academics   Admis

Home   Resources   Policies   Subpoena Policy and Service of Process

Policies

# Subpoena Policy and Service of Process

A subpoena duces tecum is an order under color of government or court authority directing the recipient to produce certain documents listed in the subpoena on a specific date, time, and place designated.

As the registered agent to receive service of process on behalf of Fordham University, the General Counsel is the designated Fordham official to accept service of process and a subpoena directed to Fordham University.

Any attempt on any campus, in person or by mail, to serve a lawsuit via a summons, complaint, or subpoena, should be directed to the Office of the General Counsel, Fordham University, Administration Building Room 111, 441 East Fordham Road, Bronx, New York 10458; 718-817-3111, 3110, or 3112.

If any Fordham University employee unknowingly or erroneously accepts service of legal documents, the employee should sign, date, and fax the document to 718-817-3115 and contact immediately the Office of Legal Counsel at the phone numbers listed above.

# Exhibit 4

Case 24-3056, 11/22/2024, DktEntry: 1.1, Page 144 of 621
Case 1:18-cv-04615-ER Document 70-1 Filed 03/17/20 Page 9 of 26
Case 1:18-cv-04615-ER Document 24 Filed 02/14/19 Page 1 of 6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #
DATE FILED: 2/14/2019

--------------------------------------------------------------

ESTHER SOLOMON,

Plaintiff,

-against-

FORDHAM UNIVERSITY,

Defendant.

--------------------------------------------------------------

Case No.: 18-cv-04615 (ER)

STIPULATION AND ~~PROPOSED~~
PROTECTIVE ORDER

WHEREAS, Plaintiff Esther Solomon and Defendant Fordham University ("the Parties") having agreed to the following terms of confidentiality, and the Court having found that good cause exists for the issuance of an appropriately tailored confidentiality order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, it is hereby

ORDERED that the following restrictions and procedures shall apply to the information and documents exchanged by the Parties in connection with the pre-trial phase of this action ("Discovery Material"):

1.  The producing party (either in the party's own capacity or through the party's undersigned counsel) may designate any Discovery Material, in whole or in part, as "confidential" if the producing party determines, in good faith, that such designation is necessary to protect its interests in information that is sensitive and non-public. Such confidential information may include, but is not limited to:

    a.  financial, benefit and/or payroll information concerning the Parties or their current or former employees;

    b.  personnel files, evaluations and employment history of the Parties or their current or former employees;

    c.  sensitive personal information including medical information and/or information concerning physical, psychological, psychiatric and/or emotional history of the Parties or any of their current or former employees; and

    d.  documents reflecting social security numbers, tax returns and/or tax documents of the Parties or any of their current or former employees; and

e. such other documents that the Parties may in good faith designate.

2. Discovery Material designated by a party as confidential will be stamped "CONFIDENTIAL" by the producing party ("Confidential Information").

3. The following information shall not be stamped "CONFIDENTIAL" or otherwise be deemed to constitute Confidential Information under this Order:

a. information in the public domain;

b. information already known by the receiving party through proper means; and

c. information that is or becomes available to a party from a source other than the party asserting confidentiality and rightfully in possession of such information on a non-confidential basis.

4. Confidential Information will be held and used by the person receiving such Confidential Information solely for use in connection with the above-referenced action.

5. Confidential Information shall not be disclosed to any person, except:

a. The Plaintiff and counsel retained for this action, including any paralegal, clerical and other assistant employed by such counsel and assigned to this matter;

b. As to any document, its author, its addressee, and any other person indicated on the face of the document as having received a copy of the document;

c. Any witness who counsel for a party in good faith believes may be called to testify at trial or deposition in this action, provided that such person has first executed a Non-Disclosure Agreement in the form annexed as Exhibit A hereto;

d. Any person retained by a party to serve as an expert witness or otherwise provide specialized advice to counsel in connection with this action, provided such person has first executed a Non-Disclosure Agreement in the form annexed as Exhibit A hereto;

e. Stenographers engaged to transcribe depositions conducted in this action;

f. Independent photocopying, graphic production services, or litigation support services employed by the parties or their counsel to assist in this action and computer service personnel performing duties in relation to a computerized litigation system;

       g.     The Court, its support personnel and the mediator (or other person having access to any Confidential Information by virtue of his or her position with the Court); and

       h.     Any person on such terms and conditions as the parties may mutually agree, or as the Court may hereafter direct by further order.

6.    Prior to disclosing or displaying Confidential Information to any person set forth in Paragraphs 5(c) or 5(d) above, the disclosing party must:

       a.     Inform the person of the confidential nature of the Discovery Material;

       b.     Inform the person that this Court has enjoined the use of the Discovery Material by him/her for any purpose other than this litigation and has enjoined the disclosure of the Discovery Material to any other person; and

       c.     Require each such person to sign an agreement to be bound by this Order in the form attached as Exhibit A hereto.

7.    In the event a party challenges another party's designation of confidentiality, the Parties shall make a good faith effort to resolve the dispute, and in the absence of a resolution, the challenging party may seek resolution by the Court. Nothing in this Order constitutes an admission by any party that Confidential Information disclosed in this case is relevant or admissible. Each party reserves the right to object to the use or admissibility of the Confidential Information.

8.    The disclosure of Discovery Material without designating it as "confidential" shall not constitute a waiver of the right to designate such Discovery Material as Confidential Information. If so designated, the Discovery Material shall thenceforth be treated as CONFIDENTIAL subject to all the terms of this Stipulation and Order.

9.    Each person who has access to Discovery Material that has been designated as "confidential" shall take all reasonable precautions to prevent the unauthorized or inadvertent disclosure of such material.

10.    Pursuant to Federal Rule of Evidence 502, the production of privileged or work- product protected documents or communications, electronically stored information ("ESI") or information, whether inadvertent or otherwise, shall not constitute a waiver of the privilege or protection from discovery in this case or in any other federal or state proceeding. This Order shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d). Nothing contained herein is intended to or shall serve to limit a party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.

11.    Notwithstanding the designation of Discovery Material as "confidential" in discovery, there is no presumption that such information shall be filed with the Court under seal.

Case 24-3056, 11/22/2024, DktEntry: 1.1, Page 147 of 621
Case 1:18-cv-04615-ER Document 70-1 Filed 03/17/20 Page 12 of 26

Case 1:18-cv-04615-ER Document 24 Filed 02/14/19 Page 4 of 6

12.     Nothing in this Order shall (a) restrict either party's rights with respect to a party's own documents or information; (b) restrict either party's rights with regard to Discovery Material that has not been designated as "confidential"; (c) prejudice either party's rights to object to the production or disclosure of documents or other information that it considers not subject to discovery; or (d) prejudice either party's right to seek, either by agreement or by application to the Court, greater protection than that provided herein.

13.     At the conclusion of litigation, Confidential Information and any copies thereof shall be promptly (and in no event later than 30 days after entry of final judgment no longer subject to further appeal) returned to the producing party or certified as destroyed, except that the parties' counsel shall be permitted to retain their working files on the condition that those files will remain protected.

SO STIPULATED AND AGREED.

