# EXHIBITS

Case 24-3056, 11/22/2024, DktEntry: 1.1, Page 349 of 621
Case 1:18-cv-04615-ER Document 134-5 Filed 04/25/24 Page 2 of 132
Case 1:18-cv-04615-ER Document 134 Filed 01/22/24 Page 1 of 1

Esther Solomon
140 West 62nd Street
New York, NY 10023
212 636-6187

January 18, 2024

**MEMO ENDORSED**

Hon. Edgardo Ramos, U.S.D.J.
Thurgood Marshall United States Courthouse
40 Foley Square, Courtroom 619
New York, NY 10007

Re: Solomon v. Fordham University (Case # 18-cv-0461)

Dear Judge Ramos:

I am respectfully resubmitting my Motion to Compel Discovery, initially filed on March 17, 2020. The current submission implements the March 17, 2020 Order's (Dkt. 69) instructions in footnote 16. It granted leave to refile:

"The Court received a courtesy copy of the 'Motion to Compel Compliance with Subpoenas, Compliance with Document Requests, and Compliance with Representations to the Court' on March 17, 2020. Given the stay of discovery entered with this Order, the motion is DENIED without prejudice. She is granted leave to refile her motion should the stay on discovery be lifted." Dkt. 69, p. 31, fn. 16, March 17, 2020.

On November 29, 2023, I wrote to Defendant's counsel asking whether they would comply with the February 2019 subpoenas for my personnel file and those of comparator professors (Dkt 126 pp1-2). These subpoenas were served to the Fordham University General Counsel per Fordham Statutes, §4-07.42. There was no response to these questions.

On January 12, during our discussions while preparing the proposed Joint Discovery Schedule, I sought to address the Motion to Compel, the outstanding subpoenas, and the February 2019 Protective Order (Dkt 24). But opposing counsel reiterated a position that all necessary documents had been produced.

I respectfully request the Court to grant my "Motion to Compel Compliance with Subpoenas, Compliance with Document Requests, and Compliance with Representations to the Court."

Sincerely,

/s/ Esther Solomon
Esther Solomon
Plaintiff Pro Se

> Defendant is directed to respond to this letter by
> January 30, 2024. SO ORDERED.
>
> Edgardo Ramos, U.S.D.J.
> Dated: 1/22/24
> New York, New York

FORDHAM UNIVERSITY

# Human Resources

Career Opportunities   Benefits   Employee Perks   Professional Development   Meet Our Team   Policies Guides and Agreements

## 2-3 Employee Personnel File

The University maintains personnel records for all employees in order to have a complete and accurate record of employee's employment life cycle, benefits, payroll processing, and to comply with record keeping requirements. Personnel files and records belong to the University and will be maintained in confidence, except as access is necessary for the business needs of the University and as disclosure may be required by law.

An employee's personnel file is composed of personnel records that may be a hybrid of both paper and electronic records and is stored in the Office of Human Resources Management or digitally. A "personnel record" may include but is not limited to: Employment application; bio-demographic information, address, phone number, reference letters, offer letters and/or employment contract forms and supporting documentation related to an employee's hiring or changes in employment status and/or position duties; employee acknowledgment or consent forms related to hiring, orientation or employment; current salary and salary history; copies of required certification/licensing/educational degree; any required university or unit training certification; disciplinary action; and performance evaluation.

Employees should advise the Office of Human Resources Management of any changes in their personal information. Failure to update address, marital status, etc. can affect tax withholdings and benefit coverage. Employees should also keep their emergency contact information up to date.

Employees can contact the Office of Human Resources Management if they would like to make an appointment to review their personnel file on site. Personnel files cannot be removed from the Office of Human Resources Management.

## 2-4 Working Hours and Schedule

Fordham University's normal business hours are from 9:00 a.m. to 5:00 p.m. Monday through Friday, unless otherwise specified.

Employees will be assigned a work schedule and will be expected to begin and end work according to the schedule. To accommodate the needs of business, the University may change individual work schedules on either a short-term or long-term basis. Employees may also be required to work longer than their scheduled work hours to fulfill their responsibilities.

FORDHAM UNIVERSITY

# Human Resources

Career Opportunities   Benefits   Employee Perks   Professional Development   Meet Our Team   Policies, Guides and Agreements

**Employee Handbook**

Welcome from the University
President

Mission Statement

Fordham University's Office of
Human Resources
Management

Section 1 - Governing
Principles of Employment

**Section 2 - Operational
Policies**

Section 3 - Benefits

Section 4 - Leaves Of Absence

Section 5 - General Standards
of Conduct

Home   About   Leadership and Administration   Administrative Offices   Human Resources
Policies, Guides and Agreements   Employee Handbook   Section 2 - Operational Policies

# Section 2 - Operational Policies

2-1 Employee Classifications

2-2 Introductory Period

2-3 Employee Personnel File

2-4 Working Hours and Schedule

2-5 Temporary Schedule Change Policy

2-6 Timekeeping Procedures

2-7 Overtime

2-8 Travel Time for Non-Exempt Employees

2-9 Salary Basis Policy for Exempt Employees (Safe Harbor)

2-10 Employee Pay

2-11 Direct Deposit

2-12 Salary Advance and Payout of Paid Time Off

2-13 Performance Review

2-14 Record Retention and Disposal

2-15 Promotions and Transfers

2-16 Salary Increases

2-17 Hybrid/Remote Work Policy

2-18 Open Door Policy

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------------X

ESTHER SOLOMON,

                                         Plaintiff,

    - against -

FORDHAM UNIVERSITY,

                                        Defendant

Case No.:
1:18-cv-04615-ER

**DEFENDANT'S
RESPONSE TO
PLAINTIFF'S FIRST
SET OF DOCUMENT
REQUESTS**

--------------------------------------------------------------------X

Defendant Fordham University ("Fordham" or "Defendant") by and through its attorneys Cullen and Dykman LLP, pursuant to Rule 34 of the Federal Rules of Civil Procedure, hereby serve the following responses and objections to Plaintiff Esther Solomon's ("Plaintiff") First Set of Document Requests ("Plaintiff's Demands") dated January 7, 2019.

## OBJECTIONS

1. As discussed with Plaintiff's counsel, the following responses are based on information currently available to Defendant. The responses will be supplemented as necessary on a rolling basis until completion, which is expected to occur on or before March 4, 2019. These responses are given without prejudice to Defendant's right to produce or rely on subsequently discovered information.

2. Defendant objects to the definition of "Comparator Professors" on the grounds that the employees listed in Plaintiff's Demands: are not of comparable seniority, attended substantially different educational institutions, teach different courses, have different employment experience, provide wholly different levels of service to Defendant, have different supervisory responsibilities, and have published varying degrees of scholarly works in peer and non-peer reviewed publications. As such, the referenced employees are not "comparable" to Plaintiff.

1

3.    Unless otherwise indicated, Defendant is producing information dated on or after January 1, 2008 to the extent same is reasonably available.

4.    As discussed with Plaintiff's counsel, Defendant conditions the production of documents that contain confidential or proprietary information or trade secrets on the execution of the Stipulation and Proposed Protective Order governing the disclosure of any such information.

5.    The production of any documents or information by Defendant is made without waiver and with preservation of any privilege or protection afforded to documents containing confidential, privileged or proprietary information or trade secrets.

6.    Defendant objects to the document requests that seek information concerning the "Comparator Professors" as defined in the Plaintiff's Demands to the extent that they require Defendant to produce information which violates the privacy interests of those employees. Notwithstanding the objection, the foregoing items regarding personal financial information, personal identifying information such as addresses, social security numbers, Fordham employee identification numbers, personal family issues, health conditions, and other private information will be redacted accordingly.

7.    Defendant objects to Plaintiff's Demands to the extent they seek the production of emails and other electronically stored information that are not proportional to the needs of the case given the issues in the action, the amount in controversy, the importance of the discovery in resolving the issues and whether the burden or the expense of the proposed discovery outweighs the likely benefit.

## RESPONSE TO SPECIFIC DEMANDS

1.    **All documents during the relevant time period concerning Defendant's policies, practices and procedures pertaining to employment discrimination, faculty compensation and benefits, promotions, administrative appointments, course assignments and course cancellations.**

2

**RESPONSE TO REQUEST NO. 1**

Defendant objects to this request to the extent that the terms "practices and procedures" are not defined and are capable of numerous interpretations. Defendant interprets this request to seek written official policies of the University, if any, regarding the requested information. Subject to and without waiver of the Objections and the specific objection herein, please see documents attached hereto as Bates stamped FORDHAM0000001 through FORDHAM0000133.

Defendant reserves the right to supplement or otherwise modify Defendant's response to this request as necessary up to and through the time of trial.

**2.    All documents regarding Plaintiff and Comparator Professors' compensation for the relevant time period, including but not limited to compensation for administrative or consulting assignments, scholarly research and professional activities.**

**RESPONSE TO REQUEST NO. 2**

To the extent this request seeks documents relating to Plaintiff, Defendant objects to this request on the grounds that it seeks documents that are equally available to Plaintiff. As set forth more fully in the Objections numbered 2 and 6 above, Defendant objects to Plaintiff's arbitrary definition and designation of the "Comparator Professors" for the reasons set forth therein. Subject to and without waiver of the Objections and the specific objection herein, following a reasonable search, Defendant has identified the following responsive documents. They include, but are not limited to, salary and tax information (marked Confidential and Bates stamped FORDHAM0000202 through FORDHAM0000324), Plaintiff's relevant files maintained by Defendant's Human Resources Department (marked Confidential and Bates stamped FORDHAM0000325 through FORDHAM0000497) and other files maintained by Defendant's Human Resources Department (marked Confidential and Bates stamped FORDHAM00008540 through FORDHAM00008977). See also, Plaintiff's relevant emails marked Confidential and

3

Bates stamped FORDHAM0000498 through FORDHAM0008539, which are or may be responsive to this and other requests.

Defendant reserves the right to supplement or otherwise modify Defendant's response to this request as necessary up to and through the time of trial. Defendant will continue to perform a reasonable search for documents and will produce responsive, non-privileged documents, if any, from the relevant time period under separate cover.

**3.   All documents regarding Plaintiff and Comparator Professors' job responsibilities, course assignments, course cancellations, course releases, administrative appointments, consulting assignments, research funding and professional activities for the relevant time period.**

**RESPONSE TO REQUEST NO. 3**

See Response to Request No. 2 above and the objections set forth therein. Also, to the extent Plaintiff seeks documents pertaining to Plaintiff, Defendant objects to this request on the grounds that it seeks documents that are equally available to Plaintiff. Defendant further objects because this request substantially overlaps with Request No. 2 with respect to the documents sought. Subject to and without waiver of the Objections and the specific objection herein, Plaintiff is referred to the documents responsive to Request No. 2. See also the Bios of the Comparator Professors and Dr. Solomon Bates stamped FORDHAM0000134 through FORDHAM0000176. See also Plaintiff's relevant emails marked Confidential and Bates stamped FORDHAM0000498 through FORDHAM0008539, which are or may be responsive to this and other requests.

Defendant, however, reserves the right to supplement or otherwise modify Defendant's response as necessary up to and through the time of trial. Defendant will continue to perform a reasonable search for documents and will produce responsive, non-privileged documents, if any, from the relevant time period under separate cover.

4

4.     **All reports published by the Salary and Benefits Task Force on Indicators of Gender Salary Equity Among Faculty.**

## RESPONSE TO REQUEST NO. 4

Defendant objects to this request insofar as Plaintiff's request assumes that the requested documents are official documents created by Defendant University. They are not. Moreover, the document is attached to the Complaint as Exhibit 5 and is otherwise currently in Plaintiff's possession. Subject to and without waiver of the Objections and the specific objection herein, please see the document Bates stamped FORDHAM0000177 through FORDHAM0000185, provided herewith.

5.     **All documents regarding student evaluations of Plaintiff and Comparator Professors for courses taught at both the undergraduate and graduate level.**

## RESPONSE TO REQUEST NO. 5

To the extent this request seeks documents relating to Plaintiff, Defendant objects to this request on the grounds that it seeks documents that are equally available to Plaintiff. As set forth more fully in Objections 2 and 6 above, Defendant objects to Plaintiff's definition and designation of the "Comparator Professors" for the reasons set forth therein. Subject to and without waiver of the Objections and the specific objection herein, Defendant will produce reasonably available, relevant, non-privileged, responsive documents to the extent that any exist, that are in the possession, custody or control of Defendant which can be obtained by a reasonable search. Defendant reserves the right to supplement or otherwise modify Defendant's response as necessary up to and through the time of trial.

6.    All documents demonstrating the enrollment in any courses taught by Plaintiff and
      Comparator Professors in the relevant time period including enrollment for sections
      of these courses taught by other professors.

## RESPONSE TO REQUEST NO. 6

To the extent the request seeks documents relating to Plaintiff, Defendant objects to this

request on the grounds that it seeks documents equally available to Plaintiff. As set forth more

fully in Objections 2 and 6 above, Defendant objects to Plaintiff's definition and designation of

the "Comparator Professors" for the reasons set forth therein. Subject to those objections,

Defendant will produce reasonably available, relevant, non-privileged, responsive documents to

the extent that any exist, that are in the possession, custody or control of Defendant which can be

obtained by a reasonable search. Defendant reserves the right to supplement or otherwise modify

Defendant's response as necessary up to and through the time of trial.

7.    All documents demonstrating Core Principles of Management undergraduate
      business course assignments over the relevant time period.

## RESPONSE TO REQUEST NO. 7

Defendant objects to this request insofar as it is vague in that the phrase "undergraduate

business course assignments" is undefined. Upon clarification as to the documents being sought,

Defendant will, if appropriate and not otherwise objectionable, produce reasonably available,

relevant, non-privileged responsive documents to the extent any exist and have not previously been

produced which are in its possession, custody or control, and can be obtained by a reasonable

search.

8.    All documents regarding Dr. Rapaccioli's emails on December 18, 2017 and
      December 21, 2017 relating to adherence to the Code of Conduct and to claims that
      Dr. Solomon "engaged in a conversation that was viewed as lacking civility".

6

## RESPONSE TO REQUEST NO. 8

Defendant objects to this request on the grounds that it is vague as to the phrase "adherence to the Code of Conduct" and seeks documents that are obviously equally available to Plaintiff given her descriptions of the emails at issue and the specific date range requested. Subject to and without waiver of the Objections and the specific objection herein, see documents attached hereto marked Confidential and Bates stamped FORDHAM0000186 through FORDHAM0000201. Defendant reserves the right to supplement or otherwise modify Defendant's response as necessary up to and through the time of trial.

**9.    All minutes, transcripts or recordings of Faculty Senate, Joint Council and Departmental Meetings discussing or relating to Plaintiff over the relevant time period.**

## RESPONSE TO REQUEST NO. 9

Defendant objects to this request to the extent that it seeks information not created by Defendant such as the Faculty Senate or Joint Council Meeting Minutes. The Term "Departmental Meetings" is undefined but presumed to mean meetings of the Leading People and Organizations area of the Gabelli School of Business. Subject to those objections, Defendant, if appropriate and not otherwise objectionable, will produce reasonable available, relevant, non-privileged, responsive documents to the extent that any exist and have not been previously produce which are in its custody or control and can be obtained by a reasonable search.

**10.    All organizational charts or documents demonstrating the structure of the Gabelli School of Business academic areas and faculty.**

## RESPONSE TO REQUEST NO. 10

Defendant objects to this request on the grounds that the term "structure of the Gabelli School of Business academic areas and faculty" is not defined and subject to interpretation. Subject to and without waiver of the Objections and the specific objection herein, and if a current

7

organizational chart and list of faculty of the Gabelli School of Business exists, Defendant will produce reasonably available, relevant, non-privileged, responsive documents that are in the possession, custody or control of Defendant which can be obtained by a reasonable search.

**11.     All documents concerning formal or informal claims or complaints made by Plaintiff against Defendant regarding discrimination and/or retaliation, including any documents reflecting Defendant's investigations of the same.**

**RESPONSE TO REQUEST NO. 11**

To the extent the request seeks documents relating to Plaintiff, Defendant objects to this request on the grounds that it seeks documents that are equally available to Plaintiff. Additionally, it is unclear to whom Plaintiff may have made any alleged claims or complaints. As such Defendant objects to the request insofar as it calls for the production of documents that are in the possession or control of third parties. Subject to and without waiver of the Objections and the specific objection herein, Defendant will produce reasonably available, relevant, non-privileged, responsive documents to the extent that any exist, that are in the possession, custody or control of Defendant which can be obtained by a reasonable search.

**12.     All documents concerning formal claims or complaints made in the relevant time period against Defendant by a current or former employee of Defendant (other than Plaintiff) regarding discrimination and/or retaliation and Defendant's investigations of the same.**

**RESPONSE TO REQUEST NO. 12**

Defendant objects to the request insofar as it calls for irrelevant information and for the production of documents that are in the possession or control of third parties. Subject to and without waiver of the General Objections and the specific objection herein, Defendant will produce reasonably available, relevant, non-privileged, responsive documents to the extent that any exist, that are in the possession, custody or control of Defendant which can be obtained by a reasonable search.

8

13. **Plaintiff's personnel file and all other documents regarding Plaintiffs employment history with Defendant.**

## RESPONSE TO REQUEST NO. 13

To the extent the request seeks documents relating to Plaintiff, Defendant objects to this request on the grounds that it seeks documents that are equally available to Plaintiff. Additionally, the request is not proportional to the needs of the case in that it could be construed to call for the production of every document Plaintiff ever received and/or sent during her 25-year employment with the Defendant. The demand is also not proportional to the amount in controversy, the resources of the parties and to whether time, burden and expense of the proposed discovery outweighs its likely benefit. Subject to those objections, please see response to Request No. 2 above and specifically Plaintiff's W-2 and tax forms (Bates stamped FORDHAM0000202 through FORDHAM0000217), and her Human Resources file (Bates stamped FORDHAM0000325 through FORDHAM0000497).

14. **To the extent not otherwise produced, all documents regarding the appointment of the Management Systems Area Chair in 2013.**

## RESPONSE TO REQUEST NO. 14

Defendant objects to the request insofar as it seeks production of all documents on the grounds of overbreadth, overburden and expense. Subject to and without waiver of the General Objections, Defendant will produce reasonably available, relevant, non-privileged, responsive documents to the extent that any exist, that are in the possession, custody or control of Defendant which can be obtained by a reasonable search.

9

**15. To the extent not otherwise produced, all documents related to the cancellation of Plaintiff's Spring 2017 and Spring 2018 graduate courses.**

## RESPONSE TO REQUEST NO. 15

To the extent the request seeks documents relating to Plaintiff, Defendant objects to this request on the grounds that it seeks documents that are equally available to Plaintiff. Additionally, the request assumes that there was a cancellation of her courses in the Spring of 2017 and 2018. Subject to and without waiver of the Objections and the specific objection herein, Defendant will produce reasonably available, relevant, non-privileged, responsive documents to the extent that any exist, that are in the possession, custody or control of Defendant which can be obtained by a reasonable search.

**16. To the extent not otherwise produced, all documents regarding Plaintiffs claims and/or Defendant's defenses raised in the pleadings of this action.**

## RESPONSE TO REQUEST NO. 16

Subject to and without waiver of the Objections, Defendant will produce reasonably available, relevant, non-privileged, non-work product, responsive documents to the extent that any exist, that are in the possession, custody or control of Defendant which can be obtained by a reasonable search.

**17. All documents Defendant plans to rely on at trial.**

## RESPONSE TO REQUEST NO. 17

Subject to and without waiver of the Objections, Defendant will produce reasonably available, relevant, non-privileged, non-work product, responsive documents to the extent that any exist, that are in the possession, custody or control of Defendant which can be obtained by a reasonable search.

10

Dated: Garden City, New York
        February 13, 2019

CULLEN AND DYKMAN LLP

By:

Hayley H. Dryer (HD5682)
*Attorneys for Defendant Fordham University*
100 Quentin Roosevelt Boulevard
Garden City, New York 11530
Phone: (516) 357-3745
Email: hdryer@cullenanddykman.com

To:    Jeffrey Then, Esq.
       *Attorneys for Plaintiff Esther Solomon*
       Cravath, Swaine & Moore LLP
       Worldwide Plaza
       825 Eighth Avenue
       New York, NY 10019-7475
       Phone: (212) 474-1908
       Email: jthen@cravath.com

11

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------X

ESTHER SOLOMON,

                              Plaintiff,

- against -

FORDHAM UNIVERSITY,

                              Defendant.

-----------------------------------------------------------------------X

Case No.:
1:18-cv-04615-ER

**DEFENDANT'S**
**RESPONSE TO**
**PLAINTIFF'S SECOND**
**SET OF DOCUMENT**
**REQUESTS**

Defendant Fordham University ("Fordham" or "Defendant") by and through its attorneys

Cullen and Dykman LLP, pursuant to Rule 34 of the Federal Rules of Civil Procedure, hereby

serve the following responses and objections to Plaintiff Esther Solomon's ("Plaintiff") Second

Set of Document Requests ("Plaintiff's Demands") dated February 16, 2024.

## OBJECTIONS

1.    The following responses are based on information currently available to Defendant.

The responses will be supplemented as necessary on a rolling basis until completion. These

responses are given without prejudice to Defendant's right to produce or rely on subsequently

discovered information.

2.    Defendant objects to the definition of "Comparator Professors" on the grounds that

the employees listed in Plaintiff's Demands: are not of comparable seniority, attended substantially

different educational institutions, teach different courses, have different employment experience,

provide wholly different levels of service to Defendant, have different supervisory responsibilities,

and have published varying degrees of scholarly works in peer and non-peer reviewed

publications. As such, the referenced employees are not "comparable" to Plaintiff.

1

3.      Unless otherwise indicated, Defendant is producing information dated on or after January 1, 2008 to the extent same is reasonably available.

4.      As discussed with Plaintiff's counsel, Defendant conditions the production of documents that contain confidential or proprietary information or trade secrets on the execution of the Stipulation and Proposed Protective Order governing the disclosure of any such information.

5.      The production of any documents or information by Defendant is made without waiver and with preservation of any privilege or protection afforded to documents containing confidential, privileged or proprietary information or trade secrets.

6.      Defendant objects to the document requests that seek information concerning the "Comparator Professors" as defined in the Plaintiff's Demands to the extent that they require Defendant to produce information which violates the privacy interests of those employees. Notwithstanding the objection, the foregoing items regarding personal financial information, personal identifying information such as addresses, social security numbers, Fordham employee identification numbers, personal family issues, health conditions, and other private information will be redacted accordingly.

7.      Defendant objects to Plaintiff's Demands to the extent they seek the production of emails and other electronically stored information that are not proportional to the needs of the case given the issues in the action, the amount in controversy, the importance of the discovery in resolving the issues and whether the burden or the expense of the proposed discovery outweighs the likely benefit.

8.      Defendant objects to Plaintiff's Demands to the extent they seek the production of documents protected from disclosure under the attorney-client privilege and/or work product doctrine.

