UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ESTHER SOLOMON

                         Plaintiff,

            – against –

FORDHAM UNIVERSITY,

                         Defendant.

**OPINION & ORDER**

18-cv-4615 (ER)

RAMOS, D.J.:

Esther Solomon is an associate professor at Fordham University's Gabelli School of Business.  Proceeding *pro se* in this action, she alleges that Fordham has paid her less than her male colleagues for the same work, assigned her an overwhelming and retaliatory course load, discriminated against her because of her gender, age, and religion, defamed her, and breached a contract and other duties owed to her.  Doc. 95.  She also alleges that Fordham recently retaliated against her by refusing to pay for her health insurance.  *Id.*  She brings these claims under both federal and New York state law.[1]

Before the Court is Solomon's omnibus motion to:  (1) compel Fordham to comply with her subpoenas and document requests, (2) reinstate a 2019 protective order,

---

[1]  Solomon brings claims under the following federal statutes:

- Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*
- Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*
- The Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 to 634
- The Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601 to 2654
- The Equal Pay Act of 1963 ("EPA"), 29 U.S.C. § 206(d)

She also brings claims under the following New York statutes:

- The New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 297
- The New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 to 8-131
- The Achieve Pay Equality Act of 2015, N.Y. Lab. Law § 194

Finally, she alleges defamation, breach of contract, breach of fiduciary duty, and tortious interference with current and prospective business relations under New York common law.  *See* Doc. 95 (Third Amended Complaint).

and (3) sanction Fordham.  Doc. 182.  For the reasons set forth below, the motion to compel is GRANTED in part and DENIED in part, the motion to reinstate the protective order is DENIED, and the motion for sanctions is DENIED.

## I.    BACKGROUND

The underlying facts and procedural history are set out in the Court's previous six opinions.  The first granted Fordham's motion to dismiss the amended complaint in its entirety.  Doc. 69.  The second granted Fordham's motion to dismiss the second amended complaint in its entirety.  Doc. 85.  The third granted Solomon's motion to file a third amended complaint for the limited purpose of amending the retaliation claims based on Fordham's termination of Solomon's employee health benefits.  Doc. 94.  The fourth denied Solomon's motion for reconsideration of the previous opinion, granted Fordham's motion to dismiss the third amended complaint, and closed the case.  Doc. 121.  After Solomon successfully appealed the case to the Second Circuit,[2] the case was re-opened and discovery continued.  The fifth opinion, resolving various discovery issues discussed below, was published on July 2, 2024.  Doc. 156.

On February 14, 2019, the Court entered a protective order pursuant to Federal Rule of Civil Procedure 26(c).  Doc. 24.  Pursuant to this order, the parties agreed that either could:  "designate any [d]iscovery [m]aterial, in whole or in part, as 'confidential' if the producing party determines, in good faith that such designation is necessary to protect its interests in information that is sensitive and non-public."  *Id.* at 1.

A discovery conference was held on January 29, 2020, at which Solomon was granted leave to file a motion to compel.  After the conclusion of the aforementioned motion practice and Second Circuit appeal, the Court entered a new discovery schedule

---

[2]  On September 5, 2023, the Second Circuit issued a summary order affirming the dismissal of the third amended complaint in part, vacating it in part, and remanding the case for further proceedings.  Doc. 124. Specifically, the Second Circuit found that a subset of Solomon's claims—her disparate treatment, retaliation, and unequal pay claims—should have survived the motion to dismiss.  *Id.* at 8.

on January 16, 2024.  Doc. 130.  The parties continued to have discovery disputes, three of which were the subject of the Court's July 2, 2024, opinion.

First, Solomon moved to compel Fordham to comply with certain document requests, subpoenas, and court orders.  Doc. 132.  As relevant here, in response to Solomon's November 18, 2019, subpoenas, Fordham had produced Solomon's personnel file as well as the personnel files of fourteen professors that Solomon alleged were her "comparators."[3]  Doc. 156 at 5–6.  However, in Solomon's personnel file, Fordham redacted the names of the peer reviewers, and in the alleged comparators' personnel files, Fordham redacted the names of the alleged comparators and their biographical information.  *Id.*  In her motion to compel, Solomon requested the disclosure of the names of alleged comparator professors for her employment discrimination claims, as well as the names of the peer reviewers for various promotions.  Doc. 132 at 12–13. Solomon represented that Fordham had improperly redacted this information in its production of documents.  *Id.*

The Court denied Solomon's motion.[4]  Doc. 156 at 12.  With regard to the names of peer reviewers, the Court found that Solomon did "not describe in any way" how the names were relevant to establishing her employment discrimination claims.  *Id.* Moreover, the Court found that Fordham's redactions conformed to precedent from this Circuit and others that permitted university and other institutional defendants to redact the names and identifying information of peer reviewers when producing discovery.  *Id.* at 11–12.  The Court also found that Solomon did not establish the relevance of the names of the alleged comparator professors in light of other biographical information which

---

[3]  Fordham also produced the alleged comparators' faculty activity reports and W-2 records.  Doc. 156 at 6.

[4]  The Court denied the rest of Solomon's motion to compel subject to additional representations by Fordham.  *Id.* at 9–16.  Specifically, the Court directed Fordham to produce a privilege log listing any documents that were being withheld and the basis therefore, and listing any redactions (apart from the names of peer reviewers and alleged comparators) and the basis therefore.  Doc. 156 at 19.  It also directed Fordham to produce responsive documents in accordance with the discovery schedule.

