# MEMO ENDORSED

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

ESTHER SOLOMON,                                18-CV-4615 (ER)

                Plaintiff,
                                MOTION FOR
                                RECONSIDERATION

- against -
FORDHAM UNIVERSITY,

                Defendant.
-----------------------------------------------------------X

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION
FOR RECONSIDERATION OF THE COURT'S MARCH 30, 2026 ORDER (Dkt 197)
ON HER MOTION TO ENFORCE THE 2019 SUBPOENAS, COMPEL DISCOVERY OF
FIRST AND SECOND DOCUMENT REQUESTS, COMPEL INTERROGATORIES,
REINSTATE THE 2019 PROTECTIVE ORDER, AND FOR SANCTIONS

Fordham is directed to respond by
April 28, 2026.  Solomon's reply, if
any, is due May 5, 2026.

SO ORDERED.

_____
Edgardo Ramos, U.S.D.J.
Dated: April 15, 2026
New York, New York

                                Esther Solomon
                                Plaintiff *Pro se*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT..................................................................................................2

STANDARD OF REVIEW ...................................................................................................2

FACTS AND ARGUMENT ..................................................................................................2

Background .........................................................................................................................2

The Order Rests On a Series Erroneous Findings.............................................................3

Asymmetric Discovery.......................................................................................................5

The Order Overlooks The Second Circuit Directives And Equal Pay Act Evidentiary Requirements Regarding Redactions ...................................................................................5

    A. The Mandate Identified Redactions as the Cause of Plaintiff's Evidentiary Deficiencies.................6

    B. The 2024 Protective Order Codified the Redaction Regime the Second Circuit Criticized...............6

    C. Double Redaction of Comparator Names Contradicts the Mandate, University of Pennsylvania, and Greenwood ...........7

    D. Redactions Block Evidence of Discriminatory Events Across the Record. ....................................8

The Denial Of Pre-2017 Discovery Overlooks the 2023 Mandate and Supreme Court Precedent In Morgan ...................................................................................................8

Plaintiff Complied With The Court's Instructions.............................................................9

CONCLUSION.....................................................................................................................10

**TABLE OF AUTHORITIES**

Cases

*Austin v. Fordham University*, 2024 U.S. Dist. LEXIS 112852 (S.D.N.Y. 2024) .........................9

*Black v. New York University Medical Center*, 1996 U.S. Dist. LEXIS 7632 (S.D.N.Y. 1996).....6

*In re Bofi Holding, Inc. Sec. Litig.*, 2021 U.S. Dist. LEXIS 187305 (S.D.N.Y. 2021)....................5

*National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)......................................5, 8

*Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) ...............................................2

*Solomon v. Fordham Univ. Admin.*, 2023 U.S. App.. LEXIS 23494 (2d Cir. 2023)................2, 4

*United States v. Greenwood*, 145 F.4th 248 (2d Cir. 2025).....................................................5

*University of Pennsylvania v. EEOC*, 493 U.S. 182 (1990)......................................................7

*Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72 (2d Cir. 2015)* ....................................3

PRELIMINARY STATEMENT

Plaintiff Esther Solomon respectfully submits this Memorandum of Law in Support of her Motion for Reconsideration of this Court's March 30, 2026, Opinion and Order (Doc. 197). Reconsideration is warranted under Local Civil Rule 6.3 because the Order overlooked controlling appellate decisions and specific factual data that, if considered, would have altered the disposition of Plaintiff's Motion to Compel.

STANDARD OF REVIEW

Under Local Civil Rule 6.3, a motion for reconsideration must "set forth concisely the matters or controlling decisions which the moving party believes the court has overlooked." Reconsideration is appropriate where the Court has overlooked "controlling decisions or factual matters that were put before it on the underlying motion." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). The standard requires identification of specific errors, which Plaintiff identifies below.

FACTS AND ARGUMENT

Background

Eight years into this litigation, and two years after the Second Circuit Court of Appeals reinstated the majority of Plaintiff's claims, the March 30, 2024 Order enables Fordham University to continue to obstruct the judicial process with impunity. By refusing to enforce the subpoenas, to compel discovery responsive to document requests, and forbidding Plaintiff's interrogatories on remand, and with comparator names doubly redacted in violation of the original Stipulated Protective Order, the 2026 Order precludes the implementation of the Second Circuit's September 5, 2023 Mandate, *Solomon v. Fordham Univ. Admin.*, 2023 U.S. App. LEXIS 23494 (2d Cir. 2023)

This case involves extraordinary violations by a University against a tenured Professor during litigation: secret de-tenuring, discriminatory and retaliatory termination without cause, and denial of due process requested of the University President in 2020. Two termination reports to federal authorities in 2019 and 2020, and ongoing 2023  Fordham reports to the IRS that she is not a full-time employee and not a tenured professor, [Exhibit [1]1, January 2024 Hearing, IRS Rule] document the ongoing harm to Plaintiff.

