UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ESTHER SOLOMON,

Plaintiff,

*– against –*

FORDHAM UNIVERSITY,

Defendant.

**OPINION & ORDER**

18-cv-4615 (ER)

RAMOS, D.J.:

On March 30, 2026, the Court granted in part and denied in part Esther Solomon's motion to compel and denied her motions to reinstate the protective order and for sanctions. Doc. 197. Solomon moved for reconsideration of that order. Docs. 200, 203. For the reasons set forth below, the motion is DENIED.

## I. BACKGROUND

The underlying facts and procedural history are set out in the Court's previous seven opinions. The first granted Fordham's motion to dismiss the amended complaint in its entirety. Doc. 69. The second granted Fordham's motion to dismiss the second amended complaint in its entirety. Doc. 85. The third granted Solomon's motion to file a third amended complaint for the limited purpose of amending the retaliation claims based on Fordham's termination of her employee health benefits. Doc. 94. The fourth denied Solomon's motion for reconsideration of the previous opinion, granted Fordham's motion to dismiss the third amended complaint, and closed the case. Doc. 121. After Solomon successfully appealed the case to the Second Circuit, the case was re-opened and discovery continued. Doc. 124. The fifth opinion, resolving various discovery issues, was published on July 2, 2024. Doc. 156. In a sixth opinion, issued October 2, 2024, the Court denied Solomon's motion for reconsideration of the July 2, 2024 opinion. Doc. 164.

Approximately two months after the Court denied Solomon's motion for reconsideration of the July 2, 2024 opinion, Solomon filed a petition for a writ of mandamus to the Second Circuit. Doc. 165. While the writ of mandamus was pending, the Court held a conference on January 28, 2025, during which it directed the parties to meet and confer regarding discovery disputes. Doc. 170 at 13. The Court then held another conference on March 19, 2025, during which it granted Solomon leave to file a motion to compel. Doc. 178. The Second Circuit denied Solomon's mandamus petition on June 13, 2025. Doc. 180.

Approximately two months after her mandamus petition was denied, Solomon filed a motion to compel Fordham's compliance with her subpoenas and document requests, reinstate the 2019 protective order, and sanction Fordham. Doc. 182. In a seventh opinion, on March 30, 2026, the Court granted in part and denied in part the motion to compel and denied the motion to reinstate the protective order and for sanctions. Doc. 197.

On April 13, 2026, Solomon moved for reconsideration of the Court's March 30, 2026 opinion ("March 30 Order"). Docs. 200, 203. Defendants filed their opposition on April 28, 2026. Doc. 204. Solomon filed her reply on May 18, 2026. Doc. 212.

## II. LEGAL STANDARDS

### A. Motion for Reconsideration

Motions for reconsideration are governed by Local Civil Rule 6.3. The standard for granting a motion for reconsideration is "strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Shrader v. CSX Transportation, Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). Thus, "[a] motion for reconsideration should be granted only when the [movant] identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Kolel Beth Yechiel Mechil of*

*Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (quoting *Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).

A motion for reconsideration "is not an opportunity to present 'new facts, issues[,] or arguments not previously presented to the court.'" *SimplexGrinnell LP v. Integrated Systems & Power, Inc.*, 642 F. Supp. 2d 206, 210 (S.D.N.Y. 2009) (quoting *Maalouf v. Salomon Smith Barney, Inc.*, No. 02 Civ. 4770, 2004 WL 2782876, at *1 (S.D.N.Y. Dec. 3, 2004)). Nor is it a vehicle to strengthen arguments made in a party's original briefing or "offer additional support for an argument rejected previously by the Court." *Drapkin v. Mafco Consolidated Group, Inc.*, 818 F. Supp. 2d 678, 696 (S.D.N.Y. 2011). Indeed, "[t]he reason for the rule confining reconsideration to matters that were 'overlooked' is to 'ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters.'" *Schoolcraft v. City of New York*, 298 F.R.D. 134, 137 (S.D.N.Y. 2014) (quoting *Polsby v. St. Martin's Press, Inc.*, No. 97–690 (MBM), 2000 WL 98057, at *1 (S.D.N.Y. Jan. 18, 2000)). The moving party ultimately bears the burden of "demonstrat[ing] that the Court overlooked controlling decisions or material facts that were before it on the original motion, and that might 'materially have influenced its earlier decision.'" *Id.* at 136 (quoting *Anglo American Insurance Group, P.L.C. v. CalFed, Inc.*, 940 F. Supp. 554, 557 (S.D.N.Y. 1996)). The decision to grant or deny a motion for reconsideration is within "the sound discretion of the district court." *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009) (citation omitted).