CRAVATH, SWAINE & MOORE LLP                      CULLEN AND DYKMAN LLP
Attorneys for Plaintiff                          Attorneys for Defendant

By: _____                      By: _____
     Jeffrey Then                                     James G. Ryan

Dated: 2 / 12 / 2019                             Dated: 2 / 12 / 2019


So Ordered this  14th    day of  February  , 2019:


_____
Hon. Edgardo Ramos, U.S District Judge

**Exhibit 5**

Case 24-3056, 11/22/2024, DktEntry: 1.1, Page 149 of 621
Case 1:18-cv-04615-ER Document 106-32 Filed 01/21/2024 Page 01 of 160
Case 1:18-cv-04615-ER Document 70-1 Filed 03/17/20 Page 14 of 26

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of New York

| Esther Solomon | ) |
| --- | --- |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 18-cv-4615-ER |
| Fordham University | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

MARGARET T. BALL ESG                   Fordham University,

To: Fordham University Office of the General Counsel, Administration Building Room 111, 441 East Fordham Road,
Bronx, New York 10458; 718-817-3111 (tel:718-817-3111), 3110, or 3112

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

The Personnel file of Dr. Esther Solomon and all other documents regarding her employment history with Fordham University.

| Place: Dr. E. Solomon, Fordham University Gabelli Business, 140 West 62nd street, Rm 400, New York 10023 212 636 618, email: etaki33@gmail.com | Date and Time: By December 8, 2019 |
| --- | --- |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
| --- | --- |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   4/6/19

*CLERK OF COURT*

_____            OR            _____
*Signature of Clerk or Deputy Clerk*                              *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Plaintiff *Pro Se*
_____, who issues or requests this subpoena, are:
Plaintiff Esther Solomon, Gabelli School of Business, 140 West 62nd Street, New York NY 10023, etaki33@gmail.com, 212 6366187

### Notice to the person who issues or requests this subpoena

A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. /8 C V 46/5 ER 19

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* M.Ball Fordham Counsel- re Dr. E. Solomon Personnel File
on *(date)* // - 7 - 2019      747 E. for Hrum Rd., 111
                              BX NY 10458,
☐ I served the subpoena by delivering a copy to the named person as follows: Caroline Garcia
Legal Department
                                                on *(date)* // - 8 - 2019 ; or

☐ I returned the subpoena unexecuted because:

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ N_q .                                                        $507.00

My fees are $ N_q       for travel and $ 507.00 for services, for a total of $ 0.00

I declare under penalty of perjury that this information is true.

Date: // - 10 - 2019       _____
                              Server's signature
                              Process Server : Aaron Rubin
                              Printed name and title
                              Lic #/350897

Additional information regarding attempted service, etc.:

Server's address
551 W. 181st Street, #224
New York, NY 10033

Case: 24-3056  11/22/2024  DktEntry: 1.1  Page: 151 of 621
Case 4:18-cv-04581-ERD Document 1653-2  Filed 01/20/24  Page 216 of 160
AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

Case: 24-3056, 11/22/2024, DktEntry: 1.1, Page 152 of 621
Case 1:18-cv-04615-ER Document 105-32 Filed 01/18/24 Page 31 of 160
Case 1:18-cv-04615-ER Document 70-1 Filed 03/17/20 Page 17 of 26

# Exhibit 6

Case 24-3056, 11/22/2024, DktEntry: 1.1, Page 153 of 621
Case 1:18-cv-04615-ER Document 70-1 Filed 03/17/20 Page 118 of 160

Case 1:18-cv-04615-ER Document 70-1 Filed 03/17/20 Page 18 of 26

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ESTHER SOLOMON,

                    Plaintiff,

       -against-                Case No.: 18-cv-04615 (ER)

FORDHAM UNIVERSITY,

                   Defendant.

---

## PLAINTIFF'S FIRST SET OF REQUESTS TO DEFENDANT FOR THE PRODUCTION OF DOCUMENTS

                Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the Local

Civil Rules of the United States District Court for the Southern District of New York, Plaintiff

ESTHER SOLOMON ("Dr. Solomon" or "Plaintiff") requests that Defendant FORDHAM

UNIVERSITY ("Fordham" or "Defendant") produce the following documents and tangible

things in its possession, custody or control in accordance with the definitions and instructions

contained herein to the undersigned attorneys at the offices of Cravath, Swaine & Moore LLP,

Worldwide Plaza, 825 Eighth Avenue, New York, New York 10019, within 30 days of service of

this request. Each of the document requests (the "Requests") is to be read in accordance with the

definitions and respective instructions that follow.

### DEFINITIONS AND INSTRUCTIONS

       1.      Plaintiffs hereby incorporate by reference the instructions and definitions

set forth in the Federal Rules of Civil Procedure and Local Rules 26.2 and 26.3. All terms used

below have the broadest meaning accorded to them under Rule 26.3 of the Local Rules of the

          (c)    the identity of the participants and witnesses; and

          (d)    the substantive information communicated.

    (v)    when used with respect to an action, lawsuit, arbitration,

administrative proceeding or other adjudicatory proceeding, state:

          (a)    the name of each party to the proceeding;

          (b)    the court or agency in which the proceeding was instituted;

          (c)    the identifying number of the proceeding;

          (d)    the date the proceeding was commenced;

          (e)    the date the proceeding was terminated;

          (f)    whether the proceeding was a civil lawsuit, criminal

proceeding, arbitration, administrative proceeding or other

adjudicatory proceeding; and

          (g)    the terms under which the proceeding was terminated.

l.    Once a person has been identified in accordance with paragraph "j", only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

m.    Number. The term "number" is defined to be the singular form of any word that includes the plural and vice versa.

n.    Person. The term "person" is defined as any natural person or any business, legal or governmental entity, or association.

o.    Parties. The terms "Plaintiff" and "Defendant" as well as a party's full or abbreviated name or a pronoun referring to a party are defined as the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or

5

affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

     p.     Relevant Time Period. The term "relevant time period" refers to the period from January 1, 2008 through the present.

     q.     Regarding. The term "regarding" means relating to, referring to, with respect to, constituting, containing, embodying, reflecting, describing, analyzing, identifying, stating, discussing, addressing, or in any way pertaining to.

     3.     The use of any definition for the purposes of these Requests shall not be deemed to constitute an agreement or acknowledgment on the part of the Plaintiff that such definition is accurate, meaningful or appropriate for any other purposes in this litigation.

     4.     These Requests call for the production of responsive documents in your possession, custody or control, including documents in the possession, custody or control of any of your respective employees, agents, attorneys or other persons acting or purporting to act on your behalf.

     5.     If a responsive document was once, but is no longer, in your possession, custody or control, state its date, author(s), recipient(s), subject matter, when the document was most recently in your possession, custody or control, and the person, organization, or entity presently in possession, custody or control of such document. If a responsive document has been destroyed, identify the date of destruction, the person who destroyed the document, the person who directed that the document be destroyed and the reason for its destruction.

     6.     Each requested document shall be produced in its entirety. If a document responsive to these Requests cannot be produced in full, it shall be produced to the extent possible with an explanation stating why production of the remainder is not possible.

6

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**Document Request 1:** All documents during the relevant time period concerning Defendant's policies, practices and procedures pertaining to employment discrimination, faculty compensation and benefits, promotions, administrative appointments, course assignments and course cancellations.

**Document Request 2:** All documents regarding Plaintiff and Comparator Professors' compensation for the relevant time period, including but not limited to compensation for administrative or consulting assignments, scholarly research and professional activities.