2

9. Defendant objects to Plaintiff's Demands to the extent they seek the production of documents and information that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

10. Defendant objects to Plaintiff's Demands to the extent they are overbroad, unduly burdensome and oppressive.

11. Defendant objects to Plaintiff's Demands to the extent that terms or phrases contained therein are vague, ambiguous or undefined.

12. Defendant objects to Plaintiff's Demands to the extent they are not properly limited in time/or scope and refer to a time period outside of or unrelated to the allegations contained in the pleadings.

## RESPONSE TO SPECIFIC DEMANDS

### 1. Litigation Hold Notices
**Provide all documents relating to data preservation, including copies of the Litigation-Hold Notices that Fordham sent. Indicate to whom they were sent, and the responses notice recipients returned to the university.**

#### RESPONSE TO REQUEST NO. 1

Defendant objects to this request to as it seeks documents and information protected from disclosure under the attorney-client privilege and/or work product doctrine.

### 2. Search Protocols
**Provide search protocols used to search the Fordham employees' Fordham.edu and personal email accounts regarding this litigation and provide responsive documents. These include Vice Provost Crystal, Dean Rapaccioli, President Father McShane, Provost Freedman Dr. Hollwitz, Dr. Sen, Dr. Wharton, Dr. Pirson, Dr. Chatterjee, Human Resources, Ms. Crosson, Ms. Coleman, Ms. Fagin, other faculty, administrators, and Board of Trustee members, and Business School faculty regarding the issues in this litigation.**

#### RESPONSE TO REQUEST NO. 2

Defendant objects to this request to as it seeks documents and information protected from disclosure under the attorney-client privilege and/or work product doctrine. Defendant further

3

objects to this request as it seeks information outside the scope permitted by Rule 34 of the Federal

Rules of Civil Procedure.

**3. Salary and Equity**
**All documents and data: a) provided to the Salary and Benefits Task Force on Indicators of Gender Salary Equity Among Faculty in connection with the 2008 Report of the Salary and Benefits Task Force on Indicators of Gender Salary Equity Among Faculty**
**b) provide equivalent data for faculty from 2008 to present, along with disaggregation by age, gender, religion**
**c) from any investigations, policies, recommendations, or change in practices resulting from those Task Force findings, including the "Compression" scheme to raise certain salaries.**

## RESPONSE TO REQUEST NO. 3(a)

Defendant objects to this request insofar as Plaintiff's request assumes that the requested

documents are official documents created by Defendant University. Defendant further refers

Plaintiff to the report from the Faculty Task Force previously produced in this action (Bates

number FORDHAM0000177-FORDHAM0000185). Subject to and without waiver of the

Objections and the specific objection herein, Defendant will produce reasonably available,

relevant, non-privileged, responsive documents to the extent that any exist, that are in the

possession, custody or control of Defendant which can be obtained by a reasonable search to the

extent not already provided. Defendant reserves the right to supplement or otherwise modify

Defendant's response as necessary up to and through the time of trial.

## RESPONSE TO REQUEST NO. 3(b)

Defendant objects to this request to the extent it is overbroad, unduly burdensome and

oppressive as Plaintiff requests data for "all" Fordham "faculty from 2008 to present." Defendant

further objects to this request to the extent Plaintiff asks Defendant to create or generate documents

that are not already in Defendant's custody or control.

4

置

## RESPONSE TO REQUEST NO. 3(c)

Defendant objects to this request as the term "Task Force findings" is not properly defined.

Subject to and without waiver of the Objections and the specific objection herein, Defendant will

produce reasonably available, relevant, non-privileged, responsive documents to the extent that

any exist, that are in the possession, custody or control of Defendant which can be obtained by a

reasonable search to the extent not already provided. Defendant reserves the right to supplement

or otherwise modify Defendant's response as necessary up to and through the time of trial.

4.     **Financial**

**All Documents Related to Faculty Salaries: Provide all documents, including electronic records, that reflect salary information for faculty members from 2000, broken down by gender, religion, age, department, tenure status, and rank. This includes base salaries, bonuses, overtime pay, and other forms of compensation, including those for special programs, administrative assignments, etc.**

**Statistical Analyses of Wage Disparities: Provide any statistical analyses conducted by or for Fordham that relate to wage disparities among faculty members, including but not limited to analyses by gender, religion, and age.**

**Methodologies for Setting Salaries and Increases: Provide all documents describing the methodologies, criteria, or policies used for determining initial faculty salaries, salary increases, merit pay, bonuses, and other forms of compensation.**

**Communications Regarding Wage-Setting Policies: Provide any communications, including emails and memos, regarding the policies or criteria for setting salaries, bonuses, or raises for faculty members. This includes discussions on adjustments, salary reviews, or changes to salary structures.**

**Job Classifications and Evaluations: Provide documents that outline job classifications, responsibilities, performance evaluation criteria, and the process for evaluating faculty members.**

**Documentation of Efforts to Correct Wage Disparities: Provide all documents showing efforts by Fordham to correct or address wage disparities among faculty members. This includes studies, reports, action plans, and outcomes of such efforts.**

## RESPONSE TO REQUEST NO. 4

Defendant objects to this request to the extent it is overbroad, unduly burdensome and

oppressive as it seeks "all documents . . . that reflect salary information for faculty members."

Defendant further objects to this request as it is not properly limited in time/or scope as it seeks

documents "from 2000." Defendant further objects to this request to the extent Plaintiff asks

5

Defendant to create or generate documents that are not already in Defendant's custody or control. Defendant further refers Plaintiff to the policies previously produced in this action for information regarding how faculty salaries are set. (Bates number FORDHAM0000001-FORDHAM0000133). Defendant further refers Plaintiff to the W2 files previously produced in this action which include salary information for Plaintiff and those professors who Plaintiff alleged were comparator professors as defined in Plaintiff's First Set of Requests to Defendant for the Production of Documents (Bates number FORDHAM0000202-FORDHAM0000324, FORDHAM0013624-FORDHAM0013656). To the extent that Plaintiff expanded the scope of alleged "Comparator Professors" in Plaintiff's Second Request for Documents, Defendant objects. Subject to those objections, Defendant will produce reasonably available, relevant, non-privileged, responsive documents to the extent that any exist, that are in the possession, custody or control of Defendant which can be obtained by a reasonable search to the extent not already provided. Defendant reserves the right to supplement or otherwise modify Defendant's response as necessary up to and through the time of trial.

5.  **Protected Class Professor Pattern and Practice**
    **Provide communications, documents, and personnel records for professors in protected classes who allegedly suffered discriminatory practices using methods similar to those used against Plaintiff. These include Profs. Wright, Zelany, Hessel, Gorgantzis, Marks, Yoon, Orsini, Dubrow, Welch, Weiss, and Gautschi.**
    **This should include their hiring documents, performance evaluations, disciplinary records, complaints of discrimination by the professors, communications related to employment status changes, and any retirement or termination paperwork.**

## RESPONSE TO REQUEST NO. 5

Defendant further objects to this request to the extent it seeks documents and information neither relevant nor reasonably calculated to lead to the discovery of admissible evidence insofar as it requests "hiring documents, performance evaluations, disciplinary records, complaints of

6

discrimination, communications related to employment status changes, and any retirement or termination paperwork" of eight professors unrelated to the claims at issue in this lawsuit who "allegedly" suffered "discriminatory practices." Defendant further objects to this request as it is not properly limited in time/or scope as not time period is provided.

6.    **Faculty Senate 2016**

    **All documents and communications between and amongst a) members of the Administration, including but not limited to President Father McShane, Provost Freedman Dean Rapaccioli, VP Crystal/ b) members of the faculty, including but not limited to Profs. Solomon, Klotz, Wharton, Chatterjee, Sen, Saharia, Cole, Hollwitz, Wright, c) Fordham attorney Ms. Crosson, and other individuals identified regarding the actions and false charges against the two female business school senators, Profs. Klotz and Solomon in 2016, including the Faculty Senate Ant i-Retaliation Resolution to protect the female senators.**

    **Provide communications and documents between Mr. Ed Stroz, member of Fordham Board of Trustees, Fordham President Father McShane, Provost Freedman, other administrators and Board of Trustee members, and Business School faculty regarding the planning, agenda, and postponement of the March 2, 2016 Joint Council of the Gabelli School of Business. Include communications after that March 2 Meeting regarding the postponement and resolutions exchanged.**

**RESPONSE TO REQUEST NO. 6**

    Defendant objects to this request to the extent it seeks documents outside Defendant's custody or control, including but not limited to, the personal communications of non-parties. Defendant objects to this request on the grounds that it seeks documents that are equally available to Plaintiff including, but not limited to, the documents attached as Exhibits 11, 12, 14 and 20 to the Third Amended Complaint. Defendant further objects to this request to the extent it seeks documents and information neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to those objections, Defendant will produce reasonably available, relevant, non-privileged, responsive documents to the extent that any exist, that are in the possession, custody or control of Defendant which can be obtained by a reasonable search to the

7

extent not already provided. Defendant reserves the right to supplement or otherwise modify

Defendant's response as necessary up to and through the time of trial.

**7.     COBRA as Customary**
**In her June 19, 2019 email to Dr. Solomon, with copies to Dean Boron, Provost Crystal, Dean Crooker, Ms. Elaine Crosson, Esq., James Ryan, Esq, and the Fordham President, Dean Rapaccioli, stated:**

**"It is customary that faculty on unpaid leave continue on the University health insurance plan through participation in COBRA..." (Dkt. 95-2, Exhibit 31, pp. 69-70)**

**Produce records of all Business school tenured faculty on unpaid or other leave removed from Fordham Health Care and sent to COBRA for health care coverage since 2000. Produce corresponding correspondence with Discovery Benefits, the IRS, and other entities regarding the "customary" use of COBRA for tenured professors on leave. Produce Fordham policies and procedures on the use of COBRA for tenured Fordham Business School professors on leave.**

## RESPONSE TO REQUEST NO. 7

Defendant objects to this request as it is not properly limited in time/scope and it seeks

privileged and confidential employment and health care records of "all" business school tenured

faculty members in the form of correspondence reflecting "unpaid or other leave removed from

Fordham Health Care and sent to COBRA . . . since 2000." Subject to those objections, Defendant

will produce reasonably available, relevant, non-privileged, responsive documents to the extent

that any exist, that are in the possession, custody or control of Defendant which can be obtained

by a reasonable search to the extent not already provided. Defendant reserves the right to

supplement or otherwise modify Defendant's response as necessary up to and through the time of

trial.

**8.     Investigations**
**Provide documents and communications within Fordham concerning any investigation(s) of the Complaint of Prof. Solomon and the factual allegations or claims at issue in this lawsuit. All documents and communications between and amongst members of the Administration, including but not limited to President Father McShane, Provost Freedman, Dean Rapaccioli, VP Crystal, Dr. Hollwitz, Gabelli Business School faculty members, Fordham undergraduate administrators and faculty, and others so identified in:**

8

a. Appointment as Management Area Chair for 2013-16 and improper removal in violation of the Fordham Statutes to replace with Dr. Hollwitz and refusal to honor her contract for compensation

b. internal reviews or investigations into the Plaintiff's allegations of discrimination, including Dr. Solomon's email to VP Crystal, Provost Freedman, and Dean Rapaccioli in October 2017

c. the Code of Conduct charges brought against Dr. Solomon by Dean Rapaccioli and abetted by Provost Crystal with Drs. Hollwitz and Pirson

d. the investigations into the Senate incidents in 2016 and the false charges by Drs. Wharton and Chatterjee

e. the student's allegations of sexual harassment by other students against Dr. Solomon and another black female professor in 2018.

f. Communications and documents involving Prof. Thomas Wright's email to Provost Freedman

g. Investigations by the EEOC Title IX Department and Ms. Coleman following Dr. Solomon's Complaint in December 2017 and after Ms. Coleman was directly informed about the false Code of Conduct charges of December 2017

h. Any other investigations carried out concerning the claims in this litigation

## RESPONSE TO REQUEST NO. 8

Defendant objects to this request as it assumes certain "investigations," that Plaintiff was

subject to an "improper removal," certain "Code of Conduct charges" and certain "false charges."

Subject to and without waiver of the Objections and the specific objection herein, Defendant is

endeavoring to locate documents responsive to this request, if any, and will produce reasonably

available, relevant, non-privileged, responsive documents to the extent that any exist, that are in

the possession, custody or control of Defendant which can be obtained by a reasonable search to

the extent not already provided. Defendant reserves the right to supplement or otherwise modify

Defendant's response as necessary up to and through the time of trial.

9. **Requests for Investigation and Due Process**
   **Indicate all actions taken to investigate the complaints of discrimination and ongoing retaliation Plaintiff raised to senior administrators, with the Fordham President and Board of Trustees. They include requests for Formal Hearings and due process required by the University Statutes. For each request below, indicate what processes and rules were followed and what actions and corrective measures were taken to respond adequately.**

Provide all documents, communications, and emails from Fordham President Fr. McShane, VP Crystal, and others in denying Dr. Solomon any hearings in her multiple requests for due process, including removing her healthcare and all her tenured faculty benefits upon report of termination. See her letters to the University President below.

## RESPONSE TO REQUEST NO. 9

Defendant objects to this request as it assumes certain "investigations," that Plaintiff was subject to an "removal of healthcare benefits" and "tenure." Defendant also objects to this request as it seeks information outside the scope permitted by Rule 34 of the Federal Rules of Civil Procedure. Defendant objects to this request on the grounds that it seeks documents that are equally available to Plaintiff including, but not limited to, the documents attached as Exhibits 22 and 32 to the Third Amended Complaint. Subject to and without waiver of the Objections and the specific objection herein, Defendant is endeavoring to locate documents responsive to this request, if any, and will produce reasonably available, relevant, non-privileged, responsive documents to the extent that any exist, that are in the possession, custody or control of Defendant which can be obtained by a reasonable search to the extent not already provided. Defendant reserves the right to supplement or otherwise modify Defendant's response as necessary up to and through the time of trial.

**10.   Plaintiff's Tenure Status**

Provide all documents and communications identifying any and all changes in Plaintiff's employment status as a tenured professor at Fordham. For each item below, please indicate all reports, the sources, outputs generated, entries into Plaintiff's personnel and other relevant records, relevant policies or procedures, investigations or reviews, and indicate consequences on Prof. Solomon's current status.

All documents relating to or reflecting the involvement of any individuals in authorizing, preparing, or submitting official reports to federal authorities concerning the Plaintiff's employment status.

All annual reports submitted to federal authorities that pertain to the Plaintiff's status, including but not limited to the "Employer provided health insurance offer and coverage Form 1095-C Report," along with a detailed explanation of the meaning of each filing and the type of coverage offered to the Plaintiff.

Examples include:

10

a) Fordham's Agent - Discovery Benefits,;

b) Defendant's Reply Memo in Further Support of Its Motion to Dismiss the Third Amended Complaint (Dkt. 116);

c) Declaration of James Ryan, Esq. (Dkt. 117);

d) Fordham Appellee Brief to the Second Circuit Court of Appeals (Dkt. 72);

e) Fordham submission to the IRS 2023 to generate IRS Form 1095-C for Prof. Solomon;

f) Fordham statutes §4-03.01 – Responsibilities.

## RESPONSE TO REQUEST NO. 10(a)

Defendant objects to this request to the extent the request is vague and ambiguous. Defendant further objects to this request to the extent the term "Fordham's Agent – Discovery Benefits" is not defined. Defendant further objects to this request to the extent it is not limited in time/or scope and refers to a time period outside of or unrelated to the allegations contained in the Third Amended Complaint.

## RESPONSE TO REQUEST NO. 10(b)

Defendant objects to this request to as it seeks documents and information protected from disclosure under the attorney-client privilege and/or work product doctrine. Defendant further objects to this request to the extent it seeks production of documents and information that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

## RESPONSE TO REQUEST NO. 10(c)

Defendant objects to this request to as it seeks documents and information protected from disclosure under the attorney-client privilege and/or work product doctrine. Defendant further objects to this request to the extent it seeks production of documents and information that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

## RESPONSE TO REQUEST NO. 10(d)

Defendant objects to this request to as it seeks documents and information protected from disclosure under the attorney-client privilege and/or work product doctrine. Defendant further

11

objects to this request to the extent it seeks production of documents and information that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

## RESPONSE TO REQUEST NO. 10(e)

Defendant objects to this request to the extent the request is vague and ambiguous. Defendant further objects to this request to the extent it is not limited in time/or scope and refers to a time period outside of or unrelated to the allegations contained in the Third Amended Complaint. Subject to and without waiver of the Objections and the specific objection herein, Defendant is endeavoring to located documents responsive to this request, if any, and Defendant will produce reasonably available, relevant, non-privileged, responsive documents to the extent that any exist, that are in the possession, custody or control of Defendant which can be obtained by a reasonable search to the extent not already provided. Defendant reserves the right to supplement or otherwise modify Defendant's response as necessary up to and through the time of trial.

## RESPONSE TO REQUEST NO. 10(f)

Defendant objects to this request to the extent the request is vague and ambiguous. Defendant further objects to this request to the extent it is not limited in time/or scope and refers to a time period outside of or unrelated to the allegations contained in the Third Amended Complaint. Defendant refers Plaintiff to the language contained in Fordham statutes §4-03.01 for its content and meaning.

**11. Provide all documents and communications concerning Fordham's defenses.**

## RESPONSE TO REQUEST NO. 11

Subject to and without waiver of the Objections, Defendant will produce reasonably available, relevant, non-privileged, non-work product, responsive documents to the extent that any

12

exist, that are in the possession, custody or control of Defendant which can be obtained by a

reasonable search to the extent not already provided.

**12.    Provide all Comparators' federal and state income tax returns for the tax years 2013 through and including the present, including all supporting documentation and schedules. Include all documents sufficient to show any income or other compensation received by or owed to all comparators, including but not limited to paychecks, paystubs, invoices, settlement payments, statements of work, Form W-2s, Form 1099s, social security benefits, social security disability benefits, unemployment insurance benefits, workers' compensation benefits, and long-term or short-term disability benefits from 2013 through and including the present.**

## RESPONSE TO REQUEST NO. 12

Defendant objects to this request as Defendant objects to Plaintiff's definition of the term

"Comparators." Defendant further objects to this request to the extent it seeks documents to the

extent Plaintiff seeks documents outside Defendant's custody or control, including but not limited

to "Comparators' federal and state income tax returns." Defendant further objects to this request

to the extent it seeks the production of documents and information that are neither relevant nor

reasonably calculated to lead to the discovery of admissible evidence. Defendant further refers

Plaintiff to the W2 files previously produced in this action which include salary information for

Plaintiff and those professors who Plaintiff alleged were comparator professors as defined in

Plaintiff's First Set of Requests to Defendant for the Production of Documents (Bates number

FORDHAM0000202-FORDHAM0000324, FORDHAM0013624-FORDHAM0013656).

**13.    Provide all documents and communications concerning any alleged injuries, including physical, mental, and emotional injuries, all comparators allegedly sustained as a result of Defendant's allegedly discriminatory conduct, from 2013 through and including the present, including but not limited to all medical records and psychotherapy notes.**

13

## RESPONSE TO REQUEST NO. 13

Defendant objects to this request to the extent it seeks production of documents and information that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

**14.    Provide all claims, complaints, charges, affidavits, settlement agreements, or other documents settling any other claims signed between Fordham and departing Professors, including but not limited to Professors Thomas Wright, Milan Zeleny, Joyce Orsini, Nikko Georgantzas, Rachael Welch, David Gautschi.**

## RESPONSE TO REQUEST NO. 14

Defendant objects to this request to as it seeks documents and information protected from disclosure under the attorney-client privilege and/or work product doctrine. Defendant further objects to this request to the extent it is not limited in time/or scope and refers to a time period outside of or unrelated to the allegations contained in the Third Amended Complaint. Defendant further objects to this request to the extent it seeks production of documents and information that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

**15.    Provide all audio and visual recordings in Fordham's possession concerning Plaintiff's employment with Defendant.**

## RESPONSE TO REQUEST NO. 15

Defendant objects to this request to the extent it is not limited in time/or scope and refers to a time period outside of or unrelated to the allegations contained in the Third Amended Complaint. Subject to and without waiver of the Objections and the specific objection herein, Defendant will produce reasonably available, relevant, non-privileged, responsive documents to the extent that any exist, that are in the possession, custody or control of Defendant which can be obtained by a reasonable search. Defendant reserves the right to supplement or otherwise modify Defendant's response as necessary up to and through the time of trial.

16. **Provide all copies of all instant messaging or text messaging logs or transcripts by Dean Rapaccioli, VP Crystal, Drs Hollwitz, Wharton, Sen, Pirson, Saharia, Chatterjee associated with any of their cellular or telephonic devices concerning Plaintiff's litigation and any of her claims in her Third Amended Complaint and the Fordham defenses.**

## RESPONSE TO REQUEST NO. 16

Defendant objects to this request to the extent it seeks documents outside Defendant's custody or control, including but not limited to, the personal instant messages or text messages contained on the cellular or telephonic devices of non-parties. Subject to and without waiver of the Objections and the specific objection herein, Defendant will produce reasonably available, relevant, non-privileged, responsive documents to the extent that any exist, that are in the possession, custody or control of Defendant which can be obtained by a reasonable search to the extent not already provided. Defendant reserves the right to supplement or otherwise modify Defendant's response as necessary up to and through the time of trial.

17. **Provide all emails, produced in their native format, contained in any of the comparators' email accounts, and those of Dean Rapaccioli and P Crystal, including but not limited to their private email accounts and their @fordham.edu account(s), concerning any of Fordham's defenses or Plaintiff's claims in her Third Amended Complaint.**

## RESPONSE TO REQUEST NO. 17

Defendant objects to this request as Defendant objects to Plaintiff's definition of the term "Comparators." Defendant further objects to this request to the extent it is overbroad, unduly burdensome and oppressive as it seeks "all emails." Defendant objects to this request to the extent it seeks documents outside Defendant's custody or control, including but not limited to, the personal email addresses of non-parties. Defendant further objects to this request to the extent the term "P Crystal" is not sufficiently defined. Defendant further objects to the request to the extent it seeks documents and communications already produced by Defendant. Subject to and without

15

waiver of the Objections, Defendant will produce reasonably available, relevant, non-privileged, non-work product, responsive documents to the extent that any exist, that are in the possession, custody or control of Defendant which can be obtained by a reasonable search to the extent not already provided. Defendant reserves the right to supplement or otherwise modify Defendant's response as necessary up to and through the time of trial.

**18.    Provide all documents not already produced in response to the above requests that relate to, bear upon or provide evidence concerning the matters and defenses to the Third Amended Complaint.**

## RESPONSE TO REQUEST NO. 18

Subject to and without waiver of the Objections, Defendant will produce reasonably available, relevant, non-privileged, non-work product, responsive documents to the extent that any exist, that are in the possession, custody or control of Defendant which can be obtained by a reasonable search to the extent not already provided. Defendant reserves the right to supplement or otherwise modify Defendant's response as necessary up to and through the time of trial.