Fordham had already provided to her in the form of a key which included the comparator professors' gender, year of birth, and title. *Id.* at 12–13.

Second, Fordham moved for a protective order to redact the names of Solomon's peer reviewers and alleged comparator professors.[5] Doc. 141. It argued that since the February 19, 2019, protective order did not include the possibility of redactions, a new protective order was required to protect its employees' privacy interests and the sensitive nature of the peer review process. Doc. 141 at 15. Finding that Fordham had established good cause to issue the protective order, as required pursuant to Federal Rule of Civil Procedure 26(f), the Court granted Fordham's request. Doc. 156 at 17. Moreover, the Court noted caselaw from this District supported Fordham's argument. *See Black v. New York University Medical Center,* No. 94 Civ. 9074 (NRB) (SS), 1996 WL 294310, at *3 (S.D.N.Y. June 3, 1996). In *Black*, the court granted a medical school's request for a protective order redacting the names of the plaintiff's evaluators and committee members for promotions because the plaintiff did not show that their disclosure was "necessary or important" or even "relevant." *Id*. at *4. In the instant case, the Court likewise found that Solomon had not "adequately shown why the *names* of peer reviewers and of alleged comparator professors [were] relevant to her discrimination claims." Doc. 156 at 17.[6]

Third, Fordham moved to compel Solomon to undertake a "reasonable" search for documents, including searches of her email accounts. Doc. 143 at 19. The Court denied Fordham's motion because Solomon represented that the production of documents at issue in the motion to compel was still ongoing. Doc. 156 at 18.

Solomon then moved for reconsideration of the Court's decision with respect to the redaction of the names of alleged comparator professors and peer reviewers. Doc.

---

[5] As described above, Fordham had already produced documents that redacted this information.

[6] In support of her argument, Solomon argued that the Second Circuit decision in this case issued a "mandate" regarding the redactions. The Court found this argument to be without merit, noting that the Second Circuit only reviewed the Court's opinion dismissing the third amended complaint and did not "review or issue an order related to discovery issues." Doc. 156 at 13.

157.   In a sixth opinion issued October 2, 2024, the Court denied Solomon's motion. Doc. 164.

Approximately two months later, Solomon filed a petition for a writ of mandamus to the Second Circuit, seeking review of the Court's July 2, 2024, order.  Doc. 165.  At Fordham's request, the Court then held a conference on January 28, 2025, at which it directed the parties to meet and confer regarding several discovery disputes.  Doc. 170. After the parties filed status letters regarding continued issues with discovery, Docs. 173, 175, 177, the Court held another conference on March 19, 2025, in which it granted Solomon leave to file a motion to compel, Doc. 178.  The Second Circuit denied Solomon's mandamus petition on June 13, 2025.  Doc. 180.

Solomon filed the instant motion on August 27, 2025.  Doc. 182.  She seeks to compel Fordham's compliance with her subpoenas and document requests, reinstate the 2019 protective order, and sanction Fordham.  *Id.*  Fordham filed its opposition brief on October 24, 2025.  Doc. 190.  Solomon filed a reply on December 12, 2025.  Doc. 195.

## II.    MOTION TO COMPEL

### A.  Legal Standard

Rule 26(b)(1) permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed.R.Civ.P. 26(b)(1).  When assessing proportionality, the court considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  *Id.*  "Rule 26 limits discovery where requests are unreasonably cumulative or duplicative [or] . . . the discovery can be obtained from a more convenient, less burdensome, or less expensive source."  *Shiber v. Centerview Partners LLC*, No. 21 Civ. 3649 (ER), 2023 WL 3071554, at *2 (S.D.N.Y. Apr. 25, 2023) (citing Fed.R.Civ.P. 26(b)(2)(C)).  The scope of relevance under Rule 26 is broader than under the Federal

Rules of Evidence. "Relevance is . . . to be 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claim or defense." *Mortgage Resolution Servicing, LLC v. JPMorgan Chase Bank, N.A.*, No. 15 Civ. 293 (LTS) (JCF), 2016 WL 3906712, at *3 (S.D.N.Y. July 14, 2016) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)); *see also SEC v. Rayat*, No. 21 Civ. 4777 (LJL), 2022 WL 1423300, at *2 (S.D.N.Y. May 5, 2022).

"A party seeking discovery may move for an order compelling an answer, designation, production, or inspection" if "a party fails to produce documents . . . as requested under Rule 34." Fed.R.Civ.P. 37(a)(3)(B). Generally, "a party's good faith averment that the items sought simply do not exist, or are not in his possession, custody, or control, should resolve the issue of failure of production since one 'cannot be required to produce the impossible.'" *Menard v. Chrysler Group LLC*, No. 14 Civ. 325 (VB), 2015 WL 5472724, at *1 (S.D.N.Y. July 2, 2015) (quoting *Zervos v. S. S. Sam Houston*, 79 F.R.D. 593, 595 (S.D.N.Y. 1978)). Further, "[i]n the face of a denial by a party that it has possession, custody or control of documents, the discovering party must make an adequate showing to overcome this assertion." *Mason Tenders District Council of Greater New York v. Phase Construction Services, Inc.*, 318 F.R.D. 28, 42 (S.D.N.Y. 2016) (internal citations and quotations omitted). In other words, a plaintiff must cite to specific evidence to challenge a defendant's assertions that no additional responsive documents exist. *Id.*; *see, e.g.*, *Margel v. E.G.L. Gem Lab Ltd.*, No. 4 Civ. 1514 (PAC), 2008 WL 2224288, at *3 (S.D.N.Y. May 29, 2008) (noting that the moving party did "not cite any specific evidence impugning [the non-movant's] assertions that their production [was] complete" and thus the court could not find a basis for misconduct).