The Order Rests On a Series Erroneous Findings

The Order rests on a series of factual misstatements that, taken together, compel reconsideration. First, the Order proceeds as though Plaintiff experienced no adverse employment action after Spring 2018, when in fact she was secretly reported as "terminated" to federal authorities twice — in April 2019 and February 2020 — and had her salary, pension, and all benefits severed from February 1, 2020 to the present. Second, the Order characterizes Plaintiff's status as "voluntary unpaid leave" and uses that characterization to conclude that her comparators ceased to be similarly situated after 2018, thereby asserting she is not entitled to post-2018 comparator discovery. But Plaintiff has consistently alleged — in her complaint, in declarations, and at every court hearing — that she was de-tenured, terminated, and subjected to ongoing retaliation, not that she voluntarily chose to stop working. [Exhibit [2] Excerpts from Plaintiff's TAC Complaint)

The Court's prior rulings themselves recognized that Plaintiff's transfer from graduate to undergraduate teaching constituted an adverse action under *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72 (2d Cir. 2015*)* and the record shows that Fordham continued to assign her a discriminatory undergraduate-only schedule each semester while she fought to return, retaliation under *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006), Despite being

3

stripped of salary, pension, and benefits, Plaintiff actively attempted to return for the Fall 2020 semester, only to face "workplace sabotage" denial of her access to students and resumption of teaching. [Exhibit [3] Excerpts from Plaintiff's TAC Complaint].

Third, the Order imposes a double standard: it denies Plaintiff any discovery after 2018 on the ground that she was purportedly not similarly situated to her comparators during that period, yet Fordham was freely permitted to introduce six comparators of its own choosing — unknown to Plaintiff — and to rely on those comparators' records from 2019, 2020, 2023, 2024, and 2025 for depositions and pretext defenses. After Defendant acknowledged at the March 2025 Hearing that they had not produced any comparator discovery 2018-present, contradicting their sworn statements that all subpoenas had been honored, the Order continues to rely on Defendant's assertions, and made 2018 the discovery origin point.

Fourth, the Order erroneously attributes to Plaintiff an admission that she "chose not to teach" and went on "voluntary unpaid leave," when Plaintiff's actual statements in the record establish the opposite: that she was de-tenured, terminated, subjected to work sabotage, including revocation of her computer and Blackboard access.  Fifth, the Order repeatedly characterizes Plaintiff as having "acknowledged" or "conceded" facts she has disputed at every stage of this litigation. Sixth, the Order states that Fordham produced the comparator personnel files responsive to Plaintiff's November 2019 subpoenas, when the record demonstrates that Fordham produced no complete, unredacted, personnel files responsive to those subpoenas — a fact Plaintiff has explained at every opportunity. These compounding errors of fact form the foundation of the Order's discovery rulings and, if corrected, would require a different result.

The Order overlooked: (1)  an erroneous factual premise regarding Plaintiff's employment status that amplified the asymmetrical discovery favoring Defendant; (2) binding

4

observations in the Second Circuit's September 5, 2023 Mandate (*Solomon v. Fordham Univ. Admin.*, 2023 U.S.  App.. LEXIS 23494 (2d Cir. 2023); Doc. 124) directly linking Fordham's redaction practices to Plaintiff's evidentiary deficiencies, and the requirements of the Equal Pay Act (3) The time-barred ruling in the 2023 Mandate cited *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), mandating the availability of pre-2017 background evidence; and (4) the Second Circuit's transparency standard in *United States v. Greenwood*, 145 F.4th 248 (2d Cir. 2025), and the Supreme Court's rejection of academic confidentiality privileges in *University of Pennsylvania v. EEOC*, 493 U.S. 182 (1990). Correction is necessary to prevent prejudice and to provide Plaintiff the evidence to litigate her reinstated claims on the merits.

Asymmetric Discovery

This error is compounded by a profound discovery asymmetry. While Plaintiff is barred from utilizing post-2020 Gabelli School comparators due to this alleged "voluntary" leave, Fordham was simultaneously permitted to introduce unilateral, non-Gabelli, non-tenured comparators from 2025 who transitioned to COBRA status to justify its undocumented "Customary Policy" for tenured business school Professors. The lack of any such tenured professors documented at the March 2025 bat the Hearing proved  that the "COBRA as customary" policy is a pretext for retaliatory termination

The Court overlooked this asymmetry: Defendant may deploy post-2020 comparators to defend its actions while Plaintiff is denied access to post-2020 discovery to prove pretext.  Such "asymmetrical access is unfair and contrary to the purpose of civil discovery." *In re Bofi Holding, Inc. Sec. Litig.*, 2021 U.S. Dist. LEXIS 187305 (S.D.N.Y. 2021).