**B. *Pro Se* Plaintiff**

The Court holds submissions by pro se litigants to "less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (per curiam) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)); *see also Young v. N.Y.C. Dep't of Educ.*, No. 09-cv-6621 (SAS), 2010 WL 2776835, at *5 (S.D.N.Y. July 13, 2010) (noting that the same principles apply to briefs and opposition papers filed by pro se litigants).

Although "*pro se* status 'does not exempt a party from compliance with relevant rules of procedural and substantive law,'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)), courts read the pleadings and opposition papers submitted by *pro se* litigants "liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). The obligation to read a pro se litigant's pleadings leniently "applies with particular force when the plaintiff's civil rights are at issue." *Jackson v. NYS Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)).

## III. DISCUSSION

In her motion, Solomon argues that the March 30 Order relied on "a series of factual misstatements," impermissibly ordered asymmetrical discovery, overlooked Second Circuit precedent, and improperly concluded that Solomon failed to sufficiently explain the deficiencies in Fordham's responses to her subpoenas.[1] Doc. 200 at 4–6. Many of the arguments raised in her motion for reconsideration have been addressed extensively in prior opinions of this Court, and she does not "demonstrate that the Court overlooked controlling decisions or material facts that were before it on the original motion, and that might 'materially have influenced its earlier decision.'" *Schoolcraft*, 298 F.R.D. at 136 (quoting *Anglo American Insurance Group*, 940 F. Supp. at 557).

### A. Plaintiff has not shown the Court overlooked material facts.

Solomon argues that the Court concluded, contrary to representations "in her complaint, in declarations, and at every court hearing," that she was on "voluntary unpaid

[1] Solomon raises additional arguments for the first time in her reply, including that the Court's reliance on *Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, 209 F.R.D. 208 (D. Kan. 2002) and *Asanjarani v. City of New York*, No. 09 Civ. 7493 (JCF), 2011 WL 6811027 (S.D.N.Y. Dec. 27, 2011) were improper. As a general rule, the Court does not consider arguments raised for the first time in a reply. *See Simpson v. City of New York*, 793 F.3d 259, 264 (2d Cir. 2015). However, the Court notes that Solomon fails to point to any change in controlling law that would render the Court's reliance on *Horizon* or *Asanjarani* improper. *Analytical Surveys, Inc.*, 684 F.3d at 52.

leave," which underpinned its decision to deny Solomon's request for comparator discovery for the six years after she stopped teaching in 2019. Doc. 200 at 4. Solomon attempts to relitigate an issue addressed specifically in its March 30 Order without providing any overlooked facts or controlling decisions that would "materially have influenced its earlier decision." Doc. 197 at 10; *Schoolcraft*, 298 F.R.D. at 136.