**Document Request 3:** All documents regarding Plaintiff and Comparator Professors' job responsibilities, course assignments, course cancellations, course releases, administrative appointments, consulting assignments, research funding and professional activities for the relevant time period.

**Document Request 4:** All reports published by the Salary and Benefits Task Force on Indicators of Gender Salary Equity Among Faculty.

**Document Request 5:** All documents regarding student evaluations of Plaintiff and Comparator Professors for courses taught at both the undergraduate and graduate level.

**Document Request 6:** All documents demonstrating the enrollment in any courses taught by Plaintiff and Comparator Professors in the relevant time period including enrollment for sections of these courses taught by other professors.

**Document Request 7:** All documents demonstrating Core Principles of Management undergraduate business course assignments over the relevant time period.

**Document Request 8:** All documents regarding Dr. Rapaccioli's emails on December 18, 2017 and December 21, 2017 relating to adherence to the Code of Conduct and to claims that Dr. Solomon "engaged in a conversation that was viewed as lacking civility".

9

Document Request 9: All minutes, transcripts or recordings of Faculty Senate, Joint Council and Departmental Meetings discussing or relating to Plaintiff over the relevant time period.

Document Request 10: All organizational charts or documents demonstrating the structure of the Gabelli School of Business academic areas and faculty.

Document Request 11: All documents concerning formal or informal claims or complaints made by Plaintiff against Defendant regarding discrimination and/or retaliation, including any documents reflecting Defendant's investigations of the same.

Document Request 12: All documents concerning formal claims or complaints made in the relevant time period against Defendant by a current or former employee of Defendant (other than Plaintiff) regarding discrimination and/or retaliation and Defendant's investigations of the same.

Document Request 13: Plaintiff's personnel file and all other documents regarding Plaintiff's employment history with Defendant.

Document Request 14: To the extent not otherwise produced, all documents regarding the appointment of the Management Systems Area Chair in 2013.

Document Request 15: To the extent not otherwise produced, all documents related to the cancellation of Plaintiff's Spring 2017 and Spring 2018 graduate courses.

Document Request 16: To the extent not otherwise produced, all documents regarding Plaintiff's claims and/or Defendant's defenses raised in the pleadings of this action.

Document Request 17: All documents Defendant plans to rely on at trial.

10

Case: 24-3056, 11/22/2024, DktEntry: 1.1, Page 158 of 621
Case 1:18-cv-04615-ER Document 70-1 Filed 01/07/24 Page 123 of 160
Case 1:18-cv-04615-ER Document 70-1 Filed 03/17/20 Page 23 of 26

Dated: New York, New York
January 7, 2019

CRAVATH, SWAINE & MOORE LLP,

by

Lauren Roberta Kennedy
Jeffrey Then

Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

*Attorneys for Plaintiff Esther Solomon*

# Exhibit 7

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------X

ESTHER SOLOMON,

                                              Case No.:
                        Plaintiff,            1:18-cv-04615-ER

- against -                                   **DEFENDANT'S**
                                              **RESPONSE TO**
FORDHAM UNIVERSITY,                           **PLAINTIFF'S FIRST**
                                              **SET OF DOCUMENT**
                        Defendant.            **REQUESTS**

------------------------------------------------------------------------X

        Defendant Fordham University ("Fordham" or "Defendant") by and through its attorneys

Cullen and Dykman LLP, pursuant to Rule 34 of the Federal Rules of Civil Procedure, hereby

serve the following responses and objections to Plaintiff Esther Solomon's ("Plaintiff") First Set

of Document Requests ("Plaintiff's Demands") dated January 7, 2019.

## OBJECTIONS

        1.      As discussed with Plaintiff's counsel, the following responses are based on

information currently available to Defendant. The responses will be supplemented as necessary

on a rolling basis until completion, which is expected to occur on or before March 4, 2019. These

responses are given without prejudice to Defendant's right to produce or rely on subsequently

discovered information.

        2.      Defendant objects to the definition of "Comparator Professors" on the grounds that

the employees listed in Plaintiff's Demands: are not of comparable seniority, attended substantially

different educational institutions, teach different courses, have different employment experience,

provide wholly different levels of service to Defendant, have different supervisory responsibilities,

and have published varying degrees of scholarly works in peer and non-peer reviewed

publications. As such, the referenced employees are not "comparable" to Plaintiff.

3. Unless otherwise indicated, Defendant is producing information dated on or after January 1, 2008 to the extent same is reasonably available.

4. As discussed with Plaintiff's counsel, Defendant conditions the production of documents that contain confidential or proprietary information or trade secrets on the execution of the Stipulation and Proposed Protective Order governing the disclosure of any such information.

5. The production of any documents or information by Defendant is made without waiver and with preservation of any privilege or protection afforded to documents containing confidential, privileged or proprietary information or trade secrets.

6. Defendant objects to the document requests that seek information concerning the "Comparator Professors" as defined in the Plaintiff's Demands to the extent that they require Defendant to produce information which violates the privacy interests of those employees. Notwithstanding the objection, the foregoing items regarding personal financial information, personal identifying information such as addresses, social security numbers, Fordham employee identification numbers, personal family issues, health conditions, and other private information will be redacted accordingly.

7. Defendant objects to Plaintiff's Demands to the extent they seek the production of emails and other electronically stored information that are not proportional to the needs of the case given the issues in the action, the amount in controversy, the importance of the discovery in resolving the issues and whether the burden or the expense of the proposed discovery outweighs the likely benefit.

## RESPONSE TO SPECIFIC DEMANDS

1. **All documents during the relevant time period concerning Defendant's policies, practices and procedures pertaining to employment discrimination, faculty compensation and benefits, promotions, administrative appointments, course assignments and course cancellations.**

2

Case 24-3056, 11/22/2024, DktEntry: 1.1, Page 162 of 621
Case 1:18-cv-04615-ER Document 70-2 Filed 03/17/20 Page 127 of 160
Case 1:18-cv-04615-ER Document 70-2 Filed 03/17/20 Page 1 of 26

## RESPONSE TO REQUEST NO. 1

Defendant objects to this request to the extent that the terms "practices and procedures" are not defined and are capable of numerous interpretations. Defendant interprets this request to seek written official policies of the University, if any, regarding the requested information. Subject to and without waiver of the Objections and the specific objection herein, please see documents attached hereto as Bates stamped FORDHAM0000001 through FORDHAM0000133.

Defendant reserves the right to supplement or otherwise modify Defendant's response to this request as necessary up to and through the time of trial.

**2.     All documents regarding Plaintiff and Comparator Professors' compensation for the relevant time period, including but not limited to compensation for administrative or consulting assignments, scholarly research and professional activities.**

## RESPONSE TO REQUEST NO. 2

To the extent this request seeks documents relating to Plaintiff, Defendant objects to this request on the grounds that it seeks documents that are equally available to Plaintiff. As set forth more fully in the Objections numbered 2 and 6 above, Defendant objects to Plaintiff's arbitrary definition and designation of the "Comparator Professors" for the reasons set forth therein. Subject to and without waiver of the Objections and the specific objection herein, following a reasonable search, Defendant has identified the following responsive documents. They include, but are not limited to, salary and tax information (marked Confidential and Bates stamped FORDHAM0000202 through FORDHAM0000324), Plaintiff's relevant files maintained by Defendant's Human Resources Department (marked Confidential and Bates stamped FORDHAM0000325 through FORDHAM0000497) and other files maintained by Defendant's Human Resources Department (marked Confidential and Bates stamped FORDHAM00008540 through FORDHAM00008977). See also, Plaintiff's relevant emails marked Confidential and

3

Bates stamped FORDHAM0000498 through FORDHAM0008539, which are or may be responsive to this and other requests.