**19.    Provide all documents the Defendant intends to introduce into evidence during the depositions or the trial of this action.**

## RESPONSE TO REQUEST NO. 19

Subject to and without waiver of the Objections, Defendant will produce reasonably available, relevant, non-privileged, non-work product, responsive documents to the extent that any exist, that are in the possession, custody or control of Defendant which can be obtained by a reasonable search to the extent not already provided. Defendant reserves the right to supplement or otherwise modify Defendant's response as necessary up to and through the time of trial.

**20.    Provide all documents and communications concerning each expert Defendant intends to call as a witness at trial, including but not limited to all documents and communications sent to or received from each expert, resumes, curriculum vitae, and reports.**

16

**RESPONSE TO REQUEST NO. 20**

Defendant objects to this request to as it seeks documents and information protected from disclosure under the attorney-client privilege and/or work product doctrine. Defendant further objects to this request as premature. Defendant, however, reserves the right to supplement or otherwise modify Defendant's response as necessary up to and through the time of trial.

**21.     Provide all documents that contain or otherwise relate to facts that Defendant contends refute, in any way, any of Plaintiff's claims.**

**RESPONSE TO REQUEST NO. 21**

Subject to and without waiver of the Objections, Defendant will produce reasonably available, relevant, non-privileged, non-work product, responsive documents to the extent that any exist, that are in the possession, custody or control of Defendant which can be obtained by a reasonable search to the extent not already provided. Defendant reserves the right to supplement or otherwise modify Defendant's response as necessary up to and through the time of trial.

Dated: Uniondale, New York
       March 18, 2024

CULLEN AND DYKMAN LLP

By: /s/ Ryan Soebke
    Ryan Soebke
    Jennifer A. McLaughlin
    *Attorneys for Defendant Fordham*
    *University*
    333 Earle Ovington Blvd., 2nd Floor
    Uniondale, New York 11553
    Phone: (516) 357-3700
    Email: rsoebke@cullenllp.com

17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X

ESTHER SOLOMON,

                                Plaintiff,

            - against -

FORDHAM UNIVERSITY,

                             Defendant.
---------------------------------------------------------------------X

Case No.:
1:18-cv-04615-ER

**DEFENDANT'S
RESPONSE TO
PLAINTIFF'S FIRST SET
OF INTERROGATORIES**

Defendant Fordham University ("Defendant" or "Fordham"), by and through its counsel,

Cullen and Dykman, LLP, responds to the First Set of Interrogatories propounded by Plaintiff

Esther Solomon ("Plaintiff") as follows:

## OBJECTIONS

1.        Defendant objects to Plaintiff's Definitions, Instructions and Interrogatories

because and to the extent that they seek discovery protected from disclosure under the attorney-

client privilege and/or work-product doctrine.

2.        Defendant objects to Plaintiff's Definitions, Instructions and Interrogatories to

the extent they seek information that is not proportional to the needs of the case given the issues

in the action, the amount in controversy, the importance of the discovery in resolving the issues

and whether the burden or the expense of the proposed discovery outweighs the likely benefit.

3.        Defendant objects to Plaintiff's Definitions, Instructions and Interrogatories to

the extent that they are violative of Rule 33.3 of the Local Rules of the United States District

Courts for the Southern and Eastern District (the "Local Rules").

4.        These Objections are continuing and are incorporated by reference in each and

every response set forth below.

5.        By providing the information below, Defendant does not in any way waive or

1

intend to waive, but rather intends to preserve and is preserving all objections to competency, relevance, materiality and admissibility of the responses; all objections as to vagueness, ambiguity, or undue burden; all rights to object on any ground to the use of any of said responses, in any subsequent proceedings, including the trial of this or any other actions; and all rights to object on any ground to any request for further responses to these or any other discovery requests.

6.      Defendant's responses are based upon information and documents presently known to Defendant and Defendant reserves the right to present additional information at trial.

## INTERROGATORIES

### INTERROGATORY NO. 1

In regards to each Faculty member who has been promoted to Professor in the Gabelli School of Business since Plaintiff joined Fordham to the Present, provide the following information:

a.  the employee's name, age, gender, and religion;

b.  the date of hire;

c.  the criteria and/or qualifications used in the decision to promote the employee with specific references to the faculty vitae and promotion application materials; and

d.  the individual's salary in the year prior to and after promotion.

**RESPONSE**: Defendant objects to this Interrogatory on the grounds that it is beyond the scope of permissible inquiry set forth in Local Rule 33.3 and Plaintiff's service of this Interrogatory at this point in discovery violates Local Rule 33.3(a). Defendant further objects to this Interrogatory on the grounds that the terms "Professor" and "promoted" are undefined, overbroad and ambiguous in the context of this Interrogatory and are subject to multiple interpretations. Defendant further objects to this Interrogatory on the grounds that Plaintiff does not define when she "joined Fordham" and to the extent it is unlimited in time and is otherwise not limited to a time frame

2

relevant to this litigation. Defendant reserves the right to lodge any and all objections should Plaintiff re-serve this Interrogatory at a later point in discovery.

## INTERROGATORY NO. 2

Describe the compensation schedule in use by the Gabelli School of Business for all possible additional administrative or teaching responsibilities, appointments, assignments or functions beyond a Faculty member or Instructor's required teaching responsibilities that carry additional compensation, including but not limited to chairmanships, directorships, advising or consulting projects, directing Ph.D. programs, Executive MBA courses, MS courses, MBA launch courses, immersion courses, capstone courses, weekend courses, special projects, student trips as courses, or any other responsibilities, appointments, assignments or functions that add to the total compensation beyond base salary, providing:

    a. the date when the compensation schedule became effective;

    b. a list of all possible additional administrative or teaching responsibilities, appointments, assignments or functions beyond a Faculty member or Instructor's required teaching responsibilities;

    c. The compensation level for each type of administrative or teaching additional appointment/assignment; and

    d. the process used for assigning these additionally compensated tasks.

**RESPONSE**: Defendant objects to this Interrogatory on the grounds that it is beyond the scope of permissible inquiry set forth in Local Rule 33.3 and Plaintiff's service of this Interrogatory at this point in discovery violates Local Rule 33.3(a). Defendant further objects to this Interrogatory on the grounds that "compensation schedule" is undefined in the context of this Interrogatory and is subject to multiple interpretations. Defendant further objects to this Interrogatory on the grounds that "all possible additional administrative or teaching responsibilities, appointments,

3

assignments" is overbroad and ambiguous. Defendant further objects to this Interrogatory on the grounds that the phrase "required teaching responsibilities" is undefined and also subject to multiple interpretations. Defendant further objects to this Interrogatory to the extent it is unlimited in time and is otherwise not limited to a time frame relevant to this litigation. Defendant reserves the right to lodge any and all objections should Plaintiff re-serve this Interrogatory at a later point in discovery.

## INTERROGATORY NO. 3

Identify for each Faculty member or Instructor who received any compensation pursuant to any of the additional responsibilities, appointments, assignments or functions identified in response to Interrogatory No. 2:

a. the compensation received for any additional responsibility by each Faculty member or Instructor in the Management Systems Area during the tenure of Dr. Solomon's employment; and

b. the date of each additional assignment for each Faculty Member or Instructor.

**RESPONSE**: *See Response to Interrogatory No. 2.*

## INTERROGATORY NO. 4

For any complaint, formal or informal, made by Plaintiff to Defendant (regarding, for example, the 2003 promotion and hearing denial, the 2013 Management Systems Area Chair appointment, the 2016 Senate curriculum issues complaints raised by Plaintiff or Dr. Dorothy Klotz, the 2017 code of conduct allegations against Plaintiff and the 2017 through 2018 claims of retaliatory and discriminatory class schedule and cancellations):

a. state the date when Defendant learned that Plaintiff made a complaint;

b. state the manner in which Defendant learned of the complaint;

4

c. describe the steps taken (if any) by Defendant to investigate the complaint, as well as the remedial action taken (if any);

d. identify the individuals involved in any investigation;

e. identify the location of any records maintained and the custodians who maintain those records; and

f. state the results and present status of any investigations performed with respect to the complaint.

**RESPONSE**: Defendant objects to this Interrogatory on the grounds that it is beyond the scope of permissible inquiry set forth in Local Rule 33.3 and Plaintiff's service of this Interrogatory at this point in discovery violates Local Rule 33.3(a). Defendant further objects to this Interrogatory as it lacks specificity concerning the query of "any complaint" in violation of the Federal Rules. Defendant further objects to this Interrogatory as the "examples" set forth in the Interrogatory are not defined and are vague. Defendant further objects to this Interrogatory to the extent it is unlimited in scope, time and is otherwise not limited to a time frame relevant to this litigation. Defendant further objects to this Interrogatory as it could call for the production of potentially privileged documents. Defendant reserves the right to lodge any and all objections should Plaintiff re-serve this Interrogatory at a later point in discovery.

**INTERROGATORY NO. 5**

Identify and describe in detail any charge, lawsuit or complaint, formal or informal, that has been filed or raised against Defendant during the tenure of Dr. Solomon's employment, by any Faculty member or Instructor for discrimination on the basis of sex, religion, age or hostile work environment.

**RESPONSE**: Defendant objects to this Interrogatory on the grounds that it is beyond the scope of permissible inquiry set forth in Local Rule 33.3 and Plaintiff's service of this Interrogatory at this

point in discovery violates Local Rule 33.3(a). Defendant further objects to this Interrogatory on the grounds that "charge" and "complaint" are undefined in the context of this Interrogatory and are capable of numerous interpretations. Defendant further objects to this Interrogatory as it lacks specificity concerning the time period for "any charge, lawsuit or complaint, formal or informal, that has been filed or raised against Defendant" and is otherwise not limited to a time frame relevant to this litigation. Defendant further objects to this Interrogatory as it is unlimited in scope and not limited, for example, to the Gabelli School of Business. Defendant further objects to this Interrogatory as it could call for the production of potentially privileged documents. Defendant reserves the right to lodge any and all objections should Plaintiff re-serve this Interrogatory at a later point in discovery.

## INTERROGATORY NO. 6

Identify and provide any documents compiled by Defendant provided to the AAUP or AACSB or any other agency or body which contain statistics, charts or reports relative to the age, gender or religion of Faculty members and Instructors during the tenure of Dr. Solomon's employment regarding the Gabelli Business School.

**RESPONSE**: Defendant objects to this Interrogatory on the grounds that it is beyond the scope of permissible inquiry set forth in Local Rule 33.3 and Plaintiff's service of this Interrogatory at this point in discovery violates Local Rule 33.3(a). Defendant further objects to this Interrogatory as the terms "AAUP" and "AACSB" are undefined. Defendant further objects to this Interrogatory on the grounds that "compiled" is undefined, vague and ambiguous in the context of this Interrogatory and "statistics, charts or reports" is overbroad. Defendant further objects to this Interrogatory to the extent it is unlimited in time and is otherwise not limited to a time frame relevant to this litigation. Defendant reserves the right to lodge any and all objections should Plaintiff re-serve this Interrogatory at a later point in discovery.

## INTERROGATORY NO. 7

Identify every graduate course in the Management Systems Area that has been canceled during the tenure of Dr. Solomon's employment, the Faculty member or Instructor assigned to teach the course and how the Faculty member or Instructor fulfilled his or her required teaching load.

**RESPONSE**: Defendant objects to this Interrogatory on the grounds that it is beyond the scope of permissible inquiry set forth in Local Rule 33.3 and Plaintiff's service of this Interrogatory at this point in discovery violates Local Rule 33.3(a). Defendant further objects to this Interrogatory to the extent it is unlimited in time and is otherwise not limited to a time frame relevant to this litigation. Defendant further objects to this Interrogatory to the extent it is overbroad and unduly burdensome. Defendant reserves the right to lodge any and all objections should Plaintiff re-serve this Interrogatory at a later point in discovery.

## INTERROGATORY NO. 8

Identify each person who assisted in the preparation of the answers to these Interrogatories and for each, identify which Interrogatory number(s) that person provided assistance in relation to.

**RESPONSE**: Hayley B. Dryer, Esq., assisted with the preparation of each Interrogatory.

Dated: Garden City, New York
August 1, 2019

CULLEN AND DYKMAN LLP

By: _____
Hayley B. Dryer (HD-5682)
Attorneys for Defendant
100 Quentin Roosevelt Boulevard
Garden City, New York 11530
Phone: (516) 357-3745
Fax: (516) 357-3792
Email: hdryer@cullenanddykman.com

7

TO:     Esther Solomon
          *Pro Se Plaintiff*
          140 West 62nd Street
          New York, NY 10023

STATE OF NEW YORK )
                        ) ss.:
COUNTY OF NASSAU )

        Elizabeth A. Liotta, being duly sworn, deposes and says:

        That she is over the age of 21 years, resides in Seaford, New York and is not a party to this action.

        That on August 1, 2019, she served the within Defendant's Response to Plaintiff's First Set of Interrogatories by overnight delivery by depositing a true copy thereof in a properly sealed wrapper in a depository maintained by Federal Express located on the premises at Garden City Center, 100 Quentin Roosevelt Boulevard, Garden City, New York 11530, addressed as follows:

                Esther Solomon
                Plaintiff Pro Se
                140 West 62nd Street
                New York, NY 10023

        That being the address designated on the latest papers served in this action.

                                             Elizabeth A. Liotta

Sworn to before me on
August 1, 2019

        Notary Public

ARIEL E. RONNEBURGER
NOTARY PUBLIC-STATE OF NEW YORK
No. 02RO6275409
Qualified in Nassau County
My Commission Expires 01-28-2021

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------------X

ESTHER SOLOMON,

                       Plaintiff,

    - against -

FORDHAM UNIVERSITY,

                       Defendant.

--------------------------------------------------------------------------X

Case No.:
1:18-cv-04615-ER

**DEFENDANT'S**
**RESPONSE TO**
**PLAINTIFF'S SECOND**
**SET OF**
**INTERROGATORIES**

Defendant Fordham University ("Defendant" or "Fordham"), by and through its counsel,

Cullen and Dykman, LLP, respond to the Second Set of Interrogatories propounded by Plaintiff

Esther Solomon ("Plaintiff") as follows:

## GENERAL OBJECTIONS

1.    Defendant objects to Plaintiff's Definitions, Instructions and Interrogatories

because and to the extent that they seek discovery protected from disclosure under the attorney-

client privilege and/or work-product doctrine.

2.    Defendant objects to Plaintiff's Definitions, Instructions and Interrogatories

because and to the extent that they seek discovery that is neither relevant nor reasonably calculated

to lead to the discovery of admissible evidence.

3.    Defendant objects to Plaintiff's Definitions, Instructions and Interrogatories

because and to the extent that they are overbroad, unduly burdensome and oppressive.

4.    Defendant objects to Plaintiff's Definitions, Instructions and Interrogatories

because and to the extent that terms or phrases contained therein are vague, ambiguous or

undefined.

5.    Defendant objects to Plaintiff's Definitions, Instructions and Interrogatories

1

because and to the extent that they fail to identify the information or category of information that is sought with reasonable particularity.

6.      Defendant objects to Plaintiff's Definitions, Instructions and Interrogatories because and to the extent that they call for defendant to engage in legal analysis or call for legal conclusions.

7.      Defendant objects to these Interrogatories to the extent they seek information that is not proportional to the needs of the case given the issues in the action, the amount in controversy, the importance of the discovery in resolving the issues and whether the burden or the expense of the proposed discovery outweighs the likely benefit.

8.      Defendant objects to these Interrogatories to the extent that they are violative of Rule 33. 3 of the Local Rules of the United States District Courts for the Southern and Eastern District (the "Local Rules").

9.      These General Objections are continuing and are incorporated by reference in each and every response set forth below.

10.     By providing the information below, Defendant does not in any way waive or intend to waive, but rather intend to preserve and are preserving all objections to competency, relevance, materiality and admissibility of the responses or the subject matter thereof; all objections as to vagueness, ambiguity, or undue burden; all rights to objects on any ground to the use of any of said responses or the subject matter thereof, in any subsequent proceedings, including the trial of this or any other actions; and all rights to objects on any ground to any request for further responses to these or any other discovery requests involving or relating to the subject matter of these requests.

11.     Defendant's responses are based upon information and documents presently

2

known to Defendant and the Defendant reserves the right to present additional information at trial.

## INTERROGATORIES

## INTERROGATORY NO. 1

The following reports and official statements pertain to Fordham characterization of tenured Prof. Solomon's status at the University. For each of the items below, identify all individuals who generated the report or statement, their basis, sources, communications processes, documents, policies and procedures they relied on, and status relevant to indicate consequences and Prof. Solomon's current status. These include:

a) Fordham's Agent - Discovery Benefits,;

b) Defendant's Reply Memo in Further Support of Its Motion to Dismiss the Third

Amended Complaint (Dkt. 116);

c) Declaration of James Ryan, Esq. (Dkt. 117);

d) Fordham Appellee Brief to the Second Circuit Court of Appeals (Dkt. 72);

e) Fordham submission to the IRS 2023 to generate IRS Form 1095-C for Prof. Solomon;

f) Fordham statutes §4-03.01 – Responsibilities.

Specifics are below:

a) Fordham Reports Through Discovery Benefits on COBRA-ERISA to US Department

of

Labor and IRS: ((TAC Ex 23 Dkt 95-2, p 2,3,4)

i. Final Termination Report:

3

COBRA CONTINUATION COVERAGE FORM: Fordham University

Qualified Beneficiary (QB): Esther Solomon

Event Date: 2/1/2020 Event Type: Termination

Earlier Termination Report and Post Termination Report As Seasonal Part Time Worker:

i. COBRA CONTINUATION COVERAGE FORM

Qualified1d Beneficiary (QB): Esther Solomon

Event Date: 4/12/2019- Event Type: Termination

ii. COBRA CONTINUATION COVERAGE FORM: Fordham University

Qualified1d Beneficiary (QB): Esther Solomon

Event Date: 8/31/2020 -Event Type: Reduction in Hours - Status

Change

b) Defendant's Reply Memo in Further Support of Its Motion to Dismiss the TAC." (Dkt.

116, 10-11-2021 regarding Termination Notices to COBRA-ERISA:

"Such designation in no way was an indication that Plaintiff's employment with Fordham was terminated entirely. Thus, Fordham did not in any way "falsify" Plaintiff's COBRA documentation as she suggests. Even if Fordham "falsified" such documents – a point which it does not concede - such allegations of falsification does not demonstrate retaliation under Title VII and the ADEA." Dkt. 116 p. 8

c) Declaration by James G. Ryan, executed 10/11/ 2021, Dkt 117, in support of Fordham's Motion to Dismiss TAC:

"Despite her assertions to the contrary, Plaintiff remains a tenured faculty member at

4

Fordham."

d) Fordham Appellee Brief to the Second Circuit Court of Appeals, Case 22-887,

Dkt 72, 01/06/2023:

Plaintiff-Appellant is currently a tenured associate professor at Fordham's Gabelli School of Business. p. 13. Plaintiff-Appellant Was Never Terminated, p. 35 Plaintiff- Appellant claims that she suffered a "secret termination" as Fordham allegedly made "contradictory reports" when it mischaracterized her employment status while she was on unpaid leave as "termination" for COBRA benefit purposes, despite later correcting it to "reduction in hours." P 35, Second, Plaintiff-Appellant continues to be a tenured member of Fordham's faculty Page37 Here, Plaintiff-Appellant clearly never received a notice of termination of her employment from Fordham. Plaintiff-Appellant merely relies on the notifications she received regarding her COBRA healthcare benefits.

e) Fordham submission to the IRS in 2023:

Form 1095-C IRS -Employer -provided Health Insurance Offer and Coverage For Calendar year 2022 Part III- Employees offer of coverage: All 12 months. 1G. You were NOT a full-time employee for any month of the calendar year but were enrolled in self-insured employer-sponsored coverage for one or more months of the calendar year. Covered Individual -Esther Solomon Covered all 12 months.

f) Fordham statutes §4-03.01 – Responsibilities (Dkt. 95-1, p. 101)

1. Appointment as a faculty member is a contract for full-time engagement in faculty responsibilities during the academic year.

5

## RESPONSE TO INTERROGATORY 1(a):

Defendant objects to this Interrogatory to the extent the request is vague and ambiguous. Defendant further objects to this Interrogatory to the extent the term "Fordham's Agent – Discovery benefits is not defined. Defendant further objects to this Interrogatory on the grounds that it is beyond the scope of permissible inquiry set forth in Local Rule 33.3 and Plaintiff's service of this Interrogatory at this point in discovery violates Local Rule 33.3(b). Defendant further objects to this Interrogatory as it is duplicative of the information sought in Plaintiff's Second Request for the Production of Documents. Defendant reserves the right to lodge any and all objections should Plaintiff re-serve this Interrogatory at a later point in discovery.

## RESPONSE TO INTERROGATORY 1(b):

Defendant objects to this Interrogatory on the grounds that it is beyond the scope of permissible inquiry set forth in Local Rule 33.3 and Plaintiff's service of this Interrogatory at this point in discovery violates Local Rule 33.3(b). Defendant further objects to this Interrogatory to the extent it seeks information protected from disclosure under the attorney-client privilege and/or work-product doctrine. Defendant further objects to this Interrogatory as it is duplicative of the information sought in Plaintiff's Second Request for the Production of Documents. Defendant reserves the right to lodge any and all objections should Plaintiff re-serve this Interrogatory at a later point in discovery.

## RESPONSE TO INTERROGATORY 1(c):

Defendant objects to this Interrogatory on the grounds that it is beyond the scope of permissible inquiry set forth in Local Rule 33.3 and Plaintiff's service of this Interrogatory at this point in discovery violates Local Rule 33.3(b). Defendant further objects to this Interrogatory to the extent it seeks information protected from disclosure under the attorney-client privilege and/or

6

work-product doctrine. Defendant further objects to this Interrogatory as it is duplicative of the information sought in Plaintiff's Second Request for the Production of Documents. Defendant reserves the right to lodge any and all objections should Plaintiff re-serve this Interrogatory at a later point in discovery.

## RESPONSE TO INTERROGATORY NO. 1(d):

Defendant objects to this Interrogatory on the grounds that it is beyond the scope of permissible inquiry set forth in Local Rule 33.3 and Plaintiff's service of this Interrogatory at this point in discovery violates Local Rule 33.3(b). Defendant further objects to this Interrogatory to the extent it seeks information protected from disclosure under the attorney-client privilege and/or work-product doctrine. Defendant further objects to this Interrogatory as it is duplicative of the information sought in Plaintiff's Second Request for the Production of Documents. Defendant reserves the right to lodge any and all objections should Plaintiff re-serve this Interrogatory at a later point in discovery.