Federal district courts have broad discretion in deciding motions to compel. *See Grand Central Partnership, Inc. v. Cuomo*, 166 F.3d 473, 488 (2d Cir. 1999). The burden of demonstrating relevance is on the party seeking discovery. *Go New York Tours, Inc. v. Aurora Tourism Services, LLC*, No. 22 Civ. 10633 (DEH) (JW), 2023 WL 9111158, at *1

(S.D.N.Y. Dec. 20, 2023) (citing *Trilegiant Corp. v. Sitel Corp.*, 272 F.R.D. 360, 363 (S.D.N.Y. 2010)); *see also Republic of Turkey v. Christie's, Inc.*, 326 F.R.D. 394, 400 (S.D.N.Y. 2018). If a party objects to discovery requests, that party bears the burden of showing why discovery should be denied. *Financial Guaranty Insurance Co. v. Putnam Advisory Co., LLC*, 314 F.R.D. 85, 87 (S.D.N.Y. 2016). "General and conclusory objections as to relevance, overbreadth, or burden are insufficient to exclude discovery of requested information." *Go New York Tours*, 2023 WL 9111158 at *1. Rather, the resisting party has the burden of showing "how, despite the broad and liberal construction afforded the federal discovery rules, each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive." *Putnam Advisory Co., LLC*, 314 F.R.D. at 88 (quoting *Sokol v. Wyeth, Inc.*, 7 Civ. 8442 (SHS) (KNF), 2008 WL 3166662, at *3 (S.D.N.Y. Aug. 4, 2008)).

In addition, the Court holds submissions by *pro se* litigants to "less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (per curiam) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)); *see also Young v. N.Y.C. Department of Education*, No. 09 Civ. 6621 (SAS), 2010 WL 2776835, at *5 (S.D.N.Y. July 13, 2010) (noting that the same principles apply to briefs and opposition papers filed by *pro se* litigants). Although "*pro se* status 'does not exempt a party from compliance with relevant rules of procedural and substantive law,'" *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)), courts read the pleadings and opposition papers submitted by *pro se* litigants "liberally and interpret them 'to raise the strongest arguments that they suggest,'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). The obligation to read a *pro se* litigant's pleadings leniently "applies with particular force when the plaintiff's civil rights are at issue." *Jackson v. NYS Department of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)).

### B. Discussion

Solomon moves to compel Fordham to comply with: (1) subpoenas for the personnel files of several alleged comparators, (2) a subpoena for her own personnel file, (3) two requests for documents that she served on January 7, 2019, and February 16, 2024.[7]

Before addressing each request, the Court first notes the scope of its inquiry. When the Court granted Solomon leave to file this motion, it directed her to "outline specifically [her] request [for discovery], [Fordham's] response, [and her] belief as to why it's deficient." Doc. 178 at 29; *see also id.* at 33 ("[I]f you believe that their responses are insufficient or inadequate or not well-taken, what you will need to do is to make a motion to compel, delineating the particular interrogatory, what was requested, what the response was, [and] why the response was deficient . . . ."). But rather than comply with this instruction, Solomon chose to dedicate much of her brief to arguing, in a general manner, that Fordham's productions are "not responsive to [her] requests." Doc. 182 at 16; *see, e.g., id.* at 13–17, 9–10. In other words, much of the motion fails to identify any specific requests or explain why Solomon believes Fordham's productions are unresponsive to them. *Id.* Insofar as Solomon relies on these blanket assertions, the Court cannot meaningfully evaluate her request. *Cf. Terry v. Incorporated Village of Patchogue*, 826 F.3d 631, 632–33 (2d Cir. 2016) ("Although we accord filings from *pro se* litigants a high degree of solicitude, even a litigant representing himself is obliged to set out identifiable arguments in his principal brief." (citation modified)). Thus, the Court solely addresses those aspects of Solomon's brief that specifically set forth the bases for her request.

---

[7] Although Solomon also requests that the Court order Fordham to "answer [her] 2019 and 2024 interrogatories," Doc. 182 at 22, her motion does not address these interrogatories or explain why she believes Fordham's responses were deficient. Thus, any such argument is waived. *See Terry v. Incorporated Village of Patchogue*, 826 F.3d 631, 632–33 (2d Cir. 2016) ("Although we accord filings from *pro se* litigants a high degree of solicitude, even a litigant representing himself is obliged to set out identifiable arguments in his principal brief." (citation modified)); *see also Ho-Shing v. Budd*, 771 F. App'x 79, 80 (2d Cir. 2019) (same).

### 1. Comparator Personnel Files

Solomon first challenges Fordham's response to her November 8, 2019, subpoenas requesting copies of the personnel files of several alleged comparators. Although Solomon concedes that Fordham produced the relevant files in 2019,[8] Doc. 182 at 4–5; *accord* Doc. 189-1, she notes that the files only extend from 2008 to 2018, Doc. 182 at 3. In her motion, Solomon contends that Fordham has a duty to supplement its initial production with records from 2019 to present.[9] Doc. 182 at 4.