The Order Overlooks The Second Circuit Directives And Equal Pay Act Evidentiary Requirements Regarding Redactions

In upholding Fordham's name redaction of fourteen alleged comparator professors, the Order cited generalized privacy concerns and this Court's prior reliance on inapposite *Black[1] v. New York University Medical Center*, 1996 U.S. Dist. LEXIS 7632 (S.D.N.Y. 1996) (Doc. 197 at 3– 4). In doing so, the Order overlooked controlling directives from the Second Circuit and the substantive evidentiary framework of the Equal Pay Act.

A. The Mandate Identified Redactions as the Cause of Plaintiff's Evidentiary Deficiencies.

In Footnote 1 of its September 5, 2023 Mandate, the Second Circuit explicitly observed: "Solomon alleges that Fordham redacted the comparators' names when it sent to her counsel a list of male professors' salaries, which may explain why she does not allege the specific job duties of each professor." (Doc. 124 at 7.) The appellate court directly linked Fordham's redaction tactics to Plaintiff's inability to plead with the specificity this Court has demanded. The March 30, 2026 Order perpetuates the exact evidentiary vacuum the Second Circuit identified as structurally unfair.

B. The 2024 Protective Order Codified the Redaction Regime the Second Circuit Criticized.

The procedural history of the protective orders in this case underscores the error. In 2019, the parties negotiated and entered a Stipulated Protective Order (SPO) (Dkt. 24) that provided strict confidentiality protections for discovery documents without authorizing the redaction of comparator or peer reviewer names. Fordham unilaterally violated the SPO by redacting

---

[1] D. Black Does Not Support Comparator Name Redactions.--The Order's reliance on *Black* is misplaced. *Black* did not rule on comparator name redactions, but the characterization of "irrelevant" addressed only the identities of *outside evaluators* whom the court explicitly found were "not decision-makers with respect to the plaintiff's status at the Medical Center." *Id.* at *9 n.9. It did not address—and did not authorize—the redaction of comparator professors' names. The comparator professors here are tenured faculty members who are alleged decision-makers, alleged perpetrators of discrimination, and the very individuals against whom Plaintiff must measure her compensation, duties, and treatment. *Black* is inapposite.

comparator names from documents produced to Plaintiff—the very practice the Second Circuit subsequently criticized in Footnote 1 of its September 5, 2023 Mandate (Doc. 124 at 7). Following remand, however, rather than correcting the redaction practice the appellate court had identified as structurally harmful, the Court granted Fordham's cross-motion for a new protective order (Doc. 156), This sequence—appellate criticism of redactions, followed by a district court order authorizing those same redactions—represents a direct conflict with the Second Circuit's Mandate that independently warrants reconsideration.

C. Double Redaction of Comparator Names Contradicts the Mandate, University of Pennsylvania, and Greenwood

The Order does not address the controlling standard for redaction articulated by the Second Circuit, citing *Greenwood*. The individuals shielded by Fordham's redactions are categorically not "innocent third parties" as required.  They shield the alleged perpetrators of the discrimination Plaintiff alleges, the peer reviewers who participated in the adverse employment actions, and the direct comparators necessary to prove a pattern of disparate treatment in compensation, scheduling, promotions, and termination.

This transparency mandate is reinforced by the Supreme Court in *University of Pennsylvania v. EEOC*, 493 U.S. 182 (1990). The double redaction of comparator names obliterate all peer review records, the essence of discrimination inquiry in University discrimination cases. see examples of redactions (Exhibit [4] ).  The Supreme Court held that the necessity of "ferret[ing] out invidious discrimination" serves a "compelling" governmental interest that supersedes the university's desire for administrative confidentiality. *Id.* at 193–94. By permitting the university to redact the names of peer reviewers and comparators—resulting in double-blind files that render cross-referencing impossible—the Order directly contravenes *University of Pennsylvania* and obstructs Plaintiff's ability to prove pretext.

D. Redactions Block Evidence of Discriminatory Events Across the Record.

The practical impact of the redactions extends far beyond mere anonymity. When comparator names are redacted, there is no way to trace an individual comparator or perpetrator through the sequence of discriminatory incidents alleged in the Complaint: the 2001 and 2003 promotion denials; the removal as Area Chair and replacement by the former Provost; the false Code of Conduct charges without hearings; the retaliatory schedules; and the constructive termination without due process. The redactions also preclude Plaintiff from identifying which professors are victims and which are perpetrators of the alleged pattern of discrimination against protected-class faculty, because both groups are anonymized identically.