As laid out in the Court's March 30 Order, comparator records are only relevant "insofar as the professors may be reasonably understood to be similarly situated to Solomon." Doc. 197 at 10. For clarity, the Court will refer to the comparators who are the subject of her motion to compel and whose relevance is to her discrimination and pay disparity claims collectively as the "Discrimination Comparators."[2] Solomon has received, consistent with the protective order in this case, discovery regarding the Discrimination Comparators for the period between 2008, ten years before the liability period in this case, and 2018, when her unpaid leave began. Doc. 197 at 16. The Court concluded that the Discrimination Comparators were similarly situated to Solomon while she was teaching but ceased to be similarly situated to her when her leave began in 2019 because those professors were not similarly on leave. *Id.* at 10. As such, Solomon failed to show how records for the Discrimination Comparators for the period during her unpaid leave could be relevant to her pay and discrimination claims. *Id.* However, the Court acknowledged that some evidence that post-dates the specific adverse employment action for which she seeks comparator files may be relevant and granted Solomon's request for records about the Discrimination Comparators through the end of 2020, which the Court concluded was reasonable. *Id*. at 11. The Court's characterization of Solomon's unpaid leave as "voluntary" has no bearing on its determination that the Discrimination Comparators were not similarly situated to her once her leave began. *See* Doc. 197 at

---

[2] The Court does not use this term to create any limitation on how Solomon may use the records produced in discovery to establish her case. The Court uses this term to delineate clearly between two sets of comparator records which have been the subject of Solomon's motion to compel, and which are relevant to different claims she brings in her complaint.

10–11 ("These records are only relevant insofar as the professors may be reasonably understood to be similarly situated to Solomon."). Solomon herself acknowledges that she "asked for leave without pay." Doc. 95 ¶ 334. Crucially, Solomon has not argued that any of the Discrimination Comparators did the same. *See* Doc. 182, at 7–11. Whether the leave was at her request, or voluntary, or was something she asked for as a result of the discrimination and pay disparity she alleges, the Court's finding that the Discrimination Comparators were not similarly situated to her while she was on leave remains the same. *See* Doc. 197 at 9–11. As such, Solomon fails to point to any fact overlooked by the Court that would require reconsideration.

Nor is the Court persuaded by Solomon's argument that the Court's order improperly concluded that any adverse action against her ceased in 2018 when she took unpaid leave, whereas her complaint alleges adverse actions during her unpaid leave in 2019 and 2020. Doc. 200 at 4–5. The Court thoroughly addressed Solomon's post-2018 allegations, ordered Fordham to produce records regarding the Discrimination Comparators through the end of 2020, and granted Solomon's request for documents related to a change in her employment status during her period of leave. Doc. 197 at 10–11, 13. The facts she alleges during her period of unpaid leave "all pertain to her allegations that Fordham improperly terminated her health benefits … [and] they rest on her assertion that Fordham treated her differently than other professors who voluntarily took unpaid leave." Doc. 197 at 10. As such, they cannot support Solomon's request for six additional years of information about the Discrimination Comparators that she seeks to use to show pay disparity and discrimination. Doc. 197 at 11.

Further, Solomon argues that the Court overlooked the double standard created by denying her request for post-2018 discovery for Discrimination Comparators, thereby improperly allowing Fordham to use post-2018 comparators of their choosing. Doc. 200 at 6. However, this argument, which Solomon raised in her initial motion to compel, Doc. 184 at 13, 24, was clearly addressed in the Court's March 30 Order. Doc. 197 at

10–11. Contrary to the records she seeks, the comparators for which Fordham provided post-2018 records were similarly situated to Solomon during the period between 2019 and 2025 because they, like Solomon, were on extended unpaid leave. *Id*. For clarity, the Court will refer to the comparators identified by Fordham collectively as the "Retaliation Comparators."[3] Information about other professors' treatment after 2018, when her unpaid leave began, are relevant to her claim that her benefits were retaliatorily terminated, but Solomon has failed to show how they would be relevant to her pay disparity and discrimination claims. *Id*.

Nor is the Court persuaded by Solomon's reliance on *In re Bofi Holdings, Inc. Securities Litigation*, No. 15 Civ. 2324, 2021 WL 4460751, at *3–4 (S.D. Cal. Sept. 29, 2021), which concerned plaintiff's access to deposition testimony in a parallel, "inextricably intertwined" whistleblower action, or *Austin v. Fordham University*, No. 23 Civ. 4696, 2024 WL 749636 (S.D.N.Y. Feb. 23, 2024), which concerned a third party defendant's access to medical records, phone numbers, and addresses, because both cases are readily distinguishable, not binding on this court, and do not constitute a change in controlling law.[4] Allowing Fordham to identify and provide records about the Retaliation Comparators does not create a discovery asymmetry as the two sets of comparator records speak to different issues and claims. As such, discovery asymmetry cannot serve as a basis for her motion for reconsideration.