Defendant reserves the right to supplement or otherwise modify Defendant's response to this request as necessary up to and through the time of trial. Defendant will continue to perform a reasonable search for documents and will produce responsive, non-privileged documents, if any, from the relevant time period under separate cover.

**3.      All documents regarding Plaintiff and Comparator Professors' job responsibilities, course assignments, course cancellations, course releases, administrative appointments, consulting assignments, research funding and professional activities for the relevant time period.**

## RESPONSE TO REQUEST NO. 3

See Response to Request No. 2 above and the objections set forth therein. Also, to the extent Plaintiff seeks documents pertaining to Plaintiff, Defendant objects to this request on the grounds that it seeks documents that are equally available to Plaintiff. Defendant further objects because this request substantially overlaps with Request No. 2 with respect to the documents sought. Subject to and without waiver of the Objections and the specific objection herein, Plaintiff is referred to the documents responsive to Request No. 2. See also the Bios of the Comparator Professors and Dr. Solomon Bates stamped FORDHAM0000134 through FORDHAM0000176. See also Plaintiff's relevant emails marked Confidential and Bates stamped FORDHAM0000498 through FORDHAM0008539, which are or may be responsive to this and other requests.

Defendant, however, reserves the right to supplement or otherwise modify Defendant's response as necessary up to and through the time of trial. Defendant will continue to perform a reasonable search for documents and will produce responsive, non-privileged documents, if any, from the relevant time period under separate cover.

4

**4.** **All reports published by the Salary and Benefits Task Force on Indicators of Gender Salary Equity Among Faculty.**

**RESPONSE TO REQUEST NO. 4**

Defendant objects to this request insofar as Plaintiff's request assumes that the requested documents are official documents created by Defendant University. They are not. Moreover, the document is attached to the Complaint as Exhibit 5 and is otherwise currently in Plaintiff's possession. Subject to and without waiver of the Objections and the specific objection herein, please see the document Bates stamped FORDHAM0000177 through FORDHAM0000185, provided herewith.

**5.** **All documents regarding student evaluations of Plaintiff and Comparator Professors for courses taught at both the undergraduate and graduate level.**

**RESPONSE TO REQUEST NO. 5**

To the extent this request seeks documents relating to Plaintiff, Defendant objects to this request on the grounds that it seeks documents that are equally available to Plaintiff. As set forth more fully in Objections 2 and 6 above, Defendant objects to Plaintiff's definition and designation of the "Comparator Professors" for the reasons set forth therein. Subject to and without waiver of the Objections and the specific objection herein, Defendant will produce reasonably available, relevant, non-privileged, responsive documents to the extent that any exist, that are in the possession, custody or control of Defendant which can be obtained by a reasonable search. Defendant reserves the right to supplement or otherwise modify Defendant's response as necessary up to and through the time of trial.

5

6.      **All documents demonstrating the enrollment in any courses taught by Plaintiff and Comparator Professors in the relevant time period including enrollment for sections of these courses taught by other professors.**

### RESPONSE TO REQUEST NO. 6

To the extent the request seeks documents relating to Plaintiff, Defendant objects to this request on the grounds that it seeks documents equally available to Plaintiff. As set forth more fully in Objections 2 and 6 above, Defendant objects to Plaintiff's definition and designation of the "Comparator Professors" for the reasons set forth therein. Subject to those objections, Defendant will produce reasonably available, relevant, non-privileged, responsive documents to the extent that any exist, that are in the possession, custody or control of Defendant which can be obtained by a reasonable search. Defendant reserves the right to supplement or otherwise modify Defendant's response as necessary up to and through the time of trial.

7.      **All documents demonstrating Core Principles of Management undergraduate business course assignments over the relevant time period.**

### RESPONSE TO REQUEST NO. 7

Defendant objects to this request insofar as it is vague in that the phrase "undergraduate business course assignments" is undefined. Upon clarification as to the documents being sought, Defendant will, if appropriate and not otherwise objectionable, produce reasonably available, relevant, non-privileged responsive documents to the extent any exist and have not previously been produced which are in its possession, custody or control, and can be obtained by a reasonable search.

8.      **All documents regarding Dr. Rapaccioli's emails on December 18, 2017 and December 21, 2017 relating to adherence to the Code of Conduct and to claims that Dr. Solomon "engaged in a conversation that was viewed as lacking civility".**

6

**RESPONSE TO REQUEST NO. 8**

Defendant objects to this request on the grounds that it is vague as to the phrase "adherence to the Code of Conduct" and seeks documents that are obviously equally available to Plaintiff given her descriptions of the emails at issue and the specific date range requested. Subject to and without waiver of the Objections and the specific objection herein, see documents attached hereto marked Confidential and Bates stamped FORDHAM0000186 through FORDHAM0000201. Defendant reserves the right to supplement or otherwise modify Defendant's response as necessary up to and through the time of trial.

9. **All minutes, transcripts or recordings of Faculty Senate, Joint Council and Departmental Meetings discussing or relating to Plaintiff over the relevant time period.**

**RESPONSE TO REQUEST NO. 9**

Defendant objects to this request to the extent that it seeks information not created by Defendant such as the Faculty Senate or Joint Council Meeting Minutes. The Term "Departmental Meetings" is undefined but presumed to mean meetings of the Leading People and Organizations area of the Gabelli School of Business. Subject to those objections, Defendant, if appropriate and not otherwise objectionable, will produce reasonable available, relevant, non-privileged, responsive documents to the extent that any exist and have not been previously produce which are in its custody or control and can be obtained by a reasonable search.

10. **All organizational charts or documents demonstrating the structure of the Gabelli School of Business academic areas and faculty.**

**RESPONSE TO REQUEST NO. 10**

Defendant objects to this request on the grounds that the term "structure of the Gabelli School of Business academic areas and faculty" is not defined and subject to interpretation. Subject to and without waiver of the Objections and the specific objection herein, and if a current

7

organizational chart and list of faculty of the Gabelli School of Business exists, Defendant will produce reasonably available, relevant, non-privileged, responsive documents that are in the possession, custody or control of Defendant which can be obtained by a reasonable search.

**11. All documents concerning formal or informal claims or complaints made by Plaintiff against Defendant regarding discrimination and/or retaliation, including any documents reflecting Defendant's investigations of the same.**

## RESPONSE TO REQUEST NO. 11

To the extent the request seeks documents relating to Plaintiff, Defendant objects to this request on the grounds that it seeks documents that are equally available to Plaintiff. Additionally, it is unclear to whom Plaintiff may have made any alleged claims or complaints. As such Defendant objects to the request insofar as it calls for the production of documents that are in the possession or control of third parties. Subject to and without waiver of the Objections and the specific objection herein, Defendant will produce reasonably available, relevant, non-privileged, responsive documents to the extent that any exist, that are in the possession, custody or control of Defendant which can be obtained by a reasonable search.