## RESPONSE TO INTERROGATORY 1(e):

Defendant objects to this Interrogatory on the grounds that it is beyond the scope of permissible inquiry set forth in Local Rule 33.3 and Plaintiff's service of this Interrogatory at this point in discovery violates Local Rule 33.3(b). Defendant further objects to this Interrogatory as it is duplicative of the information sought in Plaintiff's Second Request for the Production of Documents. Defendant reserves the right to lodge any and all objections should Plaintiff re-serve this Interrogatory at a later point in discovery.

## RESPONSE TO INTERROGATORY 1(f):

Defendant objects to this Interrogatory on the grounds that it is beyond the scope of permissible inquiry set forth in Local Rule 33.3 and Plaintiff's service of this Interrogatory at this

7

point in discovery violates Local Rule 33.3(b). Defendant further objects to this Interrogatory as it is duplicative of the information sought in Plaintiff's Second Request for the Production of Documents. Defendant reserves the right to lodge any and all objections should Plaintiff re-serve this Interrogatory at a later point in discovery.

Dated: Uniondale, New York
March 18, 2024

CULLEN AND DYKMAN LLP

By: /s/ Ryan Soebke
Ryan Soebke
Jennifer A. McLaughlin
*Attorneys for Defendant Fordham University*
333 Earle Ovington Blvd., 2nd Floor
Uniondale, New York 11553
Phone: (516) 357-3700
Email: rsoebke@cullenllp.com

8

Solomon v. Fordham University

| | |
|---|---|
| 1 | |
| 2 | United States Court of Appeals for the Second Circuit |
| 3 | Oral Argument for Solomon v. Fordham University |
| 4 | Docket #: 22-887 |
| 5 | Date Argued: June 9, 2023 |
| 6 | Courtroom 1505 |
| 7 | Thurgood Marshall US Courthouse, 40 Foley Square, New York, NY 1007 |
| 8 | Panel: Calabrese, Carney, Lee C.JJ. |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |

1

Solomon v. Fordham University

| 1 | [00:17:55] Judges of the United States Court of Appeals for the Second Circuit. |

2    Hear ye, hear ye, hear ye. All persons having business before this, a stated term of the

3    United States Court of Appeals for the Second Circuit draw near, give your attention ye shall be

4    heard.

5    Thank you. Please be seated.

6    Judge Lee: Thank you, please be seated. All right, good morning everyone. So, we're

7    ready for our first case for argument [00:18:30] and, of course we have Judge Calabresi with us

8    via Zoom and ...

9    Judge Calabresi: Good morning.

10    Ms. Solomon: Good morning.

11    Judge Lee: Okay, and so our first case for argument is Esther Solomon vs. Fordham

12    University Administration et. al. and so Ms. Solomon you have reserved three minutes for rebuttal,

13    and so you have seven minutes now. So, whenever you are ready, you may begin.

14    Ms. Solomon: Thank you. Good morning, Your Honors, may it please the court.

15    [00:19:00] My name is Esther Solomon. Can you hear me? I'm okay.

16    Judge Lee: Yes.

17    Ms. Solomon: Yes.

18    Judge Calabresi: Yes.

19    Ms. Solomon: My name is Esther Solomon, the pro se appellant in this employment

20    discrimination and retaliation case. My professional livelihood and 35-year career as a tenured

21    professor and multiple term faculty senator representing the Business School, have been destroyed

22    because of discrimination, [00:19:30] the creation of intolerable academic working conditions,

23    gender based disparate pay and constructive discharge. Fordham's actions culminated in my secret

2

Solomon v. Fordham University

| | |
|---|---|
| 1 | termination as a tenured professor on February 1st, 2020, without cause or due process. Multiple |
| 2 | retaliatory actions ensued after I filed this lawsuit. As of the spring [00:20:00] 2018 semester |
| 3 | adverse action, I was transferred and demoted from graduate Business School Professor to teach |
| 4 | elementary introductory courses. There's a, there's a static. |
| 5 | Female Speaker: Feedback. Yeah. |
| 6 | Ms. Solomon: Sorry, should I stop? |
| 7 | Female Speaker: That's okay, you ... |
| 8 | Ms. Solomon: Okay. These diminished responsibilities and excessive and disproportionate |
| 9 | workload, interfered with my research, and disparate treatment [00:20:30] became the sine qua |
| 10 | non of my assignments ever since. This demotion was not visited upon the males or younger |
| 11 | females. Over the years ... |
| 12 | Judge Lee: Ms, Ms. Solomon ... |
| 13 | Ms. Solomon: ...Fordham had used similar methods to force the resignation or retirement |
| 14 | of other ... protected class professors. |
| 15 | Judge Lee: Ms. Ms. Solomon. |
| 16 | Judge Lee: Yes, yes, sorry. |
| 17 | Ms. Solomon: I'm sorry. |
| 18 | Judge Lee: No, no, that's okay. I just wanted to to ask you, I mean part of what you have |
| 19 | to establish with regard to [00:21:00] a hostile work environment claim is that the incidents that |
| 20 | you're talking about interfered with your ability to do your work. So could you address if you |
| 21 | addressed how these, how these impacted your ability to do your work specifically. |
| 22 | Ms. Solomon: By demoting me from the Graduate School to the undergraduate and a very |
| 23 | very busy schedule. There was not enough time for me [00:21:30] to do my research and the |

3

Solomon v. Fordham University

1    requirements for professors are the three core characteristics of teaching, research, and service.
2    And those, all three, were impacted by this hostile work environment. Also, as I have alleged in
3    my complaint, there have been a long-standing pattern in which the same people... there's some
4    noise. There is a long-standing pattern in which the same group of male management [00:22:00]
5    area chairs had acted to undermine my career for years, including the time after the ...

6        Judge Calabresi: I have I have a question with respect to that. The lower court held that
7    many things that happened before 2017 were barred, but due to limitations. On the other hand, our
8    cases say that things like that ...

9        Ms. Solomon: I'm sorry I didn't hear you. I couldn't hear you very well. I couldn't hear.

10       Judge Calabresi: Okay, let me try again.

11       Ms. Solomon: Okay. [00:22:30]

12       Judge Calabresi: The lower court held that many things that happened before 2017 were
13   barred by the statute of limitations. That's a question. But assuming that it is right, our cases say
14   that what happens before may be relevant to understanding what happens after. So I am asking to
15   see whether some of the things that happened before [00:23:00] 2017 were such, so that we would
16   understand what happened afterwards as creating a hostile work environment.

17       Ms. Solomon: Thank you, Your Honor. As you correctly stated, per Davis-Garett events
18   that occur before the 300 days if they're part of the same pattern of unlawful activities, they can be
19   considered. At the minimum, they can be considered as context, but in this situation it is part
20   [00:23:30] the same actors and the same type of activities interfering with my career and in fact
21   replacing me. The same individuals that did this to me, they did it to others as well. So the same
22   male supervisors with administrators acting jointly, took egregious actions over years. To the point
23   that in 2016 me and another female Senator, who were doing our job representing [00:24:00] the

4

ES_003459

Solomon v. Fordham University

1   Business School and trying to oppose statutory violations, were punished, retaliated in public and
2   the faculty Senate had to intervene, and they issued their anti-retaliation resolution to protect the
3   two female Senators. Also, the Board of Trustees intervened to stop that at the time. That was one
4   of several actions that were taken to undermine mine [00:24:30] and other females' leadership
5   abilities and to remove them from leadership positions they were duly elected and duly occupied.
6   And it was always done in violation to procedures, Statutes, and denial of hearing. And the same
7   thing happened afterwards. The termination without cause or due process, after I had requested the
8   University President specifically, because they warned me they would cut my benefits, I went to
9   the University President and asked him, wrote him in letter [00:25:00] 22A, I believe is the exhibit.
10  And I requested a hearing and due process.

11          Judge Calabresi: So, so ...

12          Ms. Solomon: -So there's a pattern...

13          Judge Calabresi: Excuse me, excuse me. So you are saying that we should understand what
14  was after 2017, or whatever the date is, in the light of things which were done that were similar
15  before?

16          Ms. Solomon: Yes. The same pattern and again, a pattern of-pervasive avoidance of due
17  process, avoidance of review, [00:25:30] false charges. And this was not just me, it was many
18  professors who suffered similar fate. They were, they were trying to force them out and get them
19  to resign by these egregious actions. I'm not, I don't even know exactly where I stopped, but I will
20  continue about that. Over the years Fordham had used similar methods to force the resignation or
21  retirement of other protected class professors. They targeted them through transfer to elementary
22  undergraduate [00:26:00] teaching and humiliating demotion. A senior professor who was forced
23  out wrote: "Thank you for your concerns. Yes, I am not coming back. I have been exposed to

Solomon v. Fordham University

1  concerted efforts of the new regime to push me out. I have been requested to teach undergraduate

2  basic statistics and criticized for some snow days I missed due to illness. They stopped my salary

3  already. [00:26:30] Now I have to get some health insurance and then I will fight for my retirement

4  income." That is in JA95 paragraph 317.

5      Judge Lee: Okay, Ms. ...

6      Ms. Solomon: This was a blueprint for what I would soon face ...

7      Judge Lee: Ms. Solomon.

8      Ms. Solomon: Yes.

9      Judge Lee: Yes, I know it's a little multiple sources of question. So you you come to the

10 end of your time, you'll still have a few moments after three minutes afterwards. So if you can

11 wrap up and we'll go to hear from your your adversary.

12      Ms. Solomon: Okay. I also experienced severe gender-based [00:27:00] pay discrimination

13 as a professor since my salary had been approximately 50% compared to the salaries of other

14 professors, and my salary was about 115,000, the professors average was 211,000 and this was

15 comparison with other eight male faculty comparators at the Business School.

16      Judge Lee: Okay.

17      Ms. Solomon: Comparators to which the university agreed and on which they produced

18 this and therefore they cannot deny, dispute their eligibility [00:27:30] as comparators.

19      Judge Lee: I think, I think ...

20      Ms. Solomon: Okay, thank you so much.

21      Judge Lee: Yes, thank you. Okay, Mrs. McLaughlin.

22      Mrs. McLaughlin: Yes.

23      Judge Lee: All right, whenever you're ready.

6

Solomon v. Fordham University

1    Mrs. McLaughlin: May it please the court. Jennifer McLaughlin of Cullen and Dykman,

2  LLP for Fordham University.

3    Judge Lee: Could you please speak close to the mic.

4    Mrs. McLaughlin: Sure.

5    Judge Lee: If you can, thank you.

6    Mrs. McLaughlin: This better.

7    Judge Lee: Yeah.

8    Mrs. McLaughlin: Appellant must nudge her claims across the line from conceivable to

9  plausible to proceed in this lawsuit sounding and discrimination.[00:28:00] Afforded three times

10  by the District Court to amend her pleading, her own statements, and her voluminous submissions

11  undercut plausibility, and as such the District Court's orders should be affirmed. I'd like to address

12  briefly certain aspects of appellant's disparate treatment claim, her equal play, pay claim, and

13  retaliation claims.

14    Judge Carney: Yeah, I'd like to hear about the pay claim, please, because the table that she

15  induces shows a pretty dramatic differential between the male purported comparators [00:28:30]

16  and her own pay scale over a period of time.

17    Mrs. McLaughlin: Sure, the Equal Pay Act, as we all know, prohibits employers from

18  discriminating among employees on the basis of sex by paying higher wages to employees of the

19  opposite sex for equal work. Appellant states that her compensation is far lower than other male

20  faculty. But what she failed to allege in any of her pleadings that the job content of the other male

21  faculty who she contends are paid more in that chart, are equivalent to hers. [00:29:00] As stated

22  in her pleading.

23    Judge Calabresi: Counsel.

7

Solomon v. Fordham University

1      Mrs. McLaughlin: Yes.

2      Judge Calabresi: Counsel, counsel. This is 12(b)(6). We have said that in summary

3 judgment, there has to be a fair sign that the things are the same, and often that that's a jury

4 question. But isn't it premature for such a thing to be decided in 12(b)(6)? When, she could come

5 in evidence which shows that though titles and things [00:29:30] are somewhat different, but

6 basically these people are valid comparators. Haven't we done that in any number of cases?

7      Mrs. McLaughlin: Your Honor, I plead with you the case of EEOC versus the Port of

8 Authority. In that case, there was a failure to allege any facts concerning the attorneys in the Port

9 Authority's Law Department's actual job duties deprived this court from which to draw a

10 reasonable inference that the attorneys performed equal work, the touchstone of an EPA claim.

11 [00:30:00] Similarly here in that case, this court said attorneys are attorneys is not sufficient.

12 Similarly, here professors are professors is not sufficient. As stated in her pleadings, there's a very

13 wide range of responsibilities professors have according to the Fordham Faculty Statutes, some of

14 which include include research obligations, other opportunities outside of their teaching roles in

15 administration. There is no comparator that she's pointed to similarly situated to her [00:30:30]

16 that is being paid more and outside of a protected class ...

17      Judge Carney: Am I am I right in understanding that initially, you know, the District Court

18 has seen this I think four four times. And after the, its first decision, it allowed discovery to proceed

19 for some period of time. Is that right?

20      Mrs. McLaughlin: Right.

21      Judge Carney: Pending amendment of the complaint and so on. And and Ms. Solomon,

22 Professor Solomon had the assistance of counsel at at that time. And so [00:31:00] Fordham

Solomon v. Fordham University

1   produced documents and responded to interrogatories, giving Ms. Solomon an opportunity to
2   develop facts that would be relevant to the status of the comparators. Is that right?

3   Mrs. McLaughlin: Correct. And then and she developed the chart that you were referring
4   to earlier today, again without giving any inkling in her pleading as to who among those male
5   professors were similarly situated to her.

6   Judge Lee: Wasn't there an issue with regard to the information that was provided, it didn't
7   fully [00:31:30] disclose the the salaries for specific professors for specific positions. I mean, isn't
8   that a little bit of a hindrance to fully fleshing out the comparators?

9   Mrs. McLaughlin: I believe the information there was some information redacted in terms
10  of names and other information that wouldn't necessarily show either way in terms of whether or
11  not they were comparators. I think the information given was sufficient to provide her an
12  opportunity. And again, [00:32:00] it's the male comparators in her department, which I think there
13  are 16 of them or so to determine whether or not there's somebody similarly situated to her that
14  she could point to that are paid more for those reasons that she states in her complaint.

15  Judge Calabresi: Counsel, I have another question. That is, the District Court said that all
16  sorts of things that happened before a date were irrelevant, were beyond the statute of limitations,
17  [00:32:30] and she argues that's continuous, the District Court has good arguments for why they're
18  not. But the District Court then specifically failed to take those into account in understanding her
19  claims. Now that is on its face-error under our cases and so I'd like you to address why, if there
20  was that error, that error isn't by itself isn't enough [00:33:00] to send it back. That is, if the District
21  Court looked at things post-2017 without considering the effect of the earlier ones, as our cases
22  say, couldn't we send it back? Or is there a reason not to?

9

Solomon v. Fordham University

1    Mrs. McLaughlin: Well, the the items that were mentioned in the pleadings outside the
2    statute of limitation in connection with her hostile work environment claim included the
3    nomination denial of a chair position.

4    Judge Calabresi: Counsel.

5    Mrs. McLaughlin: Yes.

6    Judge Calabresi: Talking not just the [00:33:30] hostile work environment.

7    Mrs. McLaughlin: Right.

8    Judge Calabresi: I'm talking about with cases, I'm talking also about whether actions were
9    sufficient, discriminatory, whether they the whole schmear.

10   Mrs. McLaughlin: Right, but I think the claims that she raises outside of the statute of
11   limitations such as denial of a chair position in 2013, if that was based on discrimination that
12   should have been raised in challenge then. And also her other allegations of items on actions that
13   happened to her outside of the statute of limitations [00:34:00] related to failure to schedule
14   meetings or including her in them. Again, inside the statute of limitations, she talks about being
15   personally attacked or abruptly being cut off in meetings. All of these items I think the District
16   Court recognized could give context to the discrimination claim, but didn't necessarily again, push
17   it over the line to plausible to support or withstand, I should say the 12(b)(6) motion.

18   Judge Calabresi: I have yet another question. Somewhere in your argument you make the
19   rather [00:34:30] remarkable statement that it is settled law that things which she claims are not
20   supposed to be adverse actions, and for that either you cite the District Court that cites a summary
21   order which is not really on point. Now that's a remarkable way of saying it's settled action of our
22   of our court [00:35:00] when many cases in our courts have suggested that things analogous to this

10

Solomon v. Fordham University

1    were adverse actions, at least at a 12(b)(6). Now I'd like you to address that, because I was very

2    troubled by that in your group, I must say.

3        Mrs. McLaughlin: So the if you're referring to the Klein case of the Southern District in

4    which the court analyzed teaching schedules and whether affording a teacher or professor an

5    undergraduate course versus a PhD course was adverse.

6        Judge Calabresi: Please, you are telling us [00:35:30] that it is settled law of our Circuit

7    and then citing a District Court that cites a summary order, which isn't really important anyway.

8        Mrs. McLaughlin: Understood. Understood, Your Honor. But again, I believe that the

9    adverse employment action argument that the court below did find it could be.

10        Judge Calabresi: Do you have a better case from our court to support what you're saying?

11   [00:36:00]

12        Mrs. McLaughlin: I'm sorry, I didn't hear the edge of that.

13        Judge Calabresi: I'm saying do you have a case from our court to support that statement?

14   The cite that you, the citation ain't getting very good. But do you have cases?

15        Mrs. McLaughlin: In terms of a professor and their teaching schedule and whether or not

16   it's onerous? There is the Vega case versus Hempstead that also talks about whether there's an

17   onerous assignment, and that was related to a discrimination matter [00:36:30] on a 12(b)(6)

18   motion. And in that case, in the Vega case, the professor or teacher there was in, I believe, in a

19   high school, was given a certain assignment based on his Hispanic national origin. He was given

20   all the Spanish students he was asked to transfer to a different school. And that, Your Honor, again

21   distinguished from this, was considered onerous by that court.

22        Judge Calabresi: Your strongest arguments, frankly, I think are [00:37:00] that everything

23   that was done with respect to the appellant was done not for reasons of discrimination, but because

11

Solomon v. Fordham University

1 | the school found her troublesome, that they didn't get along. And that may well be a winning
2 | argument. But is that an argument that should be done at this stage-?

3 | Mrs. McLaughlin: Again, as you say, I don't believe that this is a case of discrimination
4 | and that [00:37:30] as you've mentioned, this may have been a disagreement as to course
5 | assignment and position within the university, but.

6 | Judge Calabresi: Or even a personal discord, which you know may not be nice or may be
7 | nice, but it's not a a matter of federal law.

8 | Mrs. McLaughlin: Exactly. And for that reason, Your Honor, I believe that she hasn't
9 | stated a case of discrimination. She may have stated a case of not getting along with her fellow
10 | colleagues. I see my time is run and if there's further questions.

11 | Judge Lee: Okay.

12 | Mrs. McLaughlin: Or if not, I would rest on the brief.

13 | Judge Lee: All right, thank you.

14 | Mrs. McLaughlin: Thank you.

15 | Ms. Solomon: Your Honors. I would like to correct the record regarding what the Fordham
16 | representative indicated. I will start with the end with the adverse action. The District Court did
17 | find adverse action per the Vega case. That my case, contrary to the Klein case which the university
18 | cites, demonstrates that the [00:38:30] assignments were more onerous, that there was interfered
19 | with my research, and that it was adverse employment action. And that fulfilled the third of the
20 | four requirements for the discrimination case. Also, I have very strong indicators of discriminatory
21 | intent, extraordinary I believe, which demonstrate, have proven my case that I [00:39:00] had a
22 | discrimination case that was plausibly alleged.

12

Solomon v. Fordham University

1     And per my brief, the adverse actions are the following. First of all, the plaintiff's demotion
2 and transfer as of spring 2018 per Vega, unlike the male and younger females. Number two, the
3 disparate pay, about half of the comparators and exclusion of older females from administrative
4 and teaching opportunities. Number three, the persistence of the demotion following semester
5 [00:39:30] after semester, reflecting an intention to force me out and constructive discharge. Then,
6 workplace sabotage when I return post termination in which I was cut off from the from the
7 Blackboard and I was precluded from teaching, demonstrating the intent to force me out even after
8 the termination. And of course the fifth adverse employment action is the termination, which is
9 the ultimate [00:40:00] adverse action which is documented in Fordham's submission to the IRS
10 and the Department of Labor through the COBRA regulations. So in addition to the termination,
11 there was there a report pursuant to federal law that is permanent part of my record and it has never
12 been removed as of February 1ˢᵗ, 2020.

13     I would also like to mention regarding the procedural issues that Your Honor, mentioned
14 previously. [00:40:30] That the discovery that took place here was way before the first order.
15 Initially, in 2019, when I was pro se through the pro se office, they brought me in contact with the
16 Cravath firm and there was discovery for about two months. That's all the discovery that took
17 place. After the firm left, there were in my view there were too many, too many obstacles, I used
18 this material subsequently, [00:41:00] but I was denied any discovery as of, I as of believe it was
19 April 2019, there was absolutely nothing. Then I submitted some subpoenas because I was missing
20 information they had redacted, contrary to Protective Order, all the names of the professors. So as
21 you see, the judge actually commented there are no names, because I didn't have them. So, I had
22 subpoenas for my my own personnel records which were deficient [00:41:30] and for those of the
23 comparators. And there was this hearing in January 2020 January 29 and that hearing was because

13

Solomon v. Fordham University

1   I requested the court to, to allow me for a motion to compel discovery and the court allowed me.

2   And I submitted this motion, but this motion was never reviewed, and it is a footnote in the Judge's

3   first Order that he stopped discovery. And I have nothing ever since, [00:42:00] and that was as

4   of very early 2020. So the only discovery was two months in 2019 before the first report of

5   termination. As you probably know, there were two reports of termination that Fordham filed.

6      Judge Lee: Okay thank you.

7      Female Speaker: Thank you.

8      Ms. Solomon: And one last thing is about the comparators. I wanted to point out that in

9   my motion for reconsideration, I had attached a very important, I think, decision by Freyd in the

10  9th Circuit [00:42:30] which specifically addressed the issue of comparator professors in

11  Universities. And what the Freyd case says, it's a summary judgement case, but I believe this is

12  applicable to the Second Circuit, although the court indicated that it might not be it. What the

13  Freyd decision said is that professor's jobs consist of teaching, research, and service and that is

14  sufficient. And I supported that with sections from the University [00:43:00] Statutes that define

15  the duties of faculty, the research, the service duties, the criteria. And also I addressed the the

16  standard in the Second Circuit that said that there should be equal standards. And I define the

17  standards for professors, everything according to the university status.