Solomon asserts that these records are relevant because: (1) the Court has already "found post-2018 facts relevant" to this case, insofar as it has considered her allegations that Fordham retaliated against her by improperly terminating her benefits; (2) when Fordham produced documents regarding three professors whose medical benefits had also been terminated, it included evidence from 2024 to 2025; and (3) she "worked and was paid for teaching preparations in 2020" and continues to attend faculty meetings. *Id.* In response, Fordham emphasizes that Solomon concedes that she "elected to remain on voluntary unpaid leave between 2019 and 2025." Doc. 190 at 8. Because Solomon "neither taught nor performed any service for the University" after 2019, Fordham contends that "information from that period cannot shed light on any alleged pay disparity or discrimination." *Id.* at 7–8.

In employment discrimination cases, "[t]here is no set formula to determine how many years of information is reasonable." *Breon v. Coca-Cola Bottling Co. of New England*, 232 F.R.D. 49, 55 (D. Conn. 2005). Rather, "courts must use their judgment in light of the allegations in the complaint," "balanc[ing] the plaintiff's interest in obtaining information to make his case with the defendant's interest not to be deluged with requests" outside of the temporal scope of the alleged misconduct. *Id.* Applying this guidance, courts have extended discovery to a reasonable number of years before and

---

[8] Fordham produced the files in several tranches from February through April 2019. Doc. 189-1 at 1.

[9] Fordham asserts that this time period was agreed upon with Solomon's prior counsel. Doc. 190 at 6.

after the relevant liability period. *See Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, 209 F.R.D. 208, 212–13 (D. Kan. 2002) (collecting cases); *see, e.g., Bujnicki v. American Paving & Excavating, Inc.*, No. 99 Civ. 0646S (SR), 2004 WL 1071736, at *3 (W.D.N.Y. Feb. 25, 2004) (limiting the production of comparator personnel records to "a period of two years preceding plaintiff's claims of discrimination and two years subsequent to plaintiff's claims of discrimination"); *Miles v. Boeing Co.*, 154 F.R.D. 117, 119–20 (E.D. Pa. 1994) (holding that a request for documents for two years after the alleged discrimination was reasonable and relevant); *Robbins v. Camden City Board of Education*, 105 F.R.D. 49, 62–63 (D.N.J. 1985) (limiting discovery to two years after the alleged discrimination).

Here, the Court finds that Solomon's request for six additional years of personnel records for the alleged comparators is overbroad. These records are only relevant insofar as the professors may be reasonably understood to be similarly situated to Solomon. But because Solomon concedes that she has voluntarily taken unpaid leave since 2019—and does not argue that any of the alleged comparators did the same—she cannot show that, past that point, she and the other professors were similarly situated. Indeed, whereas the alleged comparators apparently continued to teach after 2019, the most that Solomon can say is that she prepared to teach classes at some point in 2020. That is not enough to show that she was similarly situated to the alleged comparators after 2019 and thus that their personnel files are relevant.

Nor is the Court persuaded by Solomon's reference to the "post-2018 facts" alleged in this case. Doc. 182 at 4. As Solomon acknowledges, those "facts" all pertain to her allegations that Fordham improperly terminated her health benefits when she decided to take unpaid leave. *See id.* (referring to "the retaliations, the terminations, COBRA, the so-called 'customary' policies, and health benefits removal"). In other words, they rest on her assertion that Fordham treated her differently than other professors who voluntarily took unpaid leave. Because Solomon does not suggest that

10

the alleged comparators did so after 2019, the "post-2018 facts" regarding her benefits cannot support the six additional years of personnel files that she now seeks. That Fordham produced post-2018 evidence regarding three additional comparators that Fordham identified does not compel a different result. As Fordham explains, those productions relate to three professors who, like Solomon, were on extended leaves of absence. Doc. 190 at 16. Thus, their treatment during the same years that Solomon took her leave is relevant to her claim that her benefits were retaliatorily terminated. Solomon's request to compel Fordham to produce personnel records for the original alleged comparators from 2019 to the present is therefore denied.

That said, the Court disagrees with Fordham that *any* comparator information after 2018 is irrelevant. As other courts have recognized, evidence that post-dates the alleged discrimination may still be relevant. *See Bujnicki,* 2004 WL 1071736, at *3 (finding that discovery of information two years after the alleged discrimination is reasonable); *Miles,* 154 F.R.D. at 119–20 (E.D. Pa. 1994) (same); *Robbins,* 105 F.R.D. at 62–63 (same). Thus, the Court grants Solomon's motion to compel the production of the alleged comparators' personnel files, but only for the two-year period through the end of 2020, which the Court concludes is reasonable. *See Robbins,* 105 F.R.D. at 62–63 (denying five-year request for post-employment discovery but concluding that a two-year period was reasonable).

### 2. *Solomon's Personnel File*

Solomon also argues that Fordham has failed to supplement its production of her own personnel file with records of her tenure and employment status since 2019.[10] Doc.

---

[10] It is unclear whether Solomon also seeks to compel Fordham to produce records from her personnel file from 2001 to 2008. *See* Doc. 182 at 10 (noting that "Plaintiff's 2001 promotion peer review records were among the document groups excluded from Plaintiff's 2019 partial Personnel file"). Insofar as she does, the Court notes that Fordham asserts that it has produced Solomon's entire personnel file, including any records from that period. Doc. 190 at 9–10. In other words, Fordham represents that there are no pre-2008 records from Solomon's personnel file that it has not produced. *Id.* Because Solomon does not give the Court any reason to question this representation, any request to compel the production of pre-2008 records from her

182 at 6.   In support of this contention, Solomon acknowledges that, since 2019, Fordham has produced some documents that are responsive to her subpoenas and requests for documents.  *Id.* (noting Fordham's post-2019 productions).  She argues, however, that Fordham has failed to produce "records of their real actions" regarding her tenure status, as evidenced by the fact that Fordham has produced "only" "two handwritten pages" regarding her tenure status and failed to offer any records that explain why she received two COBRA Continuation Coverage Election Forms that note her "Termination" on April 12, 2019, and February 1, 2020.  *Id.*; *see* Doc. 182-2 at 31–32.