Defendant has compounded this problem by using comparator names in its own defenses while precluding Plaintiff from knowing the names behind the redactions. As this Court noted in its October 2024 Order (Dkt. 164, fn. 7), Fordham relied on the names and schedules of specific comparator professors in its first motion to dismiss, while simultaneously denying that those individuals were subject to the protective order. Defendant engages in a one-sided practice: deploying comparator identities as a sword in its defenses while wielding confidentiality as a shield against Plaintiff's ability to respond.

The Denial Of Pre-2017 Discovery Overlooks the 2023 Mandate and Supreme Court Precedent In Morgan

The Order denied Plaintiff's request for pre-2017 comparator discovery, concluding that historical data prior to the March 2017 liability period was "temporally remote" and not reasonably relevant (Doc. 197 at 15–16). This determination contrasdicts the Time-barred rulings of the 2023 Mandate, and overlooks controlling Supreme Court and Second Circuit precedent regarding the discoverability of time-barred acts as "background evidence." As in *National Railroad Passenger*, cited by the Second Circuit's Mandate in this very case directly applied

8

*Morgan*, citing also *Petrosino v. Bell Atlantic*, 385 F.3d 210, 220 (2d Cir. 2004), and directing that Plaintiff's pre-March 2017 allegations "must therefore be a part of our consideration of her otherwise timely claims" (Doc. 124 at 4–5). This particularly applies to pre-2008, when she suffered a pattern of discrimination in her promotion, as department chair,  retaliation as business school senator supporting the University statutes, and defamation, *inter alia* as outlined in the Third Amended Complaint, which goes right to the heart of the matter.

Fordham's insistence on anonymity here is fundamentally irreconcilable with its own litigation in *Austin v. Fordham University*, 2024 U.S. Dist. LEXIS 112852 (S.D.N.Y. 2024). In *Austin*, Fordham argued vigorously that access to unredacted files was essential to mount its own defense. Fordham cannot have it both ways: demanding transparency when it is the party seeking disclosure, but imposing opacity when it is the party resisting disclosure. This is precisely the "asymmetrical access" that is "unfair and contrary to the truth-seeking purpose of civil discovery." *In re Bofi Holding*, 2021 U.S. Dist. LEXIS 187305.

The 2019 Stipulated Protective Order, which Plaintiff seeks to reinstate, consistent with the law- of- the-case doctrine, provides adequate confidentiality safeguards without name redactions. As in *Greenwood*, broad redactions that obscure core evidence—here, the identity of those receiving preferential treatment and those perpetrating discriminatory conduct—are impermissible. Reinstatement of the 2019 SPO would align discovery with *Greenwood*, *University of Pennsylvania*, and the Second Circuit's 2023 Mandate, while preserving legitimate privacy interests through the SPO's strict confidentiality provisions.

Plaintiff Complied With The Court's Instructions

The Order states incorrectly that Plaintiff did not follow the Court's instructions in authorizing this "motion to compel and for sanctions" (March 19 2025 Hearing) and did not refer to

9

any of her Exhibits or 3 tables in the motion explaining the serious deficiencies.  The Order made no reference to Plaintiff's Reply Memorandum either, Dkt # 195, which explains in detail.

The Court may have overlooked the fact that Plaintiff presented the items as ordered by the Court.  Although the Order stated "much of the motion fails to identify any specific requests or explain why Solomon believes Fordham's productions are unresponsive to them." Plaintiff presented Exhibits, tables and information which met the requirements. See also the Reply Memorandum

- The First Set of Document requests with 17 requests, and Defendant's answers for each request are in Plaintiff's Motion's, Exhibit 1, [Dkt 182-1:2-12].
- The Second set of Document requests with 21 requests and Defendant's answers for each are in Exhibit 3 [Dkt 182-1:24-40].
- Both Sets of *Interrogatories are in Exhibit* 4: *The first set of* 8 *Interrogatories*, along with Defendant objections and no substantive answer to any of them are in Dkt 182-1:42-48.
- The Second Set of Interrogatories and defendant objections and no substantive answers to any of them are in , as well are presented in Exhibit 4. [Dkt 182-1:49-56]

CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court grant reconsideration of its March 30, 2026 Order.

Dated: April 13, 2026                                      Respectfully submitted,


                                                          /s/ *Esther Solomon*
                                                          Esther Solomon
                                                          Plaintiff Pro Se

---

**Exhibits**


Exhibit 1: January 2024 Hearing, IRS Rule
Exhibit 2: Excerpts from Plaintiff's TAC Complaint
Exhibit 3: Excerpts from Plaintiff's TAC Complaint
Exhibit 4: Redacted peer review records consistent with 2026 Order endorsed replacement Protective Order.