Finally, Solomon argues that the Court incorrectly concluded that she failed to specify why many of Fordham's productions are unresponsive to her requests. Doc. 200

---

[3] The Court, again, uses this term to delineate clearly between the two sets of comparator records. It is not intended as a limitation on Solomon's ability to otherwise make her case.

[4] Solomon raises *In re Bofi Holdings Inc.* for the first time in her motion for reconsideration. "[I]t is well-settled that '[a] party may not, on a motion for [reconsideration], raise an argument for the first time.'" *Oxman v. Drager*, No. 18-cv-0687, 2018 WL 4043136, at *3 (S.D.N.Y. Aug. 13, 2018) (quoting *Image Processing Tech., LLC v. Canon, Inc.*, No. 10-cv-3867, 2010 WL 253907, at *2 (E.D.N.Y. Jan 26, 2012). Solomon raised *Austin* on her motion to compel, which did not persuade the Court. Doc. 182 at 25. In any event, neither *In re Bofi Holdings* nor *Austin* is a "controlling decision…that the court overlooked." *Analytical Surveys, Inc.*, 684 F.3d at 52.

at 11. She points to the exhibits and tables in her motion and her reply memorandum, arguing that the Court overlooked them and that she believes they lay out her objections such that the Court can meaningfully evaluate them. Doc. 200 at 10–11. As stated in the Court's March 30 Order, the tables and exhibits merely identify categories where Solomon states that there were either no responsive documents provided, minimally or nominally responsive documents provided, documents supporting Fordham's defenses provided, or responsive documents provided. Doc. 197 at 8; Doc. 184 at 14, 17; Doc. 186-1. As noted in its March 30 Order, the Court cannot meaningfully evaluate a request where the blanket assertion is made that the production is "not responsive." Doc. 197 at 8 (quoting Doc. 182 at 6). However, the Court did address each request that it could evaluate based on Solomon's motion and granted her motions to compel where she "made at least some showing that the documents [she] seeks exist" and are relevant to her claims. *Id.* at 8–21 (quoting *Royal Park Investments SA/NV v. Deutsche Bank National Trust Co.*, No. 14 Civ. 04394 (AJN) (BCM), 2017 WL 11899224, at *3 (S.D.N.Y. Jan. 26, 2017). As such, Solomon's argument that her motion properly laid out the basis for her objections fails and cannot serve as a basis from which to grant a motion to reconsider.

**B. Plaintiff has not shown a change in controlling law.**

Solomon additionally raises issue with Fordham's redactions of comparator professors' and peer reviewers' names in discovery, arguing that the Court overlooked Supreme Court and Second Circuit precedent, as well as a directive in the Second Circuit's order reinstating some of her claims. Doc. 200 at 7–11. Solomon argues that Fordham did not comply with subpoenas because they provided "no complete, unredacted, personnel files responsive to those subpoenas." Doc. 200 at 5.

As far as the Second Circuit's order reinstating Solomon's claims, she raises precisely the same arguments previously ruled on by this Court in its July 2, 2024 order and in its October 2, 2024 order denying reconsideration of its July 2, 2024 order. Doc. 156 at 13–14; Doc. 164 at 4 n.5, 7–8. Additionally, Solomon filed a petition for a writ of

mandamus seeking to have the July 2, 2024 order vacated on the grounds that the Court's order regarding redactions and discovery requests was contrary to the Second Circuit's order reinstating certain of her claims. Doc. 165. The writ was denied by the Second Circuit on June 13, 2025. Doc. 180. Solomon cannot use a motion for reconsideration to reopen an issue fully resolved by this court. *Analytical Surveys*, 684 F.3d at 52.