**12. All documents concerning formal claims or complaints made in the relevant time period against Defendant by a current or former employee of Defendant (other than Plaintiff) regarding discrimination and/or retaliation and Defendant's investigations of the same.**

## RESPONSE TO REQUEST NO. 12

Defendant objects to the request insofar as it calls for irrelevant information and for the production of documents that are in the possession or control of third parties. Subject to and without waiver of the General Objections and the specific objection herein, Defendant will produce reasonably available, relevant, non-privileged, responsive documents to the extent that any exist, that are in the possession, custody or control of Defendant which can be obtained by a reasonable search.

8

**13. Plaintiff's personnel file and all other documents regarding Plaintiffs employment history with Defendant.**

## RESPONSE TO REQUEST NO. 13

To the extent the request seeks documents relating to Plaintiff, Defendant objects to this request on the grounds that it seeks documents that are equally available to Plaintiff. Additionally, the request is not proportional to the needs of the case in that it could be construed to call for the production of every document Plaintiff ever received and/or sent during her 25-year employment with the Defendant. The demand is also not proportional to the amount in controversy, the resources of the parties and to whether time, burden and expense of the proposed discovery outweighs its likely benefit. Subject to those objections, please see response to Request No. 2 above and specifically Plaintiff's W-2 and tax forms (Bates stamped FORDHAM0000202 through FORDHAM0000217), and her Human Resources file (Bates stamped FORDHAM0000325 through FORDHAM0000497).

**14. To the extent not otherwise produced, all documents regarding the appointment of the Management Systems Area Chair in 2013.**

## RESPONSE TO REQUEST NO. 14

Defendant objects to the request insofar as it seeks production of all documents on the grounds of overbreadth, overburden and expense. Subject to and without waiver of the General Objections, Defendant will produce reasonably available, relevant, non-privileged, responsive documents to the extent that any exist, that are in the possession, custody or control of Defendant which can be obtained by a reasonable search.

**15. To the extent not otherwise produced, all documents related to the cancellation of Plaintiff's Spring 2017 and Spring 2018 graduate courses.**

## RESPONSE TO REQUEST NO. 15

To the extent the request seeks documents relating to Plaintiff, Defendant objects to this request on the grounds that it seeks documents that are equally available to Plaintiff. Additionally, the request assumes that there was a cancellation of her courses in the Spring of 2017 and 2018. Subject to and without waiver of the Objections and the specific objection herein, Defendant will produce reasonably available, relevant, non-privileged, responsive documents to the extent that any exist, that are in the possession, custody or control of Defendant which can be obtained by a reasonable search.

**16. To the extent not otherwise produced, all documents regarding Plaintiffs claims and/or Defendant's defenses raised in the pleadings of this action.**

## RESPONSE TO REQUEST NO. 16

Subject to and without waiver of the Objections, Defendant will produce reasonably available, relevant, non-privileged, non-work product, responsive documents to the extent that any exist, that are in the possession, custody or control of Defendant which can be obtained by a reasonable search.

**17. All documents Defendant plans to rely on at trial.**

## RESPONSE TO REQUEST NO. 17

Subject to and without waiver of the Objections, Defendant will produce reasonably available, relevant, non-privileged, non-work product, responsive documents to the extent that any exist, that are in the possession, custody or control of Defendant which can be obtained by a reasonable search.

10

Case: 24-3056, 11/22/2024, DktEntry: 1.1, Page 170 of 621
Case 1:18-cv-04615-ER Document 66-2 Filed 01/22/24 Page 135 of 160
Case 1:18-cv-04615-ER Document 70-2 Filed 03/17/20 Page 9 of 26

Dated: Garden City, New York
February 13, 2019

CULLEN AND DYKMAN LLP

By: _____
Hayley B. Dryer (HD9682)
*Attorneys for Defendant Fordham University*
100 Quentin Roosevelt Boulevard
Garden City, New York 11530
Phone: (516) 357-3745
Email: hdryer@cullenanddykman.com

To:   Jeffrey Then, Esq.
      *Attorneys for Plaintiff Esther Solomon*
      Cravath, Swaine & Moore LLP
      Worldwide Plaza
      825 Eighth Avenue
      New York, NY 10019-7475
      Phone: (212) 474-1908
      Email: jthen@cravath.com

# Exhibit 8

Case 24-3056, 11/22/2024, DktEntry: 1.1, Page 172 of 621
Case 1:18-cv-04615-ER Document 65-12 Filed 01/28/24 Page 310 of 160
Case 1:18-cv-04615-ER Document 70-2 Filed 03/17/20 Page 11 of 26

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X

ESTHER SOLOMON,

                              Plaintiff,

- against -

FORDHAM UNIVERSITY,

                              Defendant.

------------------------------------------------------------------X

Case No.:
1:18-cv-04615-ER

**DEFENDANT'S**
**RESPONSE TO**
**PLAINTIFF'S**
**SUBPOENAS**

        Defendant Fordham University ("Fordham" or "Defendant") by and through its attorneys

Cullen and Dykman LLP, pursuant to Rule 45 of the Federal Rules of Civil Procedure, hereby

serve the following responses and objections to the subpoenas issued by Plaintiff Esther Solomon

("Plaintiff") upon Margaret T. Ball Esq., Fordham's General Counsel, dated November 6, 2019

(the "Subpoenas").

## OBJECTIONS APPLICABLE TO ALL SUBPOENAS

        1.     Defendant objects to the Subpoenas to the extent it has already provided Plaintiff

with the documents and information requested therein in a prior production of almost 15,000

documents

        2.     Defendant objects to the Subpoenas as they seek documents and information

outside the relevant time period as previously agreed upon by the parties, as noted in Plaintiff's

First Set of Requests to Defendant for the Production of Documents dated January 7, 2019.

        3.     Defendant objects to the Subpoenas to the extent they seek information related to

faculty members that Plaintiff did not previously identify as "Comparator Professors" in Plaintiff's

First Set of Requests to Defendant for the Production of Documents dated January 7, 2019.

4.     Defendant objects to the Subpoenas to the extent that they seek information that requires Defendant to produce information which violates the privacy interests of its employees and that is also entirely irrelevant to the issues in this action. Further, production of this information would violate the terms, conditions and spirit of Fordham's University Statutes to which Plaintiff is also bound.

5.     Defendant objects to the Subpoenas to the extent they, again, seek the duplicative production of emails and other electronically stored information that are not proportional to the needs of the case given the issues in the action, the amount in controversy, the importance of the discovery in resolving the issues and whether the burden or the expense of the proposed duplicative discovery outweighs the likely benefit.

6.     The production of any documents or information by Defendant is made without waiver and with preservation of any privilege or protection afforded to documents containing confidential, privileged or proprietary information or trade secrets.

## RESPONSE TO SPECIFIC SUBPOENAS

**1.     The Personnel file of Dr. James A.F. Stoner and all other documents regarding his employment history with Fordham University.**

### RESPONSE TO SUBPOENA NO. 1

Defendant objects to this Subpoena as it has already provided responsive information to Plaintiff. Defendant further objects to this Subpoena as it seeks documents and information outside the relevant time period as previously agreed upon by the parties and as noted in Plaintiff's First Set of Requests to Defendant for the Production of Documents dated January 7, 2019.