18     Judge Lee: Okay.

19     Ms. Solomon: There was also an AAUP ...

20     Judge Lee: Ms. Solomon...

21     Ms. Solomon: I'm sorry. [00:43:22 – end of instruction]

22     Judge Lee: No, that's all right. I I think we understand your position, so.

23     Ms. Solomon: Okay.

14

Solomon v. Fordham University

| 1 | Judge Lee: We will conclude ... |
| 2 | Ms. Solomon: Thank you. |
| 3 | Judge Lee: Thank you. |
| 4 | Ms. Solomon: Okay, thank you. |
| 5 | Judge Lee: [00:43:30] And you can have a seat. So we'll have a brief recess now. We will |
| 6 | be right back. |
| 7 | Female Speaker: The court stands in recess. |
| 8 | Judge Calabrese: Okay, cut me off. [00:43:44] |

ES_003470



**Vanan Online Services, Inc.**
Think Service Think Vanan

# Certificate of Transcription

## Transcription of File(s) "solomon_v._fordham_university_cl.mp3"

We, Vanan Online Services, Inc., a professional Transcription Company, hereby certify that the above-mentioned transcript(s) has/have been performed by our qualified and experienced Transcriber(s) is/are accurate and true of the original File(s).

This is to certify the correctness of the Transcription only. We cannot guarantee the veracity of the original File. Our Transcriber is in no way related, by immediate family ties or marriage, to any parties related to the materials performed.

A copy of the Transcription is attached to this Certification.

*Danny Negley*

**Danny Negley, Production Manager.**

Dated: 02nd day of Nov 2023
Vanan Online Services, Inc.
ATA Member #266532
ISO 9001:2015

Vanan Online Services, Inc.
10711 Spotsylvania Ave., Suite A
Fredericksburg VA 22408
Office: (888) 535-5668
Email: support@vananservices.com
Website: www.vananservices.com

ES_003471

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

In Re Solomon,
*Petitioner Pro Se.*

On Petition from the United States District Court
for the Southern District of New York
Civil Case No. 1:18-cv-4615
(Hon. Edgardo Ramos)

## PETITION FOR A WRIT OF MANDAMUS
## TO THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

**Appendix Exhibits**

**Volume II**

Esther Solomon
Petitioner Pro Se
140 West 62nd Street
New York, NY 10023
(212) 263-6187

# Appendix Exhibits

## In support of In Re Solomon
## Petitioner's Writ of Mandamus to the Second Circuit Court of Appeals

VOLUME I

Appendix Exhibit **1**
Petitioner's Motion to Compel Compliance with Subpoenas,
Compliance with Document Requests, and Compliance with
Representations to the Court, January 18, 2024 …………………………………….  Dkt. 132

Appendix Exhibit **2**
Petitioner's Letter to the Court accompanying Motion to Compel Discovery,
Endorsed, January 22, 2024,…………………………………………………………  Dkt. 134

Appendix Exhibit **3**
Remote January 11, 2024 Hearing with Judge Ramos, Transcript
filed February 14, 2024………………………………………………………………..  Dkt. 138

Appendix Exhibit 4
Defendant Attorney First Declaration in Opposition to Petitioner's Motion to Compel
and in Support of Defendant's Cross-Motion to Compel, March 1, 2024 …………..  Dkt. 142

Appendix Exhibit **5**
Defendant's Memorandum in Opposition to Petitioner's Motion to Compel
Discovery and in Support of their Cross-Motion to Compel Discovery and stealth
Cross-Motion to Replace the Stipulated Protective Order, March 1, 2024 ………..  Dkt. 143

Appendix Exhibit **6**
Petitioner's Reply in Support of her Motion to Compel Compliance with Subpoenas,
Compliance with Document Requests and Compliance with Representations to the
Court, April 15, 2024,…………………………………………………………………  Dkt.146


VOLUME II

Appendix Exhibit **7**
Petitioner's Opposition to Defendant's Cross-Motion to Compel Discovery
and to Defendant's Cross-Motion for a Replacement Protective Order, April 15, 2024…  Dkt. 147

Appendix Exhibit **8**
Defendant Attorney's Second Declaration in Opposing Petitioner's Motion to compel,
and in Support of their Cross-Motion to Compel Discovery and for a Replacement
Protective Order, May 7, 2024 ………………………………………………………  Dkt. 151

Appendix Exhibit **9**
Defendant's Reply Memorandum in Further Support of Cross-Motion to Compel
Discovery and for a Replacement Protective Order, May 7, 2024 ………………....  Dkt. 152

Appendix Exhibit **10**
Petitioner's Letter-Motion requesting Leave to file a Surreply to her motion to
compel discovery, June 6, 2024,……………..…………………………………  Dkt. 154


Appendix Exhibit **11**
Order Denying Petitioner's Letter-Motion requesting Leave to file a Surreply
to her Motion to Compel Discovery, June 11, 2024  ………………………………  Dkt. 155

Appendix Exhibit **12**
Order Denying Petitioner's Motions to Compel Compliance with Subpoenas,
Compliance with Document Requests and Compliance with Representations to
the Court, and granting Defendant's Cross-motion for replacing Protective Order
with a different one with redactions, July 2, 2024 …………………………………  Dkt. 156

Appendix Exhibit **13**
Plaintiff's Notice of Motion for Reconsideration, July 16, 2024. …………………  Dkt. 157

Appendix Exhibit **14**
Petitioner's Memorandum of Law in Support of Motion for Reconsideration of the
Part of the July 2, 2024 Order Granting the Defendant's Motion to Modify 2019
Stipulated Protective Order They Violated to Allow Name Redactions, July 16, 2024.  Dkt. 158

Appendix Exhibit **15**
Defendant's Memorandum of Law in Opposition to the Petitioner's Motion for
Reconsideration, August 9, 2024……………………………………………………  Dkt. 160

Appendix Exhibit **16**
Petitioner's Reply Memorandum of Law in Further Support of her Motion for
Reconsideration of the Part of the July 2, 2024 Order Granting Defendant's
Motion to Modify the 2019 Stipulated Protective Order They Violated to Allow
Name Redactions, August 23, 2014… …………………………………………….  Dkt. 161

Appendix Exhibit **17**
Order Denying Petitioner's Motion for Reconsideration, October 2, 2024……………  Dkt. 164

# EXHIBIT 7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ESTHER SOLOMON,                                    :            18-CV-4615 (ER)
                                                   :
                        Plaintiff,                 :
                                                   :
                - against -                         :
                                                   :
FORDHAM UNIVERSITY,                                :
                                                   :
                        Defendant.                 :
-------------------------------------------------------------X


### PLAINTIFF'S MEMORANDUM OF LAW OPPOSING DEFENDANT'S CROSS-MOTION TO COMPEL DISCOVERY

and

### PLAINTIFF'S MEMORANDUM OF LAW OPPOSING DEFENDANT'S CROSS-MOTION FOR A DIFFERENT PROTECTIVE ORDER AFTER THEY VIOLATED THE STIPULATED PROTECTIVE ORDER


Esther Solomon
Plaintiff Pro Se

# Table of Contents

MEMORANDUM OF LAW OPPOSING DEFENDANT'S CROSS-MOTION TO COMPEL
DISCOVERY ........................................................................................................................... 1

    Preamble ................................................................................................................................. 1

    Plaintiff is compliant with her discovery obligations ............................................................ 2

    Irregularities in Fordham's requests to compel discovery and for another Protective Order ..... 3

    Defendant is already in possession of documents they seek to compel .................................... 4

    Additional untrue charges against Plaintiff in Fordham's *Declaration* to the Court ................. 5

MEMORANDUM OF LAW OPPOSING DEFENDANT'S CROSS-MOTION FOR A
DIFFERENT PROTECTIVE ORDER AFTER THEY VIOLATED THE VALID STIPULATED
PROTECTIVE ORDER ............................................................................................................. 6

    Defendant omits the existence of the previously Stipulated Protective Order ......................... 7

    Misleading the Court: requesting one cross-motion but filing two ......................................... 7

    Comparator names redactions are improper .......................................................................... 8

    The Double Standard: Fordham used comparator names and opened the door ....................... 9

    Redactions are normally impermissible unless based on legal privilege................................. 10

    Fordham has not shown "good cause" under Rule 26(c)(1) to justify redactions ................... 10

    Where a protective order is in place, privacy concerns are "routinely disallowed" ................ 11

    Fordham's "Confidential" Designation on every page violates the valid Protective Order ..... 13

    Misrepresenting the *Black v. NYU* name redactions case ........................................................ 13

CONCLUSION......................................................................................................................... 16

    Exhibit List............................................................................................................................. 17

# Table of Authorities

**Cases**

*Berney v. Apple Inc.*, 2021 U.S. Dist. LEXIS 250174 (D. Conn. 2021)........................................ 10

*Black v. New York Univ. Medical Ctr.*, 1996 U.S. Dist. LEXIS 7632 (S.D.N.Y. 1996).............. 13

*Chen-Oster v. Goldman, Sachs & Co.,* 2019 U.S. Dist. LEXIS 123891 (S.D.N.Y. 2019) .......... 14

*Dass v. City Univ. of New York,* 2022, U.S. Dist. LEXIS 202699 (S.D.N.Y. 2022).......... 5, 11, 14

*Fiore v. Univ. of Saint Joseph*, 2023 U.S. Dist. LEXIS 41459 (D. Conn. 2023) ........................... 3

*Kassman v. KPMG LLP*, 416 F. Supp. 3d 252, 284 (S.D.N.Y. 2018)......................................... 14

*Mahulawde v. Fashion Inst. of Tech.*, 2022 U.S. Dist. LEXIS 217082 (S.D.N.Y. 2022) ............ 14

*Mozee v. Am. Commercial Marine Serv. Co.*, 940 F.2d 1036, 1051 (7th Cir. 1991)................... 14

*Trireme Energy Holdings, Inc. v. Innogy Renewables US LLC,* 2022 U.S. Dist. LEXIS 39589

(S.D.N.Y. 2022).................................................................................................................... 11

*University of Pennsylvania v. E.E.O.C.*, 493 U.S. 182 (1990) .................................................... 10

*Urban Outfitters v. Hype Outfitters*, 2006 U.S. Dist. LEXIS 117835 (S.D.N.Y. 2006)................ 6

*Weinstock v. Columbia Univ.*, 1995 U.S. Dist. LEXIS 14003 (S.D.N.Y. 1995)................... 11, 14

**Rules**

Fed. R. Civ. P. 26(c)(1)............................................................................................................. 10
Fed. R. Civ. P. 5.2........................................................................................................................ 9

# MEMORANDUM OF LAW OPPOSING DEFENDANT'S CROSS-MOTION TO COMPEL DISCOVERY

Preamble

This Memorandum addresses the two cross-motions: (1) Defendant's cross-motion to compel Plaintiff to provide documents and (2) Defendant's cross-motion for another protective order despite an existing Stipulated Protective Order, which Defendant violated and omit. Defendant's motions are based on false pretenses, a lack of good faith in resolving discovery issues, and no valid basis to compel discovery. One of Defendant's goals is to obtain a new protective order to legitimize prior discovery violations.

This Memorandum addresses Defendant's improper redactions of comparator names and other redactions as well as their "confidential" designations on *all* produced documents. These actions violate the Stipulated Protective Order and discovery rules and contradict the Second Circuit mandate in this case. It seeks to undermine Plaintiff's ability to explore and uncover evidence that could be crucial to this discrimination, retaliation, and pay case. The Second Circuit Mandate specifically noted name redactions of comparators as a hindrance to Plaintiff's prosecution of the claims at issue.

Fordham's Cross-Motions: to distract from their discovery stonewalling

Fordham's Cross-Motions are part of their campaign for a "Blame the Victim Defense" – to detract attention from their discovery conduct: untrue sworn statements, violation of this Court's *Practices,* and federal discovery rules. Fordham continues to make false charges against Plaintiff, who has complied with her ongoing production responsibilities, while Defendant has stonewalled post-2019 production and made untrue representations to the Court. Plaintiff has delivered over 3,500 document pages with her productions in 2019 and 2024 so far.

1

Defendant's discovery failures

Defendant's failure to adhere to its discovery obligations is addressed more fully in

Plaintiff's January 18, 2024 Motion and Memorandum to Compel (Dkt. 132) and accompanying

Reply Memorandum to Compel being filed simultaneously with this. At the January 11, 2024

Hearing, Defendant admitted their obligation to update Plaintiff's files for the last five years.

(Exhibit 1, Transcript, January 11, 2024 Hearing). Fordham should not be permitted to avoid its

obligations by distracting with these baseless allegations about Plaintiff's supposed discovery

failures.

Plaintiff is compliant with her discovery obligations

In 2019, at the start of discovery, Plaintiff produced 2,442 pages of documents with the

assistance of the Cravath firm. She has produced over 1000 pages since the discovery process

resumed in 2024. After the January 11, 2024 Court Hearing, Plaintiff produced documents

numbered ES_3000-4034, part of her continuing rolling production. She has submitted groups

of documents on three different dates:

February 27, 2024, Plaintiff produced documents in six groups: Exhibits, Attachments, Tables,
Transcripts, IRS and COBRA Regulations, Correspondence; ES_3000-3622.

March 18, 2024, Plaintiff submitted four groups: Transcripts of 2013 Recordings, Faculty Senate
2016 Correspondence with Exhibits, False Charges Senate & Apology; ES_3623-3804.

March 31, 2024, Plaintiff submitted four document groups: Emails 2017 & 2019, Emails 2020-
2024, emails Cole Reorganization, ES_3805-4034.

Following this submission, Plaintiff is producing from her Fordham and Gmail accounts

and will continue to search and produce additional responsive emails and documents.

Plaintiff's first 2024 production was on February 27, before Defendant's March 1 *Motion*

*to Compel* (Dkt. 143) and March 1 *Declaration* (Dkt. 142). In that sworn *Declaration*, Fordham

went so far as to falsely accuse Plaintiff of failure to produce. Thus, the *Declaration* states:

2

"¶49. The Court advised Plaintiff that it is her responsibility to search for all relevant
documents and communications and ordered Plaintiff to turn over all relevant emails
from her personal and Fordham issued email accounts. Id."
¶50. "To date, Plaintiff has <u>failed to make any such production</u>." Dkt. 142, p. 7,
(emphasis added)
However, *prior to the sworn Declaration,* Defendant had acknowledged Plaintiff's

February 27 production in an email on February 29, the day *before* Fordham's *Declaration.* See

Fordham email exchange, Exhibit 2. This is a stark false accusation against Plaintiff, belied by

their own writings.

<u>Irregularities in Fordham's requests to compel discovery and for another Protective Order</u>
        Fordham's January 30, 2024 Letter requesting "leave to file a cross-motion to compel

discovery" predated Plaintiff's 2024 document productions. It also stated the following:

> At the January 29, 2020 conference, Your Honor directed Plaintiff to review all of the documents
> in her possession including files contained in her Fordham email and any personal email
> accounts, and to produce all relevant documents in Plaintiffs possession. Plaintiff has still yet to
> produce <u>any electronic documents in this matter</u>." Dkt. 137, p.3 (emphasis added)

That Fordham letter did not state that the discovery stay had just been lifted two weeks before,

with the January 16 Scheduling Order. Nor did they disclose that Fordham did not hold a Meet

and Confer before their request for a cross-motion, which would have obviated the motion.

        Nor did Fordham's January 30, 2024 letter seeking a cross-motion to compel mention

their plan for an additional stealth motion: asking for another Protective Order after they violated

the valid 2019 Stipulated Protective Order, Dkt. 24.

        Furthermore, if Defendant had held the requisite discovery Meet and Confer, they would

have learned that Plaintiff planned to continue producing responsive documents, as she had in

2020.[1] Fordham gratuitously stated that "Plaintiff has produced no electronic files (in either hard

---

[1] In a different case, it did not "appear that a sufficient meet and confer has been held. The failure to have a meet and
confer session before filing a motion to compel can and often does justify a court's decision to deny a motion to
compel. *Fiore v. Univ. of Saint Joseph,* 2023 U.S. Dist. LEXIS 41459 (D. Conn. 2023)

copy or native form)," neglecting to tell the Court that *both Fordham and Plaintiff* produced their documents in the same electronic format: PDF.

The term "electronic document" in association with [Plaintiff] "has yet to produce any" falsely suggests that Plaintiff has produced nothing during the past seven years. Such untrue representation led to a motion to compel under false pretenses. In defining "electronic document," Defendant apparently tries to exclude Plaintiff's hundreds of emails produced in PDF format and their attachments, part of her 2019 production. All discovery was delivered electronically, by email. Yet Defendant counts nothing as electronic and asserts to the Court that Plaintiff produced nothing.

And if Fordham cared about the production format, they had an obligation to bring it to the Plaintiff's (and previously Cravath's) attention via email, phone call, or a meet and confer before running to the Court.

The only specific "defects" Defendant was able to identify in their *Declaration* regarding Plaintiff's entire production are two email chains with potential missing attachments as stated by Defendant below:

"¶42. For example, the documents produced as ES17 and ES18 appear to be the final two pages of a five-page letter. The first three pages are not included in Plaintiff's production. Exhibit B. ¶43. Further, the documents produced as ES112-ES119 are an email chain in which it is indicated that multiple emails in the chain contained attachments. Exhibit C. None of those attachments were produced with the corresponding emails. Dkt. 142, p.6"

As soon as Plaintiff read the Motion and Declaration for the first time, she looked for the email attachments, to include the entire chains in her new production.

Defendant is already in possession of documents they seek to compel

While claiming that Plaintiff is withholding responsive documents, Defendant did not disclose that it has full access to Plaintiff's Fordham email account. In their "nearly 15,000" page document production, Defendant produced ~8000 pages of Plaintiff's Fordham.edu emails — with every page marked confidential, FORDHAM0000498-FORDHAM0008539. Fordham fails to

4

inform the Court that it already possesses documents and emails it seeks to compel and supposedly discover.

Plaintiff searched her emails and found copies of emails she sent from her Fordham.edu account to her personal email account, which Fordham already possesses. Fordham has not given the requisite particularity of the documents they seek – essentially setting up a fishing expedition without any basis – except that Plaintiff has an email account.

Other courts have denied discovery requests under similar circumstances since Fordham may be violating Rule 26 in their use of the Court to compel production of documents they already possess and control. Another Court wrote, "A court must limit discovery where 'the discovery sought is unreasonably cumulative' or 'can be obtained from some source that is more convenient, less burdensome, or less expensive. *Fed. R. Civ. P. 26(b)(2)(C)(i)* and *(iii)*.'"*Dass v. City Univ. of New York,* 2022, U.S. Dist. LEXIS 202699 (S.D.N.Y. 2022)

<u>Additional untrue charges against Plaintiff in Fordham's *Declaration* to the Court</u>
Fordham also untruly states in their *Declaration* that:
"Plaintiff has also admitted that she has not conducted a search of either her personal or Fordham issued email account for possibly responsive documents or communications." Dkt. 142 p.2 ¶8
Plaintiff did not say that she "would not" or "has not" searched her emails. Nor has Fordham explained how Plaintiff has produced Bates-stamped emails without searching for them. Plaintiff believes this is just one more of their sharp tactics, just as with their unverified false Code of Conduct allegations.

Fordham also obtained and produced Plaintiff's work product documents, which she emailed to and from her private email account, some of which are privileged and protected work product. Regarding Plaintiff's documents attached to her emails, Fordham has obtained some that are privileged. Fordham used Plaintiff's documents from her email account to support their motion to dismiss.

5

Trying to again untruly accuse Plaintiff of supposedly not cooperating with discovery, the

*Declaration* presents fictitious supposed plaintiff's statements of refusal to cooperate with

discovery during a meet and confer:

> "¶45. During a meet and confer call on December 5, 2019, Plaintiff did not deny that she has
> additional responsive documents that she has failed to produce, but rather simply stated that she
> did not have to produce such documents as Fordham should "have what it needs."
> ¶46. During that same meet and confer call, Plaintiff refused to produce any documents form her
> personal email account or her computer and refused to discuss the issue further."
> The *Declaration* is not based on personal knowledge as the writer was not the attorney

who attended the telephone meet and confer in December 2019. The statements are inconsistent

with the Fordham attorney who memorialized the meeting in a letter to Plaintiff.

The Declaration also misconstrues the January 29, 2020 Conference as a joint one, while

it is Plaintiff's Pre Motion Conference for leave to file a Motion to compel.

As Fordham has access to all of Plaintiff's fordham.edu emails, they should have access

to the Fordham emails for Fordham President McShane, Vice-President Crystal, Dean

Rapaccioli, Profs. Pirson, Hollwitz, Falguni, Wharton, Marks, Zeleny, and others. This should

facilitate Plaintiff's document requests and case discovery.

The stonewalling Defendant is seeking to supposedly compel Plaintiff's productions and

to seek sanctions against her. In a sanctions case cited by Defendant, *Urban Outfitters v. Hype

Outfitters*, 2006 U.S. Dist. LEXIS 117835 (S.D.N.Y. 2006), the Court imposed sanctions against

Defendants for discovery violations less severe than Fordham's violations here.

Plaintiff respectfully requests that the cross-motion to compel be denied.

## MEMORANDUM OF LAW OPPOSING DEFENDANT'S CROSS-MOTION FOR A DIFFERENT PROTECTIVE ORDER AFTER THEY VIOLATED THE VALID STIPULATED PROTECTIVE ORDER

Defendant omits the existence of the previously Stipulated Protective Order

     Fordham first omits the existence of the February 14, 2019 Stipulated Protective Order

(Dkt. 24), which it cosigned while seeking a new protective order.

     The Stipulated Protective Order has been in place for five years and suffices. As the

Court stated at the January 29, 2020 Hearing:

> "THE COURT: That's the reason for the stipulation. There's a protective order in place, and
> there's a protective order in place for a very good reason in this case because you're dealing with -
> - you're alleging particular decisions that were made with respect to your tenure; and in order to
> prove your case, you have to necessarily rely on information concerning comparators, and that is
> very highly sensitive information that neither you nor anyone else want disseminated publicly."
> Dkt. 67, p. 9, Transcript of January 29, 2020 Pre-motion Conference to Compel Subpoenas and
> Discovery

     Despite the 2019 Stipulated Protective Order, Fordham makes and implements the

present tense statement that they will not produce without *another* Protective Order."

> "Defendant conditions the production of documents that contain confidential or
> proprietary information or trade secrets on the execution of the Stipulation and Proposed
> Protective Order governing the disclosure of any such information." Exhibit 1, ¶4.

Defendant does not mention the 2019 Stipulated Protective Order in any of their 2024 Discovery

submissions: their January 30, 2020 letter responding to Plaintiff's filing of the Motion to

Compel, their Notice of Cross-Motion, their Attorney Declaration, or their Memorandum of

Law.

Misleading the Court: requesting one cross-motion but filing two

     Defendant's January 30, 2024 Court Letter (Dkt. 135 ) requested a Cross-Motion to

Compel Plaintiff's discovery. Plaintiff first learned of it that day. There was no meet and confer

nor chance to respond or resolve any supposed issues before Fordham sought court intervention.

     In that January 30 Court Letter, Fordham did not disclose their plan to file a second

stealth motion: one for another Protective Order. Thus, after the Court granted leave to file one

cross-motion, Defendant filed a second motion for another protective order without notice to

either Plaintiff or the Court this time and without any Court authorization-breaking multiple

discovery motion rules.