Fordham argues that Solomon's motion should be denied in this respect because "[s]he has not identified any documents related to her tenure that are in Fordham's possession that Fordham has failed to produce."  Doc. 190 at 9.  In support of this contention, Fordham asserts that it has produced Solomon's entire personnel file, including any additions to the file through 2024.  Doc. 190 at 8; *see* Doc. 189-1 at 1–2 (noting productions of Solomon's personnel file on February 14, 2019, March 4, 2019, March 22, 2019, and April 24, 2024).  It also notes that it provided Solomon with documents and emails regarding her tenure status in its October 25, 2024, production.  Doc. 190 at 8; Doc. 189-1 at 2.  Fordham contends that the latter production was "limited in volume" because her tenure status was never terminated and "only her COBRA benefits were inadvertently terminated for a short time."  Doc. 190 at 8, 13 n.5.  Fordham further asserts that "any report to a federal agency that [her] employment had been 'terminated' in relation to her COBRA benefits was made in error and was immediately corrected."  *Id.* at 9.

In general, "[t]he party seeking an order to compel production of documents must make at least some showing that the documents it seeks exist."  *Royal Park Investments*

---

personnel file is denied.  *Royal Park Investments SA/NV v. Deutsche Bank National Trust Co.*, No. 14 Civ. 04394 (AJN) (BCM), 2017 WL 11899224, at *3 (S.D.N.Y. Jan. 26, 2017) (explaining that the party seeking to compel production must make "at least some showing that the documents it seeks exist").

*SA/NV v. Deutsche Bank National Trust Co.*, No. 14 Civ. 04394 (AJN) (BCM), 2017 WL 11899224, at *3 (S.D.N.Y. Jan. 26, 2017). Here, insofar as Solomon bases her request on the limited volume of Fordham's post-2019 production, she has not met her burden to do so. As Solomon concedes, she has taken unpaid leave since 2019; thus, the paucity of documentation regarding her employment after 2019 does not suggest that there is any additional information in Fordham's possession.

As to Solomon's argument regarding the COBRA forms, however, the Court finds that she has made a showing that relevant documents exist. That Solomon received these forms from COBRA does suggest that there was some communication with the federal government regarding a change in her employment status. The Court also notes that Fordham does not deny the existence of any such communication but rather asserts that "any report to a federal agency that [Solomon's] employment had been 'terminated' in relation to her COBRA benefits was made in error and was immediately corrected." Doc. 190 at 9. But Fordham does not identify any authority that suggests that the inadvertence of a relevant communication shields it from disclosure. Nor is the Court aware of any. Thus, to the extent that Fordham possesses any documentation of its reporting of Solomon's employment status to a federal agency regarding her COBRA benefits that it has not yet produced, it is directed to do so. *See Royal Park Investments SA/NV*, 2016 WL 4613390, at *9 (compelling production where parties "never denied that they possess documents that would be responsive to the requests" but rather "simply 'refused' or 'declined' to produce such documents").

3. *Document Requests*

Solomon also argues that Fordham's responses to her requests for documents have been largely deficient. Doc. 182 at 11. Solomon served two such requests: one on January 7, 2019 (the "First Requests"), Doc. 189-2, and another on February 16, 2024 (the "Second Requests"), Doc. 189-3.

13

    *a. The First Requests*

While Solomon argues that "many" of her First Requests "remain outstanding," she identifies issues with only four specific requests. Doc. 182 at 14. The Court addresses each in turn.

    *i. Requests #2 & #3[11]*

Request #2 asks for "[a]ll documents regarding [Solomon] and [the] [c]omparator [p]rofessors' compensation for the relevant time period." Doc. 189-2 at 4. Request #3 seeks "[a]ll documents regarding [Solomon] and [the] [c]omparator [p]rofessors' job responsibilities, course assignments, course cancellations, course releases, administrative appointments, consulting assignments, research funding and professional activities for the relevant time period." *Id.* Solomon argues that Fordham has failed to comply with these requests because it has not produced any comparator "pay discovery" for the years from 2001 to 2008 and 2019 to 2025, including documents regarding the alleged comparators' compensation, job responsibilities, course assignments, and professional activities.[12] *Id.* at 17.

Fordham asserts that this request is overbroad. Doc. 190 at 14. It first argues that any post-2018 comparator documents are "irrelevant" to Solomon's claims given her decision to take unpaid leave. *Id.* But, as the Court has explained, post-discrimination discovery may still be relevant to a plaintiff's claims, and two years of such discovery is reasonable in this case. *See Horizon Holdings*, 209 F.R.D. at 212–13. Fordham is therefore directed to produce comparator discovery that is responsive to Requests #2 and #3 for 2019 and 2020.

---

[11] Although Solomon does not specifically identify Requests #2 and #3, her brief refers to the First Requests and lists much of the information included in these two requests. *Id.; see* Doc. 189-2 at 4. The Court therefore assumes, favorably to Solomon, that she means to invoke these particular requests.