Additionally, Solomon cites *United States v. Greenwood*, 145 F.4th 248 (2d Cir. 2025) and *University of Pennsylvania v. E.E.O.C.*, 493 U.S. 182 (1990) which she argues the Court overlooked as controlling standards for redaction. Doc. 200 at 8. Further, Solomon again argues that *Black* is inapplicable to her case. *Id.* at 7; *Black v. New York University Medical Center,* No. 94 Civ. 9074 (NRB) (SS), 1996 WL 294310, at *3 (S.D.N.Y. June 3, 1996). First, Solomon recycles the same arguments made and ruled on by this court regarding the applicability of *Black* to her case and fails to present any change in controlling law. Doc. 164 at 7; Doc. 197 at 4. Second, *Greenwood* was not raised in Solomon's motion to compel and is distinguishable. *Oxman*, 2018 WL 4043136, at *3 (quoting *Image Processing Tech., LLC*, 2010 WL 253907, at *2 ("[I]t is well-settled that '[a] party may not, on a motion for [reconsideration], raise an argument for the first time.'"). *Greenwood* concerns whether sentencing memoranda and exhibits can be redacted or filed under seal given the First Amendment right of access to judicial documents. *Greenwood*, 145 F.4th at 252. Solomon misconstrues the holding in *Greenwood*, which found that the redactions were appropriate but wholesale sealing of exhibits to sentencing memoranda was not justified, as a controlling standard for redactions. *Id*. at 256. It is not. Solomon further misconstrues the holding in *University of Pennsylvania*, which concerned the Equal Employment Opportunity Commission's ability to access peer review information via subpoena. *University of Pennsylvania*, 493 U.S. at 580. *University of Pennsylvania* has no bearing on whether redactions of peer reviewer names are appropriate and explicitly declined to reach that question. *Id*. at n 2, 9. As the Court has outlined in its prior opinions resolving Solomon's arguments about

comparator name redactions, Solomon must show that the names of the comparator professors are relevant to her discrimination claims, which she has failed to do. Doc. 197 at 3–4; Doc. 164 at 7.

Nor is the Court persuaded by Solomon's argument that she is unable to "trace an individual comparator or perpetrator through the sequence of discriminatory incidents." Doc. 200 at 9. First, Solomon has previously raised this argument, and the Court addressed it in full. Doc. 164 at 7. Additionally, as the Court understands, and has addressed previously, Fordham has provided a key which will allow Solomon to determine comparator professors' gender, year of birth, and title. Doc. 143 at 12; Doc. 156 at 13; Doc. 164 at 7. To the extent that she has issues piecing together the discovery and using the key provided by Fordham, she may engage with Fordham to seek clarity. However, this does not change the Court's determination that the names of comparator professors are not relevant to her discrimination claims. As to the redactions, Solomon does not put forth any overlooked facts or a change in controlling law that would necessitate reconsideration.

Finally, Solomon seeks to relitigate the issue of whether she is entitled to comparator discovery for the period between 2001 and 2008, nine years before the liability period in this case begins. Doc. 200 at 9–10. She presents no facts which have been overlooked nor any change in controlling law, instead recycling the arguments she made previously that the Second Circuit's "mandate" resolves the issue in her favor. *Id.*; Doc. 182 at 10, 18. As outlined in the Court's March 30 Order, the Second Circuit's summary order reinstating certain of her claims "did not absolve Solomon of her initial burden to show that the pre-March 2017 evidence that she seeks is relevant," which the Court determined she failed to do for the records from 2001 through 2008. Doc. 197 at 14–16. Additionally, Solomon is already in possession of comparator records for the ten years preceding the liability period in this case. Doc. 197 at 16.

## IV. CONCLUSION

For the foregoing reasons, the motion for reconsideration is DENIED. The Clerk of Court is respectfully requested to terminate the motion, Docs. 200, 203.

It is SO ORDERED.

Dated: November 24, 2026
New York, New York

EDGARDO RAMOS, U.S.D.J.