Defendant reserves the right to supplement or otherwise modify Defendant's response to this request as necessary up to and through the time of trial.

2

**2. The Personnel file of Dr. Robert Hurley and all other documents regarding his employment history with Fordham University.**

**RESPONSE TO SUBPOENA NO. 2**

Defendant objects to this Subpoena as it has already provided responsive information to Plaintiff. Defendant further objects to this Subpoena as it seeks documents and information outside the relevant time period as previously agreed upon by the parties and as noted in Plaintiff's First Set of Requests to Defendant for the Production of Documents dated January 7, 2019.

Defendant reserves the right to supplement or otherwise modify Defendant's response to this request as necessary up to and through the time of trial.

**3. The Personnel file of Dr. Michael Pirson and all other documents regarding his employment history with Fordham University.**

**RESPONSE TO SUBPOENA NO. 3**

Defendant objects to this Subpoena as it has already provided responsive information to Plaintiff. Defendant further objects to this Subpoena as it seeks documents and information outside the relevant time period as previously agreed upon by the parties and as noted in Plaintiff's First Set of Requests to Defendant for the Production of Documents dated January 7, 2019.

Defendant reserves the right to supplement or otherwise modify Defendant's response to this request as necessary up to and through the time of trial.

**4. The Personnel file of Dr. John Hollwitz and all other documents regarding his employment history with Fordham University.**

**RESPONSE TO SUBPOENA NO. 4**

Defendant objects to this Subpoena as it has already provided responsive information to Plaintiff. Defendant further objects to this Subpoena as it seeks documents and information outside the relevant time period as previously agreed upon by the parties and as noted in Plaintiff's First Set of Requests to Defendant for the Production of Documents dated January 7, 2019.

3

Defendant reserves the right to supplement or otherwise modify Defendant's response to this request as necessary up to and through the time of trial.

**5. The Personnel file of Dr. Esther Solomon and all other documents regarding her employment history with Fordham University.**

## RESPONSE TO SUBPOENA NO. 5

Defendant objects to this Subpoena as it has already provided responsive information to Plaintiff. Defendant further objects to this Subpoena as it seeks documents and information outside the relevant time period as previously agreed upon by the parties and as noted in Plaintiff's First Set of Requests to Defendant for the Production of Documents dated January 7, 2019.

Defendant reserves the right to supplement or otherwise modify Defendant's response to this request as necessary up to and through the time of trial.

**6. The Personnel file of Dr. Thomas A. Wright and all other documents regarding his employment history with Fordham University.**

## RESPONSE TO SUBPOENA NO. 6

Defendant objects to this Subpoena as it has already provided responsive information to Plaintiff. Defendant further objects to this Subpoena as it seeks documents and information outside the relevant time period as previously agreed upon by the parties and as noted in Plaintiff's First Set of Requests to Defendant for the Production of Documents dated January 7, 2019.

Defendant reserves the right to supplement or otherwise modify Defendant's response to this request as necessary up to and through the time of trial.

**7. The Personnel file of Dr. Robert Wharton and all other documents regarding his employment history with Fordham University.**

## RESPONSE TO SUBPOENA NO. 7

Defendant objects to this Subpoena as it has already provided responsive information to Plaintiff. Defendant further objects to this Subpoena as it seeks documents and information outside

4

the relevant time period as previously agreed upon by the parties and as noted in Plaintiff's First Set of Requests to Defendant for the Production of Documents dated January 7, 2019.

Defendant reserves the right to supplement or otherwise modify Defendant's response to this request as necessary up to and through the time of trial.

**8. The Personnel file of Milan Zeleney and all other documents regarding his employment history with Fordham University.**

**RESPONSE TO SUBPOENA NO. 8**

Defendant objects to this Subpoena as it seeks information regarding a Fordham faculty member that Plaintiff did not previously identify as "Comparator Professors" in Plaintiff's First Set of Requests to Defendant for the Production of Documents dated January 7, 2019. Milan Zeleney has Professor Emeritus status and no is no longer an active member of the Fordham faculty. As such, he is not of comparable seniority, taught different courses, has different employment experience, provided wholly different levels of service to Defendant, had different supervisory responsibilities, and has published varying degrees of scholarly works in peer and non-peer reviewed publications. As such, this employee is not comparable to Plaintiff and therefore, information related to him is irrelevant.

Defendant reserves the right to supplement or otherwise modify Defendant's response to this request as necessary up to and through the time of trial.

**9. The Personnel file of Dr. Jinhui Sara Wu and all other documents regarding her employment history with Fordham University.**

**RESPONSE TO SUBPOENA NO. 9**

Defendant objects to this Subpoena as it has already provided responsive information to Plaintiff. Defendant further objects to this Subpoena as it seeks documents and information outside

5

the relevant time period as previously agreed upon by the parties and as noted in Plaintiff's First

Set of Requests to Defendant for the Production of Documents dated January 7, 2019.

Defendant reserves the right to supplement or otherwise modify Defendant's response to

this request as necessary up to and through the time of trial.

**10. The Personnel file of Dr. Dorothy Klotz and all other documents regarding her employment history with Fordham University.**

**RESPONSE TO SUBPOENA NO. 10**

Defendant objects to this Subpoena as it has already provided responsive information to

Plaintiff. Defendant further objects to this Subpoena as it seeks documents and information outside

the relevant time period as previously agreed upon by the parties and as noted in Plaintiff's First

Set of Requests to Defendant for the Production of Documents dated January 7, 2019.

Defendant reserves the right to supplement or otherwise modify Defendant's response to

this request as necessary up to and through the time of trial.

**11. The Personnel file of Dr. Ying Hong and all other documents regarding her employment history with Fordham University.**

**RESPONSE TO SUBPOENA NO. 11**

Defendant objects to this Subpoena as it has already provided responsive information to

Plaintiff. Defendant further objects to this Subpoena as it seeks documents and information outside

the relevant time period as previously agreed upon by the parties and as noted in Plaintiff's First

Set of Requests to Defendant for the Production of Documents dated January 7, 2019.

Defendant reserves the right to supplement or otherwise modify Defendant's response to

this request as necessary up to and through the time of trial.

**12. The Personnel file of Dr. Sris Chatterjee and all other documents regarding his employment history with Fordham University.**

**RESPONSE TO SUBPOENA NO. 12**

6

Defendant objects to this Subpoena as it seeks information regarding a Fordham faculty member that Plaintiff did not previously identify as "Comparator Professors" in Plaintiff's First Set of Requests to Defendant for the Production of Documents dated January 7, 2019. Dr. Sris Chatterjee is the Chair of the Global Security Analysis Department in Fordham's Gabelli School of Business. As such, he is not of comparable seniority, teaches different courses in a different academic discipline which requires entirely different expertise and educational background, has different employment experience, provides wholly different levels of service to Defendant, has different supervisory responsibilities, and has published varying degrees of scholarly works in peer and non-peer reviewed publications. As such, this employee is not comparable to Plaintiff and therefore, information related to him is irrelevant.

Defendant reserves the right to supplement or otherwise modify Defendant's response to this request as necessary up to and through the time of trial.