Thus, they did not request "an informal conference with the Court" (Local Civil Rule

37.2) about this Motion, nor did they follow the Court's *Individual Practices*:

"[s]trict adherence to Fed. R. Civ. P. 37(a)(1), the 'meet and confer' rule. The parties
should be prepared to describe the time, place, and duration of the meeting, and to
identify the counsel involved."
The following might shed light on Fordham's prior intent. Plaintiff discussed the

*Proposed Civil Case Discovery Plan and Scheduling Order* with Fordham, which was later

stipulated and sent to the Court. (Dkt. 130, January 16, 2024). Fordham vehemently refused

Plaintiff's request to include reference to the *Stipulated Protective Order*. See Plaintiff's

Proposed *Case Discovery Plan,* which Fordham rejected, Exhibit 3

Comparator names redactions are improper
The key issue Defendant seeks to achieve by requesting a new Protective Order is to

redact comparator names, so as to obstruct and impede discovery. Since the Mandate ruled

against redactions of Comparator names, and the law is against it, Defendant conceal their

intentions by several methods.

a. Omit that the Second Circuit Mandate already ruled against comparator name
redactions.
b) masks the "comparator names redactions" under disguises- "redactions of biographical
information"

c) Conflate sand equates redactions of comparator names with redactions of peer
reviewers, to use inapplicable peer review law for the comparator redactions.

d) Untruly asserts that the Fordham Statutes require redactions, which they do not.

There are several types of redactions important to distinguish in this case:
Comparator Names Redactions
The first redaction type, is redaction of Comparator names in all sheets produced by Defendant,

masking whose information they were producing. Clearly that makes it impossible to aggregate

any data, do a comparative analysis, or connect qualitative analysis with qualitative information, such as other statements or actions by different professor. This shield individual actors from review and analysis essential in a discrimination case as here.

Peer Reviewer Name Redactions
Additional unauthorized redactions in violation of the Protective Order and applicable law include redactions of peer reviewer names, who made decisions in promotion and tenure of other professors. This is contrary to the University of Pennsylvania vs EEOC and subsequent caselaw.

Outside evaluators names redactions

Fordham inappropriately redacted the names of potential comparators, among myriad other redactions. Most of their redactions should be disallowed, except those in conformance with Federal Rule Civil Procedure 5.2.

To defend their position, Defendant cites self-determined relevancy, privacy, the peer review process, confidentiality and misconstrue the University Statutes. Defendant also cites the so-called "subjective desire" of the Plaintiff "to receive unredacted copies of the documents…" However, Plaintiff's "subjective desire" aligns with the FRCP, case law, Supreme Court Precedent, and the Second Circuit mandate. See Defendant Memo in Opposition to Plaintiff's Motion to Compel…; Dkt.143, p. 15.

Over five years ago, Fordham and Plaintiff's prior counsel negotiated the February 14, 2019 Stipulation and Protective Order Dkt. 24 (Exhibit 4 ) to address confidentiality issues. Now, five years later Fordham untruly argues as if there is no stipulated Protective Order to which Fordham is a signatory.

The Double Standard: Fordham used comparator names and opened the door
Although Fordham now claims that they need comparator names redacted, they used *unredacted* comparator names when it suited them. Fordham provided comparators *without their*

9

*names redacted* in Fordham Vice-President Crooker's Affidavit, Dkt. 56. Previously, Fordham has recognized potential comparators, which they developed with Cravath. Fordham also used comparators, Profs. Hollwitz and Pirson in the submissions. Thus, Fordham "opened the door" even as they now try to fight case law and the Second Circuit mandate.

"[T]he weight of authority in the Second Circuit goes against allowing a party to redact information from admittedly responsive and relevant documents 'based on that party's unilateral determinations of relevancy.'" "Redactions on the grounds of "irrelevance are generally impermissible, especially where . . . a confidentiality stipulation and order . . . is in place." *Berney v. Apple Inc.*, 2021 U.S. Dist. LEXIS 250174 (D. Conn. 2021).

Nor has Fordham disclosed what they redacted with pages entirely blank.. In *Berney*, "the defendant acknowledge[d] that it is redacting identities of some potential comparators ... and the defendant has made its own determination of what factors are relevant to this case by making unilateral redaction determinations and then refusing to disclose the redacted information.

Redactions are normally impermissible unless based on legal privilege
"[R]edactions of portions of a document are normally impermissible unless the redactions are based on a legal privilege." *id.* But Fordham cites no legal privilege in their redactions - to the contrary. Fordham acknowledged that "the United States Supreme Court declined to extend a common law privilege to preclude disclosure of confidential peer review materials..." citing *University of Pennsylvania v. E.E.O.C.*, 493 U.S. 182 (1990). Dkt. 143, p. 14

Fordham has not shown "good cause" under Rule 26(c)(1) to justify redactions
Fordham has not shown "good cause" for its redactions under Rule 26(c)(1) to protect itself from "annoyance, embarrassment, oppression, or undue burden or expense." But "[t]o establish good cause under Rule 26(c)(1), courts require a particular and specific demonstration

10

of fact, as distinguished from stereotyped and conclusory statements." Fordham did not supply

the requisite particulars. *Trireme Energy Holdings, Inc*

Where a protective order is in place, privacy concerns are "routinely disallowed"
     Unlike Fordham's concerns expressed to this Court, "unilateral redactions based on

concerns about personal privacy or business sensitivity are routinely disallowed, particularly

where a protective order is in place allowing the parties to designate that information

"confidential" and restrict its use…" *Trireme Energy Holdings, Inc. v. Innogy Renewables US*

*LLC,* 2022 U.S. Dist. LEXIS 39589 (S.D.N.Y. 2022)

     In *Berney v. Apple Inc.*, 2021 U.S. Dist. LEXIS 250174 (D. Conn 2021), the court found

that the defendant's redaction of information on the grounds of irrelevance and privacy was not

acceptable since it prevented the plaintiff from assessing whether other employees were similarly

situated and whether they were treated differently. The Court granted Plaintiff's motion to

compel and overcome Defendant's redaction. However, in *Berney*, as should apply here, the

Court noted that "[t]he Confidential designation under the Standing Protective Order certainly

suffices to protect the information at issue in this case."

Fordham states Plaintiff failed to establish relevance of the names of the comparators: the
Second Circuit disagrees
     In discrimination cases, "granting plaintiff's discovery request for the employment files

of similarly-situated employees…allow[s] plaintiff to attempt to establish discrimination," citing

*Weinstock v. Columbia Univ.*, 1995 U.S. Dist. LEXIS 14003, *7 (S.D.N.Y. 1995). The Court

concluded that the "liberal discovery approach is meant to allow a plaintiff to independently

determine who constitutes her competitors for a discrimination claim." *Dass v. City Univ. of New*

*York,* 2022, U.S. Dist. LEXIS 202699, *9  (S.D.N.Y. 2022)

     The Stipulated Protective Order Addresses Confidentiality in the Fordham Statutes

11

The Stipulated Protective Order protects Fordham and Plaintiff's rights to adjudicate her

claims. It is also consistent with current federal case law and the Second Circuit decision.

Redactions inconsistent with the stipulation and protective order obstruct discovery. The Court's

Stipulated Protective Order safeguards confidentiality in the Fordham statutes §4-07.41

Confidentiality and the Fordham University Statutes
- The Fordham Statutes require Confidentiality.
- The Stipulated Protective Order specifically addresses Confidentiality.
- It permits designation as" Confidential" documents with sensitive Information.
- It specifies document that is not allowed to be designated as "Confidential."
- The Stipulated Protective Order limits use of materials for purposes of litigation, to be returned after the end of the litigation.
- The Fordham Statutes do not require any redaction contrary to the Defendant's assertions.
- 

The Fordham Statutes section on Confidentiality is as follows:
### §4-07.41 – Confidentiality— [Regarding Peer review Proceeses]
Except when otherwise directed by final order of or governmental tribunal of competent jurisdiction, faculty members and administrators engaged in procedures involving faculty personnel decisions shall treat as confidential all information disclosed during such procedures, as well as the fact of occurrence of the procedure and the result thereof except as otherwise provided in these statutes. Specifically, and without limiting the generality of the foregoing, this rule of confidentiality shall apply to all University Personnel serving on, testifying before, supplying information to and receiving information from the Tenure and Reappointment Appeals Committee, University Tenure Review Committee, Faculty Hearing Committee, and the Faculty Senate in executive session.
   The result of such procedures, together with the appropriate meaningful reasons therefore, shall be communicated to those involved, and to the Faculty Senate Office, as specified in these statutes. This rule of confidentiality shall also apply in other cases where these statutes so specify, and to prospective matters upon the request of the President or a Vice President of the University, or President of the Faculty Senate.
   Faculty members serving as members of any of the Committees mentioned in subdivision (a) and members of the Faculty Senate while the Senate is sitting in executive session, shall have the right to review all relevant documents and to interview witnesses. All University personnel having relevant knowledge, information or documents shall disclose such, free of any restriction imposed by this section, upon competent request therefore by such bodies.
   Failure to maintain the required confidentiality constitutes a breach of contract.

The Fordham Statutes section on Subpoenas and Personnel Files is as follows:
### §4-07.42 - Subpoenas
Personnel files are confidential [see §4-07.41]. No document in such file will be released by the University to any person without the written consent of the Vice President for Academic Affairs except in response to a final order of a court of competent jurisdiction, or a lawful subpoena duces tecum. The faculty member whose file is the subject of a subpoena duces tecum shall be

12

notified promptly upon receipt of the subpoena, normally on the same day, both by telephone and by certified mail directed to the residence address of the faculty member. The purpose of the prompt notification is to afford the faculty member and his counsel, if any, sufficient time to move to quash the subpoena. In no case will file material which is not specifically subpoenaed be released in response to a subpoena or otherwise. Nothing in this statement of policy shall bar the University, sua sponte, from moving to quash the subpoena

Fordham's "Confidential" Designation on every page violates the valid Protective Order

Fordham violated the Stipulated Protective Order in failing to address Plaintiff's Motion to Compel or explain their wholesale designations as "confidential" for every document it produced, including those from Plaintiff's email accounts and attachments.

Plaintiff is prejudiced by this improper use of the Confidential designation because it creates additional burdens upon Plaintiff to keep confidential *any* document produced by Fordham. Most egregious – many documents marked Confidential are *Plaintiff's emails*. Thus, Fordham attempts to impose such a burden upon documents that Plaintiff already had within her possession prior to Defendant's production.

Misrepresenting the *Black v. NYU* name redactions case

The only case they cite attempting to contradict the Second Circuit Mandate on comparator name redactions is *Black v. NYU*. But Fordham misconstrues *Black*. Although the case does not address comparator names, Fordham misrepresents it by saying it does. *Black v. New York Univ. Medical Ctr.*, 1996 U.S. Dist. LEXIS 7632 (S.D.N.Y. 1996).

In an outright falsification, Fordham states in their Memorandum:

"As held by the Court in *Black,* an institution must provide relevant peer review materials and personnel files of comparators, but may appropriately redact the names and any personally identifying information contained in those materials. Dkt. 143, p.17

In *Black* only the names of external evaluators who wrote letters and peer reviewers were redacted. But there is nothing about redaction of comparator names-no caselaw supports it.

13

However, Fordham did not disclose to this Court that *Black* did not address the name redaction

of comparators.

Nor did Fordham address that in employment discrimination cases, information about

comparators — those employees who are similarly situated to the plaintiff but did not suffer the

same adverse employment action — is crucial for establishing discrimination. Such information

is necessary to show that the plaintiff was treated less favorably than others under similar

circumstances.

Cases contradicting Fordham's unauthorized redactions are the ones below. The

following cases are taken from *Dass v. City Univ. of New York,* 2022, U.S. Dist. LEXIS 202699

(S.D.N.Y. 2022):

> "The very essence of Title VII is comparative evidence: Was the plaintiff treated differently from persons not in her protected group?" *Weinstock v. Columbia Univ.*, 1995 U.S. Dist. LEXIS 14003 (S.D.N.Y. 1995)

> "A disparate treatment claim often includes a combination of strong statistical evidence of disparate impact coupled with anecdotal evidence of the employer's intent to treat the protected class unequally." *Kassman v. KPMG LLP*, 416 F. Supp. 3d 252, 284 (S.D.N.Y. 2018) (quoting *Mozee v. Am. Commercial Marine Serv. Co.*, 940 F.2d 1036, 1051 (7th Cir. 1991)).

> A court should not deny a plaintiff comparator discovery before she even attempts to make a showing of discrimination. *Chen-Oster v. Goldman, Sachs & Co.*, 2019 U.S. Dist. LEXIS 123891 (S.D.N.Y. 2019) ("Denying all discovery of comparators, however, would prevent" plaintiff from attempting to show disparate impact); see also *Weinstock*, 1995 U.S. Dist. LEXIS 14003, 1995 (granting plaintiff's discovery request for the employment files of similarly-situated employees to allow plaintiff to attempt to establish discrimination).

"The Supreme Court rejected a university's claim that a common-law privilege sheltered

peer review documents relating to the tenure process from privilege… Finally, even assuming

the validity of defendants' claim of a chilling effect, the documents here appear to be probative—

potentially, centrally probative—of the allegations at issue. Plaintiff will find them instructive in

fashioning discovery and potentially organizing a trial. Plaintiff's need for the documents

14

requested far outweighs 'any potential harm caused to defendants by disclosure.'" M*ahulawde v.*

*Fashion Inst. of Tech.*, 2022 U.S. Dist. LEXIS 217082 (S.D.N.Y. 2022)

At the January 29, 2020 Discovery Hearing, Fordham sidestepped the Court's subpoena

redaction question, omitting the fact that Fordham's Statutes do not require any redactions

untruly asserted by Fordham -The Statutes allows unredacted comparator personnel files.

The Fordham Statutes say nothing about redactions, contrary to Defendant's untrue

statements as of today: "we did redactions as required by statutes…."

THE COURT: I'm sorry. If she served you with a subpoena, does that permit you to turn over the files in an unredacted fashion of the comparators?
MS. DRYER: With a lawful subpoena. It is Fordham's position this is not a lawful and correct subpoena.
THE COURT: Why not?
MS. DRYER: Because we have turned over all the information that's sought in the subpoena.
See Transcript, January 29, 2020 District Court Discovery Hearing, Dkt. 67, p. 24

However, the Fordham attorney did not disclose that on April 11, 2019, she had written to

Cravath that the Fordham Statutes allow unredacted files:

"As you have seen in the Faculty Statutes and as Dr. Solomon fully understands,
there is a multi-step process that must be followed if the confidential records are to be produced
without redaction which would significantly delay the production. See §4-07.41. Moreover, the
Faculty Statutes effectively give the affected faculty member standing to object to the production
of their unredacted records. See §4-07.42.
As the per the email above, Fordham also violated their Statutes in regards to the faculty

member. In their Declaration submitted with their Memo, Fordham falsely states that "The

biographical information of comparator professors is redacted in accordance with the University

Statutes." Dkt. 142, p. 4, ¶ 23. The Fordham Statutes say no such thing.

Fordham has had a series of back-and-forth misrepresentations. They first falsely told Cravath

that the Fordham Statutes require redactions of comparator names. They then told Cravath that

the Fordham Statutes require subpoenas to produce unredacted Personnel Files. They also said in

2019-2020, subpoenas allow unredacted personnel files; In 2024, they said subpoenas do not

allow production of unredacted files.

15

# CONCLUSION

Plaintiff respectfully requests that Defendants Cross-Motion to Compel Discovery be denied in its entirety and Defendant's Cross-Motion for a Different Protective Order also be denied in its entirety.

Dated: April 15, 2024                                   Respectfully submitted,

                                                        /s/ *Esther Solomon*
                                                        Esther Solomon
                                                        Plaintiff Pro Se

Exhibit List

1. Transcript, January 11, 2024 Hearing

2. Fordham's attorney's February 29,2024 acknowledgement of Plaintiff's production

3. Plaintiff's *Proposed Case Discovery Plan with Protective Order Indicated*, which Fordham rejected.

4. Stipulation and Protective Order, Dkt. 24

# EXHIBITS

Case: 24-3056, 11/22/2024, DktEntry: 1.1, Page 438 of 621
Case 1:18-cv-04615-ER Document 165-5 Filed 02/16/24 Page 290 of 132

1

```
      O1BBSOLC
 1    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 2    -------------------------------x
 3    ESTHER SOLOMON,
 4                   Plaintiff,
 5           v.                              18 Civ. 4615 (ER)
 6    FORDHAM UNIVERSITY
      ADMINISTRATION, ROSE HILL
 7    CAMPUS and FORDHAM UNIVERSITY,
 8                   Defendants.
                                             Teleconference
 9    -------------------------------x
                                             New York, N.Y.
10                                           January 11, 2024
                                             11:30 a.m.
11
      Before:
12
                         HON. EDGARDO RAMOS,
13
                                             District Judge
14
15
16
17
18                        APPEARANCES
19    ESTHER SOLOMON, Pro Se Plaintiff
20    CULLEN & DYKMAN, LLP
          Attorneys for Defendants
21    BY:  JENNIFER A. McLAUGHLIN
22
23
24
25
```

ES_003472

O1BBSOLC

1           (Case called)

2           MS. SOLOMON: Good morning, your Honor. My name is

3 Esther Solomon, and I'm a plaintiff, pro se. Happy New Year to

4 everybody.

5           THE DEPUTY CLERK: Counsel for defendant.

6           MS. McLAUGHLIN: Good morning, your Honor. This is

7 Jennifer McLaughlin with Cullen & Dykman, LLP, representing

8 Fordham University.

9           THE COURT: Good morning to you all. Welcome back.

10 This matter is on for a conference. I note for the record that

11 it is being conducted by telephone. As the parties are aware,

12 the Second Circuit recently vacated and remanded aspects of my

13 opinion and order from March of 2022, indicating that we should

14 consider certain aspects of Ms. Solomon's complaint that I

15 neglected to take into consideration for reasons because I

16 believed them to be time-barred. First of all, Ms. Solomon,

17 how are you doing?

18           MS. SOLOMON: I'm fine. How are you, your Honor?

19           THE COURT: I'm well. Thank you. Let me ask because

20 this matter has been pending for sometime, and there has been a

21 lot of effort put into it, both by my chambers and by all of

22 you. Have you folks had an opportunity to discuss this matter

23 after the Second Circuit's opinion and before today,

24 Ms. McLaughlin?

25           MS. McLAUGHLIN: We have not discussed the matter,

O1BBSOLC

your Honor.

THE COURT: Ms. McLaughlin -- and I'll get to you as well Ms. Solomon -- do you believe that there's an opportunity or there's a likelihood that further discussions amongst the parties either with the Court's help or without might resolve this matter by way of settlement?

MS. McLAUGHLIN: I did explore the aspect of mediation internally with my client, and we were discussing if that was a possibility. I will admit this matter has been pending, and my former colleagues are no longer with the firm that handled it. I understand from my review of the file that there was an early mediation that was not successful, but maybe it's a possibility at this juncture.

THE COURT: And, Ms. Solomon, let me ask you, do you think that it might be useful for you and Fordham to engage in the mediation?

MS. SOLOMON: I believe it will be helpful at a later point in time, your Honor. Because I think right now there are some important matters that are pending that need to be clarified so that there could be informed discussions and fair discussions.

If you may notice in my request to Ms. McLaughlin, I requested my personnel file and the files of the comparative professors which were pending. I had submitted the subpoena back in November 2019, and I had the motion to compel discovery

O1BBSOLC

1  with a subpoena which this Court actually dismissed without

2  prejudice to re-file in the first order. And there has been no

3  discovery since 2019, March 2019.

4         And there is some very, very substantive issues here

5  which is my status at the university. That is an issue that

6  has been disputed, but it is clear to me increasingly with even

7  more information that's coming up that I had clearly been

8  terminated as of February 1, 2020, secretly without cause,

9  without due process, which is an extraordinary event. And also

10 Fordham has never involved me in anything. I had did nothing

11 wrong. The de-tenuring process is something very, very

12 elaborate. It usually take two years. None of this has

13 happened here. What is very, very clear now is they filed this

14 termination report, the first in 2019 and the second in 2020

15 February 1st, actually three days after the last hearing with

16 this Court.

17        And basically there are some additional reports that I

18 keep getting from the IRS that say very clearly that I'm not

19 deemed to be full-time faculty. So I think getting my

20 personnel file will be important so that I will know what there

21 is to discuss and how they can reinstate me and what there is

22 to negotiate about. So what I'm discussing about is the form

23 by IRS that's annually. It's mandated for large employers to

24 report how their employees are. And they say that I was not a

25 full-time faculty for any part of that year.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

ES_003475

O1BBSOLC

1          And according to university statute, Paragraph
2    4-03.01, which is in paragraph 210 of my complaint and in
3    exhibit 18, pages 107. I'm quoting, "Faculty responsibility,
4    appointment as a faculty member is a contract for full-time
5    engagement in faculty responsibilities during the academic
6    year." So this is how faculty are defined. And now they have
7    filed their report to the department of labor and IRS, and
8    annually they're filing reports that I am not a full-time
9    member employee. And that is in form 1095-G of the Internal
10   Revenue Service and the Department of Treasury. So I have the
11   form from 2022. All of this to me says clearly that they took
12   this adverse action, and that goes to the heart of the matter.
13   Although Fordham has denied it and has told the Second Circuit
14   that I remain a tenured professor, but it seems to be
15   inconsistent with the report to other federal authorities.

16          THE COURT: I have to admit, Ms. Solomon, I'm not
17   familiar with the IRS documentation that you're referring to.
18   But as I understand it, the university has represented to the
19   IRS and to the department of labor that you are no longer
20   full-time faculty. Is that correct?

21          MS. SOLOMON: Yes, by stating I'm no longer full-time.
22          THE COURT: Are you asking for limited discovery, that
23   is to say your personnel file before considering whether or not
24   you want to go to mediation?

25          MS. SOLOMON: No. I need to have all of this data.

O1BBSOLC

1  The Second Circuit clearly stated also the pay claim should be
2  reinstated, and the comparators are critical for that, not for
3  the motion to dismiss stage, but for a later point in time.
4  And the comparison with comparators is critical to all the
5  discrimination and retaliation claim; because I have been
6  discriminated relative to males and younger females in my
7  department, both in terms of assignment and the pay, so it is
8  the heart of the case.

9      So I think they should produce -- to honor the
10 subpoenas.  I filed the subpoenas consistent with the
11 university's statutes, and I should be getting these documents.
12 There's also in this case protective order, document 24, in
13 February 2019 that protect any confidentiality concern there
14 would be.  And I'm asking everything to be consistent with the
15 protective order.  And we need to have full discovery so that I
16 know what my rights are and what I should be settling.  I
17 should not be settling without the necessary information.  It
18 would be very unfair and disadvantageous to me at this point
19 now.