[12] Although these requests also seek information regarding Solomon, this aspect of her brief focuses on comparator discovery.

Fordham also contends that Solomon's request for documents from prior to 2008 is overbroad given that any conduct prior to March 7, 2017, is time-barred and it has already produced documents for the prior ten years.  Doc. 190 at 14.  The Court agrees.  Although Solomon argues that "[b]y withholding this evidence, Fordham prevents [her] from substantiating the full extent of the pay disparity and addressing [Fordham's] defenses," Doc. 182 at 17, she ignores that the liability period begins in March 2017.  And while comparator discovery prior to March 2017 may be relevant to her unequal pay claims, the Court does not find that allowing discovery from over a decade prior to that time would be reasonable.  *See Horizon Holdings, L.L.C.*, 209 F.R.D. at 212–13 (collecting cases holding that five years or less of pre-liability discovery is reasonable).

In her brief, Solomon suggests that the Second Circuit's prior ruling in this case compels a different result.  *See* Doc. 182 at 10, 18.  She notes that, in that opinion, the Second Circuit explained that "[i]n light of [its] caselaw, [her] pre-March 2017 hostile work environment, discrimination, retaliation, and disparate treatment allegations must therefore be part of [its] consideration of her otherwise timely claims." *Solomon v. Fordham University Administration, Rose Hill Campus*, No. 22-887-CV, 2023 WL 5689712, at *2 (2d Cir. Sept. 5, 2023).  Solomon argues that this language requires Fordham to produce records dating back to her promotion denial in 2001.  Doc. 182 at 10, 18.  This argument lacks merit.  In noting that it was required to consider Solomon's pre-March 2017 allegations, the Second Circuit was merely reiterating the general principle that "earlier discriminatory acts '*may* constitute relevant background evidence'" in support of a plaintiff's timely claims, even when those acts are time barred.  *Malarkey v. Texaco, Inc.*, 983 F.2d 1204, 1211 (2d Cir. 1993) (quoting *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558 (1977)); *see Solomon*, 2023 WL 5689712, at *2 (explaining that "'discrete discriminatory acts are not actionable if time barred,' but an employee may still use related prior acts as 'background evidence in support of a timely claim'" (quoting *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002))).  It did not

15

hold that every pre-March 2017 discriminatory act that Solomon alleged was *necessarily* relevant support for her timely claims.

In other words, the Second Circuit did not absolve Solomon of her initial burden to show that the pre-March 2017 evidence that she seeks is relevant. And, here, the Court finds that the requested discovery is neither relevant nor proportional. At bottom, Solomon seeks to supplement the comparator information that she already possesses— which extends ten years prior to the liability period—with another eight years of data. While a plaintiff may rely on "data from outside the statute of limitations to prove timely discriminatory acts," *Chin v. Port Authority of New York & New Jersey*, 685 F.3d 135, 150 (2d Cir. 2012), for the reasons already explained, the Court does not agree that the decade-old data that Solomon seeks would be reasonable under the circumstances. Nor does it find that this discovery would be relevant. *See Asanjarani v. City of New York*, No. 09 Civ. 7493 (JCF), 2011 WL 6811027, at *2 (S.D.N.Y. Dec. 27, 2011) ("There is a point at which a prior or subsequent act becomes so remote in time from the alleged discriminatory act at issue, that the former cannot, as a matter of law, be relevant to intent." (quoting *Ansell v. Green Acres Contracting Co.*, 347 F.3d 515, 524 (3d Cir. 2003))); *see also Petrosino v. Bell Atlantic*, 385 F.3d 210, 224 n.13 (2d Cir. 2004) (explaining that "evidence might be too factually and temporally remote to be relevant to [a plaintiff's timely] claim"). Her motion to compel pre-2008 responses to Requests #2 and #3 is therefore denied.

ii. *Request #4*

Request #4 seeks "[a]ll reports published by the Salary and Benefits Task Force on Indicators of Gender Salary Equity Among Faculty." Doc. 189-2 at 5; Doc. 182 at 15. The only issue that Solomon identifies with this request is with Fordham's production of a 2012 "Race and Gender Equity Task Force Report." Doc. 182 at 15. Solomon contends that this report is only "nominally responsive" to her request because it does not include any salary data or analysis. *Id.* But because Request #4 does not seek this information,

the Court does cannot see how Fordham's production is deficient. As such, the request is denied.

### iii. Request #5

Solomon also takes issue with Fordham's response to Request #5, which seeks "[a]ll documents regarding student evaluations of [Solomon] and [c]omparator [p]rofessors for courses taught at both the undergraduate and graduate level." Doc. 189-2 at 5; Doc. 182 at 14. But beyond her claim that Fordham's production only "partially" addresses this request, Solomon does not explain why she believes Fordham's production is deficient. Doc. 182 at 14. Therefore, this request is also denied.

### b. The Second Requests

Solomon also argues that "most" of Fordham's responses to her Second Requests are deficient. Doc. 182 at 11. Her brief identifies six specific requests. The Court addresses each in turn.