**13. The Personnel file of Dr. Aditya Saharia and all other documents regarding his employment history with Fordham University.**

**RESPONSE TO SUBPOENA NO. 13**

Defendant objects to this Subpoena as it seeks information regarding a Fordham faculty member that Plaintiff did not previously identify as "Comparator Professors" in Plaintiff's First Set of Requests to Defendant for the Production of Documents dated January 7, 2019. Dr. Aditya Saharia is a Professor in the Information Systems Department of Fordham's Gabelli School of Business. As such, he is not of comparable seniority, teaches different courses in a different academic discipline which requires entirely different expertise and educational background, has different employment experience, provides wholly different levels of service to Defendant, has different supervisory responsibilities, and has published varying degrees of scholarly works in peer

and non-peer reviewed publications. As such, this employee is not comparable to Plaintiff and
therefore, information related to him is irrelevant.

Defendant reserves the right to supplement or otherwise modify Defendant's response to
this request as necessary up to and through the time of trial.

**14. The Personnel file of Dr. Benjamin Cole and all other documents regarding his
employment history with Fordham University.**

## RESPONSE TO SUBPOENA NO. 14

Defendant objects to this Subpoena as it has already provided responsive information to
Plaintiff. Defendant further objects to this Subpoena as it seeks documents and information outside
the relevant time period as previously agreed upon by the parties and as noted in Plaintiff's First
Set of Requests to Defendant for the Production of Documents dated January 7, 2019.

Defendant reserves the right to supplement or otherwise modify Defendant's response to
this request as necessary up to and through the time of trial.

**15. The Personnel file of Dr. Falguni Sen and all other documents regarding his
employment history with Fordham University.**

## RESPONSE TO SUBPOENA NO. 15

Defendant objects to this Subpoena as it has already provided responsive information to
Plaintiff. Defendant further objects to this Subpoena as it seeks documents and information outside
the relevant time period as previously agreed upon by the parties and as noted in Plaintiff's First
Set of Requests to Defendant for the Production of Documents dated January 7, 2019.

Defendant reserves the right to supplement or otherwise modify Defendant's response to
this request as necessary up to and through the time of trial.

8

Dated: Garden City, New York
      November 20, 2019

<div align="right">

CULLEN AND DYKMAN LLP

By:                   

James G. Ryan (JR 9446)
*Attorneys for Defendant Fordham University*
100 Quentin Roosevelt Boulevard
Garden City, New York 11530
Phone: (516) 357-3700
Email: jryan@cullenanddykman.com

</div>

To:    Esther Solomon
       *Pro Se Plaintiff*
       140 West 32nd Street
       New York, NY 10023

Case: 24-3056, 11/22/2024, DktEntry: 1.1, Page 181 of 621
Case 1:18-cv-04615-ER Document 70-2 Filed 03/17/20 Page 20 of 26
Case 1:18-cv-04615-ER Document 70-2 Filed 03/17/20 Page 20 of 26

# Exhibit 9

Case: 24-3056, 11/22/2024, DktEntry: 1.1, Page 182 of 621
Case 1:18-cv-04615-ER Document 70-2 Filed 01/20/24 Page 314 of 160

Case 1:18-cv-04615-ER Document 70-2 Filed 03/17/20 Page 21 of 26

1

KITESOLC - CORRECTED

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   SOLOMON,

4               Plaintiff,

5        v.                              18 Cv. 04615 (ER)

6   FORDHAM UNIVERSITY,

7               Defendant               Conference

8   ------------------------------x
                                        New York, N.Y.
9                                       January 29, 2020
                                        10:30 a.m.
10
    Before:
11
                    HON. EDGARDO RAMOS,
12
                                        District Judge
13

14                      APPEARANCES

15  ESTHER SOLOMON, pro se

16
    CULLEN AND DYKMAN LLP
17      Attorneys for Plaintiff
    BY: HAYLEY B. DRYER, ESQ.
18      RYAN SOEBKE, ESQ.

19

20

21

22

23

24

25

14

K1TESOLC - CORRECTED

1   very incomplete. I need my personnel file to find out what my
2   status is at the university.

3          THE COURT: Let me stop you there. It has been
4   represented to me by the counsel for the university that, so
5   far as they are concerned, they have turned over everything
6   that they have concerning your personnel file, or everything
7   that they've found, and why shouldn't I take that
8   representation?

9          MS. SOLOMON: I have many, many examples of why this
10  is not so.

11         THE COURT: Have you turned over those examples?

12         MS. SOLOMON: I have spoken with Mr. Ryan on the phone
13  on two occasions and I told him -- I went through my list and I
14  told him number one, number two, number three -- no response --
15  and that's because they don't want to give me this information.

16         THE COURT: So let me stop you there.

17         Ms. Dryer --

18         MS. DRYER: Yes, your Honor.

19         THE COURT: -- who is this Mr. Ryan? Was he provided
20  with a list of items that Ms. Solomon believed to be missing
21  from her file?

22         MS. DRYER: Mr. Ryan is my colleague at Cullen and
23  Dykman. Your Honor, Dr. Solomon is a tenured faculty member at
24  Fordham University and remains a tenured faculty member at
25  Fordham University. We were not provided with a list of items

K1TESOLC - CORRECTED

1        Ms. Dryer?

2        MS. DRYER:  With regard to the confidentiality issue?

3        THE COURT:  Yes.  She says there's 8,000 documents and

4   that you're using this willy nilly and designating too many

5   documents confidential.

6        MS. DRYER:  Your Honor, I don't see how that affects

7   Dr. Solomon's ability to prosecute her case.  She just

8   indicated that she is going to reveal things to her fellow

9   faculty or her colleagues.  We have a legitimate interest here

10  to protect very sensitive information of Fordham's faculty and

11  employees of Fordham.

12       In an abundance of caution, yes, documents that have

13  be produced to Dr. Solomon, including her emails, have been

14  designated as confidential.  I'm having a hard time

15  understanding how that has affected at all her ability to

16  prosecute her case, and this is the first time we're hearing,

17  quite frankly, of this; and pursuant to the confidentiality

18  order and your Honor's rules, she has an obligation to bring

19  this to our attention at a meet and confer, and this is the

20  first time we're hearing of any type of designation issue.

21       THE COURT:  OK.  So, Ms. Solomon, this is what we're

22  going to do.

23       To the extent possible, we're going to try this case

24  and handle this case as we would any other case.  So with any

25  other case what I would tell the lawyer is, to the extent that

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Case 1:18-cv-04615-ER Document 70-2 Filed 03/17/20 Page 24 of 26
Case 24-3056, 11/22/2024, DktEntry: 1.1, Page 185 of 621
Case 1:18-cv-04615-ER Document 66-32 Filed 01/27/24 Page 150 of 160

19

K1TESOLC - CORRECTED

1    MS. DRYER: Your Honor, these faculty statutes, as

2  acknowledged by Dr. Solomon, mean something. They mean

3  something to Fordham, and they mean something to Dr. Solomon.

4    THE COURT: So this is what I'm going to do.

5    First of all, with respect to Dr. Solomon's personal

6  personnel file, the representation has been made that the

7  entirety of it has been turned over. There's no reason for me

8  to question that representation.

9    If you want to make a motion to compel with specific

10  things that you believe should be in there that are not

11  there -- again, to the extent that you think the university

12  needs to put in every email from you to whomever, that may not

13  be the case.