20     THE COURT:  Thank you.  Ms. McLaughlin, did you want
21 to say anything?

22     MS. McLAUGHLIN:  I will say that I know from again my
23 review of the file there was limited discovery produced at the
24 outset of the case including comparator information and also
25 Professor Solomon's personnel file.  And I agree to the extent

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

ES_003477

O1BBSOLC

1   she would like that updated, I agree that that would be
2   relevant to her what's going on since then. I agree with that
3   request. I have to work with her as to what she believes is
4   missing from the comparator files, and I'm happy to engage in
5   that conversation.

6           THE COURT: So this is what we're going to do. I will
7   hold off on making the referral to mediation and ask the
8   parties, cause I don't believe we have one, fill out the
9   discovery schedule form and submit that on consent by no later
10  than tomorrow end of day. Ms. Solomon, this is simply a
11  schedule that I issue in every case. I typically give the
12  parties six months to complete discovery. We'll give you six
13  months to complete discovery. There's no magic to the dates on
14  the form, and so you should discuss it with Ms. Solomon.  Give
15  yourself six months which will put us at July, so I'll give you
16  till July 12, to complete discovery.

17          And if you encounter any difficulty in the meantime,
18  you can come back and ask for further relief from that date;
19  but, Ms. McLaughlin, I'll ask you to take the lead in filling
20  out the form, fill out July 12 the date of discovery cut off,
21  and submit that by no later than end of day tomorrow. And I
22  would greatly encourage the parties -- you don't have to wait
23  until July 12. If at any point before then you believe you can
24  engage in fruitful settlement discussions, you can contact
25  chambers, and I can refer you again back to mediation or to the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

O1BBSOLC

1   assigned magistrate judge as you wish. Okay. So with that,
2   Ms. Solomon, is there anything else to do today?

3           MS. SOLOMON: Yes. There is something not very major,
4   but I think there are some very important issues in terms of
5   the case and my allegations and to the fact that I was
6   replaced; that I was discriminated and replaced by people
7   outside of my protected class. I think that's a very important
8   issue to be remembered. And also the issue of due process, the
9   lack of due process. There is an important case that the
10  Second Circuit came up with after your Honor's last order,
11  which is called *Vengalattore v. Cornell University*. The points
12  there are of extreme importance for due process for tenured
13  professors, and also reverses the previous established pattern
14  that it wasn't clear whether Title IX applies to professors.
15  And what this case determined is that IX applies to intentional
16  discrimination of professors. And I had Title IX claims, and I
17  think those also should be included in light of this later
18  development. I hope is relevant. Thank you for hearing me,
19  your Honor.

20          THE COURT: Absolutely. Obviously there's a lot of
21  issues involved here. We're not going to resolve them today.
22  And so what we'll do is, we'll proceed to discovery.

23          Ms. Solomon, you are obviously required to engage in
24  discovery in good faith. I don't anticipate that you will not.
25  However, you will also likely receive discovery requests from

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

ES_003479

Case 1:18-cv-04058-ER Document 116-5 Filed 11/27/24 Page 99 of 132
Case: 24-3056, 11/22/2024, DktEntry: 1.1, Page 446 of 621

9

O1BBSOLC

1   Ms. McLaughlin. And when you do, you should respond to them
2   promptly. And again, if there are any issues concerning
3   discovery between now and the end of or July 12, the parties
4   can come back and ask for relief. And with that, unless
5   there's anything else, Ms. Solomon?

6           MS. SOLOMON: No. Thank you, your Honor. Thank you
7   for setting up the schedule, and happy New Year and all the
8   best.

9           THE COURT: Anything else from you, Ms. McLaughlin?
10          MS. McLAUGHLIN: I just have one question. Will the
11  Court be issuing a further order on the remand as it relates to
12  the discrimination claims and the motions to dismiss those,
13  because it's my understanding from my read of the order that
14  the district court would consider per the Second Circuit's
15  guidance certain items and determine whether its decision still
16  stands? And that would narrow pieces of discovery presumably
17  because of the statute of limitations issues and also guide my
18  answer to the complaint.

19          THE COURT: There's nothing before me. There's the
20  remand. It's not a motion that's been brought by Fordham. You
21  can and in the ordinary course move to dismiss again I suppose,
22  and we could consider that.

23          But as things stand now, we are required to consider
24  whether or not Ms. Solomon can make out her case and we're in
25  discovery.

Case 24-3056, 11/22/2024, DktEntry: 1.1, Page 447 of 621
Case 1:24-cv-00316-ERS-ER Document 165-5-7 Filed 02/09/24 Page 100 of 132

10

O1BBSOLC

1          MS. McLAUGHLIN:  Okay.   Thank you for the

2     clarification.

3               THE COURT:  We are adjourned.  Stay well, everyone.

4               (Adjourned)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

ES_003481

# Document Production ES

5 messages

**Etaki Etaki** <etaki33@gmail.com>
To: "McLaughlin, Jennifer" <jmclaughlin@cullenllp.com>
Cc: "Soebke, Ryan" <rsoebke@cullenllp.com>

Tue, Feb 27, 2024 at 5:21 PM

Hi Ms McLaughlin and Mr Soebke,

Attached to this email is my new document production consisting of the following:.

ES_3000 - ES_3304 Exhibits
ES_3305 - ES_3388 Attachments
ES_3389 - ES_3393 Tables
ES_3394 - ES_3484 Transcripts
ES_3485 - ES_3572 IRS and COBRA Regulations
ES_3573 - ES_3622. Correspondence

Please confirm whether you accept Discovery Production service by email.

Sincerely,

Esther Solomon
Plaintiff pro se

**6 attachments**

**Solomon 3305 - 3388 Attachments.pdf**
2060K

**Solomon 3000 - 3304 TAC Exhibits.pdf**
6940K

**Solomon 3389 - 3393 Tables.pdf**
815K

**Solomon 3394 - 3484 Transcripts & 1095C Form.pdf**
1067K

**Solomon 3485 - 3572 IRS and COBRA Regs.pdf**
2792K

**Solomon 3573 - 3622 Correspondence.pdf**
1489K

**Etaki Etaki** <etaki33@gmail.com>
To: "McLaughlin, Jennifer" <jmclaughlin@cullenllp.com>
Cc: "Soebke, Ryan" <rsoebke@cullenllp.com>

Thu, Feb 29, 2024 at 11:29 AM

Please confirm you received my document production of February 27, 2024, Documents  ES_3000 to ES_3622.

[Quoted text hidden]

**McLaughlin, Jennifer** <jmclaughlin@cullenllp.com>                                        Thu, Feb 29, 2024 at 4:55 PM
To: Etaki Etaki <etaki33@gmail.com>
Cc: "Soebke, Ryan" <rsoebke@cullenllp.com>

Hello Dr. Solomon,

Confirming receipt.
Thank you,
Jen

**Jennifer McLaughlin**
Partner
Cullen and Dykman LLP

Uniondale, New York 11553
T: 516.357.3889 | F: 516.357.3792
E:

ATTORNEY-CLIENT PRIVILEGED COMMUNICATION - DO NOT FORWARD OR COPY - CONFIDENTIALITY NOTICE: The contents of this e-mail
message and any attachments are intended solely for the personal and confidential use of the recipient(s) named above. This communication is
intended to be and to remain confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended
recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete
this message and its attachments.

**From:** Etaki Etaki <                          >
**Sent:** Thursday, February 29, 2024 11:30 AM
**To:** McLaughlin, Jennifer <                          >
**Cc:** Soebke, Ryan <                          >
**Subject:** [EXTERNAL]Re: Document Production ES

        This email originated from outside your organization. Exercise caution when opening attachments or clicking
links, especially from unknown senders.

[Quoted text hidden]

**Etaki Etaki** <etaki33@gmail.com>                                        Thu, Feb 29, 2024 at 6:34 PM
To: "McLaughlin, Jennifer" <jmclaughlin@cullenllp.com>
Cc: "Soebke, Ryan" <rsoebke@cullenllp.com>

Thnaks.
[Quoted text hidden]

**Etaki Etaki** <etaki33@gmail.com>                                        Thu, Feb 29, 2024 at 6:37 PM
To: "McLaughlin, Jennifer" <jmclaughlin@cullenllp.com>
Cc: "Soebke, Ryan" <rsoebke@cullenllp.com>

Case: 24-3056, 11/22/2024, DktEntry: 1.1, Page 450 of 621
Case 1:24-cv-06046-ER-LGS Document 1-5 Document 1-5 Filed 02/08/24 Page 103 of 132

Hi Ms. McLaughlin,

Thanks for confirming.

Sincerely,

Esther Solomon

.
[Quoted text hidden]

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Rev. June 2013

--------------------------------------------------x

ESTHER SOLOMON,

                        Plaintiff(s),

     - against -

**CIVIL CASE DISCOVERY PLAN
AND SCHEDULING ORDER**

FORDHAM UNIVERSITY,

                        Defendant(s).

18    CV    4615    (ER)

--------------------------------------------------x

Previous Scheduling Order: Dkt #20 12-13-2018
Stipulated Protective Order Dkt# 24 2-14-2019

This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):

1.    All parties [consent]/[do not consent] to conducting all further proceedings before a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c). The parties are free to withhold consent without adverse substantive consequences. (If all parties consent, the remaining paragraphs of this form need not be completed.)

2.    This case [is] [is not] to be tried to a jury.

2b.   Regarding Plaintiff's outstanding "Motion to Compel Compliance with Subpoenas, Compliance with Document Requests, and Compliance with Representations to the Court" (Dkt #70) , Defendant will notify · Plaintiff whether it will comply by 1/22/2024.

3.    Joinder of additional parties must be accomplished by January 26, 2024     .

4.    Amended pleadings may be filed until  January 26, 2024     .

     SECOND SEE ⊂E⊃

5.    Interrogatories shall be served no later than  February 16, 2024   , and responses thereto shall be served within thirty (30) days thereafter. The provisions of Local Civil Rule 33.3 [shall] [shall not] apply to this case.

     SECOND

6.    First request for production of documents, if any, shall be served no later than February 16, 2024     .

7.    Non-expert depositions shall be completed by  May 1, 2024               .

     a.    Unless counsel agree otherwise or the Court so orders, depositions shall not be held until all parties have responded to any first requests for production of documents.

     b.    Depositions shall proceed concurrently.

     c.    Whenever possible, unless counsel agree otherwise or the Court so orders,

non-party depositions shall follow party depositions.

8.  Any further interrogatories, including expert interrogatories, shall be served no later than __May 15, 2024__.

9.  Requests to Admit, if any, shall be served no later than __May 15, 2024__.

10. Expert reports shall be served no later than __May 31, 2024__.

11. Rebuttal expert reports shall be served no later than __July 1, 2024__.

12. Expert depositions shall be completed by __July 12, 2024__.

13. Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14. **ALL DISCOVERY SHALL BE COMPLETED BY** __July 12, 2024__.

15. Any motions shall be filed in accordance with the Court's Individual Practices.

16. This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17. The Magistrate Judge assigned to this case is the Hon. _____.

18. If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19. The next case management conference is scheduled for _____, at _____. (The Court will set this date at the initial conference.)

SO ORDERED.

Dated: New York, New York

_____

_____
Edgardo Ramos, U.S. District Judge

Case 24-3056, 11/22/2024, DktEntry: 1.1, Page 453 of 621
Case 1:18-cv-04615-ER Document 165-57 Filed 02/09/24 Page 106 of 132

Case 1:18-cv-04615-ER Document 24 Filed 02/14/19 Page 1 of 6

|  | USDC SDNY |
| --- | --- |
|  | DOCUMENT |
| UNITED STATES DISTRICT COURT | ELECTRONICALLY FILED |
| SOUTHERN DISTRICT OF NEW YORK | DOC # _____ |
|  | DATE FILED: 2/14/2019 |

---

ESTHER SOLOMON,

Plaintiff,

-against-

FORDHAM UNIVERSITY,

Defendant.

Case No.: 18-cv-04615 (ER)

STIPULATION AND ~~PROPOSED~~ PROTECTIVE ORDER

---

WHEREAS, Plaintiff Esther Solomon and Defendant Fordham University ("the Parties") having agreed to the following terms of confidentiality, and the Court having found that good cause exists for the issuance of an appropriately tailored confidentiality order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, it is hereby

ORDERED that the following restrictions and procedures shall apply to the information and documents exchanged by the Parties in connection with the pre-trial phase of this action ("Discovery Material"):

1. The producing party (either in the party's own capacity or through the party's undersigned counsel) may designate any Discovery Material, in whole or in part, as "confidential" if the producing party determines, in good faith, that such designation is necessary to protect its interests in information that is sensitive and non-public. Such confidential information may include, but is not limited to:

   a. financial, benefit and/or payroll information concerning the Parties or their current or former employees;

   b. personnel files, evaluations and employment history of the Parties or their current or former employees;

   c. sensitive personal information including medical information and/or information concerning physical, psychological, psychiatric and/or emotional history of the Parties or any of their current or former employees; and

   d. documents reflecting social security numbers, tax returns and/or tax documents of the Parties or any of their current or former employees; and

Case: 24-3056, 11/22/2024, DktEntry: 1.1, Page 454 of 621
Case 1:18-cv-04615-ER Document 165-7 Filed 02/08/24 Page 307 of 132

Case 1:18-cv-04615-ER Document 24 Filed 02/14/19 Page 2 of 6

      e.     such other documents that the Parties may in good faith designate.

2.    Discovery Material designated by a party as confidential will be stamped "CONFIDENTIAL" by the producing party ("Confidential Information").

3.    The following information shall not be stamped "CONFIDENTIAL" or otherwise be deemed to constitute Confidential Information under this Order:

      a.     information in the public domain;

      b.     information already known by the receiving party through proper means; and

      c.     information that is or becomes available to a party from a source other than the party asserting confidentiality and rightfully in possession of such information on a non-confidential basis.

4.    Confidential Information will be held and used by the person receiving such Confidential Information solely for use in connection with the above-referenced action.

5.    Confidential Information shall not be disclosed to any person, except:

      a.     The Plaintiff and counsel retained for this action, including any paralegal, clerical and other assistant employed by such counsel and assigned to this matter;

      b.     As to any document, its author, its addressee, and any other person indicated on the face of the document as having received a copy of the document;

      c.     Any witness who counsel for a party in good faith believes may be called to testify at trial or deposition in this action, provided that such person has first executed a Non-Disclosure Agreement in the form annexed as Exhibit A hereto;

      d.     Any person retained by a party to serve as an expert witness or otherwise provide specialized advice to counsel in connection with this action, provided such person has first executed a Non-Disclosure Agreement in the form annexed as Exhibit A hereto;

      e.     Stenographers engaged to transcribe depositions conducted in this action;

      f.     Independent photocopying, graphic production services, or litigation support services employed by the parties or their counsel to assist in this action and computer service personnel performing duties in relation to a computerized litigation system;

 

      g.     The Court, its support personnel and the mediator (or other person having access to any Confidential Information by virtue of his or her position with the Court); and

      h.     Any person on such terms and conditions as the parties may mutually agree, or as the Court may hereafter direct by further order.

6.    Prior to disclosing or displaying Confidential Information to any person set forth in Paragraphs 5(c) or 5(d) above, the disclosing party must:

      a.     Inform the person of the confidential nature of the Discovery Material;

      b.     Inform the person that this Court has enjoined the use of the Discovery Material by him/her for any purpose other than this litigation and has enjoined the disclosure of the Discovery Material to any other person; and

      c.     Require each such person to sign an agreement to be bound by this Order in the form attached as Exhibit A hereto.

7.    In the event a party challenges another party's designation of confidentiality, the Parties shall make a good faith effort to resolve the dispute, and in the absence of a resolution, the challenging party may seek resolution by the Court. Nothing in this Order constitutes an admission by any party that Confidential Information disclosed in this case is relevant or admissible. Each party reserves the right to object to the use or admissibility of the Confidential Information.

8.    The disclosure of Discovery Material without designating it as "confidential" shall not constitute a waiver of the right to designate such Discovery Material as Confidential Information. If so designated, the Discovery Material shall thenceforth be treated as CONFIDENTIAL subject to all the terms of this Stipulation and Order.

9.    Each person who has access to Discovery Material that has been designated as "confidential" shall take all reasonable precautions to prevent the unauthorized or inadvertent disclosure of such material.

10.   Pursuant to Federal Rule of Evidence 502, the production of privileged or work- product protected documents or communications, electronically stored information ("ESI") or information, whether inadvertent or otherwise, shall not constitute a waiver of the privilege or protection from discovery in this case or in any other federal or state proceeding. This Order shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d). Nothing contained herein is intended to or shall serve to limit a party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.

11.   Notwithstanding the designation of Discovery Material as "confidential" in discovery, there is no presumption that such information shall be filed with the Court under seal.

Case: 24-3056, 11/22/2024, DktEntry: 1.1, Page 456 of 621
Case 1:18-cv-04615-ER Document 24-7 Filed 02/08/24 Page 109 of 132

Case 1:18-cv-04615-ER Document 24 Filed 02/14/19 Page 4 of 6

12. Nothing in this Order shall (a) restrict either party's rights with respect to a party's own documents or information; (b) restrict either party's rights with regard to Discovery Material that has not been designated as "confidential"; (c) prejudice either party's rights to object to the production or disclosure of documents or other information that it considers not subject to discovery; or (d) prejudice either party's right to seek, either by agreement or by application to the Court, greater protection than that provided herein.

13. At the conclusion of litigation, Confidential Information and any copies thereof shall be promptly (and in no event later than 30 days after entry of final judgment no longer subject to further appeal) returned to the producing party or certified as destroyed, except that the parties' counsel shall be permitted to retain their working files on the condition that those files will remain protected.

SO STIPULATED AND AGREED.

CRAVATH, SWAINE & MOORE LLP
Attorneys for Plaintiff

By: _Jeffrey Then_

Dated: _2/12/2019_

CULLEN AND DYKMAN LLP
Attorneys for Defendant

By: _James G. Ryan_

Dated: _2/12/2019_

So Ordered this ___14th___ day of ___February___, 2019:

Hon. Edgardo Ramos, U.S District Judge

Case: 24-3056, 11/22/2024, DktEntry: 1.1, Page 457 of 621
Case 1:18-cv-04615-ER Document 24-5-7 Filed 02/09/24 Page 110 of 132

Case 1:18-cv-04615-ER Document 24 Filed 02/14/19 Page 5 of 6

# EXHIBIT A

Case: 24-3056, 11/22/2024, DktEntry: 1.1, Page 458 of 621
Case 1:18-cv-04615-ER Document 51-57 Filed 02/09/24 Page 112 of 132
Case 1:18-cv-04615-ER Document 24 Filed 02/14/19 Page 6 of 6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

ESTHER SOLOMON,

                         Plaintiff,         Case No.: 18-cv-04615 (ER)

        -against-

FORDHAM UNIVERSITY,             NON-DISCLOSURE AGREEMENT

                       Defendant. :


       I, _____, have been informed by counsel that certain documents or information to be disclosed to me in connection with this action have been designated as confidential. I have been informed that any such documents or information labeled "CONFIDENTIAL" are confidential by Order of the Court.

       I hereby agree that I will not disclose any information contained in such documents to any other person. I further agree not to use any such information for any purpose other than this litigation.

DATED:

_____

# EXHIBIT 8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

ESTHER SOLOMON,

                      Plaintiff,

    - against -

FORDHAM UNIVERSITY,

                      Defendant.
------------------------------------------------------------------------X

Case No.:
1:18-cv-04615-ER

**DECLARATION**

RYAN SOEBKE, declares, pursuant to 28 U.S.C. § 1746, as follows:

1.     I am an attorney-at-law and am associated with the law firm of Cullen and Dykman LLP, attorneys for defendant Fordham University (the "University" or "Fordham), in the above-entitled action.

2.     I submit this declaration in further support of Fordham's cross-motion to compel Plaintiff Esther Solomon ("Plaintiff") to conduct a reasonable search of all potentially relevant documents and communications in her possession and for a protective order.

3.     In her Memorandum of Law Opposing Defendant's Cross-Motion to Compel Discovery (Plaintiff's "Opposition"), Plaintiff claims that Fordham has failed "to adhere to its discovery obligations." Opposition at p. 2.

4.     As set forth in detail in Fordham's Opposition to Plaintiff's Motion to Compel, Fordham has made a number of productions to Plaintiff since this start of this litigation.

5.     Prior to the instant motion practice, Fordham produced the following categories of documents to Plaintiff:

- Plaintiff's entire Personnel File from the start of her employment with Fordham through the date of Fordham's production

1

- Plaintiff's entire Fordham email file through the date of Fordham's initial production

- Personnel Files for comparator professors 1-12 as identified by Plaintiff

- Faculty bios for comparator professors 1-12

- W2s for comparator professors 1-12

- Faculty Activity Reports for comparator professors 1-12

- Responsive emails from Fordham administrators

- Documents related to the structure of Plaintiff's department at Fordham

6.      Fordham also made additional document production to Plaintiff on March 18, 2024 and April 24, 2024.

7.      The March 18, 2024 production contained student evaluations for Plaintiff and comparator professors 1-12.

8.      The April 24, 2024 production totaled 1,900 pages and contained the following categories of documents:

- All documents added to Plaintiff's Personnel File since Fordham's first production

- Fordham's Title IX Office's entire file related to Plaintiff

- Personnel Files for comparator professors 13-15

- Documents related to salary and benefits analyses undertaken by Fordham

- Documents from 2024 related to Plaintiff's continued employment with Fordham

9.      To date, Fordham has produced over 17,000 pages of documents to Plaintiff.

10.     Fordham is continuing review of its files and intends to make additional productions in the near future.

71163.29 21033995v1

11.    Fordham will be producing additional emails from Plaintiff's and the comparator professor's email accounts as well as additional documents responsive to Plaintiff's Second Request for Production.

12.    As such, it is clear that Plaintiff's claim that Fordham has been deficient in meeting its discovery obligations is entirely without merit.

13.    While Fordham plans to make additional document productions in the near future, it has already produced the overwhelming majority of responsive documents in its possession.

I declare, under penalty of perjury, that the foregoing is true and correct.

Executed on this 7th day of May, 2024, at Uniondale, New York.