### i. Request #1

Request #1 seeks "all documents relating to data preservation, including copies of the Litigation-Hold Notices that Fordham sent." Doc. 189-3 at 3. It further requests that Fordham "[i]ndicate to whom they were sent, and the responses notice recipients returned to the university." *Id*. Fordham objected to this request based on attorney-client privilege and the work product doctrine. *Id.*

Solomon argues that the documents should be produced because there are "concerns" regarding "spoliation." Doc. 182 at 12. The Court disagrees. "Instructions to preserve documents by way of formal litigation hold notices exchanged between attorneys and their clients are privileged communications and generally immune from discovery." *Roytlender v. D. Malek Realty, LLC*, No. 21 Civ. 00052 (MKB) (JMW), 2022 WL 5245584, at *4 (E.D.N.Y. Oct. 6, 2022). "That rule, however, is not an absolute barrier to the information. Rather, litigation hold letters may indeed be discoverable where there has been a preliminary showing of spoliation." *Id*. Here, however, Solomon

17

has not made any showing of spoliation; she merely speculates without further explanation or evidence—circumstantial or otherwise—that this case presents spoliation "concerns." Doc. 182 at 12. This does not suffice to meet her burden. Solomon's motion to compel production of the litigation hold notices is therefore denied.

*ii. Request #2*

Request #2 seeks "search protocols used to search the Fordham employees' Fordham.edu and personal email accounts regarding this litigation and provide responsive documents." Doc. 189-3 at 3. It clarifies that "the Fordham employees" "include Vice Provost Crystal, Dean Rapaccioli, President Father McShane, Provost Freedman Dr. Hollwitz, Dr. Sen, Dr. Wharton, Dr. Pirson, Dr. Chatterjee, Human Resources, Ms. Crosson, Ms. Coleman, Ms. Fagin, other faculty, administrators, and Board of Trustee members, and Business School faculty regarding the issues in this litigation." *Id.*

Fordham objected to the scope of this request. *Id.* at 3–4. It also argued that these documents were shielded by the attorney-client privilege and the work product doctrine. *Id.* In her motion, Solomon does not argue that these documents are not privileged; rather, she appears to take issue solely with Fordham's alleged failure to include this information in its privilege log. Doc. 182 at 12. Because Fordham does not respond to this contention in its brief, the Court does not have enough information to evaluate Solomon's request. To the extent that information regarding any documents that are responsive to this request is missing from Fordham's privilege log, Fordham is thereby directed to update its log to include such information.

*iii. Request #3*

Request #3 seeks all documents and data: (a) "provided to the Salary and Benefits Task Force on Indicators of Gender Salary Equity Among Faculty in connection with the 2008 Report of the Salary and Benefits Task Force on Indicators of Gender Salary Equity Among Faculty"; (b) "equivalent data for faculty from 2008 to present"; and (c) "any

18

investigations, policies, recommendations, or change in practices resulting from those Task Force findings." Doc. 189-3 at 4. Solomon argues that Fordham has produced "no responsive documents" to Requests #3(a) and 3(b), and only "[m]inimally responsive" documents to Requests #3(c). Doc. 182 at 11–12, 17–18. But beyond these conclusory assertions, Solomon does not explain why she believes that Fordham's productions are deficient—or that additional responsive materials exist. *See Royal Park Investments SA/NV*, 2017 WL 11899224, at *3. Her request to compel compliance with Request #3 is therefore denied.

  *iv.  Request #4*

  Request #4 asks for various documents related to faculty salaries, wage disparities, job classifications, and performance criteria. Doc. 189-3 at 4. Because Solomon again fails to explain why Fordham's productions are allegedly deficient— beyond asserting that Fordham has produced "no responsive documents"—this request is also denied. *See* Doc. 182 at 11–12.

  *v.  Request # 5*

  Request #5 seeks "communications, documents, and personnel records for" eleven additional professors who allegedly "suffered discriminatory practices using methods similar to those used against [Solomon]." Doc. 189-3 at 6. The request clarifies that this includes "hiring documents, performance evaluations, disciplinary records, complaints of discrimination by the professors, communications related to employment status changes, and any retirement or termination paperwork." *Id.* Solomon argues that these documents are relevant because they may demonstrate a "pattern of targeting protected-class individuals." Doc. 182 at 19. In support of this contention, Solomon relies primarily on the allegations regarding the treatment of these professors in her complaint. *Id.*

  Fordham did not produce any documents in response to this request. Doc. 189-3 at 6. In its brief, Fordham does not dispute that evidence of a pattern of discrimination

against professors from the same protected class as Solomon would be relevant. Rather, it asserts that Solomon is not entitled to this discovery because she "does not provide any evidence to support her claims that the professors listed in her demands suffered any discrimination or were otherwise 'targeted.'" Doc. 190 at 15. That assertion, however, misunderstands the discovery process: parties are not required to prove their entitlement to discovery through first proffering evidence. To demonstrate relevance, Solomon may rely on the allegations in her complaint. *See In re Terrorist Attacks on Sept. 11, 2001*, No. 03-MD-01570 (GBD) (SN), 2023 WL 4447869, at *6 (S.D.N.Y. July 11, 2023), *objections overruled*, No. 03-MDL-1570 (GBD) (SN), 2023 WL 5432199 (S.D.N.Y. Aug. 23, 2023) (explaining that courts may "refer[] to the complaint to determine what discovery [is] relevant").

That said, the request as written is plainly overbroad insofar as it seeks all documents, communications, and records regarding the named professors, regardless of time period or topic, and without regard to any specific instance of discrimination that each professor allegedly faced. *See* Doc. 189-3 at 6 (objecting on this ground); *BAT LLC v. TD Bank, N.A.*, No. 15 Civ. 5839 (RRM) (CLP), 2018 WL 3626428, at *3 (E.D.N.Y. July 30, 2018) ("[C]ourts faced with overbroad requests need not narrow the scope of the request . . . but may instead sustain the overbreadth objection and deny the requested discovery."). As such, Request #5 is denied.