14    So with respect to that, I'm not requiring the

15  university to do anything more. With respect to the

16  redactions, with respect to the comparators, that the

17  representation has been made that those redactions have been

18  done in accordance with these faculty statutes which exist, or

19  reasons which I suspect that you would understand and you would

20  appreciate, to the extent that you want to make a motion to

21  compel that, you may make that motion.

22    But again, I think that you're probably going up a

23  steep hill with respect to that unless there is some very, very

24  good reason why we should tell -- at least within the context

25  of this case -- why particular professors had particular things

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

K1TESOLC — CORRECTED

1       MS. DRYER: Your Honor, all of the information that
2    has been requested in the subpoenas have been produced. The
3    comparator sheets — Dr. Solomon requested the comparator files
4    be subpoenaed. That has been produced. She now contests that
5    we had not agreed to a period starting 2008. That was
6    requested by Dr. Solomon in her document demands.

7       The purpose of the subpoenas though, your Honor, is to
8    harass Fordham.

9       THE COURT: I'm sorry. If she served you with a
10   subpoena, does that permit you to turn over the files in an
11   unredacted fashion of the comparators?

12      MS. DRYER: With a lawful subpoena. It is Fordham's
13   position this is not a lawful and correct subpoena.

14      THE COURT: Why not?

15      MS. DRYER: Because we have turned over all the
16   information that's sought in the subpoena. The purpose of this
17   subpoena is to harass Fordham.

18      Dr. Solomon has, on more than one occasion, asked if
19   the comparator professors have been informed of the subpoena.
20   She is trying to cause an uproar on the Fordham campus. She
21   has — the subpoenas asked for information before the 2008
22   period. We previously agreed with counsel that the discovery
23   would start at 2008. Any information that is sought before
24   then is way outside the statute of limitations.

25      MS. SOLOMON: Two issues, your Honor.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

**Exhibit 10**



# FORDHAM UNIVERSITY
## BUDGET CHANGE REQUEST

**EMPLOYEE POSITION INFORMATION**

| | | |
|---|---|---|
| **Employee Name:** | Professor 8 | **Fordham ID No.:** |
| **Position Title:** | Professor | **Position No.:** |

**BUDGET CHANGE INFORMATION**

☐ Future Budget Change (No Redistribution Necessary)

☐ ~~Retroactive Budget Change (Redistribution Necessary)~~

| | | | |
|---|---|---|---|
| **Effective Begin Date:** | | **Effective End Date:** | |
| **Amount of Redistribution (if applies):** | | | |

**CURRENT BUDGET INFORMATION**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Budget No.1** | **FUND:** | | | | | | |
| **Budget No.2** | **FUND:** | | ORG: | ACCT: | PROG: | AMT/PCT: | |
| **Budget No.3** | **FUND:** | | ORG: | ACCT: | PROG: | AMT/PCT: | |

**NEW BUDGET INFORMATION**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Budget No.1** | **FUND:** | | | | | | |
| **Budget No.2** | **FUND:** | | | | | | |
| **Budget No.3** | **FUND:** | | ORG: | ACCT: | PROG: | AMT/PCT: | |

**ADDITIONAL INFORMATION**

Salary should be charged to   Operating in F4M

**APPROVALS**

| | | | |
|---|---|---|---|
| **Department Print:** | Benjamin Crooker | | |
| **Department Signature:** | | **Date:** | 6/19/2014 |

| | | | |
|---|---|---|---|
| **Budget ADMIN Print:** | Benjamin Crooker | | |
| **Budget ADMIN Signature:** | | **Date:** | 6/19/2014 |

| | | | |
|---|---|---|---|
| **HRIS Print:** | | | |
| **HRIS Signature:** | | **Date:** | 6/23/14 |



Professor 1

Case: 24-3056, 11/22/2024, DktEntry: 1.1, Page 190 of 621
Case 1:18-cv-04615-ER Document 70-3 Filed 03/17/20 Page 3 of 26

Case 1:18-cv-04615-ER Document 44 Filed 04/17/19 Page 12 of 14

Solomon, Esther



CONFIDENTIAL





MEMORANDUM
THE JESUIT UNIVERSITY OF NEW YORK

5

May 17, 2011

**To:**

**From:**

**Re: Stipends**

Please process the following stipends for academic year 2010-2011 for course development and planning for Integrated Core phase 3. The budget to be charged is [redacted]

| **Name** | **Amount** |
|---|---|
| [redacted] | $15,000 [redacted] |
| | $ 5,000 |
| | $5,000 |
| | $3,000 |
| | $3,000 |
| Total | $31,000 |

**For [illegible] core development and oversight.**
**The budget to be charged is** [redacted]

| | |
|---|---|
| [redacted] | $10,000 [redacted] |
| | $10,000 |
| Total | $20,000 |

Thank You

cc:

Note: Redactions in white boxes by plaintiff

CONFIDENTIAL FORDHAM0008846

**FORDHAM UNIVERSITY**
**EMPLOYEE ACTION FORM**

| NAME: Professor 12 | ID: | OFFICE USE ONLY POOR |
|---|---|---|

**PRIMARY POSITION INFORMATION**

☐ Administrator  ☐ Clerical (153)  ☐ Maintenance (805)  ☐ SEO  ☐ Casual/Temp
☑ Faculty  ☐ Adjunct  ☐ Graduate Assistant  ☐ Hourly
☐ Other (Please specify:

Time Status: ☑ Full-Time  ☐ Part-Time
Benefits Status: ☑ Benefited  ☐ Non-Benefited  ☐ Pension Only

**SALARY INFORMATION**

☐ Reappointment  ☐ Promotion  ☐ Transfer  ☐ Salary Increase
☑ Salary Adjustment  ☐ One Time Payment  ☐ Overload  ☐ Bonus  ☒ Other
Title: Professor

Start Date: 07 30 2011  End Date: 06 01 2012  Scheduled Hours:

Salary: $114,810.00  ☐ Annual  ☐ Hourly  ☐ One Time Payment  ☐ Per appointment
If grant funded:  ☐ Per appointment based on an annual of $
Budget1: FUND
Budget2: FUND
Department: Business

Time Sheet Approver:
Replacement for (if applicable):  Effective:

**Additional Comments:**
Salary compression adjustment agreed upon between the administration and Faculty Senate for FY2012.
Amount Increased: $1,386.00

**LEAVES/EXITS**

☐ Leave  ☐ Exit  ☐ Retirement  Effective Date/Semester:
Exit/Retirement:  Vacation (Available/Accrued)  Sick Time(Available/Accrued)
Leave Status: ☐ STD  ☐ LTD  ☐ FMLA  ☐ Worker's Comp  ☐ LOA  ☐ Returned to Work
Pay Status: ☐ Continue Salary from ___/___/___ to ___/___/___
☐ Discontinue Salary from ___/___/___ to ___/___/___
☐ STD Statutory  ☐ Other
Benefits: ☐ With Benefits  ☐ Without Benefits
Exit Reason/Additional Comments:

**AUTHORIZED SIGNATURES**

Department:  Date:
Dean/Director/VP:  Date:
AA Approval:  Date: 11/29/20 11
(Faculty Changes only)

**HUMAN RESOURCES OFFICE ONLY**

Human Resources:  Date:
HRIS:  Date:
Verified By:  Date:

PAID DEC 16 2011

CONFIDENTIAL

FORDHAM0009594

CONFIDENTIAL

FORDHAM0009595