/s/Ryan Soebke
Ryan Soebke

71163.29 21033995v1

# EXHIBIT 9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
ESTHER SOLOMON,

                      Plaintiff,

- against -

FORDHAM UNIVERSITY,

                      Defendant.
-------------------------------------------------------------------------X

Case No.:
1:18-cv-04615-ER


## DEFENDANT FORDHAM UNIVERSITY'S MEMORANDUM OF LAW IN FURTHER SUPPORT OF FORDHAM UNIVERSITY'S CROSS-MOTION TO COMPEL



333 Earle Ovington Blvd., 2nd Floor
Uniondale, New York 11553
516.357.3700

**TABLE OF CONTENTS**

Page(s)

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ......................................................................................................................... 2

POINT I

FORDHAM'S PRODUCTION TO DATE ................................................................................ 2

POINT II

PLAINTIFF'S DISCOVERY DEFICIENCIES .......................................................................... 3

POINT III

FORDHAM'S REDACTIONS ARE PROPER............................................................................ 5

POINT IV

FORDHAM'S DESIGNATION OF DOCUMENTS AS CONFIDENTIAL IS PROPER............ 7

CONCLUSION .................................................................................................................... 8

71163.29 21033998v1

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Black v. N.Y. Univ. Med. Ctr.*, 94 Civ. 9074 (SS) (NRB),
   1996 U.S. Dist. LEXIS 7632 (S.D.N.Y. June 3, 1996) ............................................................. 5

*Citizens Union of City of New York v. Attorney Gen. of New York*,
   269 F. Supp. 3d 124 (S.D.N.Y. 2017) ...................................................................................... 6

*Kaplan v. Blue Hill Mem'l Hosp.*,
   No. 1:14-cv-00276-DBH, 2015 U.S. Dist. LEXIS 123256 (D. Me. Sep. 15, 2015) .................. 5

*Quinn v. Nat'l Basketball Ass'n*, 91 Civ. 8257 (MBM),
   1992 U.S. Dist. LEXIS 10822 (S.D.N.Y. July 23, 1992) .......................................................... 5

*Sabharwal v. Mount Sinai Med. Ctr.*,
   No. 09 CV 1950 (JBW), 2011 U.S. Dist. LEXIS 11023 (E.D.N.Y. Feb. 4, 2011) .................... 5

*University of Pennsylvania v. E.E.O.C.*,
   493 U.S. 182 (1990) ................................................................................................................ 6

*Urban Outfitters v. Hype Outfitters*,
   2006 U.S. Dist. LEXIS 117835 (S.D.N.Y. Oct. 30, 2006)........................................................ 4

*Weinstock v. Columbia University*,
   1996 WL 658437 (S.D.N.Y. 1996) .......................................................................................... 5

71163.29 21033998v1

## PRELIMINARY STATEMENT

Defendant Fordham University ("Fordham" or the "University") by its attorneys Cullen and Dykman LLP, respectfully submits the Declaration of Ryan Soebke, dated May 7, 2024 (the "Soebke Reply Dec.") and this memorandum of law in further support of Fordham's cross-motion for a protective order and to compel Plaintiff Esther Solomon ("Plaintiff") to conduct a reasonable search of documents and communications in her possession and to produce additional relevant documents and communications in her custody and control.

In her Memorandum of Law Opposing Defendant's Cross-Motion (Solomon's "Opposition"), Plaintiff misconstrues many of Fordham's arguments in support of its cross-motion. First, Fordham's cross-motion seeks to compel Plaintiff to conduct a reasonable search and review of documents and communications in her possession, including her personal Gmail account. Fordham is in no way asking for Plaintiff to engage in a "fishing expedition." Fordham simply seeks to ensure that Plaintiff is searching for and producing all relevant documents and communications in her possession.

In addition, Fordham is entitled to an additional protective order related to the redaction of the names of peer reviewers and alleged comparator professors in the documents it has, and will continue to produce, to Plaintiff. Fordham has a clear interest to protect the identities of those individuals, particularly since Plaintiff is a tenured faculty member at Fordham. Moreover, Plaintiff has not in any way established why the names of peer reviewers and alleged comparator professors are material and necessary to her continued pursuit of her claims. For the reasons stated in Fordham's moving papers and below, Fordham's cross-motion should be granted in its entirety.

**ARGUMENT**

**POINT I**

**FORDHAM'S PRODUCTION TO DATE**

Although not at issue in Fordham's motion, in her Opposition Plaintiff raises purported issues with Fordham's production to date. Plaintiff claims that Fordham has only filed the instant cross-motion to compel in an effort to "distract from their discovery stonewalling." Opposition, p. 1. Such claims are without merit.

As set forth in detail in the Soebke Dec. and the Soebke Reply Dec., Fordham has made a number of document productions to Plaintiff throughout this course of this litigation totaling over 17,000 pages. The documents produced by Fordham include Plaintiff's entire personnel file, Plaintiff's entire Fordham email file through the date of Fordham's initial production, the personnel files of the 15 alleged comparator professors identified by Plaintiff, W2s for Plaintiff and the 15 alleged comparator professors, and Faculty Activity Reports for Plaintiff and the 15 alleged comparator professors. Soebke Reply Dec., ¶ 5-8. Fordham most recently made two additional productions to Plaintiff, one on March 18, 2024 and another on April 24, 2024, which included student evaluations for Plaintiff and the alleged comparator professors, documents related to salary and benefits analyses undertaken by Fordham, and documents from 2024 related to Plaintiff's continued employment at Fordham. *Id.* at ¶ 7-8. Fordham is continuing its review of its files and intends to make additional productions in the near future.

In short, Fordham has more than complied with its discovery obligations in this matter. Fordham has already produced the overwhelming majority of responsive documents and communications in its possession. As explained in Fordham's opposition to Plaintiff's motion to compel, to the extent Plaintiff believes documents are missing from her personnel file, such

71163.29 21033998v1

documents are simply not in Fordham's possession and may never have been part of Plaintiff's personnel file.

<div align="center">

**POINT II**

**PLAINTIFF'S DISCOVERY DEFICIENCIES**

</div>

While Plaintiff has made recent productions of her own, she has still yet to entirely cure her own discovery deficiencies in this action. Plaintiff's most recent productions include additional documents from her personal files as well as additional emails from her Fordham.edu email account. Opposition, p. 2. Plaintiff states in her Opposition that she "is producing from her Fordham and Gmail accounts and will continue to search and produce additional responsive emails and documents." *Id.* This is the first time that Plaintiff has confirmed she would be undertaking a search and review for responsive emails in her personal Gmail account. Further, Plaintiff claims that Fordham attempted to "exclude" her production of emails produced in PDF format. *Id.* at p. 4. Rather, it was unclear form Plaintiff's prior productions whether her emails produced as scanned PDF documents, rather than in electronic format, were produced as part of a search and review of her email accounts or whether those documents existed in physical files in Plaintiff's possession. It appears that Plaintiff has now clarified that the emails produced by Plaintiff as scanned PDFs are part of her review of her email files.

Further, Plaintiff's claim that Fordham is in possession of the documents sought in its motion to compel is entirely meritless. Fordham does not have any access to Plaintiff's personal Gmail account or her personal files. As stated in Fordham's cross-motion, throughout this litigation, Plaintiff has refused to conduct a search and review of her personal email account. During the January 29, 2020 conference with the Court, Plaintiff stated that she was unaware that she needed to review and produce such documents and that a review of her personal email account

71163.29 21033998v1

would be "extremely burdensome." January 29, 2020 Tr. at p. 5, 32. Only now, more than 4 years later, has Plaintiff stated that she will conduct a review and production of documents contained in her personal email account.

While Fordham is in possession of documents contained in Plaintiff's Fordham.edu email account, this in no way relieves Plaintiff of her basic duty as a party to "conduct reasonable searches for documents responsive to discovery requests." *Urban Outfitters v. Hype Outfitters*, 2006 U.S. Dist. LEXIS 117835, at *2 (S.D.N.Y. Oct. 30, 2006). Fordham's cross-motion to compel seeks to have Plaintiff comply with a litigant's basic obligation to conduct a reasonable search for responsive documents which the Court should not view as a "fishing expedition." Fordham is clearly entitled to any documents or communications in Plaintiff's possession that relate to her claims in this action.

Finally, Plaintiff's claim that Fordham did not hold a meet and confer before filing the instant cross-motion is incorrect. As noted in Fordham's December 23, 2019 letter (ECF 63) and its January 30, 2024 letter (ECF 135), Fordham held a meet and confer conference with Plaintiff on December 5, 2019 at which time Plaintiff expressed her opinion that she did not need to produce documents from her personal email account. Plaintiff reiterated this position during the January 29, 2020 conference with Court. January 29, 2020 Tr. at p. 5, 32. Further, the Court granted Fordham leave to file the instant cross-motion in its order dated February 1, 2024. Fordham's cross-motion for a protective order related to its redaction of peer reviewers and alleged comparator professors' names is made in direct response to Plaintiff's motion to compel. As such, any additional meet and confer on that issue would have been redundant. Thus, it is clear that Fordham met its obligation to hold a meet and confer conference before filing its cross-motion to compel.

4

71163.29 21033998v1

## POINT III

## FORDHAM'S REDACTIONS ARE PROPER

Plaintiff also makes numerous misstatements regarding Fordham's request for a protective order confirming Fordham's right to redact the names of peer reviewers and alleged comparator professors in documents it produces in this action. First, Plaintiff's reference to the Stipulation and Protective Order dated February 19, 2019 is entirely irrelevant to Fordham's instant cross-motion as that order in no way addresses the redactions at issue. For the reasons stated below and in Fordham's moving papers, Fordham is entitled to a protective order confirming its right to redact the names of peer reviewers and alleged comparator.

This Court has previously held that redaction of relevant documents is permissible to "protect the privacy of the evaluators" and others involved with such sensitive decision making, like faculty serving on promotion and tenure committees. *Black v. N.Y. Univ. Med. Ctr.*, 94 Civ. 9074 (SS) (NRB), 1996 U.S. Dist. LEXIS 7632, at *4 (S.D.N.Y. June 3, 1996); *see also Weinstock v. Columbia University*, 1996 WL 658437, *7 (S.D.N.Y. 1996). Courts in this Circuit and, in other circuits around the country, have permitted defendants to redact the names and identifying information of peer reviewers when producing peer review materials in litigation. *See Quinn v. Nat'l Basketball Ass'n*, 91 Civ. 8257 (MBM), 1992 U.S. Dist. LEXIS 10822, at *7 (S.D.N.Y. July 23, 1992) (holding that defendant could submit redacted documents which omitted the names of peer evaluators); *Sabharwal v. Mount Sinai Med. Ctr.*, No. 09 CV 1950 (JBW), 2011 U.S. Dist. LEXIS 11023, at *13 (E.D.N.Y. Feb. 4, 2011) (permitting defendant to redact the names, signatures and job titles of peer reviewers in document production); *Kaplan v. Blue Hill Mem'l Hosp.*, No. 1:14-cv-00276-DBH, 2015 U.S. Dist. LEXIS 123256, at *5 (D. Me. Sep. 15, 2015) (permitting the redaction of personally identifiable information of physicians subject to peer

review in discovery documents). Plaintiff has presented no reason for the Court to reverse this prior precedent on this issue.

Plaintiff's reliance on *University of Pennsylvania v. E.E.O.C.*, 493 U.S. 182, 194 (1990) is misplaced. In that matter, the Supreme Court specifically addressed whether peer review materials were discoverable at all after the University of Pennsylvania refused to produce any peer review materials in response to a subpoena. As noted in Fordham's moving brief, the Court specifically left open the issue of whether the university could produce documents in redacted form. *Id.* at 188 n. 2. Here, unlike the university in *University of Pennsylvania*, Fordham has already produced peer review materials contained in Plaintiff's and the alleged comparator professors' personnel files. The only information redacted from those files is the identity of the peer reviewer. Plaintiff has not demonstrated any need to know the identity of the peer reviewer. In contrast, Fordham has a much more compelling need to redact the identities of peer reviewers to ensure that the peer review process is not disrupted by disclosure, particularly in this matter where the party seeking such disclosure is a current Fordham faculty member.

Fordham is also entitled to a protective order confirming its right to redact the names of alleged comparator professors. As a threshold issue, Plaintiff has not met her burden to establish that the names of the alleged comparator professors are material and necessary. *Citizens Union of City of New York v. Attorney Gen. of New York*, 269 F. Supp. 3d 124, 139 (S.D.N.Y. 2017). Plaintiff entirely ignores the fact that she was provided with a key containing the alleged comparator professors' gender, year of birth, and title of each alleged comparator professor so that Plaintiff can review all of the pertinent information relevant to her alleged causes of action. Plaintiff has not provided any reason why she needs the specific names of each alleged comparator professor. Her claim that the Second Circuit issued a "mandate" regarding the redaction of alleged

6

comparator professors' names is entirely meritless. The Second Circuit reviewed this Court's decision regarding Fordham's motions to dismiss Plaintiff's complaint in this action. The Second Circuit did not in any way review or issue an order related to discovery issues, including the redaction of alleged comparator professors' names.

Simply put, Plaintiff has not established that the names of the alleged comparator professors are material and necessary to her case. As such, Fordham's cross-motion for a protective order should be granted.

<div align="center">

**POINT IV**

**FORDHAM'S DESIGNATION OF DOCUMENTS AS CONFIDENTIAL IS PROPER**

</div>

Plaintiff has also still failed to establish any prejudice as a result of Fordham's designation of documents it produced in this matter as "Confidential." In her Opposition, Plaintiff simply states that she is "prejudiced by this improper use of the Confidential designation because it creates additional burdens upon Plaintiff." Opposition, p. 13. Plaintiff does not identify what those burdens are or how she has been hindered in this matter by the "Confidential" designations. Fordham has a clear interest to prevent Plaintiff from disclosing its records produced in this matter with non-parties, particularly as Plaintiff is a tenured faculty member and has received many sensitive documents related to her co-workers.

The only documents Plaintiff specifically identifies as documents that she believes should not be marked "Confidential" are her own emails. Opposition, p. 13. While Plaintiff has not put forth a compelling argument as to why Fordham should be required to change its designation of those documents as "Confidential," Fordham will nevertheless agree to re-produce Plaintiff's emails to her without the "Confidential" designation. Fordham maintains that all of the other

documents produced to Plaintiff are business records maintained by Fordham and therefore were properly marked as "Confidential."

<div align="center">

**CONCLUSION**

</div>

For the foregoing reasons, Fordham respectfully requests that the Court grant Fordham's cross-motion for a protective order and to compel and award to Fordham such other and further relief as the Court deems appropriate.

Dated: Uniondale, New York
     May 7, 2024

                          Respectfully submitted,

                          CULLEN AND DYKMAN LLP

                          By:____/s/ Ryan Soebke_____
                                Ryan Soebke
                                Jennifer A. McLaughlin
                                *Attorneys for Defendant Fordham University*
                                333 Earle Ovington Blvd., 2nd Floor
                                Uniondale, New York 11553
                                (516) 357-3700

# EXHIBIT 10

Esther Solomon
140 West 62nd Street
New York, New York 10023
212 636-6187

June 6, 2024
Hon. Edgardo Ramos, U.S.D.J.
Thurgood Marshall United States Courthouse
40 Foley Square, Courtroom 619
New York, NY 10007

Re: *Solomon v. Fordham University* (Case 18-cv-04615)

Dear Judge Ramos:

This is to respectfully request the Court's leave to file a Surreply to address Defendant's
May 7, 2024 Reply Memo and Declaration (Dkts. 152, 151). They are replete with untrue
representations of their supposed compliance, while the opposite is true. Defendant does not
consent to this application.

Most of my document requests remain without responsive production. Fordham has not
satisfied a single interrogatory. As I indicated to the Court in my April 26 letter (Dkt.150), I am
hampered by the lack of discovery, including ongoing violations of the Stipulated Protective
Order, redactions of comparator names precluding depositions, and stonewalling. This also
impedes uncovering evidence on the pattern against other professors of protected classes,
discriminated with similar methods by the same group.

**Fordham's 2024 Production**

About four months into the six-month discovery ordered in January by the Court,
Fordham's 2024 production has not changed anything. While asserting to have produced 1,900
pages on April 24, Defendants gave only *two pages* on my status changes #F-17200-17201, among
20 pages produced on my records. (Exhibit 1) I also tried obtaining my status change documents
from Fordham's in-house counsel and trial attorneys but was left with a non-responsive round-
robin of emails and no documents. In contrast, Declaration ¶8a (Dkt. 151) states that Fordham
produced "All documents added to Plaintiff's Personnel File since Fordham's first production,"
referring to five years 2019-2024.

Defendant omits that 95% of their production is minimally responsive to discovery
requests: of the 1,900 pages produced, 1,769 are redacted disorganized records for three
professors, per Declaration ¶8c "Personnel Files for comparator professors 13-15," and 34 pages
for three different redacted professors without numbers. A "key" was provided with 15 numbers,
corresponding to 15 of 18 redacted Professors. (Exhibit 2). Similarly, having produced no data
whatsoever for the pay claims requests (Exhibit 3), they write instead in ¶8d they supplied
"Documents related to salary and benefits analysis undertaken by Fordham."

In another example, despite the specific request (Exhibit 4), they have not provided a
single document supporting Fordham's defense against my secret retaliatory termination: that it
is Fordham's "customary" practice to send tenured faculty on unpaid leave to COBRA by
removing them from the IRS-mandated employer health plan. Fordham should be compelled to

provide the documents on faculty-transferred to COBRA or acknowledge they don't exist. Surprisingly, Fordham announces in Declaration ¶13 that they are nearing the end of their production, despite their failure to comply with their obligations.

## Compel Compliance with Subpoenas and Redaction Removal

Fordham should be compelled to provide complete personnel files honoring the 2019 Federal subpoenas, with consequences for non-compliance. They should be without any of the multiple levels of unauthorized redactions, none of which is supported by the law and which has been clarified by the mandate. (Exhibit 5, Examples of redactions). Fordham asserted to the Cravath firm in 2019 and admitted to the Court at the January 29, 2020 Hearing (Exhibit 6) that subpoenas enable the production of unredacted Personnel files. Defendant should finally produce those files, unredacted.

Fordham's extraordinary actions of secretly terminating a tenured professor without cause or due process, officially reporting it, and filing contradictory representations to different Federal authorities, including IRS follow-up, deserve discovery. They did not supplement for 2019-2024 and corrected none of the 2019 production deficiencies per my motion (Dkt 134), either about my file or the comparators' scattered redacted pages they produced.

## Second Circuit Mandate, the Law of the Case

The defendant disagrees with the mandate in this case and claims it is irrelevant to the discovery issues. They make no corrections to address the Second Circuit's explicit decision on issues including time scope, the impropriety of comparator name redactions, and the need for data for pay claims by both EPA and Title VII, instead, asked the Court to deviate from its directives. However, under the mandate rule, "[w]here a case has been decided by an appellate court and remanded, the court to which it is remanded must proceed in accordance with the mandate and such law of the case as was established by the appellate court." *Kerman v. City of New York*, 374 F.3d 93, 109 (2d Cir. 2004). The "mandate rule prevents re-litigation in the district court not only of matters expressly decided by the appellate court but also precludes re-litigation of issues impliedly resolved by the appellate court's mandate." *Brown v. City of Syracuse*, 673 F.3d 141, 147 (2d Cir. 2012).

## Improper Redactions Lack Support

Comparator Name redactions: There is no case providing legal support for redactions of comparator professor's names. These redactions of comparator names invalidate most of Defendant's production. To overcome the lack of legal support, Defendant misrepresents *Black v NYU* which did not involve comparator name redactions, contrary to their assertion (see specifics in Dkt. 147, pp. 16-17).

An essential requirement in Title VII cases is identifying comparators, which is impossible with concealed names. In this case, which involves a pattern, anonymity precludes connecting qualitative with quantitative data and other indicia of discriminatory intent.[1]

Peer Reviewer Name Redactions: Peer reviewer name redactions are also not supported by law in this Title VII case. To misportray them as legitimate, Defendant improperly relies on two cases that stand for disclosure of university peer review records: The Supreme Court case

---
[1] "A disparate treatment claim often includes a combination of strong statistical evidence of disparate impact coupled with anecdotal evidence of the employer's intent to treat the protected class unequally." Kassman v. KPMG LLP, 416 F. Supp. 3d 252, 284 (S.D.N.Y. 2018)

2

*University of Pennsylvania v. EEOC*, 493 U.S. 182 (1990) and *Weinstock v. Columbia Univ.*, 1995 U.S. Dist. LEXIS 14003 (S.D.N.Y. 1995). However, neither case addressed redactions. While the word "redactions" does not appear in *Weinstock*, Defendant cites it as supporting redaction of peer reviewer names (Dkt 152 p 8). In *Pennsylvania*, the Supreme Court specifically clarified that it did not consider redactions on peer review records in enforcing the subpoena. (footnote 9, p.589).

## Fordham's Unmet Burden Seeking Redactions

Defendant fails to meet the burden for the redactions they seek to legitimize, so they reverse the standard. As the party seeking discovery, I meet my burden of relevance for comparator names (see also Second Circuit Mandate). Fordham has the burden of proof for withholding discovery by redactions, but they do not meet it: "The party seeking discovery bears the initial burden of proving the discovery is relevant, and then the party withholding discovery … bears the burden of proving the discovery is, in fact, privileged or work product, unduly burdensome and/or expensive. *Citizens Union of City of New York v. Attorney Gen. of New York*, 269 F. Supp. 3d 124, 139 (S.D.N.Y. 2017). While referencing the case above, Defendant misrepresents its content by saying the unmet burden is mine rather than theirs.

## The Standard for Modification of a Protective Order Not Met

Five years ago, Fordham first negotiated, agreed to the terms and committed to complying with the terms of the Stipulated Protective Order. However, as the Cravath firm pointed out, they immediately violated its terms, including regarding the unauthorized redactions.[2] In the April 16, 2024 cross-motion, they omitted the existence of the valid Stipulated Protective Order.

Defendant now asks the Court to endorse their violations in a new modified Protective Order, despite the lack of legal support for comparator name redactions they seek. However, "In this Circuit, there is a strict standard for modification of a protective order entered by a district court. See *In re Teligent, Inc.*, 640 F.3d 53, 59 (2d Cir. 2011). Under this strict standard, "it is 'presumptively unfair for courts to modify protective orders which assure confidentiality and upon which the parties have reasonably relied.'"... "Once a court enters a protective order and the parties rely on that order, it cannot be modified 'absent a showing of improvidence in the grant' of the order or 'some extraordinary circumstance or compelling need.'" *In re Hornbeam Corp.*, 2020 U.S. Dist. LEXIS 145996 (S.D.N.Y. 2020) (citations omitted). Defendant fails to meet the burden of "extraordinary circumstance or compelling need" to modify the Stipulated Protective Order and their request should be denied.

For the preceding reasons, I respectfully request that leave to file a Surreply be granted.

Sincerely,


/s/ Esther Solomon
Esther Solomon
Plaintiff Pro Se

---

[2] The April 10, 2019 email from Cravath to Fordham: "Please confirm immediately whether Fordham will agree to produce these materials without reductions, as required by the Federal Rules."

3

# **Exhibits**

1. Two documents produced on Plaintiff's status: Actions Form #F-17200-17201 as of April 17, 2019 and February 1, 2020

2. Redacted comparator professor's number key: List of numbers for 15 of the18 redacted comparator professors.

3. Pay claim requests (#3, #4) from Plaintiff's Second Document Requests with Defendant responses, Dkt. 146, pp. 37-39

4. "Cobra as Customary" requests (#7) from Plaintiff's Second Document Requests with Defendant responses, Dkt. 146, p. 41.

5. Redaction Examples

6. Excerpts from the January 1, 2020 Pre-Motion Conference