### vi. Request #14

Request #14 asks for "all claims, complaints, charges, affidavits, settlement agreements, or other documents settling any other claims signed between Fordham and departing [p]rofessors, including but not limited to" six named professors. Doc. 189-3 at 13. To the extent that this request extends to any "departing [p]rofessors," it sweeps too broadly and is therefore denied. As to the named professors, Fordham represents that it has searched its records and no such documents exist. Doc. 190 at 15. And although Solomon argues that the Court should question this representation, the only basis she

20

provides for doing so is the existence of emails from one of the named professors regarding student complaints. *See* Doc. 182 at 19 (citing Doc. 182-2 at 53–60). Because those emails do not contradict Fordham's assertion, Solomon has not shown that any additional responsive documents exist. *See Margel*, 2008 WL 2224288, at *3. Thus, Request #14 is denied.

### 4. Privilege Log

Solomon also asserts that Fordham has failed to comply with the Court's previous order to provide a privilege log. Doc. 182 at 11, 16. Although she concedes that Fordham has provided a privilege log,[13] she appears to contend that the log is "defective" in that it fails to specify the content of the withheld materials and thus prevents her from reviewing the appropriateness of Fordham's assertions of privilege. Doc. 182 at 16. But because Solomon does not provide any additional information regarding this deficiency and Fordham does not respond to this specific contention, the Court does not have sufficient information to evaluate this claim. This request is therefore denied without prejudice.

## III.  MOTION TO REINSTATE THE 2019 PROTECTIVE ORDER

Solomon also asks the Court to reinstate the 2019 protective order and direct Fordham to remove the redactions of the comparator professors' names. But, in doing so, she largely recycles the same arguments that the Court rejected in its previous order. *See* Docs. 156, 165. Solomon cannot relitigate those issues in the instant motion.

Solomon does raise one new argument regarding the protective order. She notes that, in Fordham's production of additional documents regarding three professors whose medical benefits had been transferred to COBRA, Fordham did not redact the names of these professors. Doc. 182 at 10. She argues that this decision shows that the redaction

---

[13] Although, at times, Solomon asserts that Fordham has not provided her with a privilege log, *see* Doc. 182 at 11, elsewhere in her brief, she appears to concede this point, *id.* at 17 n.9 (noting that Fordham "had previously produced a privilege log on August 2, 2024"). Fordham represents that it did so on August 2, 2024, and on March 17, 2025. Doc. 189 ¶ 19; Doc. 190 at 11.

21

of the original alleged comparator professors' names was inappropriate. *Id.* Fordham explains, however, that because the COBRA production did not include the professors' personnel files or any documents related to peer review, redactions were not necessary. Doc. 190 at 16. Because Solomon does not dispute this point, her contention regarding Fordham's failure to redact these professors' names is without merit. Her request to reinstate the protective order and remove the redactions is therefore denied.

While that should end the matter, the Court must address one final point. In this section of her brief, Solomon also argues "[t]here has been no [p]rotective order for a year in this case." Doc. 182 at 20. She appears to base this assertion on the Court's direction, in its decision denying her first motion to compel, that the "parties . . . submit a proposed protective order by July 16, 2024." Doc. 156 at 19. Because Fordham "never produced a proposed [p]rotective [o]rder" by that date, Solomon contends that no protective order governs this case. *Id.* That the parties have not filed a proposed protective order, however, does not mean that no protective order currently governs this case. Indeed, in the same decision, the Court granted Fordham a new protective order to redact the names of Solomon's peer reviewers and alleged comparator professors. Doc. 156 at 18. Thus, that protective order remains in place.

That said, the parties are still obliged to comply with the Court's previous order. In accordance with that directive, the parties are therefore directed to file a proposed protective order by April 13, 2026.

## IV.    MOTION FOR SANCTIONS

Solomon finally moves for sanctions based on "Fordham's prolonged and willful non-compliance with discovery obligations and Court [o]rders." Doc. 182 at 23. In general, Rule 37 permits a district court to impose sanctions against a party who "fails to obey an order to provide or permit discovery." Fed.R.Civ.P. 37(b)(2)(A). Before imposing sanctions, however, the rule first requires a "predicate court order directing compliance with discovery requests, and non-compliance with that order." *Shanghai*

22

*Weiyi International Trade Co. v. Focus 2000 Corp.*, No. 15 Civ. 3533 (CM) (BCM), 2017 WL 2840279, at *9 (S.D.N.Y. June 27, 2017). Here, the only prior court order to produce discovery is the Court's July 2, 2024, order, which directed Fordham to produce: (1) a privilege log by August 2, 2024; and (2) documents in response to Solomon's First Requests in accordance with the parties' discovery schedule. Doc. 156 at 19. Because Fordham complied with both directives, sanctions are not appropriate. To the extent that Solomon seeks sanctions based on the discovery issues resolved in this motion, her request is premature. The motion is therefore denied.

## V.    CONCLUSION

For the reasons set forth above, the motion to compel is GRANTED in part and DENIED in part. Solomon's motions to reinstate the protective order and for sanctions are DENIED. The Clerk of the Court is respectfully directed to terminate the motion. Docs. 182, 186.

It is SO ORDERED.

Dated:    March 30, 2026
          New York, New York

_____
          EDGARDO RAMOS, U.S.D.